# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **Tushar Bhatia, individually and as the representative of a class of similarly situated persons, and on behalf of the McKinsey & Company, Inc. (PSRP) Profit-Sharing Retirement Plan and the McKinsey & Company, Inc. (MPPP) Money Purchase Pension Plan,**<br><br>                   **Plaintiff,**<br><br>                 **v.**<br><br>**McKinsey & Company, Inc., MIO Partners, Inc., and John Does 1-50,**<br><br>                 **Defendants.** | No. 1:19-cv-01466<br><br><br>**Oral Argument Requested** |

# DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT
## OF THEIR MOTION TO COMPEL ARBITRATION AND,
## <u>IN THE ALTERNATIVE, TO DISMISS PLAINTIFF'S COMPLAINT</u>

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

FACTUAL BACKGROUND ........................................................................................... 5

I.      The Plans ............................................................................................................. 5

II.     The Plans Require Participants To Submit Their Claims To Mandatory, Final,
        And Binding Arbitration ..................................................................................... 6

ARGUMENT ................................................................................................................. 10

I.      Plaintiff's Claims Are Subject To Arbitration ................................................. 10

        A.      The Federal Arbitration Act And Supreme Court Authority Require The
                Plaintiff To Arbitrate This Dispute. ....................................................... 10

        B.      The Court Should Compel Arbitration Of Plaintiff's Claims And Stay This
                Action Because ERISA Claims Are Arbitrable And The Plans Require
                Plaintiff To Arbitrate This Dispute. ........................................................ 11

II.     Plaintiff's Complaint Should Be Dismissed ................................................... 12

        A.      Legal Standard For Pleading An ERISA Breach Of Fiduciary Duty Claim ........ 13

        B.      Plaintiff's Breach Of Fiduciary Duty Claim (Count I) Fails Because The
                Complaint Does Not Allege Facts Permitting A Reasonable Inference That
                Defendants Acted Imprudently Or Disloyally. ..................................... 14

                1.      Plaintiff Does Not Allege Any Facts About The Plans' Investment
                        Options, Their Performance Against Benchmarks, Risk, Or Any
                        Other Facts From Which A Fiduciary Breach Can Be Inferred ............. 14

                2.      Plaintiff's Plan-Wide Performance Allegations Cannot State A
                        Claim ........................................................................................... 16

        C.      Plaintiff's Duty To Monitor Claim (Count II) Is Derivative Of Count I
                And Fails For the Same Reasons ........................................................... 20

        D.      Plaintiff Fails To State A Prohibited Transaction Claim Under ERISA
                Section 406 (Counts III and IV) ............................................................ 20

CONCLUSION ............................................................................................................. 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Am. Express Fin. Advisors Sec. Litig.*,
   672 F.3d 113 (2d Cir. 2011)....................................................................11, 12

*AT&T Mobility, v. Concepcion*,
   563 U.S. 333 (2011)...........................................................................................10

*Bensadoun v. Jobe–Riat*,
   316 F.3d 171 (2d Cir. 2003)..............................................................................15

*Bird v. Shearson Lehman/Am. Express, Inc.*,
   926 F.2d 116 (2d Cir. 1991)............................................................................1, 12

*Cassell v. Vanderbilt Univ.*,
   285 F. Supp. 3d 1056, 1068 (M.D. Tenn. 2018)..............................................22

*In re Citigroup ERISA Litig.*,
   662 F.3d 128 (2d Cir. 2011)............................................................................2, 20

*David v. Alphin*,
   704 F.3d 327 (4th Cir. 2013) ............................................................................21

*DiFelice v. U.S. Airways*,
   497 F.3d 410 (4th Cir. 2007) ........................................................................4, 17

*DuBois v. Macy's E. Inc.*,
   338 F. App'x 32 (2d Cir. 2009) ........................................................................12

*Ellis v. Fid. Mgmt. Tr. Co.*,
   883 F.3d 1 (1st Cir. 2018) ................................................................................17

*Fifth Third Bancorp v. Dudenhoeffer*,
   573 U.S. 409 (2014)........................................................................................13, 20

*Guyden v. Aetna, Inc.*,
   544 F.3d 376 (2d Cir. 2008)..............................................................................10

*Hecker v. Deere & Co.*,
   556 F.3d 575 (7th Cir. 2009) ............................................................................17

*Katz v. Cellco P'ship*,
   794 F.3d 341 (2d Cir. 2015)...............................................................................12

*Kindred Nursing Ctrs. Ltd. P'Ship v. Clark*,
    137 S. Ct. 1421 (2017) ....................................................................................................10

*Langbecker v. Elec. Data Sys.*,
    476 F.3d 299 (5th Cir. 2007) ......................................................................................4, 17

*Leber v. Citigroup 401(k) Plan Invest. Comm.*,
    323 F.R.D. 145 (S.D.N.Y. Nov. 27, 2017) ...................................................................21

*Leber v. Citigroup, Inc.*,
    No. 07 Civ. 9329(SHS), 2010 WL 935442 (S.D.N.Y. Mar. 16, 2010) ..........................21

*Lewis Tree Serv., Inc. v. Lucent Techs. Inc.*,
    239 F. Supp. 2d 332 (S.D.N.Y. 2002) ...........................................................................11

*Loomis v. Exelon Corp.*,
    658 F.3d 667 (7th Cir. 2011) .................................................................................19, 20

*Manigault v. Macy's E., LLC*,
    318 F. App'x 6 (2d Cir. 2009) .......................................................................................12

*Mehling v. N.Y. Life Ins.*,
    163 F. Supp. 2d 502 (E.D. Pa. 2001) ............................................................................21

*Meiners v. Wells Fargo & Co.*,
    898 F.3d 820 (8th Cir. 2018) .........................................................................................15

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985) .......................................................................................................10

*Moreno v. Deutsche Bank Ams. Holding Corp.*,
    No. 15 Civ. 9936 (LGS), 2016 WL 5957307 (S.D.N.Y. Oct. 13, 2016) ....................15, 16

*Muehlgay v. Citigroup Inc.*,
    649 F. App'x 110 (2d Cir. 2016) ...................................................................................22

*Renfro v. Unisys Corp.*,
    671 F.3d 314 (3d Cir. 2011) ...........................................................................................13

*Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*,
    137 S. Ct. 2042 (2017) ...................................................................................................21

*Rosen v. Prudential Ret. Ins. & Annuity Co.*,
    No. 3:15-cv-1839 (VAB), 2016 WL 7494320 (D. Conn. Dec. 30, 2016), *aff'd*,
    718 F. App'x 3 (2d Cir. 2017) ...............................................................................5, 13, 20

*Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*,
712 F.3d 705 (2d Cir. 2013)......................................................................................... *passim*

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)...........................................................................................................5

*United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*,
363 U.S. 574 (1960).........................................................................................................11

*White v. Chevron Corp.*,
No. 16-cv-0793-PJH, 2017 WL 2352137 (N.D. Cal. May 31, 2017), *aff'd*, 752
F. App'x 453 (9th Cir. 2018), *petition for cert. filed*, No. 18-1271, 2019 WL
1489041 (U.S. Apr. 3, 2019).....................................................................................5, 20, 22

*Whitt v. Prosper Funding LLC*,
No. 1:15-136-GHW, 2015 WL 4254062 (S.D.N.Y. July 14, 2015)................................11, 12

*Young v. Gen. Motors Inv. Mgmt. Corp.*,
550 F. Supp. 2d 416 (S.D.N.Y. 2008), *aff'd on other grounds*, 325 F. App'x
31 (2d Cir. 2009)..............................................................................................................22

**Statutes**

9 U.S.C. § 2........................................................................................................................10

9 U.S.C. § 4........................................................................................................................11

29 U.S.C. § 1024...........................................................................................................14, 15

29 U.S.C. § 1106...........................................................................................................20, 22

29 U.S.C. § 1113(1)............................................................................................................21

29 U.S.C. § 1113(1)(A)....................................................................................................4, 21

29 U.S.C. § 1113(2)..........................................................................................................4, 22

Employee Retirement Income Security Act (ERISA) ........................................... *passim*

Federal Arbitration Act (FAA) ...............................................................1, 10, 11, 12

**Other Authorities**

29 C.F.R. § 2550.404a-5................................................................................................14, 15

29 C.F.R. § 2550.404c-1......................................................................................................18

61 Fed. Reg. 15975 (Apr. 10, 1996), *as amended at* 76 Fed. Reg. 18255 (Apr. 1, 2011) ...........................................................................................................................21

Fed. R. Civ. P. 12 ...............................................................................................5, 12, 15

## INTRODUCTION

Plaintiff Tushar Bhatia ("Plaintiff"), a participant in the McKinsey Profit-Sharing Retirement Plan ("PSRP") and the McKinsey Money Purchase Pension Plan ("MPPP") (collectively, "the Plans"), has brought claims against Defendants McKinsey & Company, Inc. ("McKinsey") and MIO Partners, Inc. ("MIO") under the Employee Retirement Income Security Act ("ERISA"). For the reasons explained below, all of Plaintiff's claims are subject to mandatory arbitration and otherwise must be dismissed as deficient under well-established law.

Plaintiff alleges that Defendants breached their fiduciary duties of prudence and loyalty under ERISA and committed prohibited transactions by offering investment options in the Plans that performed poorly and/or charged excessive fees, causing him and other participants in the Plans to lose millions of dollars collectively.

As an initial matter, Plaintiff's Complaint does not belong in court at all. Rather, it is subject to "mandatory, final and binding arbitration" under the Plans' arbitration provisions. The Second Circuit has unequivocally held that the Federal Arbitration Act (the "FAA") "requires courts to enforce agreements to arbitrate" statutory ERISA claims. *Bird v. Shearson Lehman/Am. Express, Inc.*, 926 F.2d 116, 122 (2d Cir. 1991) (reversing a district court decision that denied a motion to compel arbitration). Plaintiff should therefore be compelled to arbitrate this dispute pursuant to the FAA, and this action should be stayed pending the outcome of that arbitration.

Further, even if Plaintiff's claims were properly before this Court, the Complaint fails to state a claim as a matter of law and should be dismissed for the following reasons:

*First*, the focus in a breach of fiduciary duty claim is on whether the *process* used to select and monitor plan investment options satisfied ERISA's standards. *Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712

F.3d 705, 716 (2d Cir. 2013) ("*St. Vincent*") ("[T]his standard focuses on a fiduciary's conduct in arriving at an investment decision, not on its results, and asks whether a fiduciary employed the appropriate methods to investigate and determine the merits of a particular investment.") (internal citation, quotations and brackets omitted).  Here, Plaintiff concedes he alleges no facts about "the specifics of the decision-making processes" regarding "the management of the Plans' investment lineup" or the "overall management of the retirement program."  (¶ 74).

*Second*, absent such allegations of a deficient process, the Second Circuit only allows a plaintiff to state a claim for fiduciary breach by alleging facts that create a "'*reasonable* inference' that the defendant committed the alleged misconduct, thus 'permitting the court to infer more than the mere possibility of misconduct.'"  *St. Vincent*, 712 F.3d at 718-19 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)) (internal brackets omitted).  The Second Circuit in *St. Vincent* observed that:

> [T]he prospect of discovery in a suit claiming breach of fiduciary duty is ominous, potentially exposing the ERISA fiduciary to probing and costly inquiries and document requests about its methods and knowledge at the relevant times. This burden, though sometimes appropriate, elevates the possibility that a plaintiff with a largely groundless claim will simply take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value, rather than a reasonably founded hope that the discovery process will reveal relevant evidence.

*St. Vincent*, 712 F.3d at 719 (internal citation, quotations and brackets omitted).  Therefore, the nature of Plaintiff's claims under ERISA "calls for particular care . . . to ensure that the . . . Complaint alleges *nonconclusory* factual content raising a *plausible* inference of misconduct and does not rely on 'the vantage point of hindsight.'"  *Id.* at 718 (quoting *In re Citigroup ERISA Litig.*, 662 F.3d 128, 140 (2d Cir. 2011)) (emphasis in original).  In *St. Vincent*, for example, the Second Circuit affirmed dismissal of the plaintiff's breach of fiduciary duty claims even though the complaint alleged substantial underperformance and that certain identified investments in the

plan were excessively risky, because those facts alone were insufficient to create even an inference that the process was flawed.  712 F.3d at 718.

Here, the Complaint alleges no facts creating a reasonable inference that Defendants' process was flawed.  Instead, the Complaint simply alleges that the Plans' overall performance was below the median of unidentified plans selected by Plaintiff, although always within 1% to 3% of the median.[1]  That is insufficient as a matter of law to create an inference of a fiduciary breach.  *Id*. at 731 (affirming dismissal of fiduciary breach claims despite plaintiff's allegations that the plan lost 12% of its value, whereas its benchmark, the Citigroup BIG, gained 7%).  ERISA simply does not impose fiduciary liability based on hindsight performance.  *See, e.g.*, *id*. at 713 ("This sort of 'hindsight critique of returns,' the Court explained, is inadequate to show a breach of fiduciary duty under ERISA.") (quoting district court decision granting motion to dismiss,  *Saint Vincent Catholic Med. Ctrs. v. Morgan Stanley Inv. Mgmt. Inc.,* No. 09-9730(PKC), 2010 WL 4007224, at *5 (S.D.N.Y. Oct. 4, 2010)).

*Third*, the Plans' overall performance is irrelevant because the Plans are defined contribution plans, and thus, the overall performance depends on which of the available investment options participants choose to invest the funds in their individual accounts.[2]  For this reason, when evaluating a breach of fiduciary duty claim involving a defined contribution plan, "the relevant 'portfolio' that must be prudent is *each* available Fund considered on its own."

---

[1]     Of course, in any data set, half of the data is going to perform below the median – that is the mathematical definition of a "median."  That does not mean that a fiduciary breach claim can lie against half of all ERISA plans.

[2]     If a plan's participants choose to invest all of their funds in money market or bond funds with typically and expectedly low returns, the plan likely will not perform as well as a plan whose participants choose to invest exclusively in equities.  That is true even though the money market and bond funds might be reasonable and prudent investments.

*DiFelice v. U.S. Airways*, 497 F.3d 410, 423 (4th Cir. 2007) (emphasis in original); *Langbecker v. Elec. Data Sys.*, 476 F.3d 299, 308 n.18 (5th Cir. 2007) ("Under ERISA, the prudence of investments or classes of investments offered by a plan must be judged individually."). Although the Complaint pays lip service to this rule (quoting *DiFelice*, ¶ 35), Plaintiff does not allege *any* facts about any particular investment option in the Plans, let alone identify a *single investment option* in the Plans that even underperformed its benchmark. Therefore, Plaintiff's fiduciary breach claim fails as a matter of law for this independent reason.

*Lastly*, Plaintiff's prohibited transaction claims fail. Plaintiff cannot state a prohibited transaction claim merely by alleging that certain investment options for the Plans were managed in-house and that there were expenses associated with those options. In fact, ERISA contains an exemption that expressly permits in-house managers such as MIO to do precisely that. Plaintiff's prohibited transaction claims are also barred by ERISA's six-year statute of repose, 29 U.S.C. § 1113(1)(A), and three-year statute of limitations, 29 U.S.C. § 1113(2).

For each and all of these reasons, and those explained more fully below, Plaintiff should be compelled to arbitrate his claims, and this lawsuit should be stayed pending the outcome of that arbitration. Alternatively, the Complaint should be dismissed for failure to state a claim.

## FACTUAL BACKGROUND[3]

### I.     The Plans

The Plans are "defined contribution" plans under ERISA.  (¶¶ 16, 17).  The PSRP offers

participants the opportunity to participate in a tax-deferred retirement savings plan.  (¶ 16).  As

an additional benefit, McKinsey contributes to participants' retirement savings through employer

contributions in the PSRP and the MPPP.  (¶ 17).  Participants then direct their contributions and

McKinsey's contributions into various investment options, and each Plan offers the same menu

of options.  (¶¶ 16-18).

Plaintiff has been a participant in the Plans since 2015.  (¶ 15).  As of 2014, the Plans

offered approximately twelve investment options.  (*See* PSRP Form 5500, Annual Return/Report

(2014), attached hereto as Ex. 1 to the Declaration of Melissa D. Hill ("Hill Decl."); Form 5500,

Annual Return/Report (2014), Hill Decl. at Ex. 2.)  There are now approximately fifteen options

in the Plans' investment lineup.  (*See* PSRP Form 5500, Annual Return/Report (2017), Hill Decl.

---

[3]      The facts referenced herein come from the Complaint (cited as "¶ _"), documents referenced or relied upon therein, or other materials the content of which may be judicially noticed. In ruling on a Rule 12(b)(6) motion, the Court may consider documents incorporated into the Complaint by reference, matters subject to judicial notice, and those documents integral to the Complaint. *See, e.g.*, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).  In ERISA cases, the court can consider the plan and plan-related documents, as well as statutorily required disclosures, IRS Forms 5500, and fund prospectuses. *See, e.g.*, *Rosen v. Prudential Ret. Ins. & Annuity Co.*, No. 3:15-cv-1839 (VAB), 2016 WL 7494320, at *3 (D. Conn. Dec. 30, 2016), *aff'd*, 718 F. App'x 3 (2d Cir. 2017) ("[T]he Court may also consider matters subject to judicial notice, which include public disclosure documents filed with governmental agencies, such as the Securities and Exchange Commission and the Department of Treasury" and taking judicial notice of the plan's Form 5500s); *White v. Chevron Corp.*, No. 16-cv-0793-PJH, 2017 WL 2352137, at *5 (N.D. Cal. May 31, 2017), *aff'd*, 752 F. App'x 453 (9th Cir. 2018), *petition for cert. filed*, No. 18-1271, 2019 WL 1489041 (U.S. Apr. 3, 2019) (taking judicial notice of, among other things, Form 5500 filing and a summary prospectus for a particular fund); *cf St. Vincent*, 712 F.3d at 720 (explaining that ERISA's "extensive disclosure requirements," through statutorily required Annual Reports and participant disclosures, give plaintiffs information about the plan investment options).

at Ex. 3; MPPP Form 5500, Annual Return/Report (2017), Hill Decl. at Ex. 4).[4]

As set forth in the Plans' Annual Reports and statutory required disclosures, *see St. Vincent*, 712 F.3d at 72, the Plans offer a mix of investment options that include passively managed domestic and international equity and bond index funds, as well as various actively managed investments in different asset classes.  (*See* PSRP Form 5500, Annual Return/Report (2017), Hill Decl. at Ex. 3; MPPP Form 5500, Annual Return/Report (2017), Hill Decl. at Ex. 4; September 6, 2018 Participant Disclosures, Hill Decl. at Ex. 5).  Yet the Complaint does not (i) allege that any one of these specific investment options was imprudent or otherwise did not satisfy ERISA's standards, (ii) include any allegations about the performance of any specific investment options against their benchmarks, or (iii) allege anything about their risk-adjusted returns.

## II. The Plans Require Participants To Submit Their Claims To Mandatory, Final, And Binding Arbitration.

At all times during Plaintiff's enrollment and participation in the Plans, the PSRP and MPPP Plan Documents (collectively, the "Plan Documents") contained broad provisions requiring claimants to submit disputes arising from investment-related losses to mandatory, final, and binding arbitration.  (*See* 2013 PSRP Plan Document, attached hereto as Ex. A to the Declaration of James E. Farrell, Jr. ("Farrell Decl."); 2013 MPPP Plan Document, Farrell Decl. at Ex. B; 2018 MPPP Plan Document, Farrell Decl. at Ex. C).  Section 10.17 of the PSRP Plan provides in relevant part the following Arbitration Provisions under the clearly marked

---

[4]    *See also* September 6, 2018 Participant Disclosures, Hill Decl. at Ex. 5 (describing Plan investment options).

underlined heading "<u>Mandatory, Final and Binding Arbitration</u>": [5]

> No person may bring any claim, lawsuit or other cause of action arising from a combined investment-related loss in excess of $10,000 experienced on the amount of a Member's accounts in the Plan and the McKinsey & Company, Inc. Money Purchase Pension Plan in any court (federal, state or otherwise).  Instead, such person must submit such dispute to mandatory, final and binding arbitration as his/her exclusive remedy for claims that meet the criteria set forth herein, unless prohibited by law.  No other claims shall be resolved through arbitration.

> Notwithstanding anything herein to the contrary, unless prohibited by law, any arbitration must be commenced within two (2) years from the date on which the claimant knew or should have known of facts sufficient to enable him or her to formulate such claim. To the extent applicable, the claimant must exhaust his or her administrative remedies pursuant to the procedures described above in Section 10.13, during which time the period to commence an arbitration will be tolled.

(*See* 2013 PSRP Plan Document at Ex. A, § 10.17).[6]

---

[5]     Section 10.17 in the PSRP Plan is substantively identical to Section 10.16 in the MPPP Plan.  (*See* 2013 and 2018 MPPP Plan Documents at Exs. B-C, § 10.16).

[6]     Section 10.17 of the PSRP Plan further provides participants with information about the procedures related to mandatory arbitration under the Plan:

> A person must notify the Plan, in writing, by certified mail, return receipt requested of his or her intent to arbitrate by sending notice to the Administrative Committee.

> The arbitration will be conducted in accordance with, and subject to, the Plan document, the Trust Agreement, the Plan's summary plan description, the investment decisions booklet and other Plan communications distributed to Members and Beneficiaries, ERISA (and the rules, regulations and decisional law thereunder, including, without limitation, all appropriate standards  of review) and,  except as otherwise provided herein, the American Arbitration Association ("AAA") Benefit Plans Claims Arbitration Rules (the "Rules").  The costs of the arbitration shall be borne equally between the Plan and the claimant.  In the event of any conflict between ERISA or the Trust Agreement and the Rules, the arbitrator shall apply and be bound by the provisions of ERISA and the Trust Agreement.

In addition to the foregoing provision in the Plan Documents, the Summary Plan Description ("SPD")[7] stated under the heading in bold lettering: "**Disputing an Investment-Related Loss That Exceeds $10,000: Arbitration Rules**":

> You may not dispute an investment-related loss that exceeds $10,000 for your PSRP and MPPP balances combined in any court, federal, state, or otherwise. Instead you must submit such dispute to final, binding arbitration.
>
> Any such arbitration must be commenced within two years from the date on which you knew or should have known the facts relevant to your case. Arbitration costs will be split equally between you and the plan.
>
> You must notify the Administrative Committee of the McKinsey Retirement Program of your intent to arbitrate in writing, by certified mail, return receipt requested. Such notification must be sent to the Administrative Committee at the following address: Aon Resource Center, 8182 Maryland Avenue, Suite 550, St. Louis, MO 63105, USA.

(*See* 2015 PSRP and MPPP Summary Plan Description, Farrell Decl. at Ex. D; 2019 PSRP and MPPP Summary Plan Description, Farrell Decl. at Ex. E).

Plaintiff was notified about the Plans' arbitration provisions on June 19, 2015, when the Aon Resource Center, which administered Plaintiff's enrollment in the Plans, sent Plaintiff an email informing him of his eligibility to participate in the Plans.  (*See* Farrell Decl. ¶ 6; June 19, 2015 Welcome Email, Farrell Decl. at Ex. F).  This email directed Plaintiff to the Plans' website MyAccount.McKinsey.com (the "Website"), where the SPD was available for Plaintiff's review.

---

> The decision of the arbitrator shall be final and binding as to all persons affected thereby, but shall, in no event, confer any rights on any other person and shall not serve as a precedent for any other claimant.

(*See* 2013 PSRP Plan Document at Ex. A, § 10.17).

[7]     SPDs are summaries of the plan document and tell participants what the plan provides and how the plan operates.  There is only one SPD applicable to both the PSRP and the MPPP. (*See* Farrell Decl. ¶ 4).

(*See id.*).  At all relevant times, in order to enter their annual investment elections on the

Website, all participants, including Plaintiff, were required to check the box next to the language

certifying that they read, acknowledged, and agreed to the terms contained within that section

(the "Certification").  (*See* Farrell Decl. ¶ 7; MyAccount Certification Screenshot, Farrell Decl.

at Ex. G).  The Certification language next to the check box stated:

> I confirm that I have read the portfolio descriptions on this site and, by
> submitting this election,[8] I acknowledge and agree that: (1) I must use my
> own best judgment to choose the portfolios that are most suitable for me,
> and I accept the risks of investing in my chosen portfolios, (2) I have been
> appointed under the plan as a named fiduciary of my account with the
> result that I am solely responsible for the investment allocation of my
> account; the plan trustees and other fiduciaries will not be responsible for
> deciding whether my allocation decisions are appropriate for me, (3)
> *claims arising from my Retirement Program investments may be subject to
> arbitration, and not litigated in court; in arbitration, I may be awarded
> the same relief available through litigation,* and (4) my investment
> allocation is suitable for me and is appropriately diversified, taking into
> account my total portfolio both within and outside the Retirement
> Program.

(*See id.*) (emphasis added).

Plaintiff submitted his annual decision elections on September 19, 2015, September 9,

2017, and September 15, 2018.  (*See* Farrell Decl. ¶ 8).  It was not possible for him to enter his

elections without checking that he had read, acknowledged, and agreed to these terms because

the "Finish" button was not enabled until he checked that box.  (*See id.*).  Plaintiff was required

to click the "Finish" button to submit his elections.  (*See id.*).  Plaintiff could not have made

these annual elections without checking the box accompanying the Certification and the "Finish"

button, thereby certifying that he agreed to submit his claims to arbitration.  (*See id.*).

---

[8]      After 2015, the language in the Certification changed from "election" to "allocation."
(*See id.*).

9

## ARGUMENT

**I.    Plaintiff's Claims Are Subject To Arbitration.**

Plaintiff's claims must be addressed in arbitration because the FAA requires the unambiguous arbitration provisions in the Plan Documents to be enforced.

### A.    The Federal Arbitration Act And Supreme Court Authority Require The Plaintiff To Arbitrate This Dispute.

As the Supreme Court has recognized, the FAA requires the enforcement of clear arbitration provisions.  The FAA broadly provides that "[a] written provision . . . to settle by arbitration . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  In enacting the FAA, Congress intended to overcome courts' past reluctance to enforce arbitration agreements by placing them on equal footing with other contracts and establishing a strong federal policy in favor of arbitration.  *AT&T Mobility, v. Concepcion*, 563 U.S. 333, 339 (2011) (stating that the FAA reflects a "'liberal federal policy favoring arbitration'") (citation omitted); *Kindred Nursing Ctrs. Ltd. P'Ship v. Clark*, 137 S. Ct. 1421, 1428 (2017) ("A rule selectively finding arbitration contracts invalid because improperly formed fares no better under the [FAA] than a rule selectively refusing to enforce those agreements once properly made.").

The FAA, in furtherance of the strong federal policy favoring arbitration that it embodies, requires courts to "rigorously enforce agreements to arbitrate."  *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) (citation omitted).  Any ambiguities or doubts as to the scope of an arbitration agreement are to be resolved in favor of arbitration.  *See, e.g.*, *Guyden v. Aetna, Inc.*, 544 F.3d 376, 382 (2d Cir. 2008).  The federal "presumption of arbitrability" requires that arbitration be compelled *unless* it may be said with "positive assurance" that the parties' agreement "is not susceptible of an interpretation that covers the . . .

dispute." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582-83 (1960) (emphasis added).  Further, Section 4 of the FAA provides that "[a] party aggrieved by the alleged failure, neglect or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."  9 U.S.C. § 4.  If a litigant refuses to arbitrate a dispute within the scope of a valid arbitration agreement, an order compelling arbitration is mandatory.  *Id.*

**B.   The Court Should Compel Arbitration Of Plaintiff's Claims And Stay This Action Because ERISA Claims Are Arbitrable And The Plans Require Plaintiff To Arbitrate This Dispute.**

The arbitration provisions in the Plans must be enforced because they clearly apply to Plaintiff's claims and are permitted under ERISA.

To determine whether a dispute involving federal statutory claims is arbitrable, a court must resolve the following three questions:  (1) whether there exists a valid agreement to arbitrate; (2) whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement; and (3) whether Congress intended the claims to be nonarbitrable.  *See Lewis Tree Serv., Inc. v. Lucent Techs. Inc.*, 239 F. Supp. 2d 332, 335-36 (S.D.N.Y. 2002) (citing *Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 75-76 (2d Cir. 1998)).[9]  In resolving these questions, courts must "construe arbitration clauses as broadly as possible."  *In re Am. Express*

---

[9]   The court may consider extrinsic evidence in deciding a motion to compel arbitration, and must employ a standard similar to the standard applicable to a motion for summary judgment.  *Whitt v. Prosper Funding LLC*, No. 1:15-136-GHW, 2015 WL 4254062, at *3 (S.D.N.Y. July 14, 2015) (citing *Bensadoun v. Jobe–Riat*, 316 F.3d 171, 175 (2d Cir. 2003)).  Once the party seeking arbitration has substantiated its entitlement by a showing of evidentiary facts, the "party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration."  *Whitt*, 2015 WL 4254062, at *3 (citing *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000)).

*Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011) (quoting *Collins & Aikman Prods.*

*Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 19 (2d Cir. 1995)).  "[A]ny doubts concerning the scope of

arbitrable issues should be resolved in favor of arbitration."  *Id.* (quoting *Moses H. Cone Mem'l*

*Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).

Here, the Plans contain valid and enforceable arbitration provisions that require Plaintiff

to arbitrate this dispute.  These provisions are memorialized in the Plans and the SPD.  *See supra*

at 6-8.  Further, by enrolling in, participating in, and submitting to the terms of the Plans,

Plaintiff confirmed his agreement to arbitrate.  *See, e.g.*, *Whitt*, 2015 WL 4254062, at *4.[10]

There is also no legal impediment to arbitration.  *Bird*, 926 F.2d at 122 ("[S]tatutory claims

arising under ERISA may be the subject of compulsory arbitration.").

Accordingly, Plaintiff's claims should be compelled to arbitration, and this action should

be stayed.  *Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015) (Section 3 of the FAA

mandates that a court issue a stay of proceedings when "all of the claims in an action have been

referred to arbitration" and a stay is requested).

## II.    Plaintiff's Complaint Should Be Dismissed.

In the alternative, Defendants move to dismiss the Complaint under Federal Rule of Civil

Procedure 12(b)(6).  As explained below, Plaintiff's breach of fiduciary duty claim and failure to

monitor claims should be dismissed because the Complaint fails to allege any inference of

---

[10]    Furthermore, a valid arbitration agreement may be formed by conduct.  *See DuBois v. Macy's E. Inc.*, 338 F. App'x 32, 33-34 (2d Cir. 2009) (summary order).  A party assents to an arbitration agreement by continuing to receive the benefits conferred in exchange for his or her agreement to arbitrate.  *See, e.g.*, *id.*; *Manigault v. Macy's E., LLC*, 318 F. App'x 6, 8 (2d Cir. 2009) (summary order).

imprudence, and Plaintiff's two prohibited transaction claims are subject to statutory exemptions and are time-barred.

###### A.  Legal Standard For Pleading An ERISA Breach Of Fiduciary Duty Claim.

The Supreme Court has emphasized that, in the context of ERISA claims in particular, "the motion to dismiss for failure to state a claim" is an "important mechanism for weeding out meritless claims." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014).  In *St. Vincent*, which serves as the touchstone in the Second Circuit for pleading a breach of fiduciary duty under ERISA, the court held that, where, as here, the Complaint contains no allegations regarding the actual process the fiduciaries employed in making investment decisions, Plaintiff faces a daunting burden:  he must allege sufficient factual matter from which the Court may reasonably infer that the fiduciaries' decision-making process reflected disloyalty to plan participants or imprudence.  712 F.3d at 718; *see also Rosen*, 2016 WL 7494320, at *14 (explaining that *St. Vincent* outlines the "factual pleading standards under ERISA" and holding that "allegations regarding the cost of selected investments do not demonstrate that those investments were imprudent, or that a prudent fiduciary would have decided any differently under the circumstances, and thus they fail to state an ERISA claim as a matter of law"); *Renfro v. Unisys Corp.*, 671 F.3d 314, 327 (3d Cir. 2011) (affirming dismissal after finding that "we are unable to infer from what is alleged that the process was flawed") (citation and internal quotations omitted).

Thus, in *St. Vincent*, the Second Circuit affirmed the dismissal of the complaint even though it alleged, among other things, that (i) the defendants caused the plan to purchase investments that were excessively risky and that deviated from its benchmark by 10%; (ii) the plan lost 12% of its value whereas its benchmark gained 7% over the relevant time period; and

(iii) the defendants "exposed the Plan to excessive risk due to an egregious over-concentration in high-risk mortgage securities" and "failed to monitor the Plan's investments to protect the Plan from economic harm."  712 F.3d at 711-12, 721.  In affirming dismissal, the Second Circuit explained that even those allegations were insufficient because the complaint "offers no insight into how risky" the challenged investments were, "nor does it allege any facts suggesting that a prudent investor at the time would have viewed this unspecified risk as high enough to render the investments imprudent."  *Id.* at 722.

Moreover, the Second Circuit explained in *St. Vincent* that because of ERISA's statutory disclosure and filing obligations, potential plaintiffs have access to "extensive data about a fiduciary's investment decisions" that they should rely on to state a claim.  *Id*. at 720, 722; *see also* 29 C.F.R. § 2550.404a-5 (requiring plans to provide information to participants about the fees and performance of individual plan investment options); 29 U.S.C. § 1024 (requiring plans to file an annual report (Form 5500) with the Treasury Department with information about the plan investment options).  Notwithstanding this access to the relevant data, Plaintiff's Complaint alleges no facts about the Plans' investment options, the risk of those options, or even the performance of those options against relevant benchmarks.

**B.     Plaintiff's Breach Of Fiduciary Duty Claim (Count I) Fails Because The Complaint Does Not Allege Facts Permitting A Reasonable Inference That Defendants Acted Imprudently Or Disloyally.**

**1.     Plaintiff Does Not Allege Any Facts About The Plans' Investment Options, Their Performance Against Benchmarks, Risk, Or Any Other Facts From Which A Fiduciary Breach Can Be Inferred.**

The Plans are defined contribution plans (¶ 2), meaning that plan participants choose where to invest their money from among the options in the Plans.  Yet the Complaint contains *no* allegations about the performance, risk, or fees of any individual investment options in the Plans

against comparable benchmarks.  *See St. Vincent*, 712 F.3d at 720-22.

Indeed, aside from the existence of the target date funds managed by a third party (¶ 28) – which Plaintiff does not challenge – the Complaint does not even identify a single investment option.  Moreover, Plaintiff is well aware of these investment options and could have included allegations about them because they are part of ERISA's statutory filing and disclosure regime, as the Second Circuit explained in *St. Vincent*.  712 F.3d at 720, 722, 724; *see also Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822 (8th Cir. 2018) (affirming Rule 12 motion to dismiss, noting that "ERISA plaintiffs typically have extensive information regarding the selected funds because of ERISA's disclosure requirements").

Indeed, the Plans' statutorily required Form 5500 Annual Reports list the Plans' investment options and descriptions of each.  (Form 5500s, Hill Decl. at Exs. 1-3).  *See also* 29 U.S.C. § 1024.  The Annual Reports make clear that the Plans offered a range of options: foreign and domestic equity index funds, foreign and domestic bond index funds, and some actively managed portfolios.  Statutorily required disclosures also include information about fees, risk-adjusted returns, and benchmarks for the Plans' menu of investment options.  (Form 5500s, Hill Decl. at Exs. 2-3).  *See also* 29 C.F.R. § 2550.404a-5.  Plaintiff cannot ignore all of this information and then ask the Court to infer that Plaintiff adequately alleged that Defendants breached their fiduciary duties.  *St. Vincent*, 712 F.3d at 720, 722 ("Armed with this extensive data about a fiduciary's investment decisions, a prospective plaintiff must show, through reasonable inferences from well-pleaded facts, that the fiduciary's choices did not meet ERISA's requirements.").[11]

---

[11]     Plaintiff no doubt will point to cases denying motions to dismiss where financial services companies offered proprietary funds in their plans.  *See, e.g.*, *Moreno v. Deutsche Bank Ams. Holding Corp.*, No. 15 Civ. 9936 (LGS), 2016 WL 5957307 (S.D.N.Y. Oct. 13, 2016).  But in

### 2.      Plaintiff's Plan-Wide Performance Allegations Cannot State A Claim.

Plaintiff's plan-wide performance allegations – that the Plans' annual "net investment returns" are lower than "peer plans" or below the median of allegedly similar plans (¶ 43) – do not raise a reasonable inference of fiduciary breach to salvage his claims.

First, "hindsight critique of returns . . . is inadequate to show a breach of fiduciary duty under ERISA." *St. Vincent*, 712 F.3d at 713 (citation and internal quotations omitted).  Indeed, the Second Circuit in *St. Vincent* affirmed the dismissal of the complaint even though the plaintiffs alleged that the challenged investments underperformed their benchmarks by *19%*, with the plan's investments losing 12% and the benchmark gaining 7%.  *Id.* at 731.

Second, the Complaint simply alleges that the Plans' overall performance was below the median of plans selected by Plaintiff, although even with Plaintiff's self-created standard of prudence, the Plans' performance was always within 1% to 3% of that median.  Plaintiff provides no support for the contention that a fiduciary breach claim can lie – or a deficient process can be inferred – against the fiduciaries of all plans that fall below this median.  Critically, this allegation says nothing about the relative risk of the Plans' investments versus those of the peer plans mentioned in the Complaint.  *See id*. at 722-23 ("Importantly, the Amended Complaint offers no insight into how risky those unspecified investments became relative to their price.").

---

*Moreno* – brought by the same plaintiffs' attorneys as in this case – the complaint contained allegations "that the Plan included three proprietary index funds that charged excessive fees in relation to other comparable index funds managed by the Vanguard Group ('Vanguard')" and also "assert[ed] that the Plan included actively-managed proprietary funds that charged investment management fees two to five times higher than other 'actively managed funds in the same style'" and "also consistently underperformed as measured by benchmark indices." *Id*. at *1-2; *see also id.*, 2016 WL 1714561 (Am. Compl.) ¶¶ 4-6, 72-107 (S.D.N.Y. Mar. 30, 2016). Here, the Complaint contains none of those allegations.  Other proprietary fund cases are also distinguishable for similar reasons and thus are not compelling here.

Third, plan-wide performance is irrelevant in the context of a defined contribution plan. The prudence of each investment option must be considered individually.  *See DiFelice*, 497 F.3d at 424 ("[T]he relevant portfolio that must be prudent is *each* available Fund considered on its own.") (emphasis in original); *Langbecker*, 476 F.3d at 308 n.18 ("Under ERISA, the prudence of investments or classes of investments offered by a plan must be judged individually.") (citing *In re Unisys Sav. Plan Litig.*, 74 F.3d 420, 438-41 (3d Cir. 1996)). Indeed, the Complaint here states precisely that.  (¶ 35 (duty of prudence "applies to each option in a plan's investment menu")).

That is because in a defined contribution plan, participants decide which investment options to choose.  *See, e.g.*, *Hecker v. Deere & Co.*, 556 F.3d 575, 585 (7th Cir. 2009) (explaining that participants are free to direct their dollars to certain funds in the plan).  Where plan participants choose lower risk money market or bond investments with typically lower returns, that plan's performance will likely be lower than that of a plan in which participants have chosen higher risk options, such as equity funds – particularly when equity markets have performed well, as they have during the period of Plaintiff's participation in the Plans.  This impact on a plan's overall performance is true even for money market and bond funds that are reasonable and prudent investment options under ERISA.[12]  *See Ellis v. Fid. Mgmt. Tr. Co.*, 883 F.3d 1, 9 (1st Cir. 2018) (rejecting the notion that a fiduciary violates ERISA by offering a very conservative investment option to plan participants, explaining that "[u]nless we are to say that ERISA plans may not offer very conservative investment options (such as money market funds

---

[12]     Money market and bond funds typically have lower returns than equity funds, but they also typically carry much lower volatility and risk.  Thus, investors who prefer a lower risk of loss in a down market (or effectively no risk of loss in a money market fund) may prefer money market or bond funds that are *specifically intended* to return less than equity funds.

or treasury bond funds), then we cannot say that plans may not offer different types of stable value funds, including those that are intentionally and openly designed to be conservative").

Plaintiff's attempt to compare the overall performance of the Plans' numerous investment options to a single mutual fund – the Vanguard Wellington mutual fund (the "Vanguard Wellington Fund") – is similarly misplaced.  (¶ 44).  The Complaint does not allege that the Plans should have offered just this one fund.  And this is for good reason:  the Plans offered different options to address different participants' personal preferences, risk tolerance and financial circumstances.  *See* 29 C.F.R. § 2550.404c-1 (recommending that plans provide "a participant or beneficiary an opportunity to choose, from a broad range of investment alternatives," including "an income producing, low risk, liquid fund").  The Complaint does not allege that the Plans' investment options each had the same risk as the Wellington Fund, or the same risk-adjusted returns.  The Vanguard Wellington Fund is not a panacea for every investor (or every defined contribution plan), and its performance and risk cannot be compared to that of Plans that offer fifteen different investment options to participants.[13]  The Plans at issue here

---

[13]     For example, the prospectus for the Vanguard Wellington Fund itself makes clear:

> It is important to keep in mind one of the main principles of investing: generally, the higher the risk of losing money, the higher the potential reward. The reverse, also, is generally true: the lower the risk, the lower the potential reward.  As you consider an investment in any mutual fund, you should take into account your personal tolerance for fluctuations in the securities markets. . . . The Fund is subject to manager risk, which is the chance that poor security selection will cause the Fund to underperform relevant benchmarks or other funds with a similar investment objective. . . . The Fund is subject to investment style risk, which is the chance that returns from large-capitalization value stocks will trail returns from the overall stock market. Large-cap stocks tend to go through cycles of doing better—or worse—than other segments of the stock market or the stock market in general.  These periods have, in the past, lasted for as long as several years. . . . The Fund may invest a limited portion, up to 25%, of its assets in foreign securities, which may include depositary receipts.  Foreign securities may be traded on U.S. or foreign

offer a US index equity fund that is not subject to manager risk, investment style risk, or

country/regional risk and currency risk (and that outperformed the Vanguard Wellington Fund).[14]

They also offer bond index funds that are not subject to any stock market, manager, or

investment style risks.  And the Plans offer target date funds for participants who want their risk

tolerance to change automatically as they get closer to retirement.  ERISA lets participants make

such choices.  *See Loomis v. Exelon Corp.*, 658 F.3d 667, 673-74 (7th Cir. 2011) ("Exelon

offered participants a menu that includes high-expense, high-risk, and potentially high-return

funds, together with low-expense index funds that track the market, and low-expense, low-risk,

modest-return bond funds.  It has left choice to the people who have the most interest in the

outcome, and it cannot be faulted for doing this.").[15]

---

markets.  To the extent that it owns foreign securities, the Fund is subject
to country/regional risk and currency risk.

(*See* Vanguard Wellington Prospectus, at 7-8, 12-13, 15 (Mar. 27, 2018), Hill Decl. at Ex. 6).

[14]    (*See* 2018 Participant Disclosures, Hill Decl. at Ex. 5, at 43-45; Vanguard Wellington
Prospectus, Ex. 6, at 7).  The five-year and ten-year performance based on periods ended
December 31, 2017 show that the US Equities Portfolio in the Plans performed better than the
Vanguard Wellington Fund that he now advocates:

| Fund | 5-Year Performance | 10-Year Performance |
|---|---|---|
| Vanguard Wellington Fund | 10.95% | 7.6% |
| US Equities Portfolio | 15.4% | 8.5% |

[15]    The Complaint alleges that MIO did not charge McKinsey partners for expenses incurred
in the management of their money.  (¶¶ 55-59).  That is wrong, but even if it were not, it does not
create an inference of a fiduciary breach.  First, McKinsey partners participate in the same Plans
that are the subject of this Complaint and invest in the same investment options through the
Plans, paying the same fees and earning the same returns.  (Plaintiff excluded them from his
class definition, *see* ¶ 76).  Second, McKinsey partners are the *owners* of McKinsey, and hence
the owners of MIO.  As such, partners are paying their expenses through their ownership interest
in MIO.  Third, ERISA does not impose a fiduciary obligation on McKinsey or MIO to bear the

### C.      Plaintiff's Duty To Monitor Claim (Count II) Is Derivative Of Count I And Fails For the Same Reasons.

In Count II, Plaintiff claims that Defendants are liable to the extent that they failed to monitor other, unnamed fiduciaries responsible for the violations alleged in Count I.  (¶¶ 90-95). This claim is wholly derivative of Plaintiff's fiduciary breach claim in Count I and fails for the same reasons that Count I fails.  *See, e.g.*, *In re Citigroup*, 662 F.3d at 145, *abrogated on other grounds by Dudenhoeffer*, 573 U.S. 409; *Rosen*, 2016 WL 7494320, at *16 (dismissing failure to monitor claim where plaintiff failed to plausibly plead any ERISA violations); *White*, 752 F. App'x at 455 (duty to monitor claim is derivative of fiduciary duty claim).

### D.      Plaintiff Fails To State A Prohibited Transaction Claim Under ERISA Section 406 (Counts III and IV).

In Counts III and IV, Plaintiff alleges that Defendants engaged in prohibited transactions in violation of ERISA Section 406, 29 U.S.C. § 1106.  (¶¶ 96-106).  These claims simply repackage the breach of fiduciary duty claims, alleging that McKinsey and MIO caused the Plans to engage in prohibited transactions by offering proprietary MIO investments that had expenses associated with them.  They should be dismissed for the following reasons.

First, ERISA authorizes an exemption that expressly permits such an arrangement.

---

cost of managing the Plans' investments.  The Seventh Circuit rejected a similar argument in *Loomis*:

> [Plaintiffs argue that defendants] should have paid the expenses directly, allowing participants to reap the gross rather than the net return.  But whether to cover these expenses is a question of plan design, not of administration. . . . ERISA does not create any fiduciary duty requiring employers to make pension plans more valuable to participants.  When deciding how much to contribute to a plan, employers may act in their own interests.  Fiduciary duties under ERISA are limited to a requirement of honest and prudent management of the assets that are under an administrator's control.  *So the participants' argument that Exelon should have ponied up additional money, to cover the operating expenses of their retirement vehicles, is a non-starter*.

*Loomis*, 658 F.3d at 671 (internal citations omitted) (emphasis added).

Specifically, the Department of Labor has issued a class exemption from ERISA's prohibited transaction rules for in-house asset managers ("INHAMs").  *See* Prohibited Transaction Exemption 96-23, Plan Asset Transactions Determined by In-House Asset Managers, 61 Fed. Reg. 15975 (Apr. 10, 1996), *as amended at* 76 Fed. Reg. 18255 (Apr. 1, 2011).  The Complaint acknowledges that MIO is a wholly owned subsidiary of McKinsey (a requirement of an INHAM) and an in-house asset manager of the underlying investments in the Plans.  (¶¶ 20-22). Where, as here, it is clear that the challenged conduct is consistent with an available exemption, courts have dismissed prohibited transaction claims at the pleading stage.  *See, e.g.*, *Leber v. Citigroup, Inc.*, No. 07 Civ. 9329(SHS), 2010 WL 935442, at *10 (S.D.N.Y. Mar. 16, 2010) (dismissing claim because, "even in the light most favorable to plaintiffs, the complaint asserts nothing more than that defendants purchased shares in an affiliated mutual fund, a transaction to which 'the restrictions of [ERISA] section [] 406 . . . shall not apply'").[16]

Second, Plaintiff's prohibited transaction claims are time-barred by ERISA's six-year statute of repose.  *See* 29 U.S.C. § 1113(1)(A); *see also Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*, 137 S. Ct. 2042, 2050 (2017) (six-year period in 29 U.S.C. § 1113(1)(A) is a statute of repose); *Leber v. Citigroup 401(k) Plan Invest. Comm.*, 323 F.R.D. 145, 153 (S.D.N.Y. Nov. 27, 2017) ("[T]he Supreme Court clarified that 29 U.S.C. § 1113(1) was a statute of repose.").  For the purposes of ERISA's statute of repose, an "alleged prohibited transaction [can] *only be based on the initial* [transaction]."  *David v. Alphin*, 704 F.3d 327, 340 (4th Cir. 2013) (emphasis added).

Here, the Complaint alleges that MIO has been managing the Plans' investment options

---

[16]     *See also Mehling v. N.Y. Life Ins.*, 163 F. Supp. 2d 502, 510-11 (E.D. Pa. 2001) (dismissing prohibited transaction claims where the conditions of an exemption were clearly satisfied).

"since the 1990s (if not earlier)."  (¶¶ 20-21).  Thus, Plaintiff's prohibited transaction claims are time-barred because the transaction alleged to have violated ERISA – offering proprietary MIO investment options – is alleged to have occurred more than six years before the Complaint was filed.  *See White*, 752 F. App'x at 455 (prohibited transaction claim challenging plan service provider is time-barred based on initial hire date of the service provider even though service provider continued to provide services and charge fees within the repose period); *Cassell v. Vanderbilt Univ.*, 285 F. Supp. 3d 1056, 1068 (M.D. Tenn. 2018) ("The Court agrees with those courts that hold that a decision to continue certain investments, or a defendant's failure to act, cannot constitute a 'transaction' for purposes of the 'prohibited transactions' in 29 U.S.C. § 1106.").

Third, Plaintiff's claims are time-barred under 29 U.S.C. § 1113(2), which precludes claims that are filed more than "three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation."  29 U.S.C. § 1113(2).  In determining "actual knowledge," the proper focus is on "whether the documents provided to plan participants sufficiently disclosed the alleged breach of fiduciary duty, not whether individual Plaintiffs actually saw or read the documents."  *Young v. Gen. Motors Inv. Mgmt. Corp.*, 550 F. Supp. 2d 416, 419 n.3 (S.D.N.Y. 2008) (dismissing claims), *aff'd on other grounds*, 325 F. App'x 31 (2d Cir. 2009).  On this basis, the Second Circuit has affirmed the dismissal of ERISA breach of fiduciary duty claims as time-barred under ERISA's three-year limitations period based on publicly available information.  *Muehlgay v. Citigroup Inc.*, 649 F. App'x 110, 111-12 (2d Cir. 2016).  Here, although the Complaint does not clearly identify what prohibited transactions purportedly occurred, it appears to allege that the prohibited transactions were related to the management by MIO of investment options that charge certain fees to Plan participants. Publicly available information at the time Plaintiff joined the Plans in 2015, however, identified the Plans' investment options, management of those options by MIO, fees paid to MIO, and any

other information upon which Plaintiff's prohibited transaction claim is based.  *See supra* at 5-6.

14.  The 2014 Form 5500 unambiguously states that:

> MIO Partners, Inc. ("MIO"), a wholly owned subsidiary of the Firm, is the Investment Manager of the Trust.  MIO manages the investments of the Trust and was reimbursed by the Trust for certain expenses incurred in connection with this role during 2014 and 2013 in the amounts [of] $20,253,473 and $22,511,000, respectively.  These transactions qualify as party-in-interest transactions or reimbursement of third party expenses.  The Plan invests in certain funds which are managed by MIO with a fair market value at December 31, 2014 and 2013 of $3,346,090,063 and $2,936,281,784, respectively.

(*See* PSRP and MPPP Form 5500s (2014), Hill Decl. at Exs. 1, 2).  Counts III and IV therefore are untimely.

## CONCLUSION

For the reasons discussed above, Defendants respectfully request that the Court compel Plaintiff to arbitrate his claims.  Alternatively, Defendants request that the Court dismiss the Complaint with prejudice.

<div style="margin-left: 40%">

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

/s/ Jeremy P. Blumenfeld
_____
Jeremy P. Blumenfeld
Melissa D. Hill
101 Park Avenue
New York, NY  10178
Phone: 212.309.6000
Fax: 212.309.6001
jeremy.blumenfeld@morganlewis.com
melissa.hill@morganlewis.com

*Attorneys for Defendants*

</div>

Dated:  April 22, 2019