# EXHIBIT A

McKINSEY & COMPANY, INC.


PROFIT-SHARING RETIREMENT PLAN

AMENDED AND RESTATED AS OF JANUARY 1, 2013

# TABLE OF CONTENTS

Page

ARTICLE 1 - DEFINITIONS ........................................................................1

ARTICLE 2 - MEMBERSHIP ........................................................................8

ARTICLE 3 - CONTRIBUTIONS ...................................................................9

ARTICLE 4 - INVESTMENT.........................................................................24

ARTICLE 5 - CREDITS TO MEMBERS.........................................................30

ARTICLE 6 - RETIREMENT BENEFITS .......................................................31

ARTICLE 7 - TRUST FUND.........................................................................51

ARTICLE 8 - BENEFITS ON SEPARATION FROM SERVICE, DEATH OR
            DISABILITY BEFORE RETIREMENT DATE,.................................53

ARTICLE 9 - ADMINISTRATIVE COMMITTEE .............................................57

ARTICLE 10 - GENERAL PROVISIONS .......................................................60

ARTICLE 11 - AMENDMENT, MERGER, OR DISCONTINUANCE OF PLAN ...................74

ARTICLE 12 - MINIMUM BENEFITS AND VESTING  IN TOP HEAVY PLAN
            YEARS ......................................................................................75

ARTICLE 13 - GERMAN MEMBERS .............................................................79

ARTICLE 14 - BRITISH MEMBERS ..............................................................81

ARTICLE 15 - NETHERLANDS MEMBERS....................................................88

ARTICLE 16 - CANADIAN MEMBERS ..........................................................91

ARTICLE 17 - ITALIAN MEMBERS...............................................................93

ARTICLE 18 - DANISH MEMBERS................................................................95

7332/51196-013 current/33090106v4

ARTICLE 19 - JAPANESE MEMBERS ...................................................................................97

ARTICLE 20 - BRAZILIAN MEMBERS ...............................................................................99

ARTICLE 21 - SWEDISH MEMBERS ..................................................................................100

ARTICLE 22 - BELGIAN MEMBERS ...................................................................................102

ARTICLE 23 - NORWEGIAN MEMBERS ...........................................................................103

ARTICLE 24 - EUROCENTER MEMBERS ..........................................................................104

ARTICLE 25 - SOUTH KOREAN MEMBERS .....................................................................105

ARTICLE 26 - IRISH MEMBERS ........................................................................................106

ARTICLE 27 - INDIAN MEMBERS .....................................................................................124

ARTICLE 28 - SOUTH AFRICAN MEMBERS ...................................................................125

ARTICLE 29 - SWISS MEMBERS .......................................................................................127

ARTICLE 30 - ARGENTINA MEMBERS ............................................................................128

ARTICLE 31 - PUERTO RICO MEMBERS..........................................................................130

ARTICLE 32 - OTHER FOREIGN MEMBERS ...................................................................131

7332/51196-013 current/33090106v4

## ARTICLE 1 - DEFINITIONS

1.1     "Account" means any one or more of the following Accounts maintained by the Trustee for a Member:

> <u>Firm Contributions Account</u> - The Account to which all Firm Contributions made by the Firm in accordance with Section 3.1 and all earnings thereon shall be credited.

> <u>Salary Reduction Contributions Account</u> - The Account to which all Salary Reduction Contributions made in accordance with Section 3.2 and all earnings thereon shall be credited. Effective as of June 1, 2006, the Salary Reduction Contributions Account shall include a separate subaccount that shall be referred to herein as the "Designated Roth Subaccount" to which all (i) Designated Roth Contributions (as defined in Section 3.2) made in accordance with Section 3.2 and all earnings thereon shall be credited, and (ii) rollover amounts from "designated Roth accounts" (as defined in Section 402A of the Code) accepted by the Plan in accordance with Section 3.9(d) and all earnings thereon shall be credited.

> <u>After-Tax Contributions Account</u> - The Account to which all After-Tax Contributions made in accordance with Section 3.3 and all earnings thereon shall be credited.

> <u>Rollover Account</u> - The Account to which all Rollover Contributions made in accordance with Section 3.9 and all earnings thereon shall be credited.

> <u>Roth Conversion Account</u> – The Account to which all Roth Conversion Contributions made in accordance with Section 3.13 and all earnings thereon shall be credited.

A Member's Account shall be fully vested and non-forfeitable at all times.

1.2     "Administrative Committee" means the committee appointed by the Trustee to administer the Plan.

1.3     "After-Tax Contributions" means contributions made on behalf of a Member on an after-tax basis pursuant to Section 3.3.

1.4     "Annual Addition" means, with respect to a Member, the sum for any Plan Year of (a) Firm Contributions on behalf of such Member, (b) Salary Reduction Contributions (including Designated Roth Contributions) made on behalf of such Member and (c) After-Tax

Contributions made by such Member.

1.5 "Beneficiary" means the individual(s) designated by a Member to receive the Member's Account under the Plan (i) in the event of the Member's death as may be provided in accordance with the Plan (each a "Primary Beneficiary") and (ii) in the event none of the Member's Primary Beneficiaries survives the Member (each a "Contingent Beneficiary"). In the event none of the Member's Primary Beneficiaries or Contingent Beneficiaries survives the Member or in the absence of such designations, the Member's default Beneficiary shall be (i) the Member's surviving spouse, and if none (ii) the Member's surviving children (per stirpes), and if none, (iii) the Member's surviving parents, and if none, (iv) the Member's surviving siblings (per stirpes).

1.6 "Board of Directors" means the Board of Directors of McKinsey & Company, Inc.

1.7 "Code" means the Internal Revenue Code of 1986, as amended.

1.8 "Compensation" means the total cash remuneration which is paid to an Employee in a Plan Year after he becomes a Member as salary or wages for or in respect of employment by the Firm, including overtime pay, productivity pay and commissions (computed prior to any reduction in such salary or wages pursuant to the Plan, any cafeteria plan maintained by the Firm pursuant to Section 125 of the Code, any qualified transportation fringe maintained by the Firm pursuant to Section 132(f)(4) of the Code, any salary sacrifice in order to buy child care vouchers pursuant to the applicable laws of the United Kingdom, or, any contribution to the local housing fund above the mandatory contribution required pursuant to the applicable laws of the Peoples Republic of China). Notwithstanding anything contained herein to the contrary, there shall be excluded from Compensation for purposes of Section 3.1 only any bonus or other special

Compensation paid to an Employee in connection with the Employee's commencement of employment. For purposes of determining contributions to the Plan on behalf of a Member pursuant to Article 3 (other than Section 3.4), in no event shall Compensation for any Plan Year beginning after December 31, 1993 exceed $150,000, adjusted for increases in the cost of living pursuant to Section 401(a)(17) of the Code. The Compensation of each Employee taken into account for determining allocations for any Plan Year beginning after December 31, 2001 shall not exceed $170,000. For purposes of Code Section 415, Compensation shall exclude any amount paid after the Member's severance from employment, unless the amount is paid within 2½ months after the Member's severance from employment and such amount is regular compensation for services that would have been paid to the Member if the Member had continued in employment with the Firm. Notwithstanding the foregoing, the preceding sentence shall not apply to payments to an individual who does not currently perform services for the Firm by reason of qualified military service (as defined in Code Section 414(u)), to the extent those payments do not exceed the amount the individual would have received had he continued to perform services for the employer rather than entering military service. In addition, except with respect to Firm Contributions under Section 3.1, Compensation shall also include any cash amounts paid by the Firm, and designated as "transition" payments, to Members who were accruing benefits under the McKinsey & Company, Inc. Supplemental Retirement Plan (amended and restated effective as of January 1, 2008) prior to the freeze of such plan by the Firm effective October 15, 2011.

1.9    "Disability" means a total permanent physical or mental disability which renders an Employee incapable of continuing to render regular active service with the Firm, in the written opinion of a physician designated by the Administrative Committee.

1.10    "Effective Date" means July 1, 1956.

1.11    "Employee" means an employee of the Firm.  For purposes of this Plan, the term "Employee" includes only persons treated as such on the Firm's personnel records (including both written and electronic records) at the time such determination is made or who are designated as a Principal or Director of the Firm.

Notwithstanding the above, the term "Employee" excludes individuals retained by the Firm to provide services as an outside contractor or consultant based on their highly specialized and technical knowledge or contacts in a specific business sector or area, and who are subject to a consulting agreement with the Firm that requires the submission of invoices rendered to the Firm for approval of payment, and, for periods prior to January 1, 2006, who bill the Firm for their services at a rate in excess of $750 per diem (or a monthly retainer which on the basis of 20 workdays a month is an implied per diem in excess of $750 per day), notwithstanding whether the Firm withholds income tax and issues a W-2 for tax reporting purposes; provided, that the above exclusion shall not apply to those individuals designated as Principals or Directors of the Firm.   The individuals excluded under this paragraph shall be referred to herein as "Excluded Contractors."

In addition, effective as of January 1, 2006, an Employee shall not include any person who has knowingly and voluntarily waived participation in the Plan in writing, provided that such waiver may not apply to benefits already accrued under the terms of the Plan.

Persons treated by the Firm as independent contractors and persons serving the Firm through third-party payroll providers, consulting firms and temporary help agencies at the time of the determination of the person's status are specifically excluded, regardless of whether they are leased employees within the meaning of Section 414(n)(2) of the Code.   Eligibility

status at the time of a determination of a person's employment status shall not be changed as a result of a retroactive reclassification of the person's employment status. Therefore, notwithstanding anything else herein to the contrary, any person not treated as an Employee on the personnel records of the Firm (including both written and electronic records) at the time the determination is made shall in no event be eligible retroactively for participation in the Plan during the Period covered by such determination.

1.12 "ERISA" means the Employee Retirement Income Security Act of 1974.

1.13 "Firm" means McKinsey & Company, Inc., and any subsidiary which may be included in the Plan, upon such terms and conditions as may be determined by action of the Board of Directors.

1.14 "Firm Contributions" means contributions made by the Firm on behalf of a Member pursuant to Section 3.1.

1.15 "Investment Fund" means an investment fund as defined in Section 4.2.

1.16 "Investment Manager" shall mean the individual, company or corporation appointed by the Trustee to manage the assets of the Plan pursuant to Section 10.1.

1.17 "Member" means an Employee or former Employee with respect to whom contributions are made to or benefits are payable from the Trust Fund.

1.18 "Month" means a calendar month.

1.19 "Plan" means the McKinsey & Company, Inc. Profit-Sharing Retirement Plan as herein set forth and as it may be amended from time to time. The Plan is intended to be a profit-sharing plan for purposes of the qualification requirements of Section 401(a) of the Code.

1.20 "Plan Year" means (i) the twelve month period beginning on January 1, 1988 and each anniversary thereof, (ii) the six month period beginning July 1, 1987 and ending December

31, 1987, and (iii) prior to July 1, 1987, the twelve-month period beginning July 1, 1956 and any anniversary thereof. The Plan Year shall be the limitation year for purposes of Section 415 of the Code.

1.21    "Retirement Date" means the first day of the first calendar month subsequent to the date on which a Member attains age 50. The normal retirement date of a Member shall be the date of his 65th birthday. A Member in Service who has attained age 50 but not age 65 shall be retired on his early retirement date, which shall be the date designated by the Member in accordance with the first sentence of this Section.

1.22    "Rollover Contribution" means a contribution made by a Member and such other amounts as may be transferred to the Plan on behalf of a Member, pursuant to Section 3.9.

1.23    "Roth Conversion Contributions" shall mean those Firm Contributions, Salary Reduction Contributions, After-Tax Contributions or Rollover Contributions that a Member elects to contribute as "qualified rollover contributions" (within the meaning of Section 408A(e) of the Code and any applicable guidance issued thereunder) pursuant to Section 3.13. A Roth Conversion Contribution shall constitute a taxable rollover to a designated rollover account subject to the requirements of Section 402A(c)(4) of the Code and any applicable guidance issued thereunder.

1.24    "Salary Reduction Contributions" means contributions made on behalf of a Member pursuant to Section 3.2.

1.25    "Service" means the service of an employee with the Firm and any subsidiary or affiliate of the Firm.

1.26    "Trust Fund" means the McKinsey Master Retirement Trust created to provide the benefits under the Plan.

1.27    "Trustee" means the trustee(s) of the Trust Fund.

## ARTICLE 2 - MEMBERSHIP

2.1    Each Employee shall become a Member as of the date he first performs an hour for which he is paid or entitled to payment from the Firm for his performance of duties. Notwithstanding the foregoing, a Member who is not a United States citizen or resident and who is working outside of the United States shall not be eligible to elect to have Salary Reduction Contributions made on his behalf under Section 3.2 if (i) the Member is not eligible to make After-Tax Contributions under Section 3.3 by reason of another provision of this Plan, or (ii) the Member is employed at an office of the Firm, the employees of which are designated by the Administrative Committee as not eligible for Salary Reduction Contributions under Section 3.2.

2.2    An Employee who becomes a Member shall continue to be a Member until there has been a complete distribution of his Account from the Plan.

## ARTICLE 3 - CONTRIBUTIONS

3.1 <u>Firm Contributions</u>. Each Plan Year the Board of Directors shall designate with respect to Members who were Employees on December 1 in such Plan Year as Firm Contributions, a percentage of the Compensation of each such Member to be contributed to the Plan for the credit of the Member. For each Plan Year commencing on and after January 1, 2010, such percentage is not required to be equal for all such Members.

For any Plan Year in which one or more subsidiaries included in the Plan pursuant to Section 1.13 has insufficient earnings or profits to make its Firm Contributions under this Section 3.1, the Board of Directors may by resolution adopted prior to the end of such Plan Year direct that the Firm make the appropriate Firm Contribution pursuant to this Section 3.1 for Members who are employees of such subsidiary or subsidiaries which do not have sufficient earnings or profits for that Plan Year to make Firm Contributions.

3.2 <u>Salary Reduction Contributions</u>. In addition to the Firm Contributions made by the Firm under Section 3.1, each Member may elect, subject to Section 3.7, to have the Firm contribute to the Plan on his behalf as Salary Reduction Contributions up to 100% of Compensation, or such other percentage as determined by the Administrative Committee, which is uniformly applicable to all similarly situated Members.

Effective as of June 1, 2006, the Member shall irrevocably designate which portion of the Salary Reduction Contributions made under this Section 3.2 (including catch-up contributions) shall be excluded from taxable income as a 401(k) deferral election and which portion shall be included in taxable income as a "Designated Roth Contribution." In connection with any subsequent change to his or her contribution percentage, the Member shall again irrevocably designate which portion of the contribution shall constitute a Designated Roth

Contribution. Designated Roth Contributions shall be maintained in compliance with Code Section 402A and Treasury Regulations issued thereunder.

All Salary Reduction Contributions under this Section shall be paid by the Firm to the Trustee as soon as is administratively practicable following the payroll period to which the deferral is applicable, but in no event later than the 15th business day of the month following the month in which such Compensation would otherwise have been paid to the Member. Notwithstanding the foregoing provisions of this Section, in no event may the Firm make Salary Reduction Contributions (other than catch-up contributions) for the account of a Member under this Section in any calendar year in excess of $15,500, adjusted for increases in the cost of living pursuant to Section 402(g)(5) of the Code. If, however, a Member has exceeded the foregoing limitation for the Member's taxable year as a result of contributions under both this Plan and another tax-qualified plan to which the Member contributes, such Member may indicate to this Plan any excess made during such taxable year by notifying the Administrative Committee on or before March 15 of the following year, in writing, of the amount of the excess. If the foregoing limitation is exceeded in any Plan Year under the Plan or if the Member notifies the Administrative Committee of any excess contributions to the Plan as provided in the previous sentence, the amount of the excess contribution by the Firm for the account of such Member shall be distributed to the Member (adjusted for any gain or loss allocable thereto for such Plan Year, and solely for the Plan Year commencing January 1, 2007, any gain or loss attributable to the period between the end of the Plan Year and the date of the distribution, to the extent required under applicable Treasury Regulations) not later than the April 15 following the end of such year. Effective as of June 1, 2006 and to the extent permitted by applicable Treasury Regulations, a Member who receives a distribution pursuant to this paragraph shall first receive a

distribution from the excess amount that is not attributable to any Designated Roth Contributions that were made for that Plan Year by the Member.

No Member shall be permitted to elect to have Salary Reduction Contributions made on his behalf under this Section and elective deferrals to any other plan qualified under Section 401(a) of the Code which is maintained by the Firm during any taxable year, in excess of the dollar limitation contained in Section 402(g) of the Code in effect for such taxable year, except to the extent permitted in the last paragraph of this Section and in Section 414(v) of the Code, if applicable.

All Members who have attained age 50 before the close of the Plan Year shall be eligible to make catch-up contributions after December 31, 2001 in accordance with, and subject to the limitations of, Section 414(v) of the Code. Such catch-up contributions shall not be taken into account for purposes of the provisions of the Plan implementing the required limitations of Sections 402(g) and 415 of the Code. The Plan shall not be treated as failing to satisfy the provisions of the Plan implementing the requirements of Section 401(k)(3), 401(k)(11), 40l(k)(12), 410(b), or 416 of the Code, as applicable, by reason of the making of such catch-up contributions.

3.3     <u>After-Tax Contributions</u>. Each Member shall be permitted to make After-Tax Contributions to the Plan for each Plan Year. Such contributions may be made by payroll deductions or by periodic lump sum contributions, provided, however, that subject to Section 3.7, the total After-Tax Contributions to the Plan by a Member shall not exceed 100% of such Member's Compensation, or such other percentage as determined by the Administrative Committee which is uniformly applicable to all similarly situated Members. The Firm shall promptly transmit any such lump sum contributions to the Trustee.

3.4 <u>Limitation on Annual Additions</u>. Notwithstanding the foregoing provisions of this Article 3, except to the extent permitted under the last paragraph of Section 3.2 of the Plan and Section 414(v) of the Code, if applicable, the Annual Addition with respect to a Member for any limitation year shall not exceed the lesser of:

(a) $46,000, as adjusted for increases in the cost-of-living under Section 415(d) of the Code, or

(b) 100 percent of the Member's compensation, within the meaning of Section 415(c)(3) of the Code, for the limitation year.

The compensation limit referred to above shall not apply to any contribution for medical benefits after separation from service (within the meaning of Section 401(h) or Section 419A(f)(2) of the Code) which is otherwise treated as an Annual Addition.

Effective for limitation years beginning prior to July 1, 2007, if the Annual Addition would exceed the limitation, the After-Tax Contributions made by the Member for the Plan Year under Section 3.3 which cause the excess (adjusted for any gain or loss allocable thereto for such Plan Year) shall be returned to the Member. If after returning such After-Tax Contributions to the Member an excess still exists, the Salary Reduction Contributions made on behalf of the Member for the Plan Year under Section 3.2 which cause the excess (adjusted for any gain or loss allocable thereto for such Plan Year) shall be returned to the Member and, if an excess still exists, the Firm Contributions which would have been made under Section 3.1 shall be reduced by the amount necessary so that no excess exists. Effective as of June 1, 2006 and to the extent permitted by applicable Treasury Regulations, Members who receive a return of Salary Reduction Contributions as set forth above shall first receive a distribution from the excess amount that is not attributable to any Designated Roth Contributions that were made for that Plan

Year by the Member.

For limitation years beginning on or after July 1, 2007, Annual Additions in excess of the limitations of Code Section 415 shall be corrected only to the extent permitted by rules set forth in IRS revenue rulings, notices, or other guidance published in the Internal Revenue Bulletin.

3.5     <u>Transfers from other Firm Plans</u>.  If a Member is a member of any other employee benefit plan maintained by the Firm and such Member (or the surviving spouse of such Member) elects, pursuant to the terms of such other plan, to have the benefits to which the Member (or surviving spouse) is entitled under that plan transferred to the Plan in a lump sum, the Trustee shall, under such terms and such rules as the Administrative Committee shall determine under rules of uniform application, accept such transfer.  Any transfer accepted under this Section 3.5 shall not be treated as a After-Tax Contributions for purposes of Sections 3.3 and 3.4 of the Plan.

3.6     <u>Withdrawal of After-Tax Contributions</u>.  Upon written notice to the Plan, a Member shall be entitled to withdraw up to an amount corresponding to the lesser of:

(a)     the aggregate, to such date, of his After-Tax Contributions ; or

(b)     the value of the After-Tax Contributions credited to his Account as of such date.

However, without the approval of the Administrative Committee no such withdrawal shall be permitted on or after the date upon which the Member's Account is valued for the purpose of determining his initial distribution from the Plan.

3.7     <u>Limitation on Salary Reduction Contribution</u>.  Notwithstanding the provisions of Section 3.2, Salary Reduction Contributions shall be subject to the limitations of this Section.  In each Plan Year the actual deferral percentage for the Plan Year for the group of Members eligible to make contributions under Section 3.2 who are highly compensated Employees must

bear a relationship to the actual deferral percentage for the current Plan Year for all other Members eligible to make Salary Reduction Contributions which meets either of the following tests.

(i) the actual deferral percentage for the Plan Year for the group of Members eligible to make Salary Reduction Contributions who are highly compensated Employees is not more than the actual deferral percentage for the current Plan Year of all other Members eligible to make Salary Reduction Contributions multiplied by 1.25; or

(ii) (A) the excess of the actual deferral percentage for the Plan Year for the group of Members eligible to make Salary Reduction Contributions who are highly compensated Employees over the actual deferral percentage for the current Plan Year of all other Members eligible to make Salary Reduction Contributions is not more than two percentage points, and (B) the actual deferral percentage for the Plan Year for the group of highly compensated Employees is not more than the actual deferral percentage for the current Plan Year for all other Members multiplied by 2.0.

If neither of the tests set forth in the preceding paragraph would be satisfied in any Plan Year, the Administrative Committee shall make the following adjustments for Members who are highly compensated Employees to the extent required to enable one of the tests to be satisfied:

(i) first, by reducing the Salary Reduction Contributions with respect to the balance of the Compensation payable to such Members for that Plan Year; and

(ii) second, no later than the end of the following Plan Year, by either (A) paying to such Members in cash a portion of the Salary Reduction Contributions (adjusted for any gain or loss allocable thereto for such Plan Year, and effective only for

the Plan Years commencing January 1, 2006 and January 1, 2007, any gain or loss attributable to the period between the end of the Plan Year and the date of the distribution, to the extent required under applicable Treasury Regulations); provided, however, that, effective as of June 1, 2006 and to the extent permitted by applicable Treasury Regulations, Members who receive such a corrective payment shall first receive a distribution of the excess amount that is not attributable to any Designated Roth Contributions that were made for that Plan Year by the Member, or (B) if elected by the Member, treating the portion of the Salary Reduction Contributions (other than any Designated Roth Contributions) as an After-Tax Contributions under Section 3.3 for all purposes under the Plan; provided, however, that no such election may be made if treating such contributions as After-Tax Contributions would not be permitted by the limitations of Section 3.3.

The Administrative Committee shall make the adjustments required by clause (ii) of the preceding sentence by leveling the highest dollar amount of the Salary Reduction Contributions on behalf of Members who are highly compensated Employees until the actual deferral percentage tests of this Section are satisfied. The amount of the adjustments provided for in clause (ii) of the preceding sentence shall be reduced by any excess contribution distributed to the Member pursuant to the penultimate sentence of the third paragraph of Section 3.2.

If the adjustments referred to above to cause the tests with respect to a Plan Year to be satisfied are not made prior to the end of the following Plan Year, the Plan will fail to meet the requirements of Section 401(k)(3) of the Code with respect to Salary Reduction Contributions for such Plan Year and all succeeding Plan Years until appropriate correction is made to cause the tests to be satisfied. If adjustments referred to above are not made within 2½

months after the end of the Plan Year, the Firm will be subject to a 10% excise tax with respect to the Salary Reduction Contributions which caused the test not to be satisfied.

For purposes of this Section:

(i)     The "actual deferral percentage" for a specific group of Members for a Plan Year is the average of the ratios (calculated separately for each Member in the group) of (A) the Salary Reduction Contributions on behalf of each Member for the Plan Year to (B) the Compensation of the Member for the Plan Year.  The Administrative Committee may, for purposes of this Section only, treat the Firm Contributions pursuant to Section 3.1 on behalf of a Member who is not a highly compensated Employee as if they were Salary Reduction Contributions.  Notwithstanding the foregoing, Salary Reduction Contributions on behalf of a Member shall not be taken into account if (i) such contributions are contingent on participation or performance of services after the date within the Plan Year such contributions are allocated on behalf of a Member or (ii) are not paid to the Plan within 12 months after the end of the Plan Year.

(ii)     A "highly compensated Employee" for any Plan Year means an employee of the Firm or any subsidiary who (A) during the Plan Year or the preceding Plan Year owned at any time more than 5% of the Stock (as defined in Section 12.1), or (B) during the preceding Plan Year had Compensation in excess of $100,000 (adjusted for increases in the cost of living pursuant to Section 414(q) of the Code) and was in the top-paid group of Employees for such Plan Year.

(iii)     The "top-paid group of Employees" for any Plan Year are those Employees in the top 20% of Employees when ranked on the basis of Compensation for such Plan Year.

3.8     Hardships. The provisions of this Section 3.8 shall be effective as of June 1, 2007 (unless otherwise noted below).   A Member who has made a withdrawal of the maximum amount permitted under Section 3.6 and has sustained a financial hardship may apply in writing to the Administrative Committee for a withdrawal from his Salary Reduction Contributions Account and Firm Contributions Account (excluding his Designated Roth Subaccount, unless the Administrative Committee determines in it sole discretion, that Designated Roth Subaccounts may be included for purposes of withdrawals under the Plan).   For purposes of this Section, "financial hardship" means immediate and heavy financial need on account of (a) expenses for (or necessary to obtain) medical care for the Member, his spouse, or dependents that would be deductible under Section 213(d) of the Code (determined without regard to whether the expenses exceed 7.5% of adjusted gross income), (b) costs directly related to the purchase of a principal residence for the Member (not including mortgage payments), (c) payment of tuition, related educational fees, or room and board expenses for the next 12 months of post-secondary education for the Member, or the Member's spouse, children or dependents (as defined in Section 152 of the Code, and, for Plan Years commencing on or after January 1, 2005, without regard to Code Sections 152(b)(1), (b)(2) and (d)(1)(B)), (d) payments necessary to prevent the eviction of the Member from the Member's principal residence or foreclosure of the mortgage on the Member's principal residence, (e) effective January 1, 2006, payments for burial or funeral expenses for the Member's deceased parent, spouse, children or dependents (as defined in Code Section 152, without regard to Code Section 152(d)(1)(B)), (f) effective January 1, 2006, expenses for the repair of damage to the Member's principal residence that would qualify for the casualty deduction under Section 165 of the Code (determined without regard to whether the loss exceeds 10% of adjusted gross income), or (g) other reasons prescribed by the Administrative

Committee which are uniformly applicable to similarly situated Members. Effective for Plan Years commencing on and after January 1, 2009, "financial hardship" shall also mean the immediate and heavy financial need of a Member's Primary Beneficiary on account of the expenses and payments under sub-sections (a), (c) or (e) above.

The Administrative Committee shall direct the Trustee to pay to such Member all or any portion of the value of his Salary Reduction Contributions Account and Firm Contributions Account that is subject to withdrawal as the Administrative Committee, in its sole discretion, deems necessary to satisfy such financial hardship (including amounts required to pay income taxes or penalties on such payment), provided that the Member has no other resources that are reasonably available to him. In no event, however, shall the amount of a hardship distribution paid from a Member's Salary Reduction Contributions Account exceed the sum of (i) the value of the Member's Salary Reduction Contributions Account as of December 31, 1988, and (ii) the Salary Reduction Contributions made on his behalf pursuant to Section 3.2 since that date (excluding his Designated Roth Contributions, unless the Administrative Committee has determined that such amounts are subject to withdrawal), reduced, if applicable, by prior withdrawals under this Section.

3.9    Rollover Contributions.

(a)    The Plan will accept a direct rollover of an eligible rollover distribution (as defined, for the purposes of this Section, in Section 402(c)(4) of the Code) as a Rollover Contribution to the Member' Rollover Account from:

(i)    a qualified plan described in Section 401(a) or 403(a) of the Code, including after-tax employee contributions;

(ii)    an annuity contract described in Section 403(b) of the Code, excluding

after-tax employee contributions;

(iii)    an eligible plan under Section 457(b) of the Code which is maintained by a state, political subdivision of a state, or any agency or instrumentality of a state or political subdivision of a state; and

(iv)    the portion of the distribution from an individual retirement account or annuity described in Section 408(a) or 408(b) of the Code that is eligible to be rolled over and that would otherwise be includible in gross income.

(b)    The Plan will accept a Member contribution of an eligible rollover distribution as a Rollover Contribution to the Member' Rollover Account from:

(i)    a qualified plan described in Section 401(a) or 403(a) of the Code;

(ii)    an annuity contract described in Section 403(b) of the Code;

(iii)    an eligible plan under Section 457(b) of the Code which is maintained by a state, political subdivision of a state, or any agency or instrumentality of a state or political subdivision of a state; and

(iv)    the portion of the distribution from an individual retirement account or annuity described in Section 408(a) or 408(b) of the Code that is eligible to be rolled over and that would otherwise be includible in gross income;

provided that, such contribution is made (A) on or before the 60th day following the Member's receipt of the distribution from such plan or contract or (B) if such distribution had previously been deposited in an individual retirement account (as defined in Section 408 of the Code), on or before the 60th day following the Member's receipt of a distribution from the individual retirement account.

(c)    The Administrative Committee shall develop such procedures, and may

require such information from such Member desiring to make Rollover Contribution as it deems necessary or desirable to determine that the proposed transfer will meet the requirements of this Section. Amounts attributable to Rollover Contributions shall be treated as After-Tax Contributions under Section 3.3 for all other purposes under this Plan, except for Sections 3.4 and 3.10.

(d)     Effective as of January 1, 2006, notwithstanding anything in this Section 3.9 to the contrary, if the Administrative Committee determines in it sole discretion, that the Plan will accept rollover amounts from a "designated Roth account," as such term is defined in Section 402A of the Code, an Employee may transfer such amounts to the Plan to be held in the Member's Designated Roth Subaccount. The Administrative Committee shall develop such procedures, and may require such information from the Employee desiring to make such transfer, as it deems necessary to determine that the proposed transfer meets the requirements of this Section 3.9(d) and applicable law.

3.10     <u>Limitation on After-Tax Contributions</u>.     Notwithstanding the provisions of Section 3.3, After-Tax Contributions by a Member under Section 3.3 shall be subject to the limitations of this Section. In each Plan Year the contribution percentage for the Plan Year for the group of Members who are highly compensated Employees must bear a relationship to the contribution percentage for the current Plan Year for all other Members which meets either of the following tests:

(i)     the contribution percentage for the Plan Year for the group of Members who are highly compensated Employees is not more than the contribution percentage for the current Plan Year for all other Members multiplied by 1.25; or

(ii)     (A) the excess of the contribution percentage for the Plan Year for the

group of Members who are highly compensated Employees over the contribution percentage for the current year of all other Members is not more than two percentage points, and (B) the contribution percentage for the Plan Year for the group of highly compensated Employees is not more than the contribution percentage for the current Plan Year for all other Members multiplied by 2.0.

If neither of the tests set forth in the preceding paragraph would be satisfied in any Plan Year, the Administrative Committee shall make the following adjustments for the Members who are highly compensated Employees to the extent required to enable one of the tests to be satisfied:

(i)     first, by reducing the After-Tax Contributions on behalf of such Members with respect to the balance of the Compensation payable to the Members for that Plan Year; and

(ii)     second, within twelve months after the close of the Plan Year for which neither test was met, by paying to such Members in cash a portion of the After-Tax Contributions for the Plan Year, adjusted for any allocable gain or loss allocable thereto for such Plan Year, and effective only for the Plan Years commencing January 1, 2006 and January 1, 2007, any gain or loss attributable to the period between the end of the Plan Year and the date of the distribution, to the extent required under applicable Treasury Regulations.

The Administrative Committee shall make the adjustments required by clause (ii) of the preceding sentence by leveling the highest dollar amount of After-Tax Contributions on behalf of Members who are highly compensated Employees until the contribution percentage tests of this Section are satisfied.

For purposes of this Section:

(i)     The "contribution percentage" for a specific group of Members for a Plan Year shall be the average of the ratios (calculated separately for each Member in the group) of (A) the After-Tax Contributions made by the Member for the Plan Year, to (B) the Compensation of the Member for the Plan Year. The Administrative Committee may, for purposes of this Section and Section 3.13 only, treat the Firm Contributions on behalf of a Member who is not a highly compensated Employee as if they were After-Tax Contributions made by such Member.

(ii)    A "highly compensated Employee" for any Plan Year and the "top-paid group of employees" shall each have the same meaning as the corresponding term is defined in Section 3.8.

3.11    <u>Mistakes of Fact</u>.  Any Firm Contributions made to the Plan on behalf of any Member as a result of a mistake of fact may be returned to the Firm within one (1) year of the payment of the mistaken contribution.  Notwithstanding the foregoing, the maximum amount that may be returned to the Firm is the excess of the amount contributed over the amount that would have been contributed had no mistake of fact occurred.  Earnings attributable to the excess contribution shall not be returned to the Firm, but losses attributable thereto shall reduce the amount returned.  The amount of the mistaken contribution returned to the Firm shall be limited if withdrawal of such amount would cause the Account value of any Member to be reduced to less than the Account value he would have had had the mistaken amount not been contributed.

3.12    <u>Withdrawals by Excluded Contractors</u>.  Effective April 1, 2008, upon written notice to the Plan, an Excluded Contractor shall be entitled to withdraw amounts (subject to a minimum withdrawal requested amount of the lesser of $1,000 or the value of the Excluded

Contractor's Account) from his Account as follows:

(a)    if the Excluded Contractor has attained age 59½, he may withdraw up to an amount equal to the value of his Account as of such date; or

(b)    if the Excluded Contractor has not attained age 59½, he may withdraw up to an amount equal to the value of his Firm Contributions Account attributable to contributions by the Firm made to the Plan on his behalf at least two years prior to the date of such withdrawal if such Excluded Contractor has not completed 5 years of Service, or attributable to contributions by the Firm made to the Plan on his behalf at any time prior to the date of such withdrawal if such Excluded Contractor has completed 5 years of Service.

3.13    <u>Roth Conversion Contributions</u>.  Effective as of October 1, 2011, a Member may irrevocably elect to make a Roth Conversion Contribution of all or any portion of the Member's vested Account (other than from his Designated Roth Subaccount) that is permitted to be distributed to the Member under the Code (regardless of whether such amount is distributable under the Plan) to the Member's Roth Conversion Account.   The amount of any Roth Conversion Contribution elected by a Member shall be included in that Member's gross income to the extent the amount would have been includable in gross income had the conversion been rolled over to a Roth IRA in the taxable year in which the Roth Conversion Contribution occurs. The Administrative Committee shall develop such procedures, and may require such information from the Member desiring to make such conversion, as it deems necessary to determine that the proposed conversion meets the requirements of this Section 3.13 and applicable law.

<u>ARTICLE 4 - INVESTMENT</u>

4.1     The Plan shall establish and maintain a separate record and Account for each Member.  Each such Account shall be credited as of the date that the Firm Contributions, Salary Reduction Contributions, After-Tax Contributions and Rollover Contributions are received by the Trustee (or any designated custodian), with the amounts allocated in accordance with the provisions of Section 5.2.

4.2     Subject to the rules of the Plan, including those set forth in Section 4.3, a Member (or, in the event of the Member's death, the Member's Beneficiary) may elect to have his Account and future contributions made on his behalf to such Account, invested in such percentages as permitted by the Administrative Committee among such funds or other investments (each an "Investment Fund") as shall from time to time be designated by the Trustee as Investment Funds under this Section 4.2, which may include, but are not limited to, a series of equity, fixed income, balanced, money market and insurance company contract funds.  From time to time the Trustee may designate additional Investment Funds, withdraw the designation of Investment Funds or change designated Investment Funds.  Any Investment Fund may, to the extent provided by the Trustee, include capital stock of the Firm, subject to the limitations imposed by Section 3 of the Trust Agreement.

4.3     Upon enrollment or upon request of the Administrative Committee, each Member shall elect, following procedures prescribed by the Administrative Committee, the manner in which his or her Account and future contributions made on his behalf to such Account are to be invested among the Investment Funds.  If no election is made with respect to any portion of a Member's Account and/or any future contributions thereto, such amounts shall be invested in accordance with the Plan's default election rules as in effect from time to time.  If the Member

(or, in the event of the Member's death, the Member's Beneficiary) fails to change his election, the previous investment election shall remain effective until the Member (or, in the event of the Member's death, the Member's Beneficiary) affirmatively changes his or her investment election.

A Member (or in the event of the Member's death, the Member's Beneficiary) may change his election of designated Investment Funds with regard to future contributions and current Account balances as of such date or dates specified by the Administrative Committee by making a new election in such manner and at such times as may be prescribed by the Administrative Committee and with such prior notice as specified by the Administrative Committee in advance of the date the change is to become effective. Subject to the rules of the Administrative Committee, including, without limitation, rules restricting the availability of transfers and setting minimum or maximum amounts that may be transferred and when transfers are permitted, a Member (or in the event of the Member's death, the Member's Beneficiary) may transfer all or a part of his Account from one Investment Fund to another Investment Fund in such percentages as permitted by the Administrative Committee as of such date or dates specified by the Administrative Committee. All elections and transfers shall be subject to rules established by the Administrative Committee.

4.4    (a)    The portion of a Member's Account that is to be invested in accordance with Option E-1 under Section 6.2 shall be applied to purchase an investment annuity contract or contracts entered into with an insurance company or companies to be designated by the Administrative Committee. This investment annuity contract or contracts shall be a renewable term annuity or annuities underwritten by an insurance company or companies but held by a custodian subject to the terms of contract or contracts. Such contract or contracts shall permit a Member to terminate participation at any time prior to the time his election under Option E-1

becomes irrevocable and upon such termination, all Account amounts invested with the custodian shall be allocated to such Investment Fund as the Member shall designate in accordance with the uniform rules prescribed by the Administrative Committee.  Upon retirement, the contract or contracts shall provide for the payment of retirement benefits while still permitting the Member to retain investment control.  A Member shall be permitted to designate for investment under this subsection only Account amounts which he would be entitled to receive under Article 8 were he to separate from Service at the time of making this designation.

(b)     The portion of a Member's Account that is to be invested in accordance with Option E-2 under Section 6.2 shall be applied to purchase an investment annuity contract or contracts entered into with an insurance company or companies to be designated by the Administrative Committee.  This investment annuity contract or contracts shall be a renewable term annuity or annuities underwritten by an insurance company or companies and funded by the payment of premiums from the Account held for the Member's benefit.

(c)     All costs attributable to either Combination Option E-1 or Retirement Option E-2 including but not limited to investment expenses, custodian's fees and charges of the insurance company or companies shall be charged against the Member's Account.

4.5     (a)     Each Member may direct the investment of his Account in one or more life insurance policies on the life of the Member or the joint lives of the Member and his spouse or a person in whom he has an insurable interest, with premiums to be paid from his Account.

All premiums on a life insurance policy shall be charged to the Member's Account; such premiums shall be limited in accordance with such uniform rules as the Administrative Committee may prescribe, but in no event may the aggregate premiums paid on

such policy exceed (i) 25% of the aggregate Firm contributions and forfeitures allocated to the Member's account, if the policy is a term or universal life insurance policy, (ii) 50% of such contributions and forfeitures if the policy is an ordinary whole insurance policy or (iii) if a combination of an ordinary whole life insurance policy and a term or universal life insurance policy are purchased for the Member's account, 50% of the premiums on the ordinary whole life insurance policy and all of the premiums on term and universal life insurance policies must not exceed 25% of contributions and forfeitures. Notwithstanding anything to the contrary in the preceding sentence, subject to such uniform rules as the Administrative Committee may prescribe, all amounts credited to a Member's Account may be used to pay premiums on a life insurance policy, other than amounts credited to his Firm Contributions Account and Salary Reduction Contributions Account which are attributable to contributions by the Firm made to the Plan within two years prior to the date of payment of such premiums unless the Member has completed 5 years of Service.

(b)    The Plan, at the direction of the Member, shall purchase a life insurance policy described in the first sentence of paragraph (a) from the Member to be credited to the Member's Account, provided that the purchase price does not exceed (i) the cash surrender value of the policy and (ii) the limitation on premiums in the second subparagraph of paragraph (a). The Plan shall, at the direction of the Member, sell a life insurance policy held for the account of the Member to the Member, a trust established by or for the benefit of the Member or a partnership in which the Member is a partner, provided that (i) the policy would be surrendered by the Plan but for the sale and (ii) the sale price is at least equal to the amount necessary to put the Plan in the same cash position as it would have been had the Plan surrendered the policy and made any appropriate distribution to the Member.

(c)     The proceeds of the surrender or sale of any life insurance policy held for the account of a Member shall be applied towards the purchase of amounts in each Investment Fund in accordance with such uniform rules as the Administrative Committee may prescribe.  In the event of the death of a Member prior to later of (i) his separation from Service or (ii) the commencement of his benefits, the death benefits of any life insurance policy held for the account of the Member shall be paid to his Beneficiary, in accordance with the provision of Section 8.5, unless the life insurance policy is on the joint lives of the Member and another person and the Member is survived by such other person, in which event the policy shall be distributed to the Member's Beneficiary in the absence of an election by such Beneficiary to retain such policy in the Member's account.  For purposes of the preceding sentence, a Member may designate a separate Beneficiary to receive a distribution of the death benefits under the life insurance policy or a distribution of such policy, as applicable; provided that if the Member is married such Beneficiary must be the spouse of the Member unless the spouse has consented in writing to the designation of another Beneficiary.  The provisions of the last paragraph of Option A of Section 6.2 shall apply to any spousal consent pursuant to this Section 4.5(c).

(d)     Upon written notice to the Administrative Committee, a Member may elect to withdraw from the Plan any life insurance policy held for the account of the Member, provided that no amounts used to pay the premiums on such policy are attributable to contributions made to the Plan by the Firm within two years prior to the date of such withdrawal unless such Member has completed 5 years of Service.  A Member who elects to make a withdrawal of a life insurance policy pursuant to the preceding sentence may also elect to withdraw, upon written notice to the Administrative Committee, amounts necessary to pay income taxes or penalties with respect to such withdrawal, other than from his Firm

Contributions Account and Salary Reduction Contributions Account which are attributable to contributions by the Firm made to the Plan within two years prior to the date of such withdrawal unless the Member has completed 5 years of Service.

(e)     Notwithstanding anything to the contrary in this Section 4.5, a Member may not direct the investment of any amounts in his Designated Roth Subaccount or Roth Conversion Account in any life insurance policies.

4.6     Each Member shall serve as the "Named Fiduciary," within the meaning of Section 402(a)(1) of ERISA, with respect to the investment of his or her Account in and among the Investment Funds or one or more life insurance policies.

## ARTICLE 5 - CREDITS TO MEMBERS

5.1     As of the last day of each Plan Year, each Member's Firm Contributions Account shall be credited with the Firm Contributions made on behalf of the Member pursuant to Section 3.1.

As of the last day of each month with respect to which the Firm transmitted the Firm's Salary Reduction Contributions to the Trustee, each such Member's Salary Reduction Contributions Account shall be credited with the amount of such Salary Reduction Contributions.

5.2     As of the last day of each month with respect to which the Firm transmitted a Member's After-Tax Contributions to the Trustee, such Member's After-Tax Contributions Account shall be credited with the amount of such After-Tax Contributions.

## ARTICLE 6 - RETIREMENT BENEFITS

6.1    (a)    Upon a Member's separation from Service on or following his Retirement Date, the Member (or, in the event of the Member's death, the Member's Beneficiary) shall be entitled to the full value of his Account and, subject to Section 6.9, such Member may request that his benefits commence at any time following the date of his separation from Service (the date the Member's begins receiving his benefits under the Plan shall be referred to as his "benefit commencement date").  Such election shall be made by submitting the appropriate form to the Administrative Committee, which election may be revoked by the Member and replaced by another election, at any time prior to his benefit commencement date.  Notwithstanding the foregoing, a Member may elect to divide his Account into two or more sub-accounts and to designate a different Beneficiary for each such sub-account.  In such event, the provisions of this Article 6 shall apply separately to the portion of his Account and the Beneficiary with respect to each such sub-account.

(b)    If a Member who separates from Service after reaching his Retirement Date dies prior to his benefit commencement date, his Account shall be paid to his Beneficiary pursuant to Options A, B, C, D, E, G, H or I of Section 6.2 (provided that such Beneficiary shall not be permitted to name a joint annuitant under an annuity option), as the Member shall have elected, or if no election has been made, as his Beneficiary shall elect from the foregoing Options.  For purposes of this Section, the spouse of a married Member shall be his Beneficiary unless such spouse consents in writing to the designation of another Beneficiary.

(c)    Notwithstanding anything contained herein to the contrary, distribution of the Account of a Member who remains in Service after the end of the calendar year in which the Member attains age 70½ will be made or commenced no later than April 1 of the calendar year

following the calendar year in which the Member incurs a separation from Service unless (i) the Member elects in writing to commence payment prior thereto or (ii) the Member is a 5 percent owner of the Firm (within the meaning of Section 416(i)(1)(B) of the Code) at any time during the Plan Year ending in the calendar year in which the Member attained age 70½, in which event payment of such Account must be made or commenced no later than April 1 of the calendar year following the calendar year in which the Member attained age 70½.

6.2    (A)    A Member who is eligible to commence benefit payments under Section 6.1 may elect to receive his benefits pursuant to one or more of the following options with respect to his Account, subject to rules of uniform application established by the Administrative Committee (including minimum pay-out and frequency limitations).

Option A – To have all or a portion of his vested Account used to purchase a nonforfeitable and nontransferable annuity providing benefits in such form as may be reasonably purchased from an insurance company selected by the Member from the preferred annuity providers selected from time to time by the Trustee.  A Member who is not married must receive payment thereunder in the form of a single life annuity with a minimum 120 monthly payments, unless he elects in writing to receive an optional form of benefit payment.  With respect to a married Member, unless the Member's spouse otherwise consents in writing, such annuity shall be a "qualified joint and survivor annuity" providing for substantially equal monthly payments for the life of the Member with a survivor annuity for the life of the Member's joint annuitant which is equal to 50% of the amount of the annuity which is payable during the life of the Member.  Notwithstanding the foregoing, in lieu of a qualified joint and survivor annuity, such married Member shall be eligible to elect an annuity providing for substantially equal monthly payments for the life of the Member with a survivor annuity for the life of the Member's joint

annuitant which is equal to 75% of the amount of the annuity which is payable during the life of the Member (which annuity shall be the qualified optional survivor annuity described in Section 417(g) of the Code and which shall be made available in accordance with Code Section 417(g)).

The written consent of the spouse referred to above will not be effective unless (i) the spouse's consent is witnessed by a Plan representative or a notary public; (ii) the Member's designation of a joint annuitant and the spouse's consent state the specific Beneficiary (including any Primary Beneficiaries or Contingent Beneficiaries) which may not be modified (except back to the spouse) without subsequent spousal consent, unless expressly permitted by the spouse; and (iii) the spouse's consent acknowledges the effect of the consent. The Administrative Committee shall provide a written explanation of the terms and conditions of the joint and survivor annuity with the spouse as the joint annuitant and the effect of any election not to take such annuity within a reasonable time before the annuity starting date designated by the Member in accordance with regulations prescribed by the Secretary of the Treasury. The designation of another joint annuitant may only be made during the 180-day period ending on the annuity starting date. Such election may be revoked in writing and replaced by another election at any time and any number of times during said period. Effective as of January 1, 2008, the written explanation described in this paragraph shall include a general description of the eligibility conditions and other features of the optional forms of benefit under the Plan, sufficient information to explain the relative values of these optional forms of benefits as compared to the normal form of benefit and, if applicable, the financial effect of failing to defer receipt of such benefit until such Member's normal retirement date.

Option B – To have the value of his Account paid to him in one lump sum.

Option C – To have an amount (not less than $1,000) designated by the Member

paid to the Member from his Account as of the last business day of a calendar quarter and each subsequent calendar quarter following his initial payment under this Option C.

Option D – To receive part of his Account in any amount requested by such Member (subject to a minimum requested amount of $1,000).

Option E – A Member may elect any of the following options with respect to all or a portion of his retirement benefit:

(1)     Option E-1 – Combination Option:  To receive such amount under an investment annuity contract or contracts described in Section 4.4(a) in the form and as set forth in the applicable contract.

(2)     Option E-2 – Retirement Option:  To receive such amount under an investment annuity contract or contracts described in Section 4.4(b) in the form and as set forth in the applicable contract.

(3)     Option E-3 – General Annuity Option:  To receive such amount pursuant to an annuity or annuities purchased by the Trustee in the Member's name with the applicable portion of his Account on such basis, including conventional fixed dollar annuities, variable annuities or any other form of annuity as may be designated by the Member.

The following provisions shall be applicable if a Member elects to receive payment of retirement benefits in the form of an annuity contract under this Option E, notwithstanding anything contained herein to the contrary:

(i)     A Member who is not married must receive payment thereunder in the form of a single life annuity with a minimum 120 monthly payments unless he elects in writing to receive an optional form of benefit payment.  A married Member may not elect to receive benefit payments other than in the form of an immediate joint and survivor

annuity with the Member's spouse as the joint annuitant unless (1) his spouse consents otherwise in writing and the spouse's consent is witnessed by a Plan representative or a notary public; (2) the Member's election and the spouse's consent state the specific Beneficiary (including any Primary Beneficiaries or Contingent Beneficiaries) and the particular optional form of benefit, neither of which may be modified (except back to a joint and survivor annuity) without subsequent spousal consent, unless expressly permitted by the spouse; and (3) the spouse's consent acknowledges the effect of the election.  The issuer of the annuity contract shall provide a written explanation of the terms and conditions of the joint and survivor annuity and the effect of any election not to take such annuity within a reasonable time before the annuity starting date designated by the Member in accordance with regulations prescribed by the Secretary of the Treasury.

(ii)     An election of an optional form of benefit payment under the annuity contract may only be made during the 180-day period ending on the annuity starting date. Such election may be revoked in writing and replaced by another election at any time and any number of times during said period.

(iii)     In the event of the death of the Member after his separation from Service and prior to the annuity starting date, if the Member is survived by his spouse, the Member's retirement benefits subject to the annuity contract shall be paid to the surviving spouse in the form of an annuity for the life of the spouse, unless the spouse consents in writing to payment in an optional form.  The payment of such benefits shall commence on the first day of the calendar month following the date designated by the surviving spouse, provided that the surviving spouse has notified the insurance carrier in writing at least 30 days in advance after the death of the Member, and shall terminate on

the first day of the month in which the death of such surviving spouse occurs. A Member whose spouse would be eligible for a benefit under this subparagraph (iii) may elect with the written consent of his spouse to waive such benefit provided (1) the spouse's consent is witnessed by a Plan representative or a notary public; (2) the Member's election and the spouse's consent state the specific Beneficiary (including any Primary Beneficiaries or Contingent Beneficiaries) which may not be modified (except back to the spouse) without subsequent spousal consent, unless expressly permitted by the spouse; and (3) the spouse's consent acknowledges the effect of the election. Such election shall be in writing, may be filed with the insurance carrier at any time prior to the Member's death and on or after the date the Member separated from service. After having been filed with the insurance carrier, such election may be revoked by such Member in writing at any time and any number of times.

Option F – A Member may elect one of the following options:

(1) Option F–1 – To have an amount paid to him annually, computed by multiplying his Account as of his benefit commencement date (and then each anniversary thereof) by the inverse of the Member's life expectancy as of such determination date. Such payment shall be made in annual or quarterly installments, as determined by the Member, commencing as of the last day of the calendar quarter after the Member elects payment.

(2) Option F–2 – To receive a benefit determined in the manner prescribed under Option F-1, but utilizing the inverse of the joint life expectancy of the Member and his spouse. If the Member is the first to die, payments shall continue to the spouse, with the inverse of the life expectancy of the spouse substituted for the joint life expectancy of the Member and his spouse, unless the Member has designated a Beneficiary (including a designation of the

spouse as the Beneficiary) and the Beneficiary elects that payment be made pursuant to any of the Options of Section 6.2 available at that time by giving written notice to the Administrative Committee within 60 days after receipt by the Administrative Committee of written notification of the Member's death.  If the spouse is the first to die, payments shall continue to the Member, with the inverse of the life expectancy of the Member substituted for the joint life expectancy of the Member and his spouse.  Upon the death of the survivor of the Member and his spouse, the value of his remaining Account shall, unless an election referred to above has been made, be paid to the Member's Beneficiary.

Option G – To receive the value of his Account in quarterly or annual installments, as the Member elects, over the "Fixed Period."  The "Fixed Period" shall be any period of years determined by the Member.  As of each three month or twelve month anniversary of the Member's benefit commencement date (as applicable), an additional portion of his remaining Account shall be paid to him for the remainder of the "Fixed Period."  All such payments to be made in any 12-month period shall be determined annually on the Member's benefit commencement date and on each anniversary thereof, by dividing the then current value of his Account by the number of payments remaining to be made over the duration of the "Fixed Period."

Option H – To have a percentage, as designated by the Member, of the value of his Account paid to him at (i) the end of each quarter, or (ii) the end of the first quarter following his benefit commencement date and each anniversary thereof.

Option I — To receive, as soon as practicable after the end of each Plan Year, an amount equal to the increase in the value of his Account during the Plan Year.

A Member who is receiving payment of all or a portion of his Account under any

option other than Option A or Option E may elect in writing that payment of the balance of such portion of his Account be made under any other option.  Any such election must satisfy the provisions of Section 6.9.

(B) If a distribution is one to which Sections 401(a)(11) and 417 of the Code do not apply, such distribution may be made or commenced less than 30 days after the notice required under Section 1.411(a)-11(c) of the Income Tax Regulations is given, provided that:

(i) the Administrative Committee clearly informs the Member that the Member has a right to a period of at least 30 days after receiving the notice to consider the decision of whether or not to elect a distribution (and, if applicable, a particular distribution option), and

(ii) the Member, after receiving the notice, affirmatively elects a distribution.

(C) Notwithstanding anything herein to the contrary, if the Plan is amended at any time to prospectively eliminate or modify an optional form of benefit payment, the benefits of any Member who elected such optional benefit form prior to its elimination or modification shall continue to be paid under such optional form as in effect prior to its elimination or modification.

6.3 If a Member dies prior to the payment of his entire Account under Options C, D, F, G, H or I, his remaining Account shall be paid to his Beneficiary pursuant to Options A, B, C, D, E, G, H or I of Section 6.2 (provided that such Beneficiary shall not be permitted to name a joint annuitant under an annuity option), as the Member shall have elected, or if no election has been made, as his Beneficiary shall elect.

6.4 In the event one or more of the Member's Primary Beneficiaries predecease such Member prior to the payment of his entire Account, any remaining portion of his Account shall

be distributed pro-rata among the remaining Primary Beneficiaries of the Member. If no Primary Beneficiary survives the Member, any remaining portion of his Account shall be distributed pro rata among the Member's surviving Contingent Beneficiaries. If no Primary Beneficiary or Contingent Beneficiary survives the Member or in the absence of such designations, any remaining portion of his Account shall be distributed to the Member's default Beneficiary as determined in accordance with Section 1.5. If the Member is not survived by any Beneficiary, all amounts remaining in the Member's Account shall be distributed to the Member's estate. If, however, a Member's Beneficiary dies after such Beneficiary has become entitled to a benefit or while in pay status, the remaining portion of the Member's Account to which such Beneficiary is entitled to receive benefits shall be paid to such Beneficiary's designated successor beneficiary(ies), at the Beneficiary's designated successor beneficiary's election, as (i) a lump sum distribution or (ii) continued distributions over the Beneficiary's remaining life expectancy, subject to Section 401(a)(9) of the Code (and corresponding Treasury Regulations issued thereunder).

6.5     A Beneficiary as described in Section 6.4 whose benefits are in payment status shall be deemed to be a Member of the Plan.

6.6     All payments or withdrawals made under this Plan may be made in cash, in in-kind property held in the Trust Fund or through the purchase of an annuity contract, or part in cash, part in such in-kind property and/or part in such annuity contract, as directed by the Administrative Committee. Effective January 1, 2012, to the extent a Member or Beneficiary receives a distribution under this Article 6 or any other provision of the Plan (including through the purchase of an annuity) from his Account other than in the form of a single lump sum payment of his entire Account, unless otherwise specified by the Member or Beneficiary, to the

extent permitted under Treasury Regulations, such distributions shall be satisfied from his Roth Conversion Account and Designated Roth Subaccount last.

6.7     Any annuity or annuities purchased by the Trustee under this Article 6 shall be as selected by the Member from the preferred annuity providers selected from time to time by the Trustee and may be on an individual or group annuity basis as determined by the Trustee and may include any or all of the following:  conventional fixed dollar annuities, variable annuities, and investment annuities.

6.8     <u>Direct Rollovers</u>.  Notwithstanding any provision of the Plan to the contrary that would otherwise limit a distributee's election under this Section, a distributee may elect, at the time and in the manner prescribed by the Administrative Committee, to have any portion of any eligible rollover distribution paid directly to an eligible retirement plan specified by the distributee in a direct rollover.  In no event may more than one eligible retirement plan be specified by the distributee for the direct payment of any eligible rollover distribution.

For purposes of this Section, the following terms shall have the meanings set forth below:

(a)     <u>Eligible rollover distribution</u>:  An eligible rollover distribution is any distribution of all or any portion of the balance to the credit of the distributee, except that an eligible rollover distribution does not include:  any distribution that is one of a series of substantially equal periodic payments (not less frequently than annually) made for the life (or life expectancy) of the distributee or the joint lives (or joint life expectancies) of the distributee and the distributee's Beneficiary, or for a specified period of ten years or more; any distribution to the extent such distribution is required under Section 401(a)(9) of the Code; any amount that is distributed on account of hardship pursuant to Section 3.8 of the

Plan; and, except as provided below, the portion of any distribution that is not includible in gross income. For purposes of the direct rollover provisions in this Section, a portion of a distribution shall not fail to be an eligible rollover distribution merely because the portion consists of after-tax employee contributions which are not includible in gross income. However, such portion may be transferred only to an individual retirement account or annuity described in Section 408(a) or 408(b) of the Code, to a qualified trust, or to an annuity contract under Section 403(b) of the Code that agrees to separately account for amounts so transferred (and earnings thereon), including separately accounting for the portion of such distribution which is includible in gross income and the portion of such distribution which is not so includible.

(b)    Eligible retirement plan:    An eligible retirement plan is an individual retirement account described in Section 408(a) of the Code, an individual retirement annuity described in Section 408(b) of the Code, an annuity plan described in Section 403(a) of the Code, or a qualified trust described in Section 401(a) of the Code that accepts the distributee's eligible rollover distribution.    For purposes of the direct rollover provisions in this Section, an eligible retirement plan shall also mean an annuity contract described in Section 403(b) of the Code and an eligible plan under Section 457(b) of the Code which is maintained by a state, political subdivision of a state, or any agency or instrumentality of a state or political subdivision of a state and which agrees to separately account for amounts transferred into such plan from this Plan.    The definition of eligible retirement plan shall also apply in the case of a distribution to a surviving spouse, or to a spouse or former spouse who is the alternate payee under a qualified domestic relation order, as defined in Section 414(p) of the Code.    Effective with respect to distributions

made after December 31, 2007, an "eligible retirement plan" shall also mean a Roth IRA described in Code Section 408A.

(c)     Distributee:  A distributee includes an Employee or former Employee.  In addition, the Employee's or former Employee's surviving spouse and the Employee's or former Employee's spouse or former spouse who is the alternate payee under a qualified domestic relations order, as defined in Section 414(p) of the Code, are distributees with regard to the interest of the spouse or former spouse.

Effective January 1, 2007 and in accordance with Section 402(c)(11) of the Code, a non-spouse Beneficiary may make an eligible rollover distribution provided that such distribution is made as a direct trustee to trustee transfer to an individual retirement account or individual retirement annuity on behalf of the non-spouse Beneficiary.  The non-spouse Beneficiary's individual retirement account or individual retirement annuity shall thereafter be treated as an inherited account and shall be subject to the required minimum distribution rules of Code Section 401(a)(9) (and corresponding Treasury Regulations issued thereunder).  Any eligible rollover distribution to a non-spouse beneficiary shall be made in accordance with the Pension Protection Act of 2006, Internal Revenue Service Notice 2007-7 and any subsequent guidance.

(d)     Direct rollover:  A direct rollover is a payment by the Plan to the eligible retirement plan specified by the distributee.

(e)     Roth Rollovers:  Notwithstanding anything in this Section to the contrary, distributions from a Member's Designated Roth Subaccount or Roth Conversion Account may be transferred only to his or her own "designated Roth account," as defined in Section 402A of the Code, or his or her own "Roth IRA," as defined in Section 408A of the Code

and only to the extent the rollover is permitted under the rules of Section 402(c) of the Code.

6.9 <u>Minimum Distribution Requirements</u>.  Notwithstanding anything in this Plan to the contrary, the following provisions will apply with respect to determining required minimum distributions to be made under the Plan for calendar years beginning on or after January 1, 2003:

(i) <u>General Rules</u>.

(A) The requirements of this Section 6.9 will take precedence over any inconsistent provisions of the Plan.

(B) All distributions required under this Section 6.9 will be determined and made in accordance with the Treasury Regulations under Section 401(a)(9) of the Code.

(C) Notwithstanding the other provisions of this Section 6.9, other than Section 6.9(i)(B), distributions may be made under a designation made before January 1, 1984, in accordance with Section 242(b)(2) of the Tax Equity and Fiscal Responsibility Act (TEFRA) and the provisions of the Plan that relate to Section 242(b)(2) of TEFRA.

(ii) <u>Time and Manner of Distribution</u>.

(A) The Member's entire interest will be distributed, or begin to be distributed, to the Member no later than the Member's Required Beginning Date.

(B) If the Member dies before distributions begin, the Member's entire interest will be distributed, or begin to be distributed, no later than as follows:

(1) If the Member's surviving spouse is the Member's sole designated beneficiary, then distributions to the surviving spouse will begin by December 31 of the calendar year immediately following the calendar year in which the Member died, or by December 31 of the calendar year in which the Member would have attained age 70½, if later.

(2) If the Member's surviving spouse is not the Member's sole

designated beneficiary, then distributions to the designated beneficiary will begin by December 31 of the calendar year immediately following the calendar year in which the Member died.

(3)     If there is no designated beneficiary as of September 30 of the year following the year of the Member's death, the Member's entire interest will be distributed by December 31 of the calendar year containing the fifth anniversary of the Member's death.

(4)     If the Member's surviving spouse is the Member's sole designated beneficiary and the surviving spouse dies after the Member but before distributions to the surviving spouse begin, this Section 6.9(ii)(B), other than Section 6.9(ii)(B)(1), will apply as if the surviving spouse were the Member.

(5)     For purposes of this Section 6.9(ii)(B) and Section 6.9(v), distributions are considered to begin on the Member's Required Beginning Date (or, if Section 6.9(ii)(B)(4) applies, the date distributions are required to begin to the surviving spouse under Section 6.9(ii)(B)(1)).  If annuity payments irrevocably commence to the Member before the Member's Required Beginning Date (or to the Member's surviving spouse before the date distributions are required to begin to the surviving spouse under Section 6.9(ii)(B)(1)), the date distributions are considered to begin is the date distributions actually commence.

Unless the Member's interest is distributed in the form of an annuity purchased from an insurance company or in a single sum on or before the Required Beginning Date, as of the first distribution calendar year distributions will be made in accordance with Sections 6.9(iii), 6.9(iv) or 6.9(v) hereof.  If the Member's interest is distributed in the form of an annuity purchased from an insurance company, distributions thereunder will be made in accordance with the requirements of Section 401(a)(9) of the Code and the Treasury Regulations.  Any part of the Member's interest which is in the form of an individual account described in Section 414(k) of the Code will be distributed in a manner satisfying the requirements of Section 401(a)(9) of the Code and the Treasury Regulations that apply to individual accounts.

(iii)    <u>Determination of Amount to be Distributed Each Year</u>.

(A)    If the Member's interest is paid in the form of annuity distributions under the Plan, payments under the annuity will satisfy the following requirements:

(1)    the annuity distributions will be paid in periodic payments made at intervals not longer than one year;

(2)    the distribution period will be over a life (or lives) or over a period certain not longer than the period described in Section 6.9(iv) or 6.9(v);

(3)    once payments have begun over a period certain, the period certain will not be changed even if the period certain is shorter than the maximum permitted;

(4)    payments will either be nonincreasing or increase only as follows:

(I)    by an annual percentage increase that does not exceed the annual percentage increase in a cost-of-living index that is based on prices of all items and issued by the Bureau of Labor Statistics;

(II)    to the extent of the reduction in the amount of the Member's payments to provide for a survivor benefit upon death, but only if the beneficiary whose life was being used to determine the distribution period described in Section 6.9(iv) dies or is no longer the Member's beneficiary pursuant to a qualified domestic relations order within the meaning of Code Section 414(p);

(III)    to provide cash refunds of employee contributions upon the Member's death; or

(IV)    to pay increased benefits that result from a Plan amendment.

(B)    The amount that must be distributed on or before the Member's Required

Beginning Date (or, if the Member dies before distributions begin, the date distributions are required to begin under Section 6.9(ii)(A) or (B)) is the payment that is required for one payment interval. The second payment need not be made until the end of the next payment interval even if that payment interval ends in the next calendar year.  Payment intervals are the periods for which payments are received, e.g., bi-monthly, monthly, semi-annually, or annually.   All of the Member's benefit accruals as of the last day of the first distribution calendar year will be included in the calculation of the amount of the annuity payments for payment intervals ending on or after the Member's Required Beginning Date.

(C)     Any additional benefits accruing to the Member in a calendar year after the first distribution calendar year will be distributed beginning with the first payment interval ending in the calendar year immediately following the calendar year in which such amount accrues.

(iv)     <u>Requirements For Annuity Distributions That Commence During Member's Lifetime</u>.

(A)     If the Member's interest is being distributed in the form of a joint and survivor annuity for the joint lives of the Member and a nonspouse beneficiary, annuity payments to be made on or after the Member's Required Beginning Date to the designated beneficiary after the Member's death must not at any time exceed the applicable percentage of the annuity payment for such period that would have been payable to the Member using the table set forth in Q&A-2 of  Section 1.401(a)(9)-6T of the Treasury Regulations.  If the form of distribution  combines a joint and survivor annuity for the joint lives of the Member and a nonspouse beneficiary and a period certain annuity, the requirement in the preceding sentence will apply to annuity payments to be made to the designated beneficiary after the expiration of

the period certain.

(B)    Unless the Member's spouse is the sole designated beneficiary and the form of distribution is a period certain and no life annuity, the period certain for an annuity distribution commencing during the Member's lifetime may not exceed the applicable distribution period for the Member under the Uniform Lifetime Table set forth in Section 1.401(a)(9)-9 of the Treasury Regulations for the calendar year that contains the annuity starting date. If the annuity starting date precedes the year in which the Member reaches age 70, the applicable distribution period for the Member is the distribution period for age 70 under the Uniform Lifetime Table set forth in Section 1.401(a)(9)-9 of the Treasury Regulations plus the excess of 70 over the age of the Member as of the Member's birthday in the year that contains the annuity starting date. If the Member's spouse is the Member's sole designated beneficiary and the form of distribution is a period certain and no life annuity, the period certain may not exceed the longer of the Member's applicable distribution period, as determined under this Section 6.9(iv)(B), or the joint life and last survivor expectancy of the Member and the Member's spouse as determined under the Joint and Last Survivor Table set forth in Section 1.401(a)(9)-9 of the Treasury Regulations, using the Member's and spouse's attained ages as of the Member's and  spouse's birthdays in the calendar year that contains the annuity starting date.

(v)    <u>Requirements For Minimum Distributions Where Member Dies Before Date Distributions Begin</u>.

(A)    If the Member dies before the date distribution of his or her interest begins and there is a designated beneficiary, the Member's entire interest will be distributed, beginning no later than the time described in Section 6.9(ii)(A) or (B), over the life of the designated beneficiary or over a period certain not exceeding:

(1)	unless the annuity starting date is before the first distribution calendar year, the life expectancy of the designated beneficiary determined using the beneficiary's age as of the beneficiary's birthday in the calendar year immediately following the calendar year of the Member's death; or

(2)	(if the annuity starting date is before the first distribution calendar year, the life expectancy of the designated beneficiary determined using the beneficiary's age as of the beneficiary's birthday in the calendar year that contains the annuity starting date.

(B)	If the Member dies before the date distributions begin and there is no designated beneficiary as of September 30 of the year following the year of the Member's death, distribution of the Member's entire interest will be completed by December 31 of the calendar year containing the fifth anniversary of the Member's death.

(C)	If the Member dies before the date distribution of his or her interest begins, the Member's surviving spouse is the Member's sole designated beneficiary, and the surviving spouse dies before distributions to the surviving spouse begin, this Section 6.9(v) will apply as if the surviving spouse were the Member, except that the time by which distributions must begin will be determined without regard to Section 6.9(ii)(B)(1).

(vi)	Definitions.

(A)	Designated beneficiary.	The individual who is designated as the Beneficiary under the Plan and is the designated beneficiary under Code Section 401(a)(9) and Treasury Regulation Section 1.401(a)(9)-4, Q&A-1.

(B)	Distribution calendar year.	A calendar year for which a minimum distribution is required.	For distributions beginning before the Member's death, the first distribution calendar year is the calendar year immediately preceding the calendar year which contains the Member's Required Beginning Date.	For distributions beginning after the

Member's death, the first distribution calendar year is the calendar year in which distributions are required to begin pursuant to Section 6.9(ii)(B).

(C) <u>Life expectancy</u>. Life expectancy as computed by use of the Single Life Table in Section 1.401(a)(9)-9 of the Treasury Regulations.

(D) <u>Required Beginning Date</u>. The date specified in Section 6.1(c) of the Plan.

(vii) <u>Election to Allow Members or Beneficiaries to Elect 5-Year Rule</u>.

Members or beneficiaries may elect on an individual basis whether the 5-year rule or the life expectancy rule in Sections 6.9(ii)(B) and 6.9(v) applies to distributions after the death of the Member. The election must be made no later than the earlier of September 30 of the calendar year in which distribution would be required to begin under Section 6.9(ii)(B), or by September 30 of the calendar year which contains the fifth anniversary of the Member's (or, if applicable, surviving spouse's) death. If neither the Member, nor beneficiary makes an election under this paragraph, distributions will be made in accordance with Sections 6.9(ii)(B) and 6.9(v).

(viii) <u>Election to Allow Designated Beneficiary Receiving Distributions Under 5-Year Rule to Elect Life Expectancy Distributions</u>.

A designated beneficiary who is receiving payments under the 5-year rule may make a new election to receive payments under the life expectancy rule until December 31, 2003, provided that all amounts that would have been required to be distributed under the life expectancy rule for all distribution calendar years before 2004 are distributed by the earlier of December 31, 2003 or the end of the 5-year period.

(ix) Effective January 1, 2009, notwithstanding anything in this Plan to the contrary, a Member or Beneficiary who would have been required to receive required

minimum distributions for 2009 ("2009 RMDs") but for the enactment of Section 401(a)(9)(H) of the Code, and who would have satisfied that requirement by receiving distributions that are (i) equal to the 2009 RMDs, will not receive those distributions for 2009 unless the Member or Beneficiary chooses to receive such distributions or (ii) one or more payments in a series of substantially equal distributions (that include the 2009 RMDs) made at least annually and expected to last for the life (or life expectancy) of the Member, the joint lives (or joint life expectancy) of the Member and the Member's designated Beneficiary, or for a period of at least 10 years ("Extended 2009 RMDs"), will receive those distributions for 2009 unless the Member or Beneficiary chooses not to receive such distributions. Members and Beneficiaries described in the preceding sentence will be given the opportunity to elect to receive or to elect to stop receiving, as applicable, the distributions described in the preceding sentence. In addition, notwithstanding anything in the Plan to the contrary, and solely for purposes of applying the direct rollover provisions of the Plan, 2009 RMDs and Extended 2009 RMDs shall be treated as eligible rollover distributions for the purposes of Section 6.8.

## ARTICLE 7 - TRUST FUND

7.1     The Trust Fund shall be valued as provided in the Trust Agreement at each valuation date, with appropriate allocations and adjustments for any items of income, expenses, gains and losses, and all other transactions for the Plan Year.  The net income thus arrived at, exclusive of forfeitures (and net income thereon), shall be allocated as provided in Section 7.2. The Account of each Member shall bear any fees of the Plan charged in accordance with Section 10.7, including, without limitation, any fees of the Trustee or Investment Fund charged with regard to maintaining his Account that are not paid by the Firm.  The interest of each Member in the Investment Funds shall be expressed in accordance with the valuation methods and practices of the entity maintaining the Investment Fund.

7.2     So long as Members' investment elections are permitted pursuant under the Plan, all income, realized and unrealized gains, and losses of the Trust Fund relating to each Investment Fund shall be credited or debited, as the case may be, as of each Valuation Date, to the Account of each Member invested in such Investment Fund in the proportion that the value of the portion of a Member's Account invested in such Investment Fund (after reducing such Account for any distribution since such Valuation Date and before the allocation of any contributions as of such Valuation Date) bears to the total value of all Members' Accounts which are invested in such Investment Fund (similarly adjusted, as provided above) as of the Valuation Date.  Dividends, interest and other distributions received or assets held under the Plan with respect to each Investment Fund shall be reinvested in the respective Investment Fund.

7.3     Any dividends or return of premiums on a life insurance policy purchased at the direction of a Member pursuant to Section 4.5 shall be credited to the Member's Account and invested in each Fund subject to such uniform rules as the Administrative Committee may prescribe.

## ARTICLE 8 - BENEFITS ON SEPARATION FROM SERVICE, DEATH OR DISABILITY BEFORE RETIREMENT DATE,

8.1     Upon a Member's separation from Service prior to his Retirement Date, death or Disability, such Member (or, in the event of the Member's death, the Member's Beneficiary) shall be entitled to the full value of his Account and, subject to Section 6.9, such Member may request that his benefits commence at any time following the date of his separation from Service. Notwithstanding anything herein to the contrary, a British Member may elect to have the portions of his Account attributable to contributions made under Article 3 and contributions made under Article 14 commence at separate times.  Such election shall be made by submitting the appropriate form to the Administrative Committee, which election may be revoked by the Member and replaced by another election, at any time prior to his benefit commencement date under this Article 8.  Notwithstanding the foregoing, a Member may elect to divide his Account into two or more sub-accounts and to designate a different Beneficiary for each such sub-account.  In such event, the provisions of this Article 8 shall apply separately to the portion of his Account and the Beneficiary with respect to each such sub-account.

8.2     A Member who is eligible for a benefit under Section 8.1 may elect to receive his benefits in any of the follows forms, subject to rules of uniform application established by the Administrative Committee (including minimum pay-out and frequency limitations):

(a)     The Member may request that his entire vested Account be paid to him at any time in one lump sum.

(b)     The Member may elect to have the Trustee apply all or any portion of his vested Account towards the purchase of an annuity for the Member (or for the Member and his spouse), which annuity shall provide for two or more payments over a period in excess of one full year from the date of the first payment.  Any remaining portion of the Member's vested

Account will be paid to him in one lump sum at the time the first payment under the annuity purchased under this subparagraph (b) is made. The provisions of the last paragraph of Option E of Section 6.2(A) shall be applicable to any annuity purchased pursuant to this subparagraph (b).

(c)     The Member may elect to have his Account distributed to him on any date on or after his Retirement Date in accordance with the benefit options available under Section 6.2.

8.3     Effective January 1, 2012, to the extent a Member or Beneficiary receives a distribution under this Article 8 (including through the purchase of an annuity) from his Account other than in the form of a single lump sum payment of his entire Account, unless otherwise specified by the Member or Beneficiary, to the extent permitted under Treasury Regulations, such distributions shall be satisfied from his Roth Conversion Account and Designated Roth Subaccount last.

8.4     Notwithstanding the foregoing, if a Member who separates from Service prior to reaching his Retirement Date dies prior to his benefit commencement date under this Article 8, his Account shall be paid to his Beneficiary pursuant to Option A, B, C, D, E, G, H or I of Section 6.2, (provided that such Beneficiary shall not be permitted to name a joint annuitant under an annuity option) as the Member shall have elected, or if no election has been made, as his Beneficiary shall elect from the foregoing Options. For purposes of this Section, the spouse of a married Member shall be his Beneficiary unless such spouse consents in writing to the designation of another Beneficiary. The provisions of the last paragraph of Option A of Section 6.2 shall apply to any spousal consent pursuant to this Section 8.4.

8.5     If a Member's Service is terminated by his death prior to his Retirement Date, his Account shall be paid to his Beneficiary pursuant to Option A, B, C, D, E, G, H or I of Section

6.2, (provided that such Beneficiary shall not be permitted to name a joint annuitant under an annuity option) as the Member shall have elected, or if no election has been made, as his Beneficiary shall elect from the foregoing Options. For purposes of this Section, the spouse of a married Member shall be his Beneficiary unless such spouse consents in writing to the designation of another Beneficiary. The provisions of the last paragraph of Option A of Section 6.2 shall apply to any spousal consent pursuant to this Section 8.5. Notwithstanding the foregoing, if the service of a Member domiciled within the United Kingdom is so terminated, then the value of his Account shall be paid or applied in accordance with the provisions of Section 14.12.

8.6

(a)     If a Member incurs a separation from Service due to his suffering a Disability prior to his Retirement Date, the value of his Account shall be paid to him, without regard to the length of his Service. Such Member may, under rules of uniform application established by the Administrative Committee (including minimum pay out and frequency limitations), request that the value of all or part of his Account be distributed to him in accordance with the provisions of Article 6.

(b)     If a Member described in paragraph (a) dies prior to the commencement of payment of his Account, his Account shall be paid to his Beneficiary pursuant to Option A, B, C, D, E, G, H or I of Section 6.2, (provided that such Beneficiary shall not be permitted to name a joint annuitant under an annuity option) as the Member shall have elected, or if no election has been made, as his Beneficiary shall elect from the foregoing Options. For purposes of this Section, the spouse of a married Member shall be his Beneficiary unless such spouse consents in writing to the designation of another Beneficiary. The provisions of the last paragraph of Option

A of Section 6.2 shall apply to any spousal consent pursuant to this Section 8.6(b).

## ARTICLE 9 - ADMINISTRATIVE COMMITTEE

9.1     The Plan shall be administered by an Administrative Committee which shall consist of at least three persons who may or may not be Members of the Plan, members of the Board of Directors and/or Trustee, and who shall be appointed by and shall serve at the pleasure of the Trustee.  Members of the Administrative Committee shall serve without bond and without compensation.

9.2     A person appointed a member of the Administrative Committee shall signify his acceptance by filing a written acceptance with the Trustee.  A member of the Administrative Committee may resign by delivering his written resignation to the Trustee.

9.3     The Administrative Committee shall meet upon such notice and at such places and times as it may determine.  Notice shall not be required if waived in writing.  A majority of those entitled to vote shall constitute a quorum.  The Administrative Committee may act by majority vote of members present and entitled to vote at a meeting; or may act without a meeting upon a written consent signed by a majority of the members entitled to vote.

9.4     The Administrative Committee shall choose one individual (who does not need to be a member of the Administrative Committee) to be Secretary.  The Secretary shall keep a record of the meeting, and shall give notice to all members of any action taken by the Administrative Committee without a meeting.

9.5     No member of the Administrative Committee shall vote on any matter relating solely to himself or his rights under the Plan.

9.6     Subject to the limitations of the Plan, the Administrative Committee shall establish rules for the administration of the Plan and the transaction of its business.  It shall have the exclusive right (except as to matters reserved to the Board of Directors by the Plan or which

the Board of Directors may reserve to itself) to interpret the Plan and to decide all matters arising hereunder, including the right to remedy possible ambiguities, inconsistencies or omissions.  All determinations of the Administrative Committee or the Board of Directors in respect of any matter hereunder shall be conclusive and binding on all persons.  In the event of a scrivener's error that renders a Plan term inconsistent with the Firm's intent, the Firm's intent controls, and any inconsistent Plan term is made expressly subject to this requirement.  The Administrative Committee has the authority to review objective evidence to conform the Plan term to be consistent with the Firm's intent.  Any determination made by the Administrative Committee shall be given deference in the event it is subject to judicial review, and shall be followed in all instances unless it is arbitrary and capricious.

9.7 The Administrative Committee may employ the services of such persons as it may deem necessary or desirable in connection with the Plan.  The Administrative Committee, the Firm and all persons connected therewith may rely upon all tables, valuations, certificates, reports and opinions furnished by any duly appointed actuary, accountant, or legal counsel, and they shall be fully protected in respect of any action taken or permitted in good faith in reliance upon any such instrument.  All action so taken or permitted shall be conclusive upon all persons.

9.8 The Administrative Committee may designate one or more persons as it may deem necessary or desirable in connection with the Plan, who need not be members of the Administrative Committee or employees of the Firm, to serve some or all of the functions of the Administrative Committee on its behalf.  Such person(s) shall have the same rights and authority as the Administrative Authority would have if acting directly.

9.9 The Firm will indemnify and save harmless each member of the Administrative Committee (and each person designated by the Administrative Committee pursuant to Section

9.8) against any cost, expense or liability, including his attorneys' fees and any sum paid in settlement of any claim with the approval of the Firm, arising out of any act or omission to act resulting from his performance of his duties and obligations as a member of the Administrative Committee, other than for acts or omissions constituting willful misconduct, bad faith or gross negligence.

# ARTICLE 10 - GENERAL PROVISIONS

10.1     The Trustee, or such persons as the Trustee may designate from time to time, shall have the power to appoint one or more Investment Managers (as defined in ERISA) to manage (including the power to acquire and dispose of) any assets of the Plan.  An Investment Manager appointed by the Trustee (or such persons) shall signify his acceptance in writing and shall acknowledge in the same writing that he is a fiduciary with respect to the Plan.

10.2     A Member may designate one or more Beneficiaries to receive benefits under the Plan after his death.  Designation of a Beneficiary or Beneficiaries under the Plan shall be governed by the following rules:

(a)     Subject to the provisions of subsection (b), each Member from time to time may designate any person or persons (who may be designated as a Primary Beneficiary or a Contingent Beneficiary, and who may be an entity other than a natural person) as his Beneficiary or Beneficiaries to whom his Plan benefits are paid if he dies before receipt of all such benefits. He may revoke or change such designation without notice to or consent of his Beneficiary at any time prior to his death.  Each Beneficiary designation shall be in a form prescribed by the Administrative Committee and will be effective only when filed with the Administrative Committee during the Member's lifetime.

Each Beneficiary designation filed with the Administrative Committee will cancel all Beneficiary designations previously filed with the Administrative Committee.  The revocation of a Beneficiary designation no matter how effected, shall not require the consent of any Primary Beneficiary or Contingent Beneficiary except as provided in subparagraph (b) below.

(b)     No Beneficiary designation by a married Member other than to his spouse shall be effective under the Plan unless the Member's spouse consents in writing to such designation, the spouse's consent acknowledges the effect of such designation and the spouse's signature is witnessed by a Plan representative or a notary public.  The consent must state the specific nonspouse Beneficiary, including any class of Primary Beneficiaries or any Contingent Beneficiaries.  If a trust is the Beneficiary, then the designation need only refer to the trust.  The consent must also specify the optional form of benefit payment, if any.

Any change in the designated Beneficiary or form of payment will require a new spousal consent unless a change is made subsequent to the spouse's death or a divorce.

Notwithstanding the foregoing, spousal consent to a Member's Beneficiary designation shall not be required if it is established to the satisfaction of the Administrative Committee that spousal consent cannot be obtained because there is no spouse, because the spouse cannot be located or because of such other circumstances as may be prescribed in regulations issued by the Secretary of the Treasury.  Any consent by a spouse or any determination that the consent is not required shall be effective only with respect to such spouse.

(c)     If there is doubt as to the right of any Beneficiary to receive any amount, the Trustee may retain such amount until the rights thereto are determined, without liability for any interest thereon, or it may pay such amount into any court of appropriate jurisdiction, in either of which events neither the Administrative Committee, Trustee nor Firm shall be under any further liability to any person.  Designation by a Member of a person as his joint annuitant shall not make such person a designated Beneficiary.

10.3     No benefit under the Plan shall be subject to any anticipation, alienation, sale, transfer, pledge, assignment, charge or encumbrance and any attempt to do so shall be void.  No

benefits under the Plan shall be in any manner liable for or subject to the debts, contract liabilities, engagements or torts of any person. If any person entitled to benefits under the Plan becomes bankrupt or attempts to anticipate, alienate, sell, transfer, assign, pledge, encumber or charge any benefit under the Plan, or if any attempt is made to subject any benefits to the debts, contracts, liabilities, engagements or torts of the person entitled to such benefits, then such benefits shall, in the discretion of the Administrative Committee, cease and terminate and the Administrative Committee shall hold or apply the same or any part thereof for the benefit of any dependents or beneficiary or such person, in such manner and proportion as it may deem proper.

The foregoing shall not prevent payment of benefits pursuant to a qualified domestic relations order as defined in Section 206(d) of ERISA. Notwithstanding anything contained in the Plan to the contrary, a qualified domestic relations order may provide for the payment of benefits to the "alternate payee" (as such term is defined in Section 206(d) of ERISA) prior to the date a Member has attained "earliest retirement age" (as such term is defined in Section (d) of ERISA), if such payment to the alternate payee is to be made in a lump sum.

10.4    The Trustee shall, if the Administrative Committee approves, lend a Member an amount not in excess of the lesser of (i) 50% of the value of the vested portion of his Account on the date on which the loan is approved or (ii) $50,000, reduced by the excess, if any, of (A) the highest outstanding balance of all loans to the Member from the Plan during the 12 months ending on the day before the date of the loan, over (B) the outstanding balance of all loans from the Plan to the Member on the date of the loan; provided, however, no loan proceeds may be taken from the Member's Designated Roth Subaccount or Roth Conversion Account unless the Administrative Committee determines in it sole discretion that Designated Roth Subaccounts or Roth Conversion Accounts may be used for such purposes. All qualified plans (including the

Plan) of the Firm shall be considered as a single plan for purposes of determining the maximum amount of loan permitted in accordance herewith. A loan shall not be made for an amount of less than $1,000 or such lower amount as the Administrative Committee may prescribe from time to time. All loans shall be subject to the approval of the Administrative Committee.

In addition to such other rules and regulations as the Administrative Committee may adopt, all loans shall comply with the following terms and conditions:

(a)     An application for a loan by a Member shall be made in writing to the Administrative Committee whose action thereon shall be final.

(b)     Upon approval of a loan by the Administrative Committee, there shall be transferred out of the vested portion of the borrower's Account an amount equal in value to the amount of such loan.

(c)     Each loan shall be secured by the assignment of 50% of the borrower's Account and such additional security as the Administrative Committee may require.

(d)     Each loan shall be supported by the borrower's collateral promissory note for the amount of the loan, including interest, payable to the order of the Trustee.

(e)     Each loan shall bear interest at a rate to be fixed by the Administrative Committee and, in determining the interest rate, the Administrative Committee shall take into consideration interest rates currently being charged by persons in the business of lending money for loans which would be made under similar circumstances. The Administrative Committee shall not discriminate among Members in the matter of interest rates, but loans granted at different times may bear different interest rates, if, in the opinion of the Administrative Committee, the difference in rates is justified by a change in general economic conditions.

(f)     The repayment for a loan made pursuant to this Section shall be made in accordance with a schedule of repayment over a period not to exceed 5 years approved by the Administrative Committee.  Such loan shall be nonrenewable.

In determining whether to approve an application for a loan, the Administrative Committee shall take into account only those factors which would be considered in a normal commercial setting by an entity in the business of making similar types of loans.  Such factors shall include whether the loan will be repaid by payroll deductions or by direct payment by the Member.

If a Member defaults in the repayment of a loan, the outstanding principal amount shall become due and payable immediately.  If the default continues after appropriate efforts have been made to enforce payment of the loan, the Plan may satisfy the amount due to the Plan by reducing the value of the Member's Account which are pledged as security for the loan; provided, however, that no such reduction shall be made until a distribution of such amount could have been made pursuant to Article 6 or 8.

To the extent required by law and subject to such uniform and non-discriminatory rules established by the Administrative Committee, loans shall also be made available in accordance with the provisions of this Section to the Beneficiary of a deceased Member from the amount credited to the account of such Beneficiary, provided such Beneficiary is then a "party in interest", as defined in Section 3(14) of ERISA, with respect to the Plan.

10.5    If the Administrative Committee determines that any person entitled to payments under the Plan is an infant or incompetent by reason of physical or mental disability, it may cause all payments thereafter becoming due to such person to be made to any other person for his benefit, without responsibility to follow the application of amounts so paid.  Payments made

pursuant to this Section shall completely discharge the Administrative Committee, Trustee and Firm.

10.6    The Administrative Committee shall as soon as practicable after each December 31 deliver to each Member a statement, in such form as it may select, setting forth his interest in the Plan as of such date.   Each such statement shall be deemed correct unless notice to the contrary is given to the Administrative Committee within 31 days after issuance of such statement.

10.7    All expenses incurred in the administration of the Plan which arise in connection with the purchase and sale of securities, including brokerage commissions and transfer taxes, shall be paid from the Trust Fund.   All other expenses incurred in the administration of the Plan shall be paid, at the discretion of the Administrative Committee, by the Trustee out of the Trust Fund, unless paid by the Firm.   Such other expenses shall include any expenses incident to the functioning of the Administrative Committee, including the fees of accountants, actuaries, counsel, and other specialists, and other costs of administering the Plan; such compensation to the Trustee, if any, as may be set forth from time to time in a written agreement with the Trustee with respect to the Plan; such compensation to the Investment Manager, if any, as may be set forth from time to time in a written agreement with the Investment Manager with respect to the Plan; and all other proper charges and disbursements of the Trustee, together with all taxes of any and all kinds whatsoever that may be levied or assessed under existing or future laws upon or in respect to the Trust Fund or the income thereof.   The Trustee shall have a lien upon the Trust Fund for all expenses until paid.

10.8     All communications in connection with the Plan made by a Member shall become effective only when duly executed on forms provided by the Administrative Committee and filed with it.

10.9     The Plan shall not confer upon any person the right to be retained in the service of the Firm, nor shall it interfere with the right of the Firm to discharge or otherwise deal with him without regard to the existence of the Plan.

10.10     All assets of the Plan and Trust Fund shall be held in trust for use in accordance with the Plan, and no part of such assets shall be used for purposes other than the exclusive benefit of Members and their Beneficiaries under the Plan.  No person shall have any interest in or right to any part of such assets except as and to the extent expressly provided in the Plan.

10.11     In the event that the Administrative Committee determines that a Member is or has become subject to current income tax (or an equivalent form of tax) by a foreign country on contributions to the Plan by the Firm for the account of such Member or on increases in value of the Account of such Member, or both, the Administrative Committee in its sole discretion may, direct the Trustee to pay to such Member from his Account such amount as the Member may request, up to the total value of his Account attributable to his Service in such foreign country, as reimbursement for any tax so incurred.

10.12     Any action taken with respect to the Plan at the direction of the Administrative Committee, Trustee or Firm shall be conclusive upon all persons.

10.13     Set forth below in this Section 10.13 are the claims procedures established under the Plan:

(a)     Initial Claim.   In the event a Member applies for payment of benefits under the Plan and such application is denied in whole or in part, the Member (a "claimant") may

dispute such denial by notifying the person or persons designated by the Administrative Committee to receive claims under the Plan (the "Administrative Delegatee") in writing of such a claim. Such notification may be in any form adequate to give reasonable notice to the Administrative Delegatee, and it shall set forth the basis of such claim and shall authorize the Administrative Delegatee to conduct such examinations as may be necessary to determine the validity of the claim and to take such steps as may be necessary to facilitate the payment of any benefits to which the claimant may be entitled under the Plan.

The claimant will be informed of the Administrative Delegatee's decision with respect to the claim not later than 90 days after receipt of the claim by the Administrative Delegatee, unless the Administrative Delegatee determines that special circumstances require an extension of time for processing the claim. If an extension is required, the Administrative Delegatee shall furnish written notice of the extension to the claimant prior to the termination of the initial 90-day period. The extension notice shall describe the special circumstances requiring an extension, the date by which the Administrative Delegatee expects to render a decision, and any additional information needed in order to process the claim. The extension may not exceed 180 days from the date the Administrative Delegatee received the claimant's claim.

If a claim is denied, in whole or in part, the claimant will be notified in writing of the specific reason(s) for the denial, the plan provision(s) on which the decision was based, what additional material or information is needed to perfect his or her claim, an explanation of why such material or information is necessary and what procedure the claimant should follow to get the claim reviewed again (including a statement of the claimant's right to bring a civil action under Section 502(a) of ERISA, subject to Sections 10.13(c) and (d) and 10.17 below).

(b)     <u>Appeal to the Administrative Committee</u>.  An appeal of a claim denied by the Administrative Delegatee must be submitted in writing to the Administrative Committee within sixty (60) days following receipt of a notification of an adverse decision.  In connection with this request, the claimant (or the claimant's duly authorized representative) is entitled to (i) be provided, upon written request and free of charge, with reasonable access to (and copies of) all documents, records, and other information relevant to the claim; and (ii) submit to the Administrative Committee written comments, documents, records, and other information related to the claim.  The claim review will take into account all comments, documents, records, and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination.

The Administrative Committee will make a final written decision on a claim review, in most cases within sixty (60) days after receipt of a request for a review.  In some cases, the claim may take more time to review, and an additional processing period of up to sixty (60) days may be required.  If that happens, the claimant will receive a written notice of that fact prior to the termination of the initial sixty (60) day period, which will also indicate the special circumstances requiring the extension of time and the date by which the Administrative Committee expects to make a determination with respect to the claim.  If the extension is required due to the claimant's failure to submit information necessary to decide the claim, the period for making the determination will be tolled from the date on which the extension notice is sent to the claimant until the date on which the claimant responds to the Plan's request for information.

If a claimant's appeal is denied, in whole or in part by the Administrative Committee, he or she will be notified in writing of the specific reason(s) for the denial, the Plan

provision(s) on which the decision was based, the claimant's entitlement to receive, upon written request and free of charge, reasonable access to (and copies of) all documents, records and other information relevant to the claim, and the claimant's right to bring a civil action under Section 502(a) of ERISA (subject to Sections 10.13(c) and (d) and 10.17 below). The decision of the Administrative Committee on an appeal shall be final and binding on all parties and persons affected thereby.

The procedures set forth in this Section 10.13 shall be interpreted in accordance with regulations promulgated by the United States Department of Labor or any successor authority regulating claims procedures for employee benefit plans.

(c)     <u>Limitation On When A Claim May Be Initiated</u>.  Any claim under the claims procedure, as set forth in Section 10.13(a) above, must be submitted within one (1) year from the earlier of:  (i) the date on which the claimant learned of facts sufficient to enable him or her to formulate such claim, or (ii) the date on which the claimant should reasonably have been expected to learn the facts sufficient to enable him or her to formulate such claim.  Claims submitted after such period shall be deemed to have been waived by the claimant and shall thereafter be wholly unenforceable.  Nothing in this section shall be construed to extend any otherwise applicable statute of limitations set forth under ERISA or any under any other applicable law.

(d)     <u>Limitation on When a Lawsuit May Be Started</u>.  A claimant, other than a claimant subject to mandatory, final and binding arbitration pursuant to Section 10.17, may start a lawsuit to obtain benefits only after he or she has exhausted the claims procedures described in Section 10.13(a) and (b) above and a final decision has been rendered on appeal, or the appropriate time frame described above has elapsed since the claimant filed a request for review

and the claimant has not received a final decision or notice that an extension will be necessary to reach a final decision.

Notwithstanding anything herein to the contrary, unless prohibited by law, any lawsuit to obtain benefits under the Plan must be commenced within two (2) years from the earliest of (a) the date that the claim was repudiated, (b) the date that a final decision on appeal was rendered, or (c) the expiration of the time by which the Plan was required to render a decision under the procedures set forth above. All lawsuits commenced after such period shall be deemed to have been waived by the claimant and shall thereafter be wholly unenforceable. Nothing in this section shall be construed to extend any otherwise applicable statute of limitations period set forth under ERISA or any under any other applicable law.

10.14   Masculine, feminine or neuter gender includes other genders, unless the context indicates otherwise.

10.15   <u>Governing Law</u>. The provisions of the Plan shall be construed, administered and governed in accordance with the provisions of ERISA, the Code, and other applicable federal law, including, without limitation, the Defense of Marriage Act, and, to the extent not inconsistent therewith, if any determination is to be made with respect to the Plan under applicable state law, the laws of the State of New York shall apply. For the avoidance of doubt, the terms "spouse," "married" or "marriage" as used herein shall refer to a marriage to a spouse, as defined under federal law.

10.16   Notwithstanding any provision of this Plan to the contrary, contributions, benefits and service credit with respect to qualified military service will be provided in accordance with Section 414(u) of the Code and loan repayments will be suspended under this Plan as permitted under Section 414(u) of the Code.

Notwithstanding anything in the Plan to the contrary, in the case of a death occurring on or after January 1, 2007, in accordance with Code Section 401(a)(37), if a Member dies while performing qualified military service (as defined in Code Section 414(u)(5)) and therefore would be entitled to reemployment rights pursuant to the Uniformed Services Employment and Reemployment Rights Act (USERRA) on the date of death, the survivors of the Member are entitled to any benefits (other than benefit accruals relating to the period of qualified military service) provided under the Plan as if the Member had resumed and then terminated employment on account of death, which benefits shall include receiving service credit for vesting purposes under this Plan for the period of the deceased Member's qualified military service.

Notwithstanding anything in the Plan to the contrary, for years beginning after December 31, 2008, (i) an individual receiving a differential wage payment, as defined by Code Section 3401(h)(2) shall be treated as an Employee of the Firm, solely to the extent required by law, (ii) the differential wage payment shall be treated as compensation for purposes of the Code, solely to the extent required by law, and (iii) the Plan shall not be treated as failing to meet the requirements of any provision described in Code Section 414(u)(1)(C) by reason of any contribution or benefit which is based on the differential wage payment.

10.17   <u>Mandatory, Final and Binding Arbitration</u>.   No person may bring any claim, lawsuit or other cause of action arising from a combined investment-related loss in excess of $10,000 experienced on the amount of a Member's accounts in the Plan and the McKinsey & Company, Inc. Money Purchase Pension Plan in any court (federal, state or otherwise).  Instead, such person must submit such dispute to mandatory, final and binding arbitration as his/her exclusive remedy for claims that meet the criteria set forth herein, unless prohibited by law.  No

other claims shall be resolved through arbitration.

Notwithstanding anything herein to the contrary, unless prohibited by law, any arbitration must be commenced within two (2) years from the date on which the claimant knew or should have known of facts sufficient to enable him or her to formulate such claim. To the extent applicable, the claimant must exhaust his or her administrative remedies pursuant to the procedures described above in Section 10.13, during which time the period to commence an arbitration will be tolled.

All arbitrations commenced after such period shall be deemed to have been waived by the claimant and shall thereafter be wholly unenforceable. Nothing in this section shall be construed to extend any otherwise applicable statute of limitations set forth under ERISA or any under any other applicable law.

A person must notify the Plan, in writing, by certified mail, return receipt requested of his or her intent to arbitrate by sending notice to the Administrative Committee.

The arbitration will be conducted in accordance with, and subject to, the Plan document, the Trust Agreement, the Plan's summary plan description, the investment decisions booklet and other Plan communications distributed to Members and Beneficiaries, ERISA (and the rules, regulations and decisional law thereunder, including, without limitation, all appropriate standards of review) and, except as otherwise provided herein, the American Arbitration Association ("AAA") Benefit Plans Claims Arbitration Rules (the "Rules"). The costs of the arbitration shall be borne equally between the Plan and the claimant. In the event of any conflict between ERISA or the Trust Agreement and the Rules, the arbitrator shall apply and be bound by the provisions of ERISA and the Trust Agreement.

The decision of the arbitrator shall be final and binding as to all persons affected

thereby, but shall, in no event, confer any rights on any other person and shall not serve as a precedent for any other claimant.

## ARTICLE 11 - AMENDMENT, MERGER, OR DISCONTINUANCE OF PLAN

11.1     The Board of Directors reserves the right to amend or discontinue the Plan at any time.  Any such amendment or discontinuance shall be effective at such date as the Board of Directors shall determine, except that no amendment shall retroactively reduce the rights of a Member, nor be effective until the date on which the Board of Directors shall give notice to the Trustee.  No amendment or discontinuance shall allow the return to the Firm of any part of the Trust Fund nor its use for any purpose other than for the exclusive benefit of Members and their Beneficiaries.

11.2     Upon the termination of the Plan, partial termination of the Plan or complete discontinuance of contributions to the Plan, each Member affected thereby shall be entitled to the full value of his Account.  At the direction of the Administrative Committee, the value of such Account shall be paid to the Member or his Beneficiary or joint annuitant, or applied to purchase fixed or variable annuities from an insurance company for the benefit of such Member (and any joint annuitant).

11.3     No merger or consolidation of this Plan with, or transfer of its assets or liabilities to, any other plan, shall be effected unless each Member would receive an account balance immediately after the merger, consolidation or transfer, if the Plan was then terminated, which is at least equal to the account balance he would have been entitled to receive had the Plan terminated immediately before such merger, consolidation or transfer.

## ARTICLE 12 - MINIMUM BENEFITS AND VESTING
## IN TOP HEAVY PLAN YEARS

12.1 <u>Definitions</u>.  For purposes of determining whether the Plan is Top Heavy, the following definitions shall be applicable:

(a)  "Key Employee" means an Employee who at any time during the Plan Year ending on the Determination Date or any of the preceding four Plan Years (i) is (or was) one of the officers of the Firm (limited to the lesser of 50 or ten (10%) percent of all employees) who had the greatest annual compensation greater than 150% of the amount in effect under Section 415(c)(1)(A) of the Code or (ii) owns (or owned) one of the ten largest interests in the Firm, at least 0.5% of the Stock, and has or had compensation greater than the amount in effect under Section 415(c)(1)(A) of the Code, (iii) owns or owned more than five (5%) percent of the Stock, or (iv) owns or owned more than one (1%) percent of the Stock and has (or had) total compensation from the Firm in excess of $150,000.

(b)  "Stock" means the outstanding stock of the Firm within the meaning of Section 416(i)(1)(B) of the Code.

(c)  "Non-Key Employee" means any Employee who is not a Key Employee.

(d)  "Determination Date" means for any Plan Year, the last day of the preceding Plan Year.

(e)  "Qualified Plan" means any plan maintained by the Firm which satisfies the qualification requirements of Section 401(a) of the Code.

(f)  "Aggregation Group" means each Qualified Plan in which one or more Key Employees are participants, each Qualified Plan that enables a Qualified Plan in which one or more Key Employees are participants to satisfy the requirements of Section

401(a)(4) or Section 410 of the Code, and each Qualified Plan that the Firm designates as part of the Aggregation Group, provided that the resulting Aggregation Group satisfies the requirements of Section 401(a)(4) and Section 410 of the Code.

The Plan will be Top Heavy for any Plan Year beginning on or after January 1, 1984 if as of the Determination Date for such Plan Year, the sum of (1) the aggregate of the present value of accrued benefits for Key Employees under each defined benefit plan (as defined in Section 414(j) of the Code) in the Aggregation Group and (2) the aggregate of the value of the accounts for Key Employees under each defined contribution plan (as defined in Section 414(i) of the Code) in the Aggregation Group, exceeds sixty (60%) percent of the sum of the aggregate of the present value of accrued benefits and the value of accounts for Key Employees and Non-Key Employees under each Qualified Plan in the Aggregation Group. In determining the present value of accrued benefits and the aggregate value of accounts, there shall be included any distributions made from the Qualified Plan with respect to the Key Employee or Non-Key Employee during the five-year period ending on the Determination Date and there shall be excluded the present value of accrued benefits and the value of accounts with respect to a Key Employee or Non-Key Employee who has not received any compensation from the Firm at any time during the five-year period ending on the Determination Date.

12.2 <u>Minimum Contributions</u>. If the Plan is Top Heavy in any Plan Year, each Member who is a Non-Key Employee, regardless of the period of time during such Plan Year in which he is an Employee, shall receive a minimum contribution from the Firm of 3% of his total compensation for such Plan Year. Notwithstanding the foregoing:

(a) a minimum contribution shall not be made with respect to a Non-Key Employee to the extent he has been provided with the minimum benefit required by

Section 416(c) of the Code with respect to such Plan Year under a Qualified Plan which is a defined benefit plan; and

       (b)     the minimum contribution percentage under this Section shall in no event exceed the highest percentage of the total compensation at which contributions are made by the Firm for such Plan Year for the account of any Key Employee.

For purposes of paragraph (b) of this Section, contributions by the Firm pursuant to Section 3.2 and "elective deferrals" (as defined under Section 402(g) of the Code) to any other Qualified Plan in the Aggregation Group shall be taken into account, if necessary, so that the highest percentage of total compensation at which contributions are made for the account of any Key Employee is equal to 3%.

       12.3   <u>Modification of Top Heavy Rules</u>.  This Section 12.3 shall apply for purposes of determining whether the Plan is a Top Heavy plan under Section 416(g) of the Code for Plan Years beginning after December 31, 2001, and whether the Plan satisfies the minimum benefits requirements of Section 416(c) of the Code for such Plan Years.  This Section 12.3 amends the previous sections of this Article.

       "Key Employee" means any Employee or former Employee (including any deceased Employee) who at any time during the Plan Year that includes the Determination Date was an officer of the Firm having annual compensation greater than $130,000 (as adjusted under section 416(i)(1) of the Code for Plan Years beginning after December 31, 2002), a 5-percent owner of the Firm, or a 1-percent owner of the Firm having annual compensation of more than $150,000.  For this purpose, "annual compensation" means compensation within the meaning of section 415(c)(3) of the Code.  The determination of who is a Key Employee will be made in accordance with Section 416(i)(l) of the Code and the applicable regulations and other guidance

of general applicability issued thereunder.

The provisions of this Section 12.3 shall apply for purposes of determining the present values of accrued benefits and the amounts of account balances of Employees as of the Determination Date. The present values of accrued benefits and the amounts of account balances of an Employee as of the Determination Date shall be increased by the distributions made with respect to the Employee under the Plan and any Plan aggregated with the Plan under Section 416(g)(2) of the Code during the 1-year period ending on the Determination Date. The preceding sentence shall also apply to distributions under a terminated plan which, had it not been terminated, would have been aggregated with the Plan under Section 416(g)(2)(A)(i) of the Code. In the case of a distribution made for a reason other than severance from employment, death, or Disability, this provision shall be applied by substituting "5-year period" for "1-year period." The accrued benefits and accounts of any individual who has not performed services for the Firm and its affiliates during the 1-year period ending on the Determination Date shall not be taken into account.

<u>ARTICLE 13 - GERMAN MEMBERS</u>

13.1    Anything in this Plan to the contrary notwithstanding, the provisions of this Article 13 shall apply to each Member of the Plan (i) assigned to, and principally employed by, the Firm in an office of the Firm in Germany, and (ii) subject to taxation as a German resident under German income tax laws (hereinafter referred to as "German Members"). Notwithstanding the foregoing, effective January 1, 2000, German Members designated as Management Group Members shall be excluded from participation in the Plan.

13.2    German Members will be eligible to receive an annual contribution as determined each year by the Board of Directors.

13.3    There shall be deducted from the amount of any contribution which would otherwise be made by the Firm for any Plan Year on behalf of a German Member any amount paid, directly or indirectly, by the Firm on behalf of such German Member during such Plan Year under any profit-sharing, retirement or pension plan, or any combination thereof, created under or mandated by the laws of Germany for the benefit of such Member.

13.4    In the event a German Member's service is terminated for any reason, the portion of such Member's Firm Contributions Account which is equal in value to the Member's Pension Promise (as defined in Section 13.5 below) and, if applicable, any leaving indemnity or other termination payments to which such Member may be entitled under applicable provisions of German law (or his entire Firm Contributions Account if its value is less than the Pension Promise, leaving indemnity and/or termination payments) shall be paid to such Member or his Beneficiary (or to the Firm to the extent the Firm has already paid the Pension Promise, leaving indemnity and/or termination payments to such Member or his Beneficiary).  To the extent that any portion of such Member's Account remains after such payments, such portion shall be paid

in accordance with the applicable provisions of the Plan.

13.5    "Pension Promise" for purposes of this Article shall mean the amount to which the German Member is entitled under the Firm's Pension Promise in Germany which provides, upon retirement or termination, at least one benefit substantially similar to the benefit provided in the Plan.

13.6    Sections 3.2 and 3.3 of the Plan shall not apply to German Members.  The right of investment conferred by Article 4 shall not apply to German Members.  All other provisions of the Plan shall be equally applicable to German Members, except to the extent clearly inconsistent with this Article.  Notwithstanding the above, all provisions of this Article 13 as in effect prior to January 1, 1999, shall continue to apply for contributions made prior to such date.

## ARTICLE 14 - BRITISH MEMBERS

14.1    Anything in this Plan to the contrary notwithstanding, the provisions of this Article shall apply to British Members in relation to contributions by the Firm and pensions or other benefits of British Members in respect of Reckonable Service but without prejudice to the rights of such British Members in respect of other employment with the Firm.

14.2    For the purposes of this Article

(a)    "Authorised Payment" means an authorised payment as defined in section 164 of the Finance Act 2004.

(b)    "British Member" means a Member of the Plan who has accrued or is accruing (as the context indicates) benefits under this Article in respect of employment on a substantially full time basis by the Firm at an office in Great Britain while domiciled and resident in Great Britain.

(c)    "Civil Partner" means a civil partner of a British Member as defined in section 1 of the Civil Partnership Act 2004.

(d)    "Finance Act" means Finance Act 2004.

(e)    "Firm" means McKinsey & Company, Inc., McKinsey International Inc., or McKinsey & Company, Inc. United Kingdom, as appropriate.

(f)    "Great Britain" means the United Kingdom of Great Britain and Northern Ireland.

(g)    "HMRC" means Her Majesty's Revenue and Customs.

(h)    "Insurance Company" means an insurance company as defined in section 275 of the Finance Act.

(i)    "Named Class" means and includes:

(i)     any spouse, former spouse, Civil Partner, former Civil Partner, child, step child, adopted child, illegitimate child, brother or sister (whether of the whole blood or the half blood) of a British Member,

(ii)    any ancestor, descendant or collateral relative (whether of whole blood or the half blood) other than the persons aforesaid of a British Member,

(iii)   any person other than the persons aforesaid who is or was wholly or in part dependant or in the opinion of the Administrative Committee is or was wholly or in part dependant upon the earnings of a British Member or for whose maintenance and support the British Member was legally liable immediately before his death,

(iv)    any natural person other than the persons aforesaid whose name has been notified in writing to the Administrative Committee by the British Member as being a person whom the British Member wishes the Administrative Committee to consider as a recipient of any benefit payable on the British Member's death, and

(v)     any charitable organisation named by the British Member.

(j)     "Normal Retirement Date" has the meaning described in section 14.5.

(k)     "Pension Sharing Order" means an order or provision as defined in either

Section 19 or 20 of the Welfare Reform and Pensions Act 1999.

(l) "Qualifying Recognised Overseas Pension Scheme" means a qualifying recognised overseas pension scheme as defined in section 169 of the Finance Act.

(m) "Reckonablc Service" means sendee with the Firm by a British Member whose compensation from the Firm is chargeable to income tax in the UK.

(n) "Registered Pension Scheme" means a registered pension scheme as defined in the Finance Act.

(o) "Salary Sacrifice Arrangement" means an arrangement between the British Member and the Firm under which the Member's remuneration is reduced in exchange for the Firm's agreement to provide a benefit in non-monetary form.

(p) "UK Administrator" means the representative of the Administrative Committee in the UK who is appointed to act as Administrator of the Plan.

14.3 <u>Membership</u>. Membership of the Plan under Article 14 will be open to employees of the Firm who are in Reckonable Service and who have been invited to join by the Finn.

14.4 <u>Contributions</u>.

(a) The Firm will designate British Members who are eligible to receive an annual contribution to the Plan from the Firm as determined and paid in accordance with Rule 3.1. Notwithstanding the foregoing, for Plan Years starting on or after January 1, 2006, any Member who is also a Principal or Director of the Firm and who is in pensionable service as a member of the McKinsey Additional Plan or any other pension plan sponsored by McKinsey & Company, Inc. United Kingdom at any time during a calendar year, will not be eligible to receive any contribution to the Plan.

(b) A British Member may make voluntary contributions to the Plan in order

to increase his pension and other benefits under the Plan. The Administrative Committee may make Regulations regarding the dates on which such voluntary contributions may commence and the amounts of such voluntary contributions.

(c)     Contributions may be made by way of a Salary Sacrifice Arrangement. A British Member may terminate or limit contributions at any time.

(d)     Notwithstanding anything to the contrary, the contribution that would otherwise be made by the Firm to the Plan for any Plan Year on behalf of a British Member will be reduced by any amount paid, directly or indirectly, by the Firm on behalf of such British Member during such Plan Year under any profit-sharing, retirement or pension plan, or any combination thereof, created under or mandated by the laws of the United Kingdom for the benefit of such Member (but excluding any contributions made by the Firm to provide social security benefits).

(e)     Contributions received from the Firm or the British Member will be credited to each Account with the amounts allocated in a manner consistent with section 5.2.

14.5    The Normal Retirement Date in respect of a British member means the date on which the British member attains age 60, or any other date subsequent to the British member's 55th birthday designated by mutual agreement of the British Member and the Firm.

14.6    A British member who has left Service may, at any time after his or her 55th birthday, request that the UK Administrator use the Member's to pay a lump sum and/or purchase a lifetime annuity or other pension benefit in the manner and to the extent that such payments will be Authorised Payments.

14.7    If a British Member's Service is terminated by reason of Disability at any time prior to age 55, his Account may be used at any time to provide a lump sum and an annuity

which shall be paid to him in accordance with the terms of the annuity contract provided that such payment would be an Authorised Payment.

14.8    A British Member who has left Service may at any time transfer his or her Member's Account to a Registered Pension Scheme or Qualifying Recognised Overseas Pension Scheme.    A British Member who has not left Service may at any time transfer his or her Member's Account to a Registered Pension Scheme or Qualifying Recognised Overseas Pension Scheme sponsored by the Finn or an affiliate of the Finn.

14.9    All benefits accrued under this Article 14 will be payable by the UK Administrator who will measure the benefits paid against the lifetime allowance under the Finance Act and arrange to pay any lifetime allowance charge due and account to HMRC for United Kingdom income tax thereon if any.

14.10    The UK Administrator may deduct tax charges, levies, fees or duties and any interest thereon for which the UK Administrator or the British member may become liable from benefits or payments from the Member's Account.    The UK Administrator will deduct any tax charge (including charge to income tax) for which the British member is liable from benefits or payments where required to do so by law.

14.11    Articles 6 (retirement benefits), 8 (benefits on separation, death and disability) and 12 (minimum benefits) in their entirety, sections 2.1 (membership), 3.2 through 3.12 (contributions), 4.4 through 4.6 (investment), 8.4 and 10.4 (lending) will not apply to British Members.    Except to the extent that they are inconsistent with the provisions of this Article and/or the administration of the British Section of the Scheme as a Registered Pension Scheme all other provisions of the Plan shall apply to British Members.

14.12    Benefits on death.

(a)     A lump sum representing the value of the British Member's Member's Account will be payable from the Plan.

(b)     The Administrative Committee may authorize the Trustee to pay or apply any lump sum payable on the death of a British Member pursuant to this Article to or for the benefit of one or more members of the Named Class or to the personal representatives of the deceased British Member in such amounts at such times and generally in such manner as the Administrative Committee in its absolute discretion shall from time to time think fit.

(c)     Any balance of the said amount remaining unpaid or unapplied on the expiration of a period of two years from the date on which the Administrative Committee first knew or should have known of the British Member's death will be paid to the British Member's personal representatives.

14.13   The Administrative Committee may and at the request of a British Member will secure the payment of any pension or annuity payable in accordance with this Article by the purchase from an Insurance Company of a deferred or immediate annuity policy or any other policy of insurance (as appropriate).

14.14   When a British Member ceases to be in Reckonable Service because his Compensation ceases to be chargeable to UK income tax, those benefits already secured under this Article in respect of Reckonable Service will continue to be held under and be subject to all of the provisions of this Article and when they become payable will be payable by the UK Administrator in accordance with Section 14.5.

14.15   Where a Pension Sharing Order has been made that applies to a British Member's benefits in respect of his Reckonable Service under the Plan, the provisions of the Welfare Region and Pensions Act 1999 shall apply.

14.16   This Article 14 will be administered in accordance with the Finance Act, including all provisions regarding measurement and payment of any tax charges.

14.17   <u>Pension Sharing on divorce</u>.

Where a Pension Sharing Order has been made that applies to a British Member's benefits in respect of his Reckonable Service under the Plan, the provisions of the Welfare Reform and Pensions Act 1999 shall apply.   The British Member's ex-spouse may be permitted to join the Plan where the Administrative Committee in their discretion decide.   The terms on which the ex-spouse may join the Plan and the benefits payable to such ex-spouse shall be agreed by the Administrative Committee.

## ARTICLE 15 - NETHERLANDS MEMBERS

15.1    Netherlands Members are all Members whose income as Employees has at any time been subject to Netherlands income tax otherwise than in accordance with a special tax arrangement for individuals assigned to the Netherlands on a temporary basis.

15.2    Netherlands Members will be eligible to receive an annual contribution to the Plan as determined each year by the Board of Directors.  There shall be deducted from the amount of any contribution which would otherwise be made by the Firm under this Section for any Plan Year on behalf of a Netherlands Member any amount paid, directly or indirectly, by the Firm on behalf of such Netherlands Member during such Plan Year under any profit-sharing, retirement or pension plan, or any combination thereof, created under or mandated by the laws of the Netherlands for the benefit of such Member.

15.3    A part of the value of the Account of a Netherlands Member who retires or otherwise terminates his Service while assigned to the Netherlands office shall be used as hereinafter set forth, unless such Member shall emigrate from the Netherlands within three months after such termination of Service.  If such Member shall so emigrate, the provisions of this Article 15 shall no longer be applicable to such Member.

15.4    Said part shall be proportionate to -- on the one hand -- all contributions made on behalf of such Member by the Firm and by the Member pursuant to a commitment over the period such Member has been subject to Netherlands income tax otherwise than in accordance with a special tax arrangement for individuals assigned to the Netherlands on a temporary basis as compared to -- on the other hand -- all contributions made by and on behalf of such Member by the Firm over the whole period of his Service.

15.5    The use of said part shall be to purchase on behalf of such Member from a life insurance company authorized as provided in Section 18 of the Netherlands Act on the Life Insurance Business, a life-annuity for such Member and, if so desired by such Member, for the case that they should survive such Member, for his wife and, but only until they will have become of age, for his children and foster children.

15.6    If a Netherlands Member has not attained age 60 at his Retirement Date the annuities meant in Section 15.5 shall not commence before the earlier of such Member attaining age 60 or his disability or death.

15.7    If a Netherlands Member's Service is terminated or the Plan is discontinued prior to this Retirement Date, death or disability, a part as defined in Section 15.4 of the percentage of the value of the Account to which such Member is entitled in accordance with Section 8.1 shall be used to purchase a life-annuity or annuities as provided in Section 15.5.  Section 15.6 is applicable to such life-annuity or annuities.

15.8    If a Netherlands Member's Service is terminated by death or disability, a part as defined in Section 15.4 of the value of the Account of such Member shall be used to purchase, in case of his disability, a life-annuity or annuities as provided in Section 15.5 and, in case of his death, a life-annuity for his widow and, but only until they will have become of age, for his children and foster children.

15.9    If a Netherlands Member's Service is terminated by death without such Member leaving a wife or minor children or foster children, such part as defined in Section 15.4 of the value of his Account as otherwise shall have to be used as provided in Section 15.8 shall be forfeited without any payment.

15.10   The obligation to purchase an annuity in accordance with the provisions of the preceding Sections will come into effect three months after termination of a Netherlands Member's Service, unless such termination of Service is because of death or unless the Netherlands Member dies within three months after termination of Service, in which case an annuity will be purchased as referred to in Section 15.8 as soon as practicable after his death.

15.11   The Firm will notify the Inspector of Inland Revenue in Amsterdam, the Netherlands, of any termination of Service of a Netherlands Member and of a discontinuation of the Plan if at the time of such discontinuation there are any Netherlands Members, in each case with such further information as reasonably required by such Inspector to enable him to verify that the provisions of the Plan regarding a Netherlands Member are complied with.

15.12   Notwithstanding anything in this Article to the contrary, the Administrative Committee may authorize the payment or application of the Account of any Netherlands Member in accordance with the general provisions of the Plan, provided same meets with the approval of the Netherlands Ministry of Finance, Revenue Service, or subdivision thereof.

## ARTICLE 16 - CANADIAN MEMBERS

16.1    Anything in this Plan to the Contrary notwithstanding, the provisions of this Article 16 shall apply to each Member of the Plan (i) assigned to, and principally employed by the Firm in, an office of the Firm in Canada, and (ii) subject to taxation as a Canadian resident under the Federal Income Tax Law of the Dominion of Canada (hereinafter referred to as "Canadian Members").

16.2    Canadian Members will be eligible to receive an annual contribution to the Plan as determined each year by the Board of Directors.

16.3    The Firm shall not be obligated to make any contribution in respect of any Plan Year for a Member of the Plan who is a Canadian Member, provided, however, that for any Plan Year the Board of Directors of the Firm may in its absolute discretion authorize a contribution on behalf of Canadian Members in such amounts as they may deem appropriate, but not in excess of the amounts provided by Section 3.1; and provided, further, however, that there shall be deducted from the amount of any contribution so authorized on behalf of a Canadian Member any amounts paid, directly or indirectly, by the Firm on behalf of such Canadian Member during such Plan Year to a registered pension plan or similar plan created under the laws of Canada for the benefit of such Member.

16.4    The provisions of Section 8.1 shall not be applicable to Canadian Members except that if a Member's Service is terminated prior to his Retirement Date by death or disability, he or his Beneficiary shall be entitled to the full value of his After-Tax Contributions Account.

16.5     (i)  Prior to attaining age 45, (ii) within 60 days after being hired, if hired at or after age 45, or (iii) within 60 days after the effective date of this Section 16.5, if age 45 or older on such effective date, a Canadian Member may irrevocably elect to have the provisions of Section 8.1 apply to him.

16.6     In the event a Canadian Member makes an election pursuant to Section 16.5, the Retirement Date for such Member, as defined in Section 1.21, shall in no event be earlier than the first day of the month following the attainment of age 55, and the word "55th" shall be substituted for the word "50th" appearing in Section 8.3(a)(i) and (ii).

16.7     All other provisions of this Plan shall be equally applicable to Canadian Members, except to the extent clearly inconsistent with the provisions of this Article.

# ARTICLE 17 - ITALIAN MEMBERS

17.1    Anything in this Plan to the contrary notwithstanding, the provisions of this Article 17 shall apply to each Member of the Plan (i) assigned to, and principally employed by the Firm at, an office of the Firm in Italy and (ii) subject to taxation as an Italian resident under the income tax laws of Italy (hereinafter referred to as "Italian Members").

17.2    Italian Members will be eligible to receive an annual contribution to the Plan as determined each year by the Board of Directors.  Notwithstanding, in lieu of contributions made pursuant to this Section, the Firm may contribute to a profit-sharing, retirement or pension plan created under the laws of Italy for the benefit of Italian Members.

17.3    The Account of an Italian Member who has not completed 10 years of continuous Service shall be invested as determined by the Trustee.

17.4    In the event that an Italian Member's Service is terminated for any reason, an amount equal to the leaving indemnity or indemnity in lieu of notice, as the case may be, to which such Member is entitled under applicable provisions of Italian law shall, to the extent that the value of such Member's Firm Contributions Account is sufficient therefor, be paid to such Member (or to the Firm to the extent the Firm has already paid the Member the required amount) at such time as the applicable provisions of Italian law may require, in full and complete (if the value of the Member's Firm Contributions Account equals or exceeds the amount of the leaving indemnity or indemnity in lieu of notice to which such Member is entitled) or in partial (if the amount of the leaving indemnity or indemnity in lieu of notice to which such Member is entitled exceeds the value of the Member's Firm Contributions Account ) satisfaction of the Firm's obligation to pay such indemnity or indemnity in lieu of notice.  To the extent (and only to the extent) that any portion of the Firm Contributions Account of such Member remains after

payment of such indemnity, such portion, together with such Member's After-Tax Contributions Account, if any, shall be paid in accordance with applicable provisions of the Plan.

17.5    All other provisions of this Plan shall be equally applicable to Italian Members, except to the extent clearly inconsistent with the provisions of this Article.

## ARTICLE 18 - DANISH MEMBERS

18.1    Anything in this Plan to the contrary notwithstanding, the provisions of this Article 18 shall apply to each Member of the Plan (i) assigned to, and principally employed by, the Firm in an office of the Firm in Denmark; and (ii) subject to taxation as a Danish resident under the Danish income tax laws (hereinafter referred to as "Danish Members").

18.2    Danish Members will be eligible to receive an annual contribution to the Plan as determined each year by the Board of Directors.

18.3    In lieu of contributions based upon the Compensation of Danish Members as provided by Section 3.1, (a) McKinsey & Company, Inc. Scandinavia ("McKinsey Scandinavia") may contribute to a pension, savings, profit-sharing, or severance scheme or plan or any combination thereof, created under or mandated by the laws of Denmark for the benefit of such Member and, in addition, (b) the Firm may contribute to a Special Account with respect to the obligation created by the Pension Promise made by McKinsey Scandinavia.  Any amount contributed to a Special Account shall be invested in Fund C under the Trust Agreement.  When any Danish Member terminates his Service or in some other way becomes entitled to benefits under any Pension Promise made by McKinsey Scandinavia, an amount necessary to satisfy such Pension Promise shall be withdrawn by the Firm from the Special Account and applied by the Firm to provide benefits under such Pension Promise.  The amount withdrawn by the Firm with respect to any Danish Member shall not exceed the amount to which he would have been entitled if such amounts had been credited to an account for his benefit under the Plan.  If a Danish Member's Pension Promise is revoked by McKinsey Scandinavia, an amount equal to the amount which would have been credited to an account for his benefit under the Plan less any amounts paid to him pursuant to his Pension Promise, shall be paid to the Member (or to the

Firm to the extent the Firm has made a termination or other special payment to the Member as a result of the revocation of the Pension Promise).

18.4  "Pension Promise" for purposes of this Article 18 shall mean a pension promise made by McKinsey Scandinavia under the laws of Denmark which provides, upon retirement, at least one benefit substantially similar to a benefit provided by the Plan.

18.5  All other provisions of this Plan shall be equally applicable to Danish Members, except to the extent clearly inconsistent with provisions of this Article.

## ARTICLE 19 - JAPANESE MEMBERS

19.1     Anything in this Plan to the contrary notwithstanding, the provisions of this Article 19 shall apply to each Member of the Plan who on the last day of any Plan Year is permanently or temporarily assigned to an office of the Firm located in Japan (hereinafter referred to as "Japanese Members").

19.2     Japanese Members will be eligible to receive an annual contribution to the Plan as determined each year by the Board of Directors.

19.3     There shall be deducted from the amount of any contribution on behalf of a Japanese Member any amount paid, directly or indirectly, by the Firm on behalf of such Japanese Member during the Plan Year to any Qualified Retirement Plan created under the laws of Japan for the benefit of such Member.

19.4     (a)     Contributions made under Section 3.1, reduced by amounts described in Section 19.3, shall be credited to the accounts of Japanese Members as provided in Article 3 of the Plan; provided, however, that the amount so credited shall be reduced by any amount credited by the Firm to a Retirement Plan Reserve for such Japanese Member.  The balance, if any, shall be credited to a Special Account with respect to Japanese Members, which shall be invested in the Trust Fund in such Fund or Funds as the Investment Manager or, if none appointed, the Trustee shall direct, or in the absence of such direction, in Fund A.

(b)     When any Japanese Member terminates his Service or in some other way becomes entitled to benefits from the Retirement Plan Reserve and at the same time has satisfied the conditions for a distribution of benefits under the Plan, an amount equal to the benefit to be paid from the Retirement Plan Reserve shall be withdrawn by the Firm from the Special Account and applied by the Firm to provide such benefit.  The amount withdrawn by the Firm with

respect to any Japanese Member shall not exceed the amount to which he would be entitled if the amount credited to the Retirement Plan Reserve for his account had been credited to his account under the Plan.

19.5    "Qualified Retirement Plan" and "Retirement Plan Reserve" for the purpose of this Article shall mean a qualified retirement plan or retirement plan reserve, respectively, under the laws of Japan which provide, upon retirement, at least one benefit substantially similar to a benefit provided by the Plan.

19.6    All other provisions of this Plan shall be equally applicable to Japanese Members, except to the extent clearly inconsistent with the provisions of this Article.

## ARTICLE 20 - BRAZILIAN MEMBERS

20.1    Anything in this Plan to the contrary notwithstanding, McKinsey Limitada shall be deemed to be a subsidiary of the Firm included in the Plan, and the provisions of this Article 20 shall apply to each Member of the Plan (i) assigned to, and principally employed by, the Firm in an office of the Firm in Brazil, and (ii) subject to taxation as a Brazilian resident under the Brazilian income tax laws (hereinafter referred to as "Brazilian Members").

20.2    Brazilian Members will be eligible to receive an annual contribution to the Plan as determined each year by the Board of Directors.

20.3    There shall be deducted from the amount of any contribution on behalf of a Brazilian Member any amount paid, directly or indirectly, by the Firm on behalf of such Brazilian Member during such Plan Year under any profit-sharing, retirement or severance scheme or plan, or any combination thereof, created under or mandated by the laws of Brazil for the benefit of such Member.

20.4    All other provisions of this Plan shall be equally applicable to Brazilian Members, except to the extent clearly inconsistent with provisions of this Article.

<u>ARTICLE 21 - SWEDISH MEMBERS</u>

21.1    Notwithstanding anything in this Plan to the contrary, the provisions of this Article 21 shall apply to each Member of the Plan (i) assigned to and principally employed by the Firm in an office of the Firm in Sweden, and (ii) subject to taxation as a Swedish resident under the Swedish income tax laws (hereinafter referred to as "Swedish Members").

21.2    Swedish Members will be eligible to receive an annual contribution to the Plan as determined each year by the Board of Directors.

21.3    There shall be deducted from the amount of any contribution which would otherwise be made by the Firm to the Plan for any Plan Year on behalf of a Swedish Member any amount paid, directly or indirectly, by the Firm on behalf of such Swedish Member during such Plan Year under any profit-sharing, retirement or pension plan, or any combination thereof, created under or mandated by the laws of Sweden for the benefit of such Member.

21.4    In the event that a Swedish Member's Service is terminated for any reason, an amount equal to the Severance Payments to which such Member is entitled shall, to the extent that the value of such Member's Firm Contributions Account is sufficient therefor, be paid to such Member (or to the Firm to the extent that the Firm has already paid the Member the required amounts).  To the extent (and only to the extent) that any portion of such Member's Firm Contributions Account shall remain after payment of the Severance Payments, such portion, together with such Member's After-Tax Contributions Account, if any, shall be paid in accordance with the applicable provisions of the Plan.

21.5    "Severance Payments" for purposes of this Article shall mean the amounts to which the Swedish Member is entitled under the Firm's Severance Plan in Sweden which provides, upon retirement, at least one benefit substantially similar to a benefit provided in the

Plan.

21.6    With respect to all Members for whom accounts had been established under the Swedish Employee Benefit Plan of McKinsey & Company, Inc. (the "Swedish Plan"), such Member's account balances under the Plan shall be increased, effective as of the date of the merger of the Swedish Plan into the Plan, by the amounts standing to their credit under the Swedish Plan as of such date.

21.7    All other provisions of the Plan shall be applicable to Swedish Members, except to the extent clearly inconsistent with this Article.

## ARTICLE 22 - BELGIAN MEMBERS

22.1    Anything in this Plan to the contrary notwithstanding, the provisions of this Article 22 shall apply to each Member of the Plan (i) assigned to, and principally employed by, the Firm in an office of the Firm in Belgium, and (ii) subject to taxation as a Belgian resident under the Belgian income tax laws (hereinafter referred to as "Belgian Members"), other than a Member of the Plan described in Article 24.

22.2    Belgian Members will be eligible to receive an annual contribution to the Plan as determined each year by the Board of Directors.

22.3    There shall be deducted from the amount of any contribution which would otherwise be made by the Firm to the Plan for any Plan Year on behalf of a Belgian Member any amount paid, directly or indirectly, by the Firm on behalf of such Belgian Member during such Plan Year under any profit-sharing, retirement or pension plan, or any combination thereof, created under or mandated by the laws of Belgium for the benefit of such Member.

22.4    Upon written notice to the Administrative Committee, a Belgian Member shall be entitled to withdraw in cash, as of the last day of the Month next succeeding receipt by the Administrative Committee of such notice, up to an amount equal to the value of his Firm Contributions Account as of such date attributable to Firm Contributions made to the Plan on his behalf at least two years prior to the date of such withdrawal.  To the extent such Belgian Member's Firm Contributions Account in any Fund shall be sufficient therefor, the Member shall be permitted to designate the Fund against which the amount withdrawn is to be charged.

22.5    All other provisions of this Plan shall be equally applicable to Belgian Members, except to the extent clearly inconsistent with provisions of this Article.

## ARTICLE 23 - NORWEGIAN MEMBERS

23.1     Anything in this Plan to the contrary notwithstanding, the provisions of this Article 23 shall apply to each Member of the Plan (i) assigned to, and principally employed by, the Firm in an office of the Firm in Norway, and (ii) subject to taxation as a Norwegian resident under the Norwegian income tax laws (hereinafter referred to as "Norwegian Members").

23.2     Norwegian Members will be eligible to receive an annual contribution to the Plan as determined each year by the Board of Directors.

23.3     There shall be deducted from the amount of any contribution which would otherwise be made by the Firm to the Plan for any Plan Year on behalf of a Norwegian Member any amount paid, directly or indirectly, by the Firm on behalf of such Norwegian Member during such Plan Year under any profit-sharing, retirement or pension plan, or any combination thereof, created under or mandated by the laws of Norway for the benefit of such Member.

23.4     All other provisions of this Plan shall be equally applicable to Norwegian Members, except to the extent clearly inconsistent with provisions of this Article.

# ARTICLE 24 - EUROCENTER MEMBERS

24.1    Anything in this Plan to the contrary notwithstanding, the provisions of this Article 24 shall apply to each Member of the Plan temporarily assigned to and employed by the Firm at the Eurocenter office of the Firm in Belgium (hereinafter referred to as "Eurocenter Members").

24.2    The provisions of Articles 13 through 32 (or any additional Articles that may be added to the Plan from time to time with respect to Members employed by the Firm in a specified country) of the Plan, as the case may be, shall apply to each Eurocenter Member, determined as if the Eurocenter Member had remained at the office of the Firm at which he was principally employed immediately prior to his transfer to the Eurocenter office of the Firm.

24.3    All other provisions of this Plan shall be equally applicable to Eurocenter Members, except to the extent clearly inconsistent with provisions of this Article.

## ARTICLE 25 - SOUTH KOREAN MEMBERS

25.1    Anything in this Plan to the contrary notwithstanding, the provisions of this Article 25 shall apply to each Member of the Plan (i) assigned to, and principally employed by, the Firm at an office of the Firm in South Korea, and (ii) subject to taxation as a South Korean resident under the South Korean income tax laws (hereinafter referred to as "South Korean Members").

25.2    Except as provided in Section 25.3, there shall be no contributions made by the Firm on behalf of any South Korean Member unless he is a United States citizen or resident originally hired to work at an office of the Firm in the United States.

25.3    The provisions of Articles 13 through 32 (or any additional Articles that may be added from time to time with respect to Members employed by the Firm in a specified country) of the Plan, as the case may be, shall apply to each South Korean Member, determined as if the South Korean Member had remained at the office of the Firm at which he was principally employed immediately prior to his transfer to an office of the Firm in South Korea.

25.4    All other provisions of this Plan shall be equally applicable to South Korean Members, except to the extent clearly inconsistent with provisions of this Article.

## ARTICLE 26 - IRISH MEMBERS

26.1    Anything in this Plan to the contrary notwithstanding the provisions of this Article 26 shall apply to Irish Members in relation to contributions by the Firm and pensions or other benefits of Irish members in respect of Reckonable Service but without prejudice to the rights of such Irish Members in respect of other employment with the Firm to which the preservation requirements of the Pensions Act, 1990 may apply.

26.2    For the purpose of this Article:

(a)    "Ireland" means the Republic of Ireland.

(b)    "Irish Member" means a Member of the Plan domiciled in and resident in Ireland who is a Member of the Plan in respect of employment on a substantially full-time basis by the Firm at an office in Ireland.

(c)    (A)    "Reckonable Service" means service with the Firm by the Irish Member while his Compensation from the Firm is Fully Chargeable and shall include any period during which the Irish Member is retained in membership in accordance with Section B of this Definition.

(B)    Where it appears that a Member will cease to be Fully Chargeable to Irish income tax under Schedule E or Schedule D, Case III on his remuneration because the periods he will spend overseas are likely to qualify him for a deduction, under Section 154, Finance Act 1994, he may nevertheless at the discretion of the Trustees be retained in membership for a period of up to 5 years (or such longer period as the Revenue Commissioner may allow), if there is a likelihood that he will become Fully Chargeable to Irish income tax under Schedule E or Schedule D, Case III again and otherwise in such circumstances and on such conditions as approved by the Revenue Commissioner,

provided he does not in the meantime become a member of any other scheme giving benefits on death or retirement; if such conditions are not satisfied he shall cease to be an Irish Member and his accrued benefits shall be held under the provisions of this Article until he leaves service or retires.

(d)　"Retirement Date" means the first day of the calendar quarter subsequent to the calendar quarter in which an Irish Member attains age 60 or the first day of any other calendar quarter subsequent to the calendar quarter in which an Irish Member attains age 50 designated by mutual agreement of the Irish Member and the Firm.

(e)　"First Irish Plan Period" shall mean the period from April 6, 1994 to April 5, 1995.

(f)　"Chapter II" means Chapter II of Part I of the Irish Finance Act, 1972.

(g)　"Retirement Benefits Scheme" means any fund, scheme or arrangement approved under Chapter II or any other fund, scheme or arrangement approved for the purposes of this Article by the Revenue Commissioners.

(h)　"the Actuary" means an Actuary appointed by the Trustee with the consent of the Administrative Committee for the purposes of this Article.

(i)　"Fully Chargeable" means chargeable to Irish Income Tax under Schedule E or Schedule D, Case III, Income Tax Act, 1967 in respect of emoluments arising under a contract of service with the Firm.

(j)　"Irish Administrator" means the representative of the Administrative Committee in Ireland who is appointed to act as Administrator of the Plan for the purposes of Chapter II.

(k)     "Firm" means McKinsey & Company, Inc., McKinsey International Inc., or McKinsey & Company, Inc. Ireland, as appropriate.

26.3    In calculating the Compensation of an Irish Member all amounts receivable by way of expense allowance shall be disregarded.

26.4    (a)     Irish Members will be eligible to receive an annual contribution to the Plan as determined each year by the Board of Directors.

(b)     The Firm shall make no contribution to the Plan in respect of any Irish Member for any period prior to the First Irish Plan Period.  In respect of the First Irish Plan Period the Firm shall make a contribution to the Plan for the credit of each Irish Member who was then in Reckonable Service in accordance with Section 3.1 on the basis of the actual Compensation received by the Irish Member during the First Irish Plan Period.  In respect of each Plan Year subsequent to the First Irish Plan Period, the Firm shall contribute to the Plan in respect of each Irish Member who is in Reckonable Service in that Plan Year in accordance with Section 3.1.

(c)     Notwithstanding anything to the contrary, the contribution which would otherwise be made by the Firm to the Plan for any Plan Year on behalf of an Irish Member shall be reduced by any amount paid, directly or indirectly, by the Firm on behalf of such Irish Member during such Plan Year under any profit-sharing, retirement or pension plan, or any combination thereof, created under or mandated by the laws of the Republic of Ireland for the benefit of such Member (but excluding any contributions made by the Firm to provide social security benefits).

(d)     Five years before the Retirement Date of each Irish Member the Administrative Committee shall review the retirement benefits then accrued to such Irish

Member under the Plan to ensure that they do not exceed the limitations in Section 26.13.

26.5    On the retirement of an Irish member at his Retirement Date his Account shall be converted into annuity income.  Unless a married Irish Member elects to the contrary he will be deemed to have elected Option C of this Section.   In the case of an Irish Member who is not married his Account shall be applied by the Administrative Committee as follows:

First in the payment to the Irish Member of Monthly installments of annuity income on the first day of each Month commencing with the Month in which his Retirement Date occurs and ending with the Month in which his death occurs.  If the amount of each such Monthly payment would be less than £4.33 the Administrative Committee may direct that the actuarial equivalent be paid quarterly, annually or in one lump sum.

Notwithstanding anything to the contrary in this Section at least thirty days prior to his Retirement Date, an Irish Member may elect one of the following options with respect to all or part of such annuity income:

Option A - To receive in lieu of the said Monthly installments of annuity income reduced Monthly installments in order that on the death of an Irish Member before one hundred and twenty such Monthly payments have been paid, such pension shall continue to be paid to the Irish Member's personal representatives until the aggregate of the Monthly payments actually made to the deceased Irish Member and to his personal representatives total one hundred and twenty such payments.

Option B - To have the value of all or part of his Firm Contributions Account paid to him in cash on his retirement provided that:

(A)     The value so paid shall not exceed 3/80ths of his Final Remuneration (as defined in Section 26.12) from the Firm for each year of his Reckonable Service or such greater amount as may be approvable by the Revenue Commissioners under Chapter II.

(B)     To the extent that such cash payment shall not be made, the balance of the Irish Member's Account shall be paid to him in the form of a non-commutable, non-assignable pension in accordance with the foregoing provisions of this Section, except that the Irish Member may elect that Option A or C shall apply to such pension and in exceptional cases of serious ill health the balance of the Irish Member's Account may at the Trustee's discretion also be paid to the Irish Member in cash.

Option C - If and to the extent that the said annuity income shall, after giving effect to paragraph First of this Section, be insufficient to procure an annuity for a surviving spouse of the maximum amount stipulated by Proviso (a) to paragraph Second of this Section, to receive in lieu of the Monthly installments of annuity income referred to in the said paragraph First reduced installments of annuity income in order that there may be payable to such surviving spouse such an annuity as, with any annuity payable to such spouse pursuant to the said paragraph Second, will not exceed the said maximum amount and provided that the amount of retirement income remaining payable to the Member shall not be less than the amount surrendered for the spouse and provided nevertheless that such Irish Member may elect that Option A or B shall apply to the Monthly installments of annuity income remaining payable to him.

Second in the provision of an annuity or annuities for a surviving spouse and/or such one or more of the other dependants of the Irish Member in such proportions as the Administrative Committee shall think fit, to commence on the death of the Irish Member (or in the case of an Irish Member who elects Option A in paragraph First of this Section on the tenth anniversary of the date of his retirement, if this anniversary falls after his death), and to cease on the death of the dependant or in the case of a child — on the earlier attainment of age 18 (unless such child is receiving full-time education or vocational training or is suffering from serious disability which made it financially dependant upon the Member), provided that:

(a)     any annuity payable to a surviving spouse or other dependant shall not exceed two-thirds of the maximum pension which could have been provided by the Firm for the deceased Irish Member in accordance with Section 26.13(a); and

(b)     if the Irish Member leaves surviving a spouse and one or more other dependants or no spouse but one or more other dependants, the aggregate of the annuities payable to such surviving spouse and other dependants shall not in total exceed the maximum pension which could have been provided by the Firm for the deceased Irish Member in accordance with Section 26.13(a).

For the purpose of this Section the expression "dependant" shall in relation to an individual mean and include:

(i)     any widow or widower of that individual;

(ii)     any child of that individual where child means the legal and/or natural child or children whether of the whole blood or the half blood including legally adopted

children under the age of 18 or 21 if in receipt of full-time education, living or *en ventre sa mere* at the date of death of that individual provided such child or children is or are born alive subsequently and <u>provided</u> that the relationship for the purposes of this Plan between any child and his/her father and mother (or either of them) shall be determined irrespective of whether his/her father or mother have been married to each other; and

(iii)     any other person who in the opinion of the Administrative Committee was wholly or in part dependant upon the earnings of that individual or whose maintenance and support such individual had undertaken before his death.

26.6     In the event that on the retirement of an Irish Member his Account shall be insufficient to procure the whole of the benefits referred to in Section 26.5 then the Account available shall be applied first to procure the benefits for the Irish Member under paragraph First of Section 26.5 and any balance thereafter remaining shall be applied so far as may be possible to procuring the benefits for a surviving spouse and dependants under paragraph Second of Section 26.5.

26.7     If an Irish Member's Reckonable Service is terminated by reason of Disability at any time prior to his Retirement Date, his Account shall be paid to him in the manner set out in paragraph First of Section 26.5.

26.8     If the Irish Member's Reckonable Service is terminated by death prior to his Retirement Date there shall be payable in accordance with Section 26.12 an amount equal to the value of his Account as of the last day of the month in which his death occurs together with an amount equal to any voluntary contributions made by such Irish Member in accordance with Section 26.16.  Provided that if the aggregate of the amounts so payable under the Plan and under all other Retirement Benefits Schemes approved by the Revenue Commissioners would

exceed the amount approvable by the Revenue Commissioners the balance shall be applied in procuring for such deceased Irish Member's widow or dependants an annuity or annuities in accordance with paragraph Second of Section 26.5.

26.9    (a) If an Irish Member's Reckonable Service is terminated prior to his Retirement Date other than by reason of death or Disability he shall be entitled to have his Account :

(1)    applied at the date of termination in procuring for such Irish Member from the Irish branch of a life office a non-assignable pension commencing at age 60 commutable only to the extent mentioned in Option B in Section 26.5; or

(2)    in the event of such Irish Member being admitted to membership of some other Retirement Benefits Scheme be transferred to the trustee or trustees of that other Retirement Benefits Scheme; or

(3)    applied at Retirement Date in procuring out of the Plan or from the Irish branch of a life office benefits in accordance with paragraph (1) of this Section.

(4)    If the Irish Member has completed ten years of Reckonable Service prior to his termination of employment with the Firm, applied toward the purchase, in such proportion as the Irish Member shall designate, of units in Funds A, B, C, or G.  At such time as said Irish Member attains age 60 (or prior to such time if so requested by the Irish Member), the whole of his Account shall be applied in accordance with subparagraphs (1), (2) or (3) of this paragraph or, in the event of his earlier Disability or death, shall be applied in accordance with Section 26.7 or Section 26.8, respectively.

(b)    The value of an Irish Member's Account shall vary until his Retirement Date on the same basis as would have applied had the Irish Member remained in Reckonable Service until his Retirement Date but no further contributions by or in respect of the Irish

Member may be credited to his Account in respect of any period after the date of leaving Reckonable Service and _provided_ that where an Irish Member leaves Reckonable Service in accordance with this Section 26.9 having completed not less than five years Reckonable Service the amount of such variation shall in no event be less than the value of the Account at the date of termination of Reckonable Service increased by the revaluation percentage prescribed under the Pensions Act in respect of each revaluation year (as defined in the Pensions Act) between the date on which the Irish Member left Reckonable Service and the earliest of the date of his death and his actual Retirement Date.

      (c)     Notwithstanding anything to the contrary in this Section:

          (i)     such Irish Member may elect that paragraph Second in Section 26.5 shall apply to his Account or any amount payable on death under any Policy effected under Section 26.5; and

          (ii)     in the event of his death prior to the commencement of his own pension an amount equal to that part of his Account calculated as aforesaid which is attributable to his own pension shall be paid to his personal representatives.

26.10  If with the consent of the Firm an Irish Member remains in Reckonable Service after attainment of age 60 reference to Retirement Date in this Article shall where the context so requires or admits be deemed to include the actual date of retirement of such Irish Member.  The benefits of such Irish Member under this Article shall be actuarially increased but the amount of such increase shall not be such as would result in the Plan ceasing to be approved by the Revenue Commissioners under Chapter II.

26.11   Section 1.21 and Article 6 and Section 3.3 (except to the extent mentioned in Section 26.17(v)) and Sections 3.5, 4.4, 8.4 and 10.4 shall not apply to Irish Members but except to the extent that they are inconsistent with the provisions of this Article all other provisions of the Plan shall apply to Irish Members.

26.12   An Irish Member may nominate his spouse or any other person included in the Named Class in favour of whom he prefers the Trustee to exercise the power conferred upon it by this Section.   The Administrative Committee shall have power to recommend the Trustee to pay or apply any amount payable on the death of an Irish Member pursuant to this Article to or for the benefit of such one or more of the Named Class (as hereinafter defined) or to the personal representatives of such deceased Irish Member in such amounts at such times and generally in such manner as the Trustee in its absolute discretion shall from time to time think fit, provided that any balance of the said amount remaining unpaid or unapplied as aforesaid after the expiration of a period of two years from the date of the Irish Member's death shall be paid to the Irish Member's personal representatives.

For the purposes aforesaid the expression "the Named Class" shall mean and include:

(a)     any dependant as such term is defined in Section 26.5 herein;

(b)     any ancestor, descendant or collateral relative (whether of whole blood or the half blood) other than the persons aforesaid of an Irish Member;

(c)     any person other than the persons aforesaid who is or was wholly or in part dependant or in the opinion of the Trustee is or was wholly or in part dependant upon the earnings of an Irish Member or for whose maintenance and support the Irish Member was legally liable immediately before his death; and

(d) any natural person other than the persons aforesaid whose name and address have been notified in writing to the Administrative Committee by the Irish Member as being a person whom the Irish Member wishes the Trustee to consider as a recipient of any benefit payable on the Irish Member's death.

Each Irish Member may nominate a child, spouse or other person in the Named Class in favour of whom he would prefer the Trustee to exercise its discretionary power under this Section.

26.13 The benefits herein described shall, if necessary to ensure the approval or continued approval of the Plan as an exempt approved scheme within the meaning of Chapter II, be reduced to such level as is considered appropriate by the Revenue Commissioners. In particular:

(i) the pension payable in respect of an Irish Member from Retirement Date shall not exceed the greater of:

(a) when aggregated with all annuities and the annuity equivalent of all non-pension benefits received or receivable under all other retirement benefit schemes of the Firm, one-sixtieth of that Member's Final Remuneration for each year of Reckonable Service with the Firm subject to a maximum of forty years; or

(b) after taking into account all Retained Pension Benefits, such proportion of the amount which would be applicable under the following table as the number of years of service completed with the Firm bears to the number of years between the date of entry into service with the Firm and Retirement Date any years in excess of forty years disregarded:

| Years of actual Service with the Firm | Fraction of Final Remuneration |
| --- | --- |
| 1-5 | 1/60th for each year |
| 6 | 8/60ths |
| 7 | 16/60ths |
| 8 | 24/60ths |
| 9 | 32/60ths |
| 10 or more | 40/60ths |

(ii)     The amount of the annuity payable in respect of an Irish Member which may be taken in lump sum form must not exceed the greater of:

(a)     when aggregated with all other lump sum benefits received or receivable from all other retirement benefit schemes of the Firm, three-eightieths of that Member's Final Remuneration for each year of service with the Firm subject to a maximum of forty years; or

(b)     after taking into account all Retained Lump Sum Benefits, such proportion of the amount which would be applicable under the following table as the number of years of service completed with the Firm bears to the number of years between the date of entry into service with the Firm and Retirement Date any years in excess of forty being disregarded:

| Years of actual Service with the Firm | Fraction of Final Remuneration |
| --- | --- |
| 1-8 | 3/80ths for each year |
| 9 | 30/80ths |
| 10 | 36/80ths |
| 11 | 42/80ths |

| 12 | 48/80ths |
| 13 | 54/80ths |
| 14 | 63/80ths |
| 15 | 72/80ths |
| 16 | 81/80ths |
| 17 | 90/80ths |
| 18 | 99/80ths |
| 19 | 108/80ths |
| 20 or more | 120/80ths |

provided always that the lump sum benefit is not restricted if the annuity equivalent of all benefits received or receivable under all retirement benefit schemes of the Firm would be less than £260 per annum or such greater amount as the Revenue Commissioners permit or if the Irish Member is in a state of serious ill-health.

(iii)    the amount of Dependant's annuity or any children's annuity including any Retained Dependant's Benefit in respect of that individual shall not exceed two-thirds of the maximum pension which could be provided for the Irish Member under the Plan without taking account of any Retained Pension Benefit.

(iv)    the aggregate amount of all Dependant's annuities and children's annuities including the aggregate of any Retained Dependant's Pension shall not exceed the maximum pension which could be provided for the Irish Member under the Plan without taking account of any Retained Pension Benefits.

(v)     any pensions which are expressed to increase by an amount in excess of 3% per annum compound shall be restricted to the maximum amount of pension approvable by the Revenue Commissioners increasing by the lesser of the percentage increase expressed in the Rules and the increase in the Index from the date of respective pensions commenced payment.

For purposes of this Article:

"Final Remuneration" means

(a)   in respect of an Irish Member who is not a 20% Director, the greatest of paragraph (i), (ii) and (iii) below or

(b)   in respect of an Irish Member who is a 20% Director, the amount in subparagraph (ii) below

(i)   base pay of the Irish Member for any one of the five years preceding Retirement Date plus the average over a period of three years or such other period as the Revenue Commissioners will permit of any fluctuating emoluments which averaging must end on the last day of the year for which base pay is taken for the purposes of this calculation or

(ii)   the average of the Member's total emoluments for any three or more consecutive years ending not earlier than 10 years before Retirement Date or

(iii)   save only in such cases as the Revenue Commissioners will not permit the annual rate of basic pay at the date of retirement or at any date within the previous year plus the average of any fluctuating emoluments calculated over a period of three years ending on the relevant date or over such other period as the

Revenue Commissioners shall permit.

<u>Provided</u> that for the purposes of calculating Final Remuneration where remuneration under (i) and (ii) above is calculated by reference to a year or years other than the twelve months ending with Retirement Date each such year's remuneration may be increased in proportion to the increase in the cost of living as measured by the Index for a period from the end of the year up to Retirement Date.  Provided Always that the preceding proviso may not be applied in respect of an Irish Member who is a 20% Director unless it can be shown to the satisfaction of the Revenue Commissioners that the amount of the non-commutable pension payable or remaining payable or payable before the application of Rules permitting commutation of the whole of the benefits to the Director is not less than two-thirds of the annuity equivalent of all retirement benefits payable to the director (or to which he is entitled) under all schemes of the Firm at the time any lump sum benefits are to be paid to him under the Rules.

"Index" means the Consumer Price Index or any other official cost of living index published by authority in place of or in substitution for that Index and agreed by the Revenue Commissioners as being suitable.

"20% Director" means any Irish Member who is a director and who either alone or together with his spouse and/or minor children, is or becomes at any time within the three years of Normal Pension Date, or earlier retirement or leaving service was the beneficial owner of shares which, when added to any shares held by the trustees of any settlement to which the director or his spouse had transferred assets, carry or carried more than 20% of the voting rights in the Firm.

"Retained Pension Benefits" means benefits to which the Irish Member is entitled under other retirement benefit schemes of the Firm or under retirement benefit schemes of previous employers and includes:

(a)   pensions, whether deferred or already in payment, including any part of a deferred pension which is commutable,

(b)   the annuity equivalent of lump sums received or receivable, including any already received in commutation of pension,

(c)   where so required by the Revenue Commissioners Retirement Annuities under Section 235 of the Irish Income Tax Act of 1967 in respect of previous self-employment or non-pensionable service,

(d)   the annuity equivalent of any amount received by way of refund of contributions and any interest thereon if they were received after the age of 45 and exceeding £2,000.

Provided that benefits in (a), (b) and (c) above may be ignored if their annuity equivalent does not exceed £260 per annum in all or such greater amount as the Revenue Commissioners shall permit.

"Retained Dependant's Pension" means a pension to which the respective Dependant of the Irish Member is entitled on his death under other retirement benefit schemes of the Firm or under retirement benefit schemes of previous employers or by virtue of Section 235 or 235A of the Irish Income Tax Act 1967 relating to previous employments and exceeding IR£260 per annum or such greater amount as the Revenue Commissioners shall permit.

"Retained Lump Sum Benefits" means lump sums to which the Irish Member is entitled under other retirement benefits schemes of the Firm or under retirement benefit schemes of previous employers and includes:

(a)  lump sums received or receivable from any retirement benefit scheme including sums received or receivable in commutation or pension,

(b)  sums received or receivable in commutation of retirement annuities under contracts approved under Section 235 of the Irish Income Tax Act 1967,

(c)  amounts received by way of refund of contributions and any interest thereon, if they were received after the age of 45 and exceeded £2,000

Provided that benefits in (a) and (b) above may be ignored if they do not exceed £260 in all or such greater amount as the Revenue Commissioners shall permit.

26.14  (a)  Provided that approval of the Plan by the Revenue Commissioners under Chapter II would not thereby be prejudiced, the Trustee at the request of the Firm may (pursuant to rules of uniform application) credit an Irish Member with one or more years of Reckonable Service and his benefits shall thereupon be calculated accordingly.

(b)  The Trustee may provide for the increase of any annuity payable under this Article as from the date of its commencement in proportion to but not exceeding the rise in the cost of living since that date measured by reference to the Index.

26.15  The Trustee may and at the request of an Irish Member shall secure the payment of any pension or annuity payable in accordance with this Article by the purchase from the Irish Branch of a life office of a deferred or immediate annuity policy or any other policy of insurance (as appropriate) endorsed so as to be non-assignable, and commutable only to the extent provided by this Article.

26.16   (a) An Irish Member may make voluntary contributions to the Plan in order to increase his pension and other benefits under the Plan.

(b)   The Trustee may make Regulations regarding the dates on which such voluntary contributions may commence and the amounts of such voluntary contributions subject to the limit referred to in paragraph (e) of this Section.

(c)   Subject to paragraph (e) of this Section and to the said Regulations any such voluntary contributions may be increased at any time and may be reduced or discontinued in cases of hardship with the consent of the Trustee.

(d)   The benefits secured by such voluntary contributions shall be determined by the Actuary and approved by the Trustee provided that the maximum amount of pension stipulated by Section 26.13 shall not be exceeded thereby.

(e)   The aggregate of the contributions made by an Irish Member under this Section and any other Article shall not exceed 15% of his Compensation in each year but in no event shall such contributions exceed the limit specified in Section 3.4.

26.17   All superannuation benefits accrued under this Article will be payable by the Irish Administrator who will account to the Revenue Commissioners for Irish Income Tax thereon in accordance with the undertaking which he has given as a condition of the approval of the Plan under Chapter II.

26.18   When an Irish Member ceases to be in Reckonable Service because his Compensation ceases to be Fully Chargeable those superannuation benefits already secured under this Article in respect of Reckonable Service with the Firm shall continue to be held under and be subject to all of the provisions of this Article and when they become payable will be payable by the Irish Administrator in accordance with Section 26.17.

## ARTICLE 27 - INDIAN MEMBERS

27.1    Anything in this Plan to the contrary notwithstanding, the provisions of this Article 27 shall apply to each Member of the Plan (i) assigned to, and principally employed by, the Firm in an office of the Firm in India, and (ii) subject to taxation as an Indian resident under the Indian income tax laws (hereinafter referred to as "Indian Members").

27.2    Indian Members will be eligible to receive an annual contribution to the Plan as determined each year by the Board of Directors.

27.3    Except as provided in Section 27.4, there shall be no contributions made by the Firm on behalf of any Indian Member unless he is a United States citizen or resident originally hired to work at an office of the Firm in the United States.

27.4    If an Indian Member was previously employed by an office outside of India and has transferred to India, the provisions of Article 13 through 32 of the Plan (or any additional Articles that may be added from time to time with respect to Members employed by the Firm in a specified country), as the case may be, shall apply to each Indian Member, determined as if the Indian Member had remained at the office of the Firm at which he was principally employed immediately prior to his transfer to an office of the Firm in India.

27.5    There shall be deducted from the amount of any contribution which would otherwise be made by the Firm for any Plan Year on behalf of any Indian Member any amount paid, directly or indirectly, by the Firm on behalf of such Indian Member during such Plan Year under any profit-sharing, retirement or pension plan, or any combination thereof, created under or mandated by the laws of India for the benefit of such Indian Member.

27.6    All other provisions of the Plan shall be applicable to Indian Members, except to the extent clearly consistent with this Article.

## ARTICLE 28 - SOUTH AFRICAN MEMBERS

28.1    Anything in this Plan to the contrary notwithstanding, the provisions of this Article 28 shall apply to each Member of the Plan (i) assigned to, and principally employed by, the Firm in an office of the Firm in South Africa, and (ii) subject to taxation as a South African resident under the South African income tax laws (hereinafter referred to as "South African Members").

28.2    South African Members will be eligible to receive an annual contribution to the Plan as determined each year by the Board of Directors.

28.3    There shall be deducted from the amount of any contribution which would otherwise be made by the Firm for any Plan Year on behalf of a South African Member any amount paid, directly or indirectly, by the Firm on behalf of such South African Member during such Plan Year under any profit-sharing, retirement or pension plan, or any combination thereof, created under or mandated by the laws of South Africa for the benefit of such Member.

28.4    In the event a South African Member's service is terminated for any reason, such Member's Firm Contributions Account equal in value to the Member's Severance Amount and, if applicable, any leaving indemnity or other termination payments to which such Member may be entitled under applicable provisions of South African law (or the entire Firm Contributions Account if its value is less than the Severance Amount, leaving indemnity and/or termination payments) shall be paid to such Member or his Beneficiary (or to the Firm to the extent the Firm has already paid the Severance Amount, leaving indemnity and/or termination payments to such Member or his Beneficiary).    To the extent that any portion of such Member's Firm Contributions Account remains after such payments, such portion, together with Member's After-Tax Contributions Account, if any, shall be paid in accordance with the applicable

provisions of the Plan.

28.5    Upon written notice to the Administrative Committee, a South African Member shall be entitled to withdraw as cash and transfer to a retirement plan maintained by the Firm and approved under the laws of South Africa, as of the last day of the month next succeeding receipt by the Administrative Committee of such notice, up to an amount equal to the value of his Firm Contributions Account as of such date, which is attributable to Firm Contributions to the Plan on his behalf at least two years prior to the date of such withdrawal, unless such Member has completed 5 years of service.

28.6    "Severance Amount" for purposes of this Article shall mean any amounts to which the South African Member is entitled under the Firm's Severance Plan in South Africa, which provides, upon retirement, at least one benefit substantially similar to the benefit provided in the Plan.

28.7    All other provisions of the Plan shall be equally applicable to South African Members, except to the extent clearly inconsistent with this Article.

## ARTICLE 29 - SWISS MEMBERS

29.1   Anything in this Plan to the contrary notwithstanding, the provisions of this Article 29 shall apply to each Member of the Plan (i) assigned to, and principally employed by, the Firm in an office of the Firm in Switzerland, and (ii) subject to taxation as a Swiss resident under the Swiss income tax laws (hereinafter referred to as "Swiss Members").

29.2   Swiss Members will be eligible to receive an annual contribution to the Plan as determined each year by the Board of Directors.

29.3   There shall be deducted from the amount of any contribution which would otherwise be made by the Firm for any Plan Year on behalf of a Swiss Member any amount paid, directly or indirectly, by the Firm on behalf of such Swiss Member during such Plan Year under any profit-sharing, retirement or pension plan, or any combination thereof, created under or mandated by the laws of Switzerland for the benefit of such Member.

29.4   All other provisions of the Plan shall be equally applicable to Swiss Members, except to the extent clearly inconsistent with this Article.

# ARTICLE 30 - ARGENTINA MEMBERS

30.1    Anything in this Plan to the contrary notwithstanding, the provisions of this Article 30 shall apply to each Member of the Plan (i) assigned to, and principally employed by, the Firm in an office of the Firm in Argentina, and (ii) subject to taxation as an Argentina resident under the Argentina income tax laws (hereinafter referred to as "Argentina Members").

30.2    Argentina Members will be eligible to receive an annual contribution as determined each year by the Board of Directors.

30.3    There shall be deducted from the amount of any contribution which would otherwise be made by the Firm for any Plan Year on behalf of an Argentina Member any amount paid, directly or indirectly, by the Firm on behalf of such Argentina Member during such Plan Year under any profit-sharing, retirement or pension plan, or any combination thereof, created under or mandated by the laws of Argentina for the benefit of such Member.

30.4    In the event a Argentina Member's service is terminated for any reason, the value of such Member's Firm Contributions Account equal in value to the Member's Severance Amount and, if applicable, any leaving indemnity or other termination payments to which such Member may be entitled under applicable provisions of Argentina law (or his entire Firm Contributions Account if its value is less than the Severance Amount, leaving indemnity and/or termination payments) shall be paid to such Member or his Beneficiary (or to the Firm to the extent the Firm has already paid the Severance Amount, leaving indemnity and/or termination payments to such Member or his Beneficiary). To the extent that any portion of such Member's Firm Contributions Account remains after such payments, such portion, together with such Member's After-Tax Contributions Account, if any, shall be paid in accordance with the applicable provisions of the Plan.

30.5    "Severance Amount" for purposes of this Article shall mean the amount to which the Argentina Member is entitled under the Firm's Severance Plan in Argentina, if any, and which provides, upon retirement or termination, at least one benefit substantially similar to the benefit provided in the Plan.

30.6    Sections 3.2 and 3.3 of the Plan shall not apply to Argentina Members.  All other provisions of the Plan shall be equally applicable to Argentina Members, except to the extent clearly inconsistent with this Article.

## ARTICLE 31 - PUERTO RICO MEMBERS

31.1    Anything in this Plan to the contrary notwithstanding, the provisions of this Article 31 shall apply to each Member of the Plan (i) assigned to, and principally employed by, the Firm in an office of the Firm in Puerto Rico, and (ii) subject to taxation as a Puerto Rico resident under the Puerto Rico income tax laws (hereinafter referred to as "Puerto Rico Members").

31.2    Puerto Rico Members will be eligible to receive an annual contribution as determined each year by the Board of Directors.

31.3    There shall be deducted from the amount of any contribution which would otherwise be made by the Firm for any Plan Year on behalf of a Puerto Rico Member any amount paid, directly or indirectly, by the Firm on behalf of such Puerto Rico Member during such Plan Year under any profit-sharing, retirement or pension plan, or any combination thereof, created under or mandated by the laws of Puerto Rico for the benefit of such Member.

31.4    Section 3.2 and 3.3 of the Plan shall not apply to Puerto Rico Members.  All other provisions of the Plan shall be equally applicable to Puerto Rico Members, except to the extent clearly inconsistent with this Article.

## ARTICLE 32 - OTHER FOREIGN MEMBERS

32.1    Anything in this Plan to the contrary notwithstanding, the provisions of this Article 32 shall apply to each Member of the Plan (i) assigned to, and principally employed by, the Firm in an office of the Firm in a country listed on Appendix A attached hereto, and (ii) subject to taxation as a resident under the income tax laws of such country (hereinafter referred to as "Foreign Members").

32.2    Foreign Members will be eligible to receive an annual contribution as determined each year by the Board of Directors.

32.3    There shall be deducted from the amount of any contribution which would otherwise be made by the Firm for any Plan Year on behalf of a Foreign Member any amount paid, directly or indirectly, by the Firm on behalf of such Foreign Member during such Plan Year under any profit-sharing, retirement or pension plan, or any combination thereof, created under or mandated by the laws of the applicable country of residence of such Foreign Member for the benefit of such Member.

32.4    In the event a Foreign Member's service is terminated for any reason, the value of such Member's Firm Contributions Account equal in value to the Member's Severance Amount and, if applicable, any leaving indemnity or other termination payments to which such Member may be entitled under applicable provisions of the laws of the applicable country of residence of such Foreign Member (or his entire Firm Contributions Account if its value is less than the Severance Amount, leaving indemnity and/or termination payments) shall be paid to such Member or his Beneficiary (or to the Firm to the extent the Firm has already paid the Severance Amount, leaving indemnity and/or termination payments to such Member or his Beneficiary). To the extent that any portion of such Member's Firm Contributions Account remains after such

payments, such portion, together with such Member's After-Tax Contributions Account, if any, shall be paid in accordance with the applicable provisions of the Plan.

32.5    "Severance Amount" for purposes of this Article shall mean the amount to which the Foreign Member is entitled under the Firm's Severance Plan in the applicable country in which such Member is employed, if any, and which provides, upon retirement or termination, at least one benefit substantially similar to the benefit provided in the Plan.

32.6    Sections 3.2 and 3.3 of the Plan shall not apply to Foreign Members.  All other provisions of the Plan shall be equally applicable to Foreign Members, except to the extent clearly inconsistent with this Article.

32.7    Notwithstanding anything herein to the contrary, effective as of January 1, 2009, a Foreign Member who is assigned to, and principally employed by, the Firm in an office of the Firm in Austria and who is designated as a Fellow, Intern or Summer Associate shall not be eligible for any contributions from the Firm under Sections 3.1 and 32.2 of the Plan.

**IN WITNESS WHEREOF**, McKinsey & Company, Inc. has caused the Plan to be executed this 18th day of January, 2013.

MCKINSEY & COMPANY, INC.

By: _____

Name:  Brian W. Nocco
Title:  Vice President - Finance

# APPENDIX A

Mexico

Spain

France

Australia

Venezuela

Malaysia

Indonesia

Columbia

Poland

Russia

Turkey

The Czech Republic

The Peoples Republic of China

Portugal

Chile

Thailand

Taiwan

Hungary

Finland

Singapore

Philippines

New Zealand

The United Arab Emirates

Greece

Israel

Austria

Qatar

Croatia

Morocco

Peru

Bahrain

Bulgaria

Egypt

Romania

Slovakia
Ukraine
Costa Rica
Saudi Arabia
Nigeria
Vietnam
Angola

# McKINSEY & COMPANY, INC.

Unanimous Written Consent of the
Administrative Committee of the Board of Directors

The undersigned, being all the members of the Administrative Committee of the Board of Directors of McKinsey & Company, Inc., a New York corporation (the "Corporation"), acting pursuant to Section 708 of the Business Corporation Law of the State of New York and the By-Laws of the Corporation, do hereby consent to the adoption of and hereby adopt the following resolutions without the formality of convening a meeting and direct that this consent be filed with the minutes of the proceedings of the Board of Directors:

RESOLVED, that the McKinsey & Company, Inc. Profit-Sharing Retirement Plan, as amended and restated as of January 1, 2013 be, and hereby is, amended, effective as of October 1, 2013, as set forth in Annex A, attached hereto and made a part hereof; and

FURTHER RESOLVED, that the officers of the Corporation be, and each of them is, hereby authorized, empowered and directed to take such actions and execute and deliver such documents as may be necessary or appropriate to effectuate the intent and purposes of the foregoing resolutions.

This consent may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed an original, and such counterparts shall together constitute one and the same instrument.

The undersigned hereby consent to the foregoing resolutions.

Dated as of October 4, 2013.

_____
Vikram Malhotra, Director

_____
Elizabeth Lempres, Director

_____
Christian Casal, Director

## McKINSEY & COMPANY, INC.

Unanimous Written Consent of the
Administrative Committee of the Board of Directors

The undersigned, being all the members of the Administrative Committee of the Board of Directors of McKinsey & Company, Inc., a New York corporation (the "Corporation"), acting pursuant to Section 708 of the Business Corporation Law of the State of New York and the By-Laws of the Corporation, do hereby consent to the adoption of and hereby adopt the following resolutions without the formality of convening a meeting and direct that this consent be filed with the minutes of the proceedings of the Board of Directors:

RESOLVED, that the McKinsey & Company, Inc. Profit-Sharing Retirement Plan, as amended and restated as of January 1, 2013 be, and hereby is, amended, effective as of October 1, 2013, as set forth in Annex A, attached hereto and made a part hereof; and

FURTHER RESOLVED, that the officers of the Corporation be, and each of them is, hereby authorized, empowered and directed to take such actions and execute and deliver such documents as may be necessary or appropriate to effectuate the intent and purposes of the foregoing resolutions.

This consent may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed an original, and such counterparts shall together constitute one and the same instrument.

The undersigned hereby consent to the foregoing resolutions.

Dated as of October 4, 2013.

 

_____
Vikram Malhotra, Director

_____
Elizabeth Lempres, Director

_____
Christian Casal, Director

## McKINSEY & COMPANY, INC.

### Unanimous Written Consent of the
### Administrative Committee of the Board of Directors

The undersigned, being all the members of the Administrative Committee of the Board of Directors of McKinsey & Company, Inc., a New York corporation (the "Corporation"), acting pursuant to Section 708 of the Business Corporation Law of the State of New York and the By-Laws of the Corporation, do hereby consent to the adoption of and hereby adopt the following resolutions without the formality of convening a meeting and direct that this consent be filed with the minutes of the proceedings of the Board of Directors:

RESOLVED, that the McKinsey & Company, Inc. Profit-Sharing Retirement Plan, as amended and restated as of January 1, 2013 be, and hereby is, amended, effective as of October 1, 2013, as set forth in Annex A, attached hereto and made a part hereof; and

FURTHER RESOLVED, that the officers of the Corporation be, and each of them is, hereby authorized, empowered and directed to take such actions and execute and deliver such documents as may be necessary or appropriate to effectuate the intent and purposes of the foregoing resolutions.

This consent may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed an original, and such counterparts shall together constitute one and the same instrument.

The undersigned hereby consent to the foregoing resolutions.

Dated as of October 4, 2013.

 

_____
Vikram Malhotra, Director

 

_____
Elizabeth Lempres, Director

_____
Christian Casal, Director

Amendment No. 1 to the
McKinsey & Company, Inc. Profit-Sharing Retirement Plan

The McKinsey & Company, Inc. Profit Sharing Retirement Plan, as amended and restated as of January 1, 2013 (the "Plan"), is amended, effective as of October 1, 2013 (or such other date specified below), as follows:

1.  The first paragraph of Section 3.1 is deleted in its entirety and replaced with the following two paragraphs:

Except as provided below, each Plan Year the Board of Directors shall designate with respect to Members who were Employees on December 1 in such Plan Year as Firm Contributions, a percentage of the Compensation of each such Member to be contributed to the Plan for the credit of the Member.  For each Plan Year commencing on and after January 1, 2010, such percentage is not required to be equal for all such Members.

Notwithstanding the foregoing, effective for Compensation earned on and after October 1, 2013, by a Member while employed in a Firm office in Great Britain ("Eligible British Compensation") the Firm Contributions with respect to such Eligible British Compensation shall be 12%, and a Member who earns such Eligible British Compensation for a Plan  Year ("Eligible British Member") shall not be required to be an Employee on December 1 of such Plan Year to receive an allocation of Firm Contributions with respect to his Eligible British Compensation, as provided in Section 5.1.  Any Firm Contributions made with respect to an Eligible British Member for periods other than those that he is employed in a Firm office in Great Britain shall be subject to the general rules of this Section 3.1 and shall disregard his Eligible British Compensation for the same Plan Year.

2.  Section 5.1 is restated in its entirety to read as follows:

Except as provided below, as of the last day of each Plan Year, each Member's Firm Contributions Account shall be credited with the Firm Contributions made on behalf of the Member pursuant to Section 3.1.  Notwithstanding the foregoing, Firm Contributions made with respect to Eligible British Compensation (as defined in Section 3.1) for the Plan Year that an Eligible British Member (as defined in Section 3.1) incurs a separation from Service or transfers to a Firm office outside of Great Britain, shall be credited to his Firm Contributions Account as soon as practicable following such separation from Service or transfer.

3.  Section 32.7 is amended to add the following sentence at the end thereof:

Notwithstanding anything herein to the contrary, effective as of January 1, 2013, a Foreign Member who is assigned to, and principally employed by, the Firm in an office of the Firm in Mexico and who is designated as an Intern shall not be eligible for any contributions from the Firm under Sections 3.1 and 32.2 of the Plan.

## McKINSEY & COMPANY, INC.

### OFFICER'S CERTIFICATE

I, Yuliya Levin, the duly elected and acting Assistant Secretary of McKinsey & Company, Inc. (the "Corporation"), a corporation organized and existing under the laws of the State of New York, United States of America, do HEREBY CERTIFY that the following is a true and correct copy of certain resolutions duly adopted at the Annual Meeting of the Board of Directors held on December 13, 2013 at 55 East 52nd Street, New York, New York, and that such resolutions are in full force and effect and have not been amended, modified or rescinded as of the date hereof:

RESOLVED, that the McKinsey & Company, Inc. Profit-Sharing Retirement Plan (the "PSRP") is hereby amended as set forth in Annex A attached hereto and made a part hereof; and

FURTHER RESOLVED, that the officers and employees of the Corporation be empowered to adopt and execute such documents, agreements and/or text of amendments as may be required to give effect to the above actions.

IN WITNESS WHEREOF, the undersigned has executed this certificate this 17th day of December, 2013.

Yuliya Levin
Assistant Secretary

[Corporate Seal]

STATE OF NEW YORK )
) ss.:
COUNTY OF NEW YORK )

Sworn to and subscribed before me

this 17th day of December, 2013.

Notary Public

ELIZABETH C. DUFFY
Notary Public, State of New York
No. 02DU6182231
Qualified in New York County
Commission Expires February 19, 2016

<u>Annex A</u>

<u>Amendment No. 2 to the</u>

<u>McKinsey & Company, Inc. Profit-Sharing Retirement Plan</u>

The McKinsey & Company, Inc. <u>Profit-Sharing Retirement</u> Plan, as amended and restated as of January 1, 2013 (the "Plan"), is amended as follows:

1.  Effective as of September 16, 2013, Section 10.15 is amended to read as follows:

The provisions of the Plan shall be construed, administered and governed in accordance with the provisions of ERISA, the Code, and other applicable federal law, and, to the extent not inconsistent therewith, if any determination is to be made with respect to the Plan under applicable state law, the laws of the State of New York shall apply.  For the avoidance of doubt, the terms "spouse," "married" or "marriage" as used herein shall refer to a marriage to a spouse, as defined under applicable law.

2.  Effective as of January 1, 2014, Appendix A is amended by adding Kazakhstan, Pakistan, Kenya and Ethiopia to the countries listed therein.

# McKINSEY & COMPANY, INC.

## OFFICER'S CERTIFICATE

I, Yuliya Levin, the duly elected and acting Assistant Secretary of McKinsey & Company, Inc. (the "Corporation"), a corporation organized and existing under the laws of the State of New York, United States of America, do HEREBY CERTIFY that the following is a true and correct copy of certain resolutions duly adopted at the Annual Meeting of the Board of Directors held on December 11, 2014 at Maximilianstrasse 17, Munich, 80539, Germany, and that such resolutions are in full force and effect and have not been amended, modified or rescinded as of the date hereof:

RESOLVED, that the McKinsey & Company, Inc. Profit-Sharing Retirement Plan is hereby amended as set forth in Annex A attached hereto and made a part hereof; and

FURTHER RESOLVED, that the officers and employees of the Corporation be empowered to adopt and execute such documents, agreements and/or text of amendments as may be required to give effect to the above actions.

IN WITNESS WHEREOF, the undersigned has executed this certificate this 20th day of January, 2015.

Yuliya Levin
Assistant Secretary

[Corporate Seal]

STATE OF NEW YORK )
                      ) ss.:
COUNTY OF NEW YORK )

Sworn to and subscribed before me

this 20th day of January, 2015.

Notary Public

## Annex A

### Amendment No. 3 to the

### McKinsey & Company, Inc. Profit-Sharing Retirement Plan

The McKinsey & Company, Inc. Profit Sharing Retirement Plan, as amended and restated as of January 1, 2013 (the "Plan"), is amended, effective as of the dates specified below, as follows:

1. Effective as of January 1, 2014, the second paragraph of Section 3.1 (as added to the Plan by Amendment No. 1 to the Plan) is amended in its entirety to read as follows:

Notwithstanding the foregoing, effective for Compensation earned on and after January 1, 2014, by a Member while employed in a Firm office in Great Britain ("Eligible British Compensation"), the Firm Contributions for such Member (an "Eligible British Member") for a Plan Year with respect to such Eligible British Compensation shall be:

(i)     12% for any Eligible British Compensation earned by an Eligible British Member who (a) is not a Principal or Director of the Firm or (b) is a Principal or Director of the Firm who incurs a separation from Service prior to September 1, 2014; and

(ii)    19% for any Eligible British Compensation earned by an Eligible British Member who is a Principal or Director of the Firm to whom (i)(b) above does not apply.

An Eligible British Member who earns such Eligible British Compensation for a Plan Year shall not be required to be an Employee on December 1 of such Plan Year to receive an allocation of Firm Contributions with respect to his Eligible British Compensation, as provided in Section 5.1. Any Firm Contributions made with respect to an Eligible British Member for periods other than those that he is employed in a Firm office in Great Britain shall be subject to the general rules of this Section 3.1 and shall disregard his Eligible British Compensation for the same Plan Year.

2. Effective as of June 1, 2013, the first sentence of Section 3.13 is amended in its entirety to read as follows:

Effective as of June 1, 2013, a Member may irrevocably elect to make a Roth Conversion Contribution of all or any portion of the Member's vested Account (other than from his Designated Roth Subaccount) to the Member's Roth Conversion Account.

# McKINSEY & COMPANY, INC.

## SECRETARY'S CERTIFICATE

I, Stephen Lee, Assistant Treasurer of McKinsey & Company, Inc. (the "Corporation"), a corporation duly organized and existing under the laws of the State of New York, United States of America, DO HEREBY CERTIFY that the following is a true and correct copy of the resolutions duly adopted by Unanimous Written Consent of the Administrative Committee of the Board of Directors of the Corporation, dated as of August 17, 2015; and that such resolutions are in full force and effect and have not been amended, modified or rescinded as of the date hereof:

RESOLVED, that the McKinsey & Company, Inc. Profit-Sharing Retirement Plan, as amended and restated as of January 1, 2013, be, and hereby is, amended, effective as of December 1, 2014, as set forth in Annex A, attached hereto and made a part hereof; and

FURTHER RESOLVED, that the officers of the Corporation be, and each of them is, hereby authorized, empowered and directed to take such actions and execute and deliver such documents as may be necessary or appropriate to effectuate the intent and purposes of the foregoing resolutions.

IN WITNESS WHEREOF, the undersigned has executed this certificate this 16th day of September, 2015.

Stephen Lee
Assistant Treasurer

[Corporate Seal]

STATE OF NEW YORK )
                       ) SS.:
COUNTY OF NEW YORK )

Sworn to and subscribed before me
this 16th day of September, 2015.

NOTARY PUBLIC

<u>Annex A</u>
<u>Amendment No. 5 to the</u>
<u>McKinsey & Company, Inc. Profit-Sharing Retirement Plan</u>

The McKinsey & Company, Inc. Profit-Sharing Retirement Plan, as amended and restated as of January 1, 2013 (the "Plan"), is amended as follows:

1. Section 3.5 is deleted in its entirety and replaced with the following new Section 3.5, effective as of December 1, 2014:

If a Member is a member of any other employee benefit plan maintained by the Firm and such Member (or the surviving spouse of such Member) elects, pursuant to the terms of such other plan, to have the benefits to which the Member (or surviving spouse) is entitled under that plan transferred to the Plan in a lump sum, the Trustee shall, under such terms and such rules as the Administrative Committee shall determine under rules of uniform application, accept such transfer. For the avoidance of doubt, the McKinsey & Company, Inc. Supplemental Retirement Plan annuity contract through Principal Life Insurance Company is considered an employee benefit plan maintained by the Firm for the purposes of this Section 3.5. Any transfer accepted under this Section 3.5 shall not be treated as an After-Tax Contribution for purposes of Sections 3.3 and 3.4 of the Plan.

2. Section 3.9 is amended to delete all references therein to a "Member" or "Members" and replace them with "Employee" or "Employees," as applicable.

## McKINSEY & COMPANY, INC.

### OFFICER'S CERTIFICATE

I, Yuliya Levin, the duly elected and acting Assistant Secretary of McKinsey & Company, Inc., a corporation organized and existing under the laws of the State of New York, United States of America (the "Corporation"), do HEREBY CERTIFY that the following is a true and correct copy of certain resolutions duly adopted at the Annual Meeting of the Board of Directors held on December 10, 2015 at 55 East 52nd Street, New York, New York, and that such resolutions are in full force and effect and have not been amended, modified or rescinded as of the date hereof:

RESOLVED, that the McKinsey & Company, Inc. Profit-Sharing Retirement Plan (the "PSRP") is hereby amended as set forth in Annex A attached hereto and made a part hereof; and

FURTHER RESOLVED, that the officers and employees of the Corporation be empowered to adopt and execute such documents, agreements and/or text of amendments as may be required to give effect to the above actions.

IN WITNESS WHEREOF, the undersigned has executed this certificate this 16th day of December, 2015.

Yuliya Levin
Assistant Secretary

[Corporate Seal]

STATE OF NEW YORK )
                ) ss.:
COUNTY OF NEW YORK )

Sworn to and subscribed before me

this 16th day of December, 2015

Notary Public

**JOSEPH J. McFADDEN**
**Notary** Public, State of New York
No. 02MC6322625
**Qualified** in Orange County
**Commission** Expires April 6, 2019



## Amendment No. 6 to the

## McKinsey & Company, Inc. Profit-Sharing Retirement Plan

The McKinsey & Company, Inc. Profit-Sharing Retirement Plan, as amended and restated as of January 1, 2013 (the "Plan"), is amended, effective as of the dates provided below, as follows:

1. Effective January 1, 2016, the second and third paragraphs of Section 3.1 (as last amended by Amendment No. 3 to the Plan) are amended in their entirety to read as follows:

   Notwithstanding the foregoing, effective for Compensation earned on and after January 1 1, 2016, by a Member while employed in a Firm office in Great Britain ("Eligible British Compensation"), the Firm Contributions with respect to such Member (an "Eligible British Member") for a Plan Year with respect to such Eligible British Compensation shall be the lesser of the equivalent in U.S. dollars of 10,000 GBP, and:

   (i) 12% for any Eligible British Compensation earned by an Eligible British Member who is not a Principal, Director or Entity Partner of the Firm; and

   (ii) 19% for any Eligible British Compensation earned by an Eligible British Member who is a Principal, Director or Entity Partner of the Firm.

   An Eligible British Member who earns such Eligible British Compensation for a Plan Year shall not be required to be an Employee on December 1 of such Plan Year to receive an allocation of Firm Contributions with respect to his Eligible British Compensation, as provided in Section 5.1. Any Firm Contributions made with respect to an Eligible British Member for periods other than those that he is employed in a Firm office in Great Britain shall be subject to the general rules of this Section 3.1 and shall disregard his Eligible British Compensation for the same Plan Year.

2. Effective January 1, 2016, Section 3.2 is amended to add the following two paragraphs after the second paragraph of the Section:

   Effective January 1, 2016, the Plan Administrator will implement an automatic contribution arrangement for Members whose primary residence is in the United States (the "ACA"). The ACA shall apply to the following Members unless they make an affirmative election with respect to the amount of their Salary Reduction Contributions prior to their automatic enrollment date: (i) any Member hired or rehired as an Employee of the Firm, or transferred to the United States, on or after January 1, 2016, with such Member being automatically enrolled on the first of the month following 30 days of employment, reemployment or transfer, and (ii) any Member who as of January 4, 2016, is not making Salary Reduction Contributions to the Plan, with such Member being automatically enrolled commencing as of the beginning of the payroll period ending February 28, 2016 (each Member subject to the ACA being referred to as an "Affected

Member"). Each Affected Member will be deemed to have elected Salary Reduction Contributions in the amount of 5% of Compensation for each payroll period, and such amount will be deducted automatically from the Member's Compensation and contributed to his or her Account. In addition, as of each January 1st following the date an Affected Member is automatically enrolled in the Plan, such Affected Member's automatic enrollment percentage shall be increased by 1%, subject to a maximum automatic enrollment percentage of 10% and any other applicable limits described in Article 3. Notwithstanding the foregoing, the automatic enrollment percentage of an Affected Member hired, rehired or transferred in the last calendar quarter of a year will not be increased until the second January 1st following the Affected Member's date of hire, rehire or transfer. No Salary Reduction Contributions made under the ACA shall be deemed Designated Roth Contributions.

Prior to an Affected Member being automatically enrolled in the Plan and prior to the beginning of every subsequent Plan Year, the Administrative Committee will distribute a notice of each such Member's rights and obligations under the ACA. The Administrative Committee may adopt rules and procedures to implement the ACA.

3. Section 14.4(a) is amended in its entirety to read as follows:

The Firm will designate British Members who are eligible to receive an annual contribution to the Plan from the Firm as determined and paid in accordance with Rule 3.1. Notwithstanding the foregoing, for Plan Years starting on or after January 1, 2015, any Member who is also a Principal, Director or Entity Partner of the Firm and who is in pensionable service as a member of the McKinsey Additional Plan or any other pension plan sponsored by McKinsey & Company, Inc. United Kingdom at any time during a calendar year, will not be eligible to receive any contribution to the Plan.

4. Appendix A is amended, effective January 1, 2016, by adding Azerbaijan to the countries listed therein.

# McKINSEY & COMPANY, INC.

## OFFICER'S CERTIFICATE

I, Stephen Lee, Assistant Treasurer of McKinsey & Company, Inc., a corporation duly organized and existing under the laws of the State of New York, United States of America (the "Corporation"), DO HEREBY CERTIFY that the following is a true and correct copy of the resolutions duly adopted by Unanimous Written Consent of the Administrative Committee of the Board of Directors of the Corporation, dated as of June 9, 2016; and that such resolutions are in full force and effect and have not been amended, modified or rescinded as of the date hereof:

RESOLVED, that the McKinsey & Company, Inc. Profit-Sharing Retirement Plan, as amended and restated as of January 1, 2013, be, and hereby is, amended, effective as of July 1, 2016, as set forth in Annex A, attached hereto and made a part hereof; and

FURTHER RESOLVED, that the McKinsey & Company, Inc. Money Purchase Pension Plan, as amended and restated as of January 1, 2013, be, and hereby is, amended, effective as of July 1, 2016, as set forth in Annex B, attached hereto and made a part hereof; and

FURTHER RESOLVED, that the officers of the Corporation be, and each of them is, hereby authorized, empowered and directed to take such actions and execute and deliver such documents as may be necessary or appropriate to effectuate the intent and purposes of the foregoing resolutions.

IN WITNESS WHEREOF, the undersigned has executed this certificate this 15th day of June, 2016.

Stephen Lee
Assistant Treasurer

[Corporate Seal]

STATE OF NEW YORK   )
                             ) SS.:
COUNTY OF NEW YORK )

Sworn to and subscribed before me
this 15th day of June, 2016.

NOTARY PUBLIC

MICHAEL A. SCHERBAN
Notary Public, State of New York
No. 02SC6317084
Qualified in New York County
Commission Expires December 29, 2018

The McKinsey & Company, Inc. Profit Sharing Retirement Plan, as amended and restated as of January 1, 2013 (the "Plan"), is amended, effective as of July 1, 2016, by adding the following sentence to the end of Section 1.8 of the Plan to provide as follows:

In addition, except with respect to Firm Contributions under Section 3.1, Compensation shall also include any cash amounts paid to Members by the Firm and designated as "discretionary payments" being made as a result of the transition out of the Firm's retiree medical benefit.

The McKinsey & Company, Inc. Money Purchase Pension Plan, as amended and restated as of January 1, 2013 (the "Plan"), is amended, effective as of July 1, 2016, by adding the following sentence to the end of Section 1.7 of the Plan to provide as follows:

> In addition, Compensation shall not include any cash amounts paid by the Firm and designated as "discretionary payments" being made as a result of the transition out of the Firm's retiree medical benefit.

# McKINSEY & COMPANY, INC.

## OFFICER'S CERTIFICATE

I, Stephen Lee, the duly elected and acting Assistant Treasurer of McKinsey & Company, Inc., a corporation organized and existing under the laws of the State of New York, United States of America (the "Corporation"), do HEREBY CERTIFY that the following is a true and correct copy of certain resolutions duly adopted at the Annual Meeting of the Board of Directors held on December 8, 2016 at Amstel 51 Amsterdam, and that such resolutions are in full force and effect and have not been amended, modified or rescinded as of the date hereof:

### Benefit and Retirement Plan Amendments and PSRP Firm Contributions

RESOLVED, that the McKinsey & Company, Inc. Money Purchase Pension Plan ("MPPP") is hereby amended as set forth in Annex A attached hereto and made a part hereof; and

FURTHER RESOLVED, that the McKinsey & Company, Inc. Profit-Sharing Retirement Plan, as amended and restated as of January 1, 2013 ("PSRP") is hereby amended as set forth in Annex B attached hereto and made a part hereof; and

### New Benefit Plan and Related Amendments

RESOLVED, that the resolutions below shall only become effective if approved before December 31, 2016 by the Compensation Policy Committee of the Corporation; and if one or more of the resolutions below is not so approved by such committee, all of such resolutions shall become null and void and have no effect; and

FURTHER RESOLVED, that, effective December 31, 2016, the Corporation shall adopt the McKinsey & Company, Inc. Partner Cash Balance Plan (the "Cash Balance Plan"), which shall incorporate the terms set forth in Annex C hereto; and

FURTHER RESOLVED, that the officers of the Corporation be, and each of them hereby is, authorized, empowered and directed to prepare and finalize a formal plan document for the Cash Balance Plan incorporating the terms set forth in Annex C hereto and to contain such other terms and provisions that are deemed necessary or desirable by such officers, in their discretion, to implement the Cash Balance Plan, including those required for the Cash Balance Plan to be qualified under the Internal Revenue Code of 1986, as amended (the "Code") or to comply with other applicable law, and to execute such formal plan document on or before December 31, 2016 on behalf of the Corporation; and

FURTHER RESOLVED, that, effective December 31, 2016, the Amended and Restated Trust Agreement, effective as of the 1st day of August, 2009, by and among McKinsey & Company, Inc., and the individual trustees designated thereunder, as amended (the "Master Trust Agreement"), be adopted as the trust under the Cash Balance Plan; and

FURTHER RESOLVED, that, effective December 31, 2016, the PSRP, be, and hereby is, amended, as set forth in Annex D, attached hereto and made a part hereof; and

FURTHER RESOLVED, that for the Plan Year ending December 31, 2016, for each eligible PSRP Member who (i) is not a "highly compensated employee" for the Plan Year

(within the meaning of the Internal Revenue Code of 1986), and (ii) is an active employee assigned to and principally employed in the U.S. on December 1, 2016, the Corporation shall make contributions to the PSRP, which, when combined with any other contributions made by the Corporation on the Member's behalf to the PSRP, is no less than 7.5% of the Member's qualified compensation up to $265,000 for such Plan Year that is earned while the Member is an active employee assigned to and principally employed in the U.S.; provided, however, that any contributions to the PSRP made pursuant to this Resolution will be offset by any contributions the Corporation may make for such Member under the MPPP); and

FURTHER RESOLVED, that the officers of the Corporation be, and each of them hereby is, authorized, empowered and directed to take such actions and execute and deliver such documents as may be necessary or appropriate to effectuate the intent and purpose of the foregoing resolutions, including, without limitation, (i) seeking all necessary or desired governmental approvals, including submitting the Cash Balance Plan to the Internal Revenue Service for an advance determination that the Plan satisfies Section 401(a) of the Code, (ii) making any further amendments to the Cash Balance Plan that are necessary or desirable to reflect the intent and purpose of the above resolutions, (iii) taking all action necessary under the Master Trust Agreement to reflect the Cash Balance Plan's adoption of such agreement, and (iv) entering into any agreements and arrangements with service providers to the Cash Balance Plan, including those relating to trustee, custodial, recordkeeping, administration and investment management services; and

FURTHER RESOLVED, that all actions, in the name and on behalf of the Corporation or otherwise, heretofore taken by the officers of the Corporation in connection with or to effectuate or carry out the foregoing resolutions, be, and each hereby is, in all respects, ratified, confirmed, authorized and approved.

## Authority to Implement Resolutions

RESOLVED, that the officers of the Corporation be, and each of them hereby is, authorized, empowered and directed to take or cause to be taken such actions and execute and deliver or cause to be executed and delivered such documents as may be necessary or appropriate to effectuate the intent and purposes of each of the aforesaid resolutions.

IN WITNESS WHEREOF, the undersigned has executed this certificate this 21st day of December, 2016.

Stephen Lee
Assistant Treasurer

[Corporate Seal]

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF NEW YORK   )

Sworn to and subscribed before me

this 21st day of December, 2016.

Notary Public
**MICHAEL W. GRAMER**
**Notary Public, State of New York**
**No. 02GR6299180**
**Qualified in New York County**
**Commission Expires March 17, 2018**

Annex A
Amendment No. 4 to the
McKinsey & Company, Inc. Money Purchase Pension Plan

The McKinsey & Company, Inc. Money Purchase Pension Plan, as amended and restated as of January 1, 2013 (the "Plan"), is amended as follows effective as of January 1, 2017:

1. The first two sentences of Section 13.3 are amended to read as follows:

Effective for expenses of Retiree Medical Benefits under the Retiree Medical Plan incurred on and after January 1, 2017 and prior to January 1, 2025, all payment for such expenses shall be made from the general assets of the Company. Effective for expenses of Retiree Medical Benefits under the Retiree Medical Plan incurred on and after January 1, 2025, the Plan shall pay such expenses from the 401(h) Account; provided, however, that to the extent either the available funds under the 401(h) Account are insufficient or amounts are payable in respect of Covered Retirees or Covered Dependents who are not eligible for benefits under the Plan, payment shall be made from the general assets of the Company.

The McKinsey & Company, Inc. Profit Sharing Retirement Plan, as amended and restated as of January 1, 2013 (the "Plan"), is amended as follows effective as of January 1, 2017:

1.  The first two sentences of the third paragraph of Section 3.2 are amended to read as follows:

> All Salary Reduction Contributions under this Section shall be paid by the Firm to the Trustee as soon as is administratively practicable following the payroll period to which the deferral is applicable, but in no event later than the 15th business day of the month following the month in which such Compensation would otherwise have been paid to the Member. Notwithstanding the foregoing provisions of this Section, in no event may the Firm make Salary Reduction Contributions (other than catch-up contributions) for the account of a Member under this Section in any calendar year in excess of $15,500, adjusted for increases in the cost of living pursuant to Section 402(g)(5) of the Code. If, however, a Member has exceeded the foregoing limitation for the Member's taxable year as a result of contributions under both this Plan and another tax-qualified plan to which the Member contributes, such Member may indicate to this Plan any excess made during such taxable year by notifying the Administrative Committee on or before April 3 of the following year, in writing, of the amount of the excess.

## McKinsey & Company, Inc. Partner Cash Balance Plan

**Eligibility**

- Anyone designated as a shareholding Partner or Senior Partner ("Eligible Partner"); anyone designated as an Entity Partner or a non-shareholding Partner is excluded.

- Partners transferred to U.S. on a short-term basis are excluded from the Plan.

- For 2016, shareholding Partners or Senior Partners are only eligible for the Plan if they are credited with at least 1,000 hours of service in the U.S. for the year and are Eligible Partners on December 31, 2016.

**Pay Credits** – A percentage of U.S.-earned compensation capped at $265,000 for each Eligible Partner, as follows:

| Age | Partners | Senior Partners |
|-----|----------|-----------------|
| <35 | 12% | 12% |
| 35-39 | 12 | 24 |
| 40-44 | 12 | 36 |
| 45-49 | 12 | 42 |
| 50-54 | 12 | 48 |
| 55+ | 12 | 60 |

- Age is age when Eligible Partner first joins the Plan.
- Age is attained (truncated) age on December 31 of the plan year.
- If an Eligible Partner is promoted from Partner to Senior Partner during the year, use age as of December 31 of the year of promotion in the Senior Partners column to get the applicable percentage.
- An individual must be credited with at least 1,000 hours of service in the U.S. as an Eligible Partner to receive a Pay Credit for any year.
- The $265,000 compensation limit will not be indexed for cost of living.

**Interest Credits** – Interest is equal to the return on plan assets net of expenses, subject to the preservation of capital rule.

- Interest is credited on the beginning-of-year account balance. Pay Credits credited during a year do not receive interest credits during the year.
- Interest is credited on December 31, or on the date a participant receives a distribution if earlier.

**Payment Options** – Lump sum, single life annuity for unmarried participants; 50% joint and survivor annuity or 75% joint and survivor annuity for married participants.

- Account balances will be converted to a single life annuity using three-segment rates under Section 417(e), minus 150 bps (rates can be negative) and Section 417(e) mortality.
- A single life annuity will be converted to the joint and survivor annuity options using the same assumptions.

**Other Terms**

- Normal Retirement Age (NRA) is 65
- Vesting is 100% at all times
- A terminated participant must commence distributions no later than NRA.
- In-service distributions are permitted at age 62.
- Pre-retirement death benefit: The full benefit is payable to the surviving spouse if the participant is married or to the estate if not married.
- If a participant works beyond NRA, his or her benefit will be suspended.

The McKinsey & Company, Inc. Profit Sharing Retirement Plan, as amended and restated as of January 1, 2013 (the "Plan"), is amended, effective December 31, 2016, by adding the following to the end of the first paragraph of Section 3.1 of the Plan:

In addition, for each Plan Year commencing on and after January 1, 2016, the Board of Directors may designate with respect to Members who are not highly compensated Employees for the Plan Year and who were Employees on December 1 in such Plan Year additional amounts to be contributed to the Plan as Firm Contributions for the credit of all or some of such Members, and, to the extent such additional Firm Contributions are expressed as a percentage of the Compensation, such Compensation need not be limited to $170,000. Such additional Firm Contributions may be in lieu of or in addition to any contributions otherwise to be made under the Plan for such Members.

# McKINSEY & COMPANY, INC.

## OFFICER'S CERTIFICATE

I, James Fitzgerald, Assistant Treasurer of McKinsey & Company, Inc., a corporation duly organized and existing under the laws of the State of New York, United States of America (the "Corporation"), DO HEREBY CERTIFY that the following is a true and correct copy of the resolutions duly adopted by Unanimous Written Consent of the Administrative Committee of the Board of Directors of the Corporation, dated as of September 19, 2017; and that such resolutions are in full force and effect and have not been amended, modified or rescinded as of the date hereof:

RESOLVED, that the McKinsey & Company, Inc. Money Purchase Pension Plan, as amended and restated as of January 1, 2013, be, and hereby is, amended, effective as of January 1, 2017, as set forth in Annex A, attached hereto and made a part hereof; and

FURTHER RESOLVED, that the McKinsey & Company, Inc. Profit-Sharing Retirement Plan, as amended and restated as of January 1, 2013, be, and hereby is, amended, effective as of January 1, 2018, as set forth in Annex B, attached hereto and made a part hereof; and

FURTHER RESOLVED, that the officers of the Corporation be, and each of them is, hereby authorized, empowered and directed to take such actions and execute and deliver such documents as may be necessary or appropriate to effectuate the intent and purposes of the foregoing resolutions.

IN WITNESS WHEREOF, the undersigned has executed this certificate this 19th day of September, 2017.

James Fitzgerald
Assistant Treasurer

[Corporate Seal]

STATE OF NEW YORK )
                ) SS.:
COUNTY OF NEW YORK )

Sworn to and subscribed before me
this 19th day of September, 2017.

NOTARY PUBLIC

STEVEN PARKS
Notary Public, State of New York
Registration #01PA6333447
Qualified In New York County
Commission Expires Nov. 23, 2019

<u>Annex A</u>
<u>Amendment No. 5 to the</u>
<u>McKinsey & Company, Inc. Money Purchase Pension Plan</u>

The McKinsey & Company, Inc. Money Purchase Pension Plan, as amended and restated as of January 1, 2013 (the "Plan"), is amended as follows effective as of January 1, 2017:

1.  Section 13.3 is amended to read as follows:

Effective for expenses of Retiree Medical Benefits under the Retiree Medical Plan incurred on and after January 1, 2017, and prior to January 1, 2020, all payment for such expenses shall be made from the general assets of the Company. Effective for expenses of Retiree Medical Benefits under the Retiree Medical Plan incurred on and after January 1, 2020, the Plan shall pay such expenses from the 401(h) Account; provided, however, that to the extent either the available funds under the 401(h) Account are insufficient or amounts are payable in respect of Covered Retirees or Covered Dependents who are not eligible for benefits under the Plan, payment shall be made from the general assets of the Company. The Retiree Medical Benefits payable under this Article and the amount to be paid shall be determined under the terms and conditions and subject to the limitations of the Retiree Medical Plan. Notwithstanding any other provision of the Plan to the contrary, for any Covered Retiree who is a Principal or Director age 65 or below, Retiree Medical Benefits shall be limited to 90% of the value of the cost of premiums for such Covered Retiree and his or her Covered Dependents under the Retiree Medical Plan, and for any Covered Retiree who is a Principal or Director above age 65, Retiree Medical Benefits shall be limited to 95% of the value of the cost of premiums for such Covered Retiree and his or her Covered Dependents under the Retiree Medical Plan.

<u>Annex B</u>
<u>Amendment No. 10 to the</u>
<u>McKinsey & Company, Inc. Profit-Sharing Retirement Plan</u>

The McKinsey & Company, Inc. Profit Sharing Retirement Plan, as amended and restated as of January 1, 2013 (the "Plan"), is amended, effective as of January 1, 2018, by adding the following sentence to the end of Section 3.2 of the Plan to provide as follows:

Notwithstanding anything in this Section 3.2 to the contrary, no person who is classified by the Firm as a summer associate or intern shall become an Affected Member after December 31, 2017.

# McKINSEY & COMPANY, INC.

## OFFICER'S CERTIFICATE

I, Yuliya Levin, the duly elected and acting Assistant Secretary of McKinsey & Company, Inc., a corporation organized and existing under the laws of the State of New York, United States of America (the "Corporation"), do HEREBY CERTIFY that the following is a true and correct copy of certain resolutions duly adopted at the Annual Meeting of the Board of Directors held on December 6, 2017 at 55 East 52nd Street, New York, New York, and that such resolutions are in full force and effect and have not been amended, modified or rescinded as of the date hereof:

RESOLVED, that the McKinsey & Company, Inc. Money Purchase Pension Plan, as amended and restated as of January 1, 2013 ("MPPP"), is hereby amended as set forth in Annex A attached hereto and made a part hereof;

FURTHER RESOLVED, that the McKinsey & Company, Inc. Profit-Sharing Retirement Plan, as amended and restated as of January 1, 2013 ("PSRP"), is hereby amended as set forth in Annex B attached hereto and made a part hereof;

FURTHER RESOLVED, that the officers and employees of the Corporation be empowered to adopt and execute such documents, agreements and/or text of amendments as may be required to give effect to the above actions.

RESOLVED, that the officers of the Corporation be, and each of them hereby is, authorized, empowered and directed to take or cause to be taken such actions and execute and deliver or cause to be executed and delivered such documents as may be necessary or appropriate to effectuate the intent and purposes of each of the aforesaid resolutions.

IN WITNESS WHEREOF, the undersigned has executed this certificate this 12th day of December, 2017.

Yuliya Levin
Assistant Secretary

[Corporate Seal]

STATE OF NEW YORK   )
                       ) ss.:
COUNTY OF NEW YORK   )

Sworn to and subscribed before me

this 12th day of December, 2017.

Notary Public

STEVEN PARKS
Notary Public, State of New York
Registration #01PA6333447
Qualified In New York County
Commission Expires Nov. 23, 2019

Amendment No. 6 to the
McKinsey & Company, Inc. Money Purchase Pension Plan

The McKinsey & Company, Inc. Money Purchase Pension Plan, as amended and restated as of January 1, 2013 (the "Plan"), is amended as follows effective as of January 1, 2017:

1. The third sentence of Section 1.7 is amended to read as follows:

   For purposes of determining contributions to the Plan on behalf of a Member pursuant to Article 3, for Plan Years beginning on and after January 1, 2017, in no event shall Compensation for any Plan Year exceed $270,000 (adjusted for increases in the cost of living pursuant to Section 401(a)(17) of the Code) for Members designated as Client Service Professionals or Partners and $170,000 for all other Members.

Amendment No. 11 to the
McKinsey & Company, Inc. Profit-Sharing Retirement Plan

The McKinsey & Company, Inc. Profit-Sharing Retirement Plan, as amended and restated as of January 1, 2013 (the "Plan"), is amended, effective as of the dates provided below, as follows:

1. Effective January 1, 2017, the third and fourth sentences of Section 1.8 are deleted in their entirety and replaced with the following:

   For purposes of determining contributions to the Plan on behalf of a Member pursuant to Article 3, in no event shall Compensation for any Plan Year beginning after December 31, 2016 exceed $270,000, adjusted for increases in the cost of living pursuant to Section 401(a)(17) of the Code.

2. Effective January 1, 2017, Section 3.1 is amended in its entirety to read as follows:

   3.1    Firm Contributions.

   Except as provided below, for each Plan Year commencing on and after January 1, 2017, the Board of Directors shall designate with respect to Members who were Employees on December 1 in such Plan Year as Firm Contributions, an amount, if any, to be contributed to the Plan for the credit of the Member.  Any such amount shall be determined in the complete discretion of the Board of Directors and (i) may be expressed by the Board of Directors as a percentage of the Compensation of each such Member for such Plan Year (such percentage is not required to be equal for all such Members and Compensation used in calculating such amount may be limited for any group or groups of Members, all in the discretion of the Board of Directors), as a flat dollar amount or using any other method specified by the Board of Directors, and (ii) may take into account or provide an offset for any Firm contributions or accruals under any other tax-qualified retirement plan of the Firm.  In addition, the Board of Directors may determine to make any additional amounts as Firm Contributions for any Member or Members to the extent it is determined that such amounts are necessary for the Plan or any other tax-qualified retirement plan of the Firm to meet the Code's non-discrimination testing requirements (such additional Firm Contributions to be in lieu of or in addition to any contributions otherwise to be made under the Plan for such Members).

   Notwithstanding the foregoing, effective for Compensation earned on and after January 1 1, 2016, by a Member while employed in a Firm office in Great Britain ("Eligible British Compensation"), the Firm Contributions with respect to such Member (an "Eligible British Member") for a Plan Year with respect to such Eligible British Compensation shall be the lesser of the equivalent in U.S. dollars of 10,000 GBP, and:

   (i)    12% for any Eligible British Compensation earned by an Eligible British Member who is not a Principal, Director or Entity Partner of the Firm; and

   (ii)    19% for any Eligible British Compensation earned by an Eligible British Member who is a Principal, Director or Entity Partner of the Firm.

   An Eligible British Member who earns such Eligible British Compensation for a Plan Year shall not be required to be an Employee on December 1 of such Plan Year to

receive an allocation of Firm Contributions with respect to his Eligible British Compensation, as provided in Section 5.1. Any Firm Contributions made with respect to an Eligible British Member for periods other than those that he is employed in a Firm office in Great Britain shall be subject to the general rules of this Section 3.1 and shall disregard his Eligible British Compensation for the same Plan Year.

For any Plan Year in which one or more subsidiaries included in the Plan pursuant to Section 1.13 has insufficient earnings or profits to make its Firm Contributions under this Section 3.1, the Board of Directors may by resolution adopted prior to the end of such Plan Year direct that the Firm make the appropriate Firm Contribution pursuant to this Section 3.1 for Members who are employees of such subsidiary or subsidiaries which do not have sufficient earnings or profits for that Plan Year to make Firm Contributions.

3. Appendix A is amended, effective January 1, 2018, by adding Kuwait, Myanmar and Panama to the countries listed therein.

# McKINSEY & COMPANY, INC.

## OFFICER'S CERTIFICATE

I, Yuliya Levin, Assistant Secretary of McKinsey & Company, Inc. (the "Corporation"), a corporation duly organized and existing under the laws of the State of New York, United States of America, DO HEREBY CERTIFY that the following is a true and correct copy of the resolutions duly adopted by Unanimous Written Consent of the Administrative Committee of the Board of Directors of the Corporation, dated the 21st day of May, 2018; and that such resolutions are in full force and effect and have not been amended, modified or rescinded as of the date hereof:

RESOLVED, that the McKinsey & Company, Inc. Money Purchase Pension Plan, as amended and restated as of January 1, 2018, be, and hereby is, amended, effective as of June 1, 2018, as set forth in Annex A, attached hereto and made a part hereof; and

FURTHER RESOLVED, that the McKinsey & Company, Inc. Profit-Sharing Retirement Plan, as amended and restated as of January 1, 2013, be, and hereby is, amended, effective as of June 1, 2018, as set forth in Annex B, attached hereto and made a part hereof; and

FURTHER RESOLVED, that the McKinsey & Company, Inc. Partner Cash Balance Plan, as amended and restated effective as of January 1, 2017, be, and hereby is, amended, effective as of June 1, 2018, as set forth in Annex C, attached hereto and made a part hereof; and

FURTHER RESOLVED, that the officers of the Corporation be, and each of them is, hereby authorized, empowered and directed to take such actions and execute and deliver such documents as may be necessary or appropriate to effectuate the intent and purposes of the foregoing resolutions.

IN WITNESS WHEREOF, the undersigned has executed this certificate this 12th day of July, 2018.

Yuliya Levin
Assistant Secretary

[Corporate Seal]

STATE OF NEW YORK )
                  ) SS.:
COUNTY OF NEW YORK )

Sworn to and subscribed before me
this 12th day of July, 2018.

NOTARY PUBLIC

JIYOUNG KIM
Notary Public, State of New York
No. 01KI6309697
Qualified in Queens County
My Commission Expires Aug. 8, 2018

Annex B
Amendment No. 12 to the
McKinsey & Company, Inc. Profit-Sharing Retirement Plan
(as amended and restated effective as of January 1, 2013)

The McKinsey & Company, Inc. Profit-Sharing Retirement Plan, as amended and restated as of January 1, 2013 (the "Plan"), is amended as follows effective as of June 1, 2018:

1. Section 1.11 is amended to add the following paragraph to the end thereof:

> In addition, effective as of June 1, 2018, an Employee shall not include any person who is designated by the Firm as a Former Managing Director.

# McKINSEY & COMPANY, INC.

## OFFICER'S CERTIFICATE

I, Damian Caputo, Assistant Secretary of McKinsey & Company, Inc., a company organized and existing under the laws of the State of New York, having its principal place of business at 711 Third Avenue, New York, New York 10017, United States of America (the "Corporation"), do hereby certify that the following is a true and correct copy of resolutions duly adopted by Unanimous Written Consent of the Administrative Committee of the Board of Directors of the Corporation, dated as of November 14, 2018, and that such resolutions are in full force and effect and have not been amended, modified or rescinded as of the date hereof:

WHEREAS, the Corporation sponsors the McKinsey & Company, Inc. Profit-Sharing Retirement Plan, amended and restated as of January 1, 2013, and as amended from time to time thereafter (the "McKinsey Plan");

WHEREAS, Section 11.1 of the McKinsey Plan authorizes the Corporation to amend or modify the McKinsey Plan;

WHEREAS, Veryday, LLC ("Veryday") is an indirect wholly-owned subsidiary of the Corporation;

WHEREAS, Veryday currently sponsors the Veryday Inc., USA 401(k) Plan, established as of January 1, 2014, and as amended from time to time thereafter (the "Veryday Plan");

WHEREAS, the Corporation and Veryday desire to consolidate and merge the Veryday Plan with and into the McKinsey Plan (the "Plan Merger"), effective as of January 1, 2019 (the "Merger Date"); and

WHEREAS, the Corporation desires to amend the McKinsey Plan to reflect the Plan Merger and to protect certain distribution rights of former participants in the Veryday Plan with respect to amounts accrued thereunder prior to the Merger Date.

NOW, THEREFORE, be it:

RESOLVED, that the Corporation hereby approves and adopts the Plan Merger, effective as of the Merger Date;

FURTHER RESOLVED, that the McKinsey Plan be, and hereby is, amended to reflect the Plan Merger and to protect certain rights of former participants in the Veryday Plan with respect to amounts accrued thereunder prior to the Merger Date, as set forth in Annex A, attached hereto and made a part hereof;

FURTHER RESOLVED, that the officers of the Corporation be, and each of them hereby is, authorized, empowered and directed to take such actions and execute and deliver such documents as may be necessary or appropriate to effectuate the intent and purposes of the foregoing resolutions.

IN WITNESS WHEREOF, the undersigned has executed this certificate this 26th day of November, 2018.

_____
Damian Caputo
Assistant Secretary

[Corporate Seal]

United States of America
STATE OF NEW YORK        )
                         ) ss
COUNTY OF NEW YORK       )

Sworn to and subscribed before me
this 26th day of November, 2018.

_____
Notary Public

JIYOUNG KIM
Notary Public, State of New York
No. 01KI6309697
Qualified in New York County
Commission Expires Aug. 18, 2022

## Amendment No. 13 to the
## McKinsey & Company, Inc. Profit-Sharing Retirement Plan
(as amended and restated effective as of January 1, 2013)

The McKinsey & Company, Inc. Profit-Sharing Retirement Plan, as amended and restated as of January 1, 2013 (the "Plan"), is amended as follows, effective January 1, 2019:

1. The Plan is hereby amended to add the following new Supplement A to the end of the Plan to reflect the merger of the Veryday Inc., USA 401(k) Plan into the Plan:

### "SUPPLEMENT A

### Former Participants in the
### Veryday Inc., USA 401(k) Plan

Merger of Plans. Effective January 1, 2019, the McKinsey & Company, Inc. Profit-Sharing Retirement Plan (the "Plan") received assets of, and assumed certain liabilities of the Veryday Inc., USA 401(k) Plan (the "Veryday Plan") in a merger effected pursuant to the requirements of Code Section 414(1) and ERISA Section 208 (the "Merger").

Applicability of the Plan. The provisions of the Plan shall become fully applicable to former participants in the Veryday Plan, except to the extent provided in this Supplement A.

Veryday Plan Account. For each person who had an account under the Veryday Plan that was transferred to the Plan as a result of the Merger, there shall be established a "Veryday Plan Account," in addition to any other accounts maintained on behalf of such Member under Section 1.1 of the Plan. A Member's Veryday Plan Account shall include all accounts that were maintained under the Veryday Plan on behalf of each such Member as of December 31, 2018 (and subsequent earnings thereon).

Vesting in Veryday Plan Account. Each Member shall be fully vested in his or her Veryday Plan Account.

Withdrawals. A Member may withdraw at any time in accordance with the rules established by the Administrative Committee all or a portion of his or her (i) Veryday Plan Account upon the attainment of age 59½, or (ii) Veryday Plan Account that is attributable to his or her rollover contributions to the Veryday Plan. Each of the Investment Funds in which the Member's Account is invested will be reduced proportionately by the amount of any such withdrawal.

Qualified Reservists Distributions.   If a Member is (i) a reservist or national guardsman, (ii) called to active duty after September 11, 2001, and (iii) called to duty for at least 180 days or for an indefinite period, such Member may take a distribution of the portion of his or her Veryday Plan Account that is attributable to elective deferrals.   Each of the Investment Funds in which the Member's Account is invested will be reduced proportionately by the amount of such distribution.

# McKINSEY & COMPANY, INC.

## OFFICER'S CERTIFICATE

I, Yuliya Levin, the duly elected and acting Assistant Secretary of McKinsey & Company, Inc., a corporation organized and existing under the laws of the State of New York, United States of America (the "Corporation"), do HEREBY CERTIFY that the following is a true and correct copy of certain resolutions duly adopted at the Annual Meeting of the Board of Directors held on December 6, 2018 at Unter den Linden 77, 10117 Berlin, Germany, and that such resolutions are in full force and effect and have not been amended, modified or rescinded as of the date hereof:

RESOLVED, that the McKinsey & Company, Inc. Profit-Sharing Retirement Plan, as amended and restated as of January 1, 2013 ("PSRP"), is hereby amended as set forth in Annex A attached hereto and made a part hereof;

FURTHER RESOLVED, that the officers and employees of the Corporation be empowered to adopt and execute such documents, agreements and/or text of amendments as may be required to give effect to the above actions.

RESOLVED, that the officers of the Corporation be, and each of them hereby is, authorized, empowered and directed to take or cause to be taken such actions and execute and deliver or cause to be executed and delivered such documents as may be necessary or appropriate to effectuate the intent and purposes of each of the aforesaid resolutions.

IN WITNESS WHEREOF, the undersigned has executed this certificate this 10th day of December, 2018.

Yuliya Levin
Assistant Secretary

[Corporate Seal]

STATE OF NEW YORK )
) ss.:
COUNTY OF NEW YORK )

Sworn to and subscribed before me

this 10th day of December, 2018.

Notary Public

JIYOUNG KIM
Notary Public, State of New York
No. 01KI6309697
Qualified in New York County
Commission Expires Aug. 18, 2022

Amendment No. 14 to the

McKinsey & Company, Inc. Profit-Sharing Retirement Plan

(as amended and restated effective as of January 1, 2013)

The McKinsey & Company, Inc. Profit-Sharing Retirement Plan, as amended and restated as of January 1, 2013 (the "Plan"), is amended as follows, effective as of January 1, 2019:

1. Section 3.8 is amended in its entirety to read as follows:

"3.8     Hardships.  The provisions of this Section 3.8 shall be effective as of January 1, 2019 (unless otherwise noted below).  A Member who has made a withdrawal of the maximum amount permitted under Section 3.6 and has sustained a financial hardship may apply in writing to the Administrative Committee for a withdrawal from his Salary Reduction Contributions Account, Rollover Account and Firm Contributions Account (excluding his Designated Roth Subaccount, unless the Administrative Committee determines in its sole discretion, that Designated Roth Subaccounts may be included for purposes of withdrawals under the Plan).  For purposes of this Section, "financial hardship" means immediate and heavy financial need on account of (a) expenses for (or necessary to obtain) medical care for the Member, his spouse, or dependents that would be deductible under Section 213(d) of the Code (determined without regard to whether the expenses exceed 7.5% of adjusted gross income), (b) costs directly related to the purchase of a principal residence for the Member (not including mortgage payments), (c) payment of tuition, related educational fees, or room and board expenses for the next 12 months of post-secondary education for the Member, or the Member's spouse, children or dependents (as defined in Section 152 of the Code, and, for Plan Years commencing on or after January 1, 2005, without regard to Code Sections 152(b)(1), (b)(2) and (d)(1)(B)), (d) payments necessary to prevent the eviction of the Member from the Member's principal residence or foreclosure of the mortgage on the Member's principal residence, (e) effective January 1, 2006, payments for burial or funeral expenses for the Member's deceased parent, spouse, children or dependents (as defined in Code Section 152, without regard to Code Section 152(d)(1)(B)), (f) effective January 1, 2006, expenses for the repair of damage to the Member's principal residence that would qualify for the casualty deduction under Section 165 of the Code (determined without regard to whether the loss exceeds 10% of adjusted gross income), or (g) other reasons prescribed by the Administrative Committee which are uniformly applicable to similarly situated Members. Effective for Plan Years commencing on and after January 1, 2009, "financial hardship" shall also mean the immediate and heavy financial need of a Member's Primary Beneficiary on account of the expenses and payments under sub-sections (a), (c) or (e) above.

The Administrative Committee shall direct the Trustee to pay to such Member all or any portion of the value of his Salary Reduction Contributions Account, Rollover Account and Firm Contributions Account that is subject to withdrawal as the Administrative Committee, in its sole discretion, deems necessary to satisfy such financial hardship (including amounts required to pay income taxes or penalties on such payment), provided that the Member has no other resources

that are reasonably available to him. In no event, however, shall the amount of a hardship distribution paid to a Member exceed the sum of his Salary Reduction Contributions Account (excluding his Designated Roth Subaccount, unless the Administrative Committee has determined that such amounts are subject to withdrawal), Rollover Account and Firm Contributions Account, including any qualified nonelective contributions held in such accounts, reduced, if applicable, by prior withdrawals under this Section."

2. Appendix A is amended by adding Sri Lanka to the countries listed therein.

## McKINSEY & COMPANY, INC.

Unanimous Written Consent of the
Administrative Committee of the Board of Directors

The undersigned, being all the members of the Administrative Committee of the Board of Directors of McKinsey & Company, Inc., a New York corporation (the "Corporation"), acting pursuant to Section 708 of the Business Corporation Law of the State of New York and the By-Laws of the Corporation, do hereby consent to the adoption of and hereby adopt the following resolutions without the formality of convening a meeting and direct that this consent be filed with the minutes of the proceedings of the Board of Directors:

RESOLVED, that the McKinsey & Company, Inc. Profit-Sharing Retirement Plan, as amended and restated as of January 1, 2013 be, and hereby is, amended, effective as of October 1, 2013, as set forth in Annex A, attached hereto and made a part hereof; and

FURTHER RESOLVED, that the officers of the Corporation be, and each of them is, hereby authorized, empowered and directed to take such actions and execute and deliver such documents as may be necessary or appropriate to effectuate the intent and purposes of the foregoing resolutions.

This consent may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed an original, and such counterparts shall together constitute one and the same instrument.

The undersigned hereby consent to the foregoing resolutions.

Dated as of October 4, 2013.

_____
Vikram Malhotra, Director


_____
Elizabeth Lempres, Director


_____
Christian Casal, Director

# McKINSEY & COMPANY, INC.

### Unanimous Written Consent of the
### Administrative Committee of the Board of Directors

The undersigned, being all the members of the Administrative Committee of the Board of Directors of McKinsey & Company, Inc., a New York corporation (the "Corporation"), acting pursuant to Section 708 of the Business Corporation Law of the State of New York and the By-Laws of the Corporation, do hereby consent to the adoption of and hereby adopt the following resolutions without the formality of convening a meeting and direct that this consent be filed with the minutes of the proceedings of the Board of Directors:

RESOLVED, that the McKinsey & Company, Inc. Profit-Sharing Retirement Plan, as amended and restated as of January 1, 2013 be, and hereby is, amended, effective as of October 1, 2013, as set forth in Annex A, attached hereto and made a part hereof; and

FURTHER RESOLVED, that the officers of the Corporation be, and each of them is, hereby authorized, empowered and directed to take such actions and execute and deliver such documents as may be necessary or appropriate to effectuate the intent and purposes of the foregoing resolutions.

This consent may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed an original, and such counterparts shall together constitute one and the same instrument.

The undersigned hereby consent to the foregoing resolutions.

Dated as of October 4, 2013.

_____
Vikram Malhotra, Director

_____
Elizabeth Lempres, Director

_____
Christian Casal, Director

## McKINSEY & COMPANY, INC.

### Unanimous Written Consent of the
### Administrative Committee of the Board of Directors

The undersigned, being all the members of the Administrative Committee of the Board of Directors of McKinsey & Company, Inc., a New York corporation (the "Corporation"), acting pursuant to Section 708 of the Business Corporation Law of the State of New York and the By-Laws of the Corporation, do hereby consent to the adoption of and hereby adopt the following resolutions without the formality of convening a meeting and direct that this consent be filed with the minutes of the proceedings of the Board of Directors:

RESOLVED, that the McKinsey & Company, Inc. Profit-Sharing Retirement Plan, as amended and restated as of January 1, 2013 be, and hereby is, amended, effective as of October 1, 2013, as set forth in Annex A, attached hereto and made a part hereof; and

FURTHER RESOLVED, that the officers of the Corporation be, and each of them is, hereby authorized, empowered and directed to take such actions and execute and deliver such documents as may be necessary or appropriate to effectuate the intent and purposes of the foregoing resolutions.

This consent may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed an original, and such counterparts shall together constitute one and the same instrument.

The undersigned hereby consent to the foregoing resolutions.

Dated as of October 4, 2013.

 

_____
Vikram Malhotra, Director

 

_____
Elizabeth Lempres, Director

_____
Christian Casal, Director

<u>Annex A</u>
<u>Amendment No. 1 to the</u>
<u>McKinsey & Company, Inc. Profit-Sharing Retirement Plan</u>

The McKinsey & Company, Inc. Profit Sharing Retirement Plan, as amended and restated as of January 1, 2013 (the "Plan"), is amended, effective as of October 1, 2013 (or such other date specified below), as follows:

1.  The first paragraph of Section 3.1 is deleted in its entirety and replaced with the following two paragraphs:

Except as provided below, each Plan Year the Board of Directors shall designate with respect to Members who were Employees on December 1 in such Plan Year as Firm Contributions, a percentage of the Compensation of each such Member to be contributed to the Plan for the credit of the Member.  For each Plan Year commencing on and after January 1, 2010, such percentage is not required to be equal for all such Members.

Notwithstanding the foregoing, effective for Compensation earned on and after October 1, 2013, by a Member while employed in a Firm office in Great Britain ("Eligible British Compensation") the Firm Contributions with respect to such Eligible British Compensation shall be 12%, and a Member who earns such Eligible British Compensation for a Plan  Year ("Eligible British Member") shall not be required to be an Employee on December 1 of such Plan Year to receive an allocation of Firm Contributions with respect to his Eligible British Compensation, as provided in Section 5.1.  Any Firm Contributions made with respect to an Eligible British Member for periods other than those that he is employed in a Firm office in Great Britain shall be subject to the general rules of this Section 3.1 and shall disregard his Eligible British Compensation for the same Plan Year.

2.  Section 5.1 is restated in its entirety to read as follows:

Except as provided below, as of the last day of each Plan Year, each Member's Firm Contributions Account shall be credited with the Firm Contributions made on behalf of the Member pursuant to Section 3.1.  Notwithstanding the foregoing, Firm Contributions made with respect to Eligible British Compensation (as defined in Section 3.1) for the Plan Year that an Eligible British Member (as defined in Section 3.1) incurs a separation from Service or transfers to a Firm office outside of Great Britain, shall be credited to his Firm Contributions Account as soon as practicable following such separation from Service or transfer.

3.  Section 32.7 is amended to add the following sentence at the end thereof:

Notwithstanding anything herein to the contrary, effective as of January 1, 2013, a Foreign Member who is assigned to, and principally employed by, the Firm in an office of the Firm in Mexico and who is designated as an Intern shall not be eligible for any contributions from the Firm under Sections 3.1 and 32.2 of the Plan.

# McKINSEY & COMPANY, INC.

## OFFICER'S CERTIFICATE

I, Yuliya Levin, the duly elected and acting Assistant Secretary of McKinsey & Company, Inc. (the "Corporation"), a corporation organized and existing under the laws of the State of New York, United States of America, do HEREBY CERTIFY that the following is a true and correct copy of certain resolutions duly adopted at the Annual Meeting of the Board of Directors held on December 13, 2013 at 55 East 52nd Street, New York, New York, and that such resolutions are in full force and effect and have not been amended, modified or rescinded as of the date hereof:

RESOLVED, that the McKinsey & Company, Inc. Profit-Sharing Retirement Plan (the "PSRP") is hereby amended as set forth in Annex A attached hereto and made a part hereof; and

FURTHER RESOLVED, that the officers and employees of the Corporation be empowered to adopt and execute such documents, agreements and/or text of amendments as may be required to give effect to the above actions.

IN WITNESS WHEREOF, the undersigned has executed this certificate this 17th day of December, 2013.

_____
Yuliya Levin
Assistant Secretary

[Corporate Seal]

STATE OF NEW YORK   )
                      ) ss.:
COUNTY OF NEW YORK  )

Sworn to and subscribed before me

this 17th day of December, 2013.

_____
Notary Public

ELIZABETH C. DUFFY
Notary Public, State of New York
No. 02DU6182231
Qualified in New York County
Commission Expires February 19, 2016

<u>Annex A</u>

<u>Amendment No. 2 to the</u>

<u>McKinsey & Company, Inc. Profit-Sharing Retirement Plan</u>

The McKinsey & Company, Inc. <u>Profit-Sharing Retirement</u> Plan, as amended and restated as of January 1, 2013 (the "Plan"), is amended as follows:

1.    Effective as of September 16, 2013, Section 10.15 is amended to read as follows:

The provisions of the Plan shall be construed, administered and governed in accordance with the provisions of ERISA, the Code, and other applicable federal law, and, to the extent not inconsistent therewith, if any determination is to be made with respect to the Plan under applicable state law, the laws of the State of New York shall apply.  For the avoidance of doubt, the terms "spouse," "married" or "marriage" as used herein shall refer to a marriage to a spouse, as defined under applicable law.

2.    Effective as of January 1, 2014, Appendix A is amended by adding Kazakhstan, Pakistan, Kenya and Ethiopia to the countries listed therein.

# McKINSEY & COMPANY, INC.

## OFFICER'S CERTIFICATE

I, Yuliya Levin, the duly elected and acting Assistant Secretary of McKinsey & Company, Inc. (the "Corporation"), a corporation organized and existing under the laws of the State of New York, United States of America, do HEREBY CERTIFY that the following is a true and correct copy of certain resolutions duly adopted at the Annual Meeting of the Board of Directors held on December 11, 2014 at Maximilianstrasse 17, Munich, 80539, Germany, and that such resolutions are in full force and effect and have not been amended, modified or rescinded as of the date hereof:

RESOLVED, that the McKinsey & Company, Inc. Profit-Sharing Retirement Plan is hereby amended as set forth in Annex A attached hereto and made a part hereof; and

FURTHER RESOLVED, that the officers and employees of the Corporation be empowered to adopt and execute such documents, agreements and/or text of amendments as may be required to give effect to the above actions.

IN WITNESS WHEREOF, the undersigned has executed this certificate this 20th day of January, 2015.

Yuliya Levin
Assistant Secretary

[Corporate Seal]

STATE OF NEW YORK )
                  ) ss.:
COUNTY OF NEW YORK )

Sworn to and subscribed before me

this 20th day of January, 2015.

Notary Public

## Amendment No. 3 to the

### McKinsey & Company, Inc. Profit-Sharing Retirement Plan

The McKinsey & Company, Inc. Profit Sharing Retirement Plan, as amended and restated as of January 1, 2013 (the "Plan"), is amended, effective as of the dates specified below, as follows:

1. Effective as of January 1, 2014, the second paragraph of Section 3.1 (as added to the Plan by Amendment No. 1 to the Plan) is amended in its entirety to read as follows:

Notwithstanding the foregoing, effective for Compensation earned on and after January 1, 2014, by a Member while employed in a Firm office in Great Britain ("Eligible British Compensation"), the Firm Contributions for such Member (an "Eligible British Member") for a Plan Year with respect to such Eligible British Compensation shall be:

(i)     12% for any Eligible British Compensation earned by an Eligible British Member who (a) is not a Principal or Director of the Firm or (b) is a Principal or Director of the Firm who incurs a separation from Service prior to September 1, 2014; and

(ii)    19% for any Eligible British Compensation earned by an Eligible British Member who is a Principal or Director of the Firm to whom (i)(b) above does not apply.

An Eligible British Member who earns such Eligible British Compensation for a Plan Year shall not be required to be an Employee on December 1 of such Plan Year to receive an allocation of Firm Contributions with respect to his Eligible British Compensation, as provided in Section 5.1. Any Firm Contributions made with respect to an Eligible British Member for periods other than those that he is employed in a Firm office in Great Britain shall be subject to the general rules of this Section 3.1 and shall disregard his Eligible British Compensation for the same Plan Year.

2. Effective as of June 1, 2013, the first sentence of Section 3.13 is amended in its entirety to read as follows:

Effective as of June 1, 2013, a Member may irrevocably elect to make a Roth Conversion Contribution of all or any portion of the Member's vested Account (other than from his Designated Roth Subaccount) to the Member's Roth Conversion Account.

# McKINSEY & COMPANY, INC.

## SECRETARY'S CERTIFICATE

I, Yuliya Levin, Assistant Secretary of McKinsey & Company, Inc. (the "Corporation"), a corporation duly organized and existing under the laws of the State of New York, United States of America, DO HEREBY CERTIFY that the following is a true and correct copy of the resolutions duly adopted by Unanimous Written Consent of the Administrative Committee of the Board of Directors of the Corporation, dated as of March 17, 2015; and that such resolutions are in full force and effect and have not been amended, modified or rescinded as of the date hereof:

RESOLVED, that the McKinsey & Company, Inc. Profit-Sharing Retirement Plan, as amended and restated as of January 1, 2013, be, and hereby is, amended, effective as of January 1, 2015, as set forth in Annex A, attached hereto and made a part hereof; and

FURTHER RESOLVED, that the McKinsey & Company, Inc. Money Purchase Pension Plan, as amended and restated as of January 1, 2013, be, and hereby is, amended, effective as of January 1, 2015, as set forth in Annex B, attached hereto and made a part hereof; and

FURTHER RESOLVED, that the officers of the Corporation be, and each of them is, hereby authorized, empowered and directed to take such actions and execute and deliver such documents as may be necessary or appropriate to effectuate the intent and purposes of the foregoing resolutions.

IN WITNESS WHEREOF, the undersigned has executed this certificate this 23rd day of March, 2015.

Yuliya Levin
Assistant Secretary

[Corporate Seal]

STATE OF NEW YORK    )
                            ) SS.:
COUNTY OF NEW YORK  )

Sworn to and subscribed before me
this 23rd day of March, 2015.

NOTARY PUBLIC

ELIZABETH C. DUFFY
Notary Public, State of New York
No. 02DU6182231
Qualified in New York County
Commission Expires February 19, 2016

The McKinsey & Company, Inc. Profit Sharing Retirement Plan, as amended and restated as of January 1, 2013 (the "Plan"), is amended, effective as of January 1, 2015, as follows:

1. Section 14.15 is deleted in its entirety and replaced with the following new Section 14.15:

      14.15  Where a Pension Sharing Order has been made that applies to a British Member's benefits in respect of his Reckonable Service under the Plan, the provisions of the Welfare Reform and Pensions Act 1999 shall apply.  The British Member's ex-spouse may be permitted to join the Plan where the Administrative Committee in its discretion decides. The terms on which the ex-spouse may join the Plan and the benefits payable to such ex-spouse shall be agreed by the Administrative Committee.

2. Section 14.17 is deleted in its entirety and replaced with the following new Section 14.17:

      14.17  No person is entitled to a payment from the Plan that is not an Authorised Payment.  The Trustees may as an exception make a payment from the assets of the Plan even though it is or may be an Unauthorised Payment.  Where a benefit to which a Member is entitled would otherwise be an Unauthorised Payment, the Trustees may rearrange that benefit so that it is an Authorised Payment.  The Trustees will consult the Principal Employer and where reasonably practicable will obtain the consent of the beneficiary before making any Unauthorised Payment or rearranged payment but no person will have an entitlement to such a payment.

3. A new Section 14.18 is added as follows:

      14.18  A British Member who has left Service may at any time request that the UK Administrator use the Member's Account to pay a lump sum on grounds of serious ill-health.  The UK Administrator must have received evidence from a registered medical practitioner that the Member is expected to live for less than one year before the lump sum may be paid.

# McKINSEY & COMPANY, INC.

## SECRETARY'S CERTIFICATE

I, Stephen Lee, Assistant Treasurer of McKinsey & Company, Inc. (the "Corporation"), a corporation duly organized and existing under the laws of the State of New York, United States of America, DO HEREBY CERTIFY that the following is a true and correct copy of the resolutions duly adopted by Unanimous Written Consent of the Administrative Committee of the Board of Directors of the Corporation, dated as of August 17, 2015; and that such resolutions are in full force and effect and have not been amended, modified or rescinded as of the date hereof:

RESOLVED, that the McKinsey & Company, Inc. Profit-Sharing Retirement Plan, as amended and restated as of January 1, 2013, be, and hereby is, amended, effective as of December 1, 2014, as set forth in Annex A, attached hereto and made a part hereof; and

FURTHER RESOLVED, that the officers of the Corporation be, and each of them is, hereby authorized, empowered and directed to take such actions and execute and deliver such documents as may be necessary or appropriate to effectuate the intent and purposes of the foregoing resolutions.

IN WITNESS WHEREOF, the undersigned has executed this certificate this 16th day of September, 2015.

Stephen Lee
Assistant Treasurer

[Corporate Seal]

STATE OF NEW YORK      )
                       ) SS.:
COUNTY OF NEW YORK     )

Sworn to and subscribed before me
this 16th day of September, 2015.

NOTARY PUBLIC

<u>Annex A</u>
<u>Amendment No. 5 to the</u>
<u>McKinsey & Company, Inc. Profit-Sharing Retirement Plan</u>

The McKinsey & Company, Inc. Profit-Sharing Retirement Plan, as amended and restated as of January 1, 2013 (the "Plan"), is amended as follows:

1. Section 3.5 is deleted in its entirety and replaced with the following new Section 3.5, effective as of December 1, 2014:

If a Member is a member of any other employee benefit plan maintained by the Firm and such Member (or the surviving spouse of such Member) elects, pursuant to the terms of such other plan, to have the benefits to which the Member (or surviving spouse) is entitled under that plan transferred to the Plan in a lump sum, the Trustee shall, under such terms and such rules as the Administrative Committee shall determine under rules of uniform application, accept such transfer. For the avoidance of doubt, the McKinsey & Company, Inc. Supplemental Retirement Plan annuity contract through Principal Life Insurance Company is considered an employee benefit plan maintained by the Firm for the purposes of this Section 3.5. Any transfer accepted under this Section 3.5 shall not be treated as an After-Tax Contribution for purposes of Sections 3.3 and 3.4 of the Plan.

2. Section 3.9 is amended to delete all references therein to a "Member" or "Members" and replace them with "Employee" or "Employees," as applicable.

**McKINSEY & COMPANY, INC.**

OFFICER'S CERTIFICATE

I, Yuliya Levin, the duly elected and acting Assistant Secretary of McKinsey & Company, Inc., a corporation organized and existing under the laws of the State of New York, United States of America (the "Corporation"), do HEREBY CERTIFY that the following is a true and correct copy of certain resolutions duly adopted at the Annual Meeting of the Board of Directors held on December 10, 2015 at 55 East 52nd Street, New York, New York, and that such resolutions are in full force and effect and have not been amended, modified or rescinded as of the date hereof:

RESOLVED, that the McKinsey & Company, Inc. Profit-Sharing Retirement Plan (the "PSRP") is hereby amended as set forth in Annex A attached hereto and made a part hereof; and

FURTHER RESOLVED, that the officers and employees of the Corporation be empowered to adopt and execute such documents, agreements and/or text of amendments as may be required to give effect to the above actions.

IN WITNESS WHEREOF, the undersigned has executed this certificate this 16th day of December, 2015.

Yuliya Levin
Assistant Secretary

[Corporate Seal]

STATE OF NEW YORK )
) ss.:
COUNTY OF NEW YORK )

Sworn to and subscribed before me

this 16th day of December, 2015.

Notary Public

**JOSEPH J. McFADDEN**
**Notary** Public, State of New York
No. 02MC6322625
**Qualified** in Orange County
**Commission Expires April 6, 2019**



## Amendment No. 6 to the

## McKinsey & Company, Inc. Profit-Sharing Retirement Plan

The McKinsey & Company, Inc. Profit-Sharing Retirement Plan, as amended and restated as of January 1, 2013 (the "Plan"), is amended, effective as of the dates provided below, as follows:

1. Effective January 1, 2016, the second and third paragraphs of Section 3.1 (as last amended by Amendment No. 3 to the Plan) are amended in their entirety to read as follows:

   Notwithstanding the foregoing, effective for Compensation earned on and after January 1 1, 2016, by a Member while employed in a Firm office in Great Britain ("Eligible British Compensation"), the Firm Contributions with respect to such Member (an "Eligible British Member") for a Plan Year with respect to such Eligible British Compensation shall be the lesser of the equivalent in U.S. dollars of 10,000 GBP, and:

   (i) 12% for any Eligible British Compensation earned by an Eligible British Member who is not a Principal, Director or Entity Partner of the Firm; and

   (ii) 19% for any Eligible British Compensation earned by an Eligible British Member who is a Principal, Director or Entity Partner of the Firm.

   An Eligible British Member who earns such Eligible British Compensation for a Plan Year shall not be required to be an Employee on December 1 of such Plan Year to receive an allocation of Firm Contributions with respect to his Eligible British Compensation, as provided in Section 5.1. Any Firm Contributions made with respect to an Eligible British Member for periods other than those that he is employed in a Firm office in Great Britain shall be subject to the general rules of this Section 3.1 and shall disregard his Eligible British Compensation for the same Plan Year.

2. Effective January 1, 2016, Section 3.2 is amended to add the following two paragraphs after the second paragraph of the Section:

   Effective January 1, 2016, the Plan Administrator will implement an automatic contribution arrangement for Members whose primary residence is in the United States (the "ACA"). The ACA shall apply to the following Members unless they make an affirmative election with respect to the amount of their Salary Reduction Contributions prior to their automatic enrollment date: (i) any Member hired or rehired as an Employee of the Firm, or transferred to the United States, on or after January 1, 2016, with such Member being automatically enrolled on the first of the month following 30 days of employment, reemployment or transfer, and (ii) any Member who as of January 4, 2016, is not making Salary Reduction Contributions to the Plan, with such Member being automatically enrolled commencing as of the beginning of the payroll period ending February 28, 2016 (each Member subject to the ACA being referred to as an "Affected

Member"). Each Affected Member will be deemed to have elected Salary Reduction Contributions in the amount of 5% of Compensation for each payroll period, and such amount will be deducted automatically from the Member's Compensation and contributed to his or her Account. In addition, as of each January 1st following the date an Affected Member is automatically enrolled in the Plan, such Affected Member's automatic enrollment percentage shall be increased by 1%, subject to a maximum automatic enrollment percentage of 10% and any other applicable limits described in Article 3. Notwithstanding the foregoing, the automatic enrollment percentage of an Affected Member hired, rehired or transferred in the last calendar quarter of a year will not be increased until the second January 1st following the Affected Member's date of hire, rehire or transfer. No Salary Reduction Contributions made under the ACA shall be deemed Designated Roth Contributions.

Prior to an Affected Member being automatically enrolled in the Plan and prior to the beginning of every subsequent Plan Year, the Administrative Committee will distribute a notice of each such Member's rights and obligations under the ACA. The Administrative Committee may adopt rules and procedures to implement the ACA.

3. Section 14.4(a) is amended in its entirety to read as follows:

The Firm will designate British Members who are eligible to receive an annual contribution to the Plan from the Firm as determined and paid in accordance with Rule 3.1. Notwithstanding the foregoing, for Plan Years starting on or after January 1, 2015, any Member who is also a Principal, Director or Entity Partner of the Firm and who is in pensionable service as a member of the McKinsey Additional Plan or any other pension plan sponsored by McKinsey & Company, Inc. United Kingdom at any time during a calendar year, will not be eligible to receive any contribution to the Plan.

4. Appendix A is amended, effective January 1, 2016, by adding Azerbaijan to the countries listed therein.

# McKINSEY & COMPANY, INC.

## OFFICER'S CERTIFICATE

I, Stephen Lee, Assistant Treasurer of McKinsey & Company, Inc., a corporation duly organized and existing under the laws of the State of New York, United States of America (the "Corporation"), DO HEREBY CERTIFY that the following is a true and correct copy of the resolutions duly adopted by Unanimous Written Consent of the Administrative Committee of the Board of Directors of the Corporation, dated as of June 9, 2016; and that such resolutions are in full force and effect and have not been amended, modified or rescinded as of the date hereof:

RESOLVED, that the McKinsey & Company, Inc. Profit-Sharing Retirement Plan, as amended and restated as of January 1, 2013, be, and hereby is, amended, effective as of July 1, 2016, as set forth in Annex A, attached hereto and made a part hereof; and

FURTHER RESOLVED, that the McKinsey & Company, Inc. Money Purchase Pension Plan, as amended and restated as of January 1, 2013, be, and hereby is, amended, effective as of July 1, 2016, as set forth in Annex B, attached hereto and made a part hereof; and

FURTHER RESOLVED, that the officers of the Corporation be, and each of them is, hereby authorized, empowered and directed to take such actions and execute and deliver such documents as may be necessary or appropriate to effectuate the intent and purposes of the foregoing resolutions.

IN WITNESS WHEREOF, the undersigned has executed this certificate this 15th day of June, 2016.

Stephen Lee
Assistant Treasurer

[Corporate Seal]

STATE OF NEW YORK ) 
) SS.:
COUNTY OF NEW YORK )

Sworn to and subscribed before me this 15th day of June, 2016.

NOTARY PUBLIC

MICHAEL A. SCHERBAN
Notary Public, State of New York
No. 02SC6317084
Qualified in New York County
Commission Expires December 29, 2018

The McKinsey & Company, Inc. Profit Sharing Retirement Plan, as amended and restated as of January 1, 2013 (the "Plan"), is amended, effective as of July 1, 2016, by adding the following sentence to the end of Section 1.8 of the Plan to provide as follows:

In addition, except with respect to Firm Contributions under Section 3.1, Compensation shall also include any cash amounts paid to Members by the Firm and designated as "discretionary payments" being made as a result of the transition out of the Firm's retiree medical benefit.

Amendment No. 3 to the
McKinsey & Company, Inc. Money Purchase Pension Plan

The McKinsey & Company, Inc. Money Purchase Pension Plan, as amended and restated as of January 1, 2013 (the "Plan"), is amended, effective as of July 1, 2016, by adding the following sentence to the end of Section 1.7 of the Plan to provide as follows:

In addition, Compensation shall not include any cash amounts paid by the Firm and designated as "discretionary payments" being made as a result of the transition out of the Firm's retiree medical benefit.

# McKINSEY & COMPANY, INC.

## OFFICER'S CERTIFICATE

I, Stephen Lee, the duly elected and acting Assistant Treasurer of McKinsey & Company, Inc., a corporation organized and existing under the laws of the State of New York, United States of America (the "Corporation"), do HEREBY CERTIFY that the following is a true and correct copy of certain resolutions duly adopted at the Annual Meeting of the Board of Directors held on December 8, 2016 at Amstel 51 Amsterdam, and that such resolutions are in full force and effect and have not been amended, modified or rescinded as of the date hereof:

## Benefit and Retirement Plan Amendments and PSRP Firm Contributions

RESOLVED, that the McKinsey & Company, Inc. Money Purchase Pension Plan ("MPPP") is hereby amended as set forth in Annex A attached hereto and made a part hereof; and

FURTHER RESOLVED, that the McKinsey & Company, Inc. Profit-Sharing Retirement Plan, as amended and restated as of January 1, 2013 ("PSRP") is hereby amended as set forth in Annex B attached hereto and made a part hereof; and

## New Benefit Plan and Related Amendments

RESOLVED, that the resolutions below shall only become effective if approved before December 31, 2016 by the Compensation Policy Committee of the Corporation; and if one or more of the resolutions below is not so approved by such committee, all of such resolutions shall become null and void and have no effect; and

FURTHER RESOLVED, that, effective December 31, 2016, the Corporation shall adopt the McKinsey & Company, Inc. Partner Cash Balance Plan (the "Cash Balance Plan"), which shall incorporate the terms set forth in Annex C hereto; and

FURTHER RESOLVED, that the officers of the Corporation be, and each of them hereby is, authorized, empowered and directed to prepare and finalize a formal plan document for the Cash Balance Plan incorporating the terms set forth in Annex C hereto and to contain such other terms and provisions that are deemed necessary or desirable by such officers, in their discretion, to implement the Cash Balance Plan, including those required for the Cash Balance Plan to be qualified under the Internal Revenue Code of 1986, as amended (the "Code") or to comply with other applicable law, and to execute such formal plan document on or before December 31, 2016 on behalf of the Corporation; and

FURTHER RESOLVED, that, effective December 31, 2016, the Amended and Restated Trust Agreement, effective as of the 1st day of August, 2009, by and among McKinsey & Company, Inc., and the individual trustees designated thereunder, as amended (the "Master Trust Agreement"), be adopted as the trust under the Cash Balance Plan; and

FURTHER RESOLVED, that, effective December 31, 2016, the PSRP, be, and hereby is, amended, as set forth in Annex D, attached hereto and made a part hereof; and

FURTHER RESOLVED, that for the Plan Year ending December 31, 2016, for each eligible PSRP Member who (i) is not a "highly compensated employee" for the Plan Year

(within the meaning of the Internal Revenue Code of 1986), and (ii) is an active employee assigned to and principally employed in the U.S. on December 1, 2016, the Corporation shall make contributions to the PSRP, which, when combined with any other contributions made by the Corporation on the Member's behalf to the PSRP, is no less than 7.5% of the Member's qualified compensation up to $265,000 for such Plan Year that is earned while the Member is an active employee assigned to and principally employed in the U.S.; provided, however, that any contributions to the PSRP made pursuant to this Resolution will be offset by any contributions the Corporation may make for such Member under the MPPP); and

FURTHER RESOLVED, that the officers of the Corporation be, and each of them hereby is, authorized, empowered and directed to take such actions and execute and deliver such documents as may be necessary or appropriate to effectuate the intent and purpose of the foregoing resolutions, including, without limitation, (i) seeking all necessary or desired governmental approvals, including submitting the Cash Balance Plan to the Internal Revenue Service for an advance determination that the Plan satisfies Section 401(a) of the Code, (ii) making any further amendments to the Cash Balance Plan that are necessary or desirable to reflect the intent and purpose of the above resolutions, (iii) taking all action necessary under the Master Trust Agreement to reflect the Cash Balance Plan's adoption of such agreement, and (iv) entering into any agreements and arrangements with service providers to the Cash Balance Plan, including those relating to trustee, custodial, recordkeeping, administration and investment management services; and

FURTHER RESOLVED, that all actions, in the name and on behalf of the Corporation or otherwise, heretofore taken by the officers of the Corporation in connection with or to effectuate or carry out the foregoing resolutions, be, and each hereby is, in all respects, ratified, confirmed, authorized and approved.

## Authority to Implement Resolutions

RESOLVED, that the officers of the Corporation be, and each of them hereby is, authorized, empowered and directed to take or cause to be taken such actions and execute and deliver or cause to be executed and delivered such documents as may be necessary or appropriate to effectuate the intent and purposes of each of the aforesaid resolutions.

IN WITNESS WHEREOF, the undersigned has executed this certificate this 21st day of December, 2016.

Stephen Lee
Assistant Treasurer

[Corporate Seal]

STATE OF NEW YORK )
) ss.:
COUNTY OF NEW YORK )

Sworn to and subscribed before me

this 21st day of December, 2016.

Notary Public
MICHAEL W. GRAMER
Notary Public, State of New York
No. 02GR6299180
Qualified in New York County
Commission Expires March 17, 2018

The McKinsey & Company, Inc. Money Purchase Pension Plan, as amended and restated as of January 1, 2013 (the "Plan"), is amended as follows effective as of January 1, 2017:

1. The first two sentences of Section 13.3 are amended to read as follows:

Effective for expenses of Retiree Medical Benefits under the Retiree Medical Plan incurred on and after January 1, 2017 and prior to January 1, 2025, all payment for such expenses shall be made from the general assets of the Company. Effective for expenses of Retiree Medical Benefits under the Retiree Medical Plan incurred on and after January 1, 2025, the Plan shall pay such expenses from the 401(h) Account; provided, however, that to the extent either the available funds under the 401(h) Account are insufficient or amounts are payable in respect of Covered Retirees or Covered Dependents who are not eligible for benefits under the Plan, payment shall be made from the general assets of the Company.

The McKinsey & Company, Inc. Profit Sharing Retirement Plan, as amended and restated as of January 1, 2013 (the "Plan"), is amended as follows effective as of January 1, 2017:

1. The first two sentences of the third paragraph of Section 3.2 are amended to read as follows:

All Salary Reduction Contributions under this Section shall be paid by the Firm to the Trustee as soon as is administratively practicable following the payroll period to which the deferral is applicable, but in no event later than the 15th business day of the month following the month in which such Compensation would otherwise have been paid to the Member. Notwithstanding the foregoing provisions of this Section, in no event may the Firm make Salary Reduction Contributions (other than catch-up contributions) for the account of a Member under this Section in any calendar year in excess of $15,500, adjusted for increases in the cost of living pursuant to Section 402(g)(5) of the Code. If, however, a Member has exceeded the foregoing limitation for the Member's taxable year as a result of contributions under both this Plan and another tax-qualified plan to which the Member contributes, such Member may indicate to this Plan any excess made during such taxable year by notifying the Administrative Committee on or before April 3 of the following year, in writing, of the amount of the excess.

## McKinsey & Company, Inc. Partner Cash Balance Plan

**Eligibility**

- Anyone designated as a shareholding Partner or Senior Partner ("Eligible Partner"); anyone designated as an Entity Partner or a non-shareholding Partner is excluded.

- Partners transferred to U.S. on a short-term basis are excluded from the Plan.

- For 2016, shareholding Partners or Senior Partners are only eligible for the Plan if they are credited with at least 1,000 hours of service in the U.S. for the year and are Eligible Partners on December 31, 2016.

**Pay Credits** – A percentage of U.S.-earned compensation capped at $265,000 for each Eligible Partner, as follows:

| Age | Partners | Senior Partners |
|---|---|---|
| <35 | 12% | 12% |
| 35-39 | 12 | 24 |
| 40-44 | 12 | 36 |
| 45-49 | 12 | 42 |
| 50-54 | 12 | 48 |
| 55+ | 12 | 60 |

- Age is age when Eligible Partner first joins the Plan.
- Age is attained (truncated) age on December 31 of the plan year.
- If an Eligible Partner is promoted from Partner to Senior Partner during the year, use age as of December 31 of the year of promotion in the Senior Partners column to get the applicable percentage.
- An individual must be credited with at least 1,000 hours of service in the U.S. as an Eligible Partner to receive a Pay Credit for any year.
- The $265,000 compensation limit will not be indexed for cost of living.

**Interest Credits** – Interest is equal to the return on plan assets net of expenses, subject to the preservation of capital rule.

- Interest is credited on the beginning-of-year account balance. Pay Credits credited during a year do not receive interest credits during the year.
- Interest is credited on December 31, or on the date a participant receives a distribution if earlier.

**Payment Options** – Lump sum, single life annuity for unmarried participants; 50% joint and survivor annuity or 75% joint and survivor annuity for married participants.

- Account balances will be converted to a single life annuity using three-segment rates under Section 417(e), minus 150 bps (rates can be negative) and Section 417(e) mortality.
- A single life annuity will be converted to the joint and survivor annuity options using the same assumptions.

**Other Terms**

- Normal Retirement Age (NRA) is 65
- Vesting is 100% at all times
- A terminated participant must commence distributions no later than NRA.
- In-service distributions are permitted at age 62.
- Pre-retirement death benefit: The full benefit is payable to the surviving spouse if the participant is married or to the estate if not married.
- If a participant works beyond NRA, his or her benefit will be suspended.

The McKinsey & Company, Inc. Profit Sharing Retirement Plan, as amended and restated as of January 1, 2013 (the "Plan"), is amended, effective December 31, 2016, by adding the following to the end of the first paragraph of Section 3.1 of the Plan:

In addition, for each Plan Year commencing on and after January 1, 2016, the Board of Directors may designate with respect to Members who are not highly compensated Employees for the Plan Year and who were Employees on December 1 in such Plan Year additional amounts to be contributed to the Plan as Firm Contributions for the credit of all or some of such Members, and, to the extent such additional Firm Contributions are expressed as a percentage of the Compensation, such Compensation need not be limited to $170,000. Such additional Firm Contributions may be in lieu of or in addition to any contributions otherwise to be made under the Plan for such Members.

# McKINSEY & COMPANY, INC.

## OFFICER'S CERTIFICATE

I, James Fitzgerald, Assistant Treasurer of McKinsey & Company, Inc., a corporation duly organized and existing under the laws of the State of New York, United States of America (the "Corporation"), DO HEREBY CERTIFY that the following is a true and correct copy of the resolutions duly adopted by Unanimous Written Consent of the Administrative Committee of the Board of Directors of the Corporation, dated as of September 19, 2017; and that such resolutions are in full force and effect and have not been amended, modified or rescinded as of the date hereof:

RESOLVED, that the McKinsey & Company, Inc. Money Purchase Pension Plan, as amended and restated as of January 1, 2013, be, and hereby is, amended, effective as of January 1, 2017, as set forth in Annex A, attached hereto and made a part hereof; and

FURTHER RESOLVED, that the McKinsey & Company, Inc. Profit-Sharing Retirement Plan, as amended and restated as of January 1, 2013, be, and hereby is, amended, effective as of January 1, 2018, as set forth in Annex B, attached hereto and made a part hereof; and

FURTHER RESOLVED, that the officers of the Corporation be, and each of them is, hereby authorized, empowered and directed to take such actions and execute and deliver such documents as may be necessary or appropriate to effectuate the intent and purposes of the foregoing resolutions.

IN WITNESS WHEREOF, the undersigned has executed this certificate this 19th day of September, 2017.

James Fitzgerald
Assistant Treasurer

[Corporate Seal]

STATE OF NEW YORK    )
                     ) SS.:
COUNTY OF NEW YORK   )

Sworn to and subscribed before me
this 19th day of September, 2017.

NOTARY PUBLIC

STEVEN PARKS
Notary Public, State of New York
Registration #01PA6333447
Qualified In New York County
Commission Expires Nov. 23, 2019

<u>Annex A</u>
<u>Amendment No. 5 to the</u>
<u>McKinsey & Company, Inc. Money Purchase Pension Plan</u>

The McKinsey & Company, Inc. Money Purchase Pension Plan, as amended and restated as of January 1, 2013 (the "Plan"), is amended as follows effective as of January 1, 2017:

1. Section 13.3 is amended to read as follows:

Effective for expenses of Retiree Medical Benefits under the Retiree Medical Plan incurred on and after January 1, 2017, and prior to January 1, 2020, all payment for such expenses shall be made from the general assets of the Company. Effective for expenses of Retiree Medical Benefits under the Retiree Medical Plan incurred on and after January 1, 2020, the Plan shall pay such expenses from the 401(h) Account; provided, however, that to the extent either the available funds under the 401(h) Account are insufficient or amounts are payable in respect of Covered Retirees or Covered Dependents who are not eligible for benefits under the Plan, payment shall be made from the general assets of the Company. The Retiree Medical Benefits payable under this Article and the amount to be paid shall be determined under the terms and conditions and subject to the limitations of the Retiree Medical Plan. Notwithstanding any other provision of the Plan to the contrary, for any Covered Retiree who is a Principal or Director age 65 or below, Retiree Medical Benefits shall be limited to 90% of the value of the cost of premiums for such Covered Retiree and his or her Covered Dependents under the Retiree Medical Plan, and for any Covered Retiree who is a Principal or Director above age 65, Retiree Medical Benefits shall be limited to 95% of the value of the cost of premiums for such Covered Retiree and his or her Covered Dependents under the Retiree Medical Plan.

The McKinsey & Company, Inc. Profit Sharing Retirement Plan, as amended and restated as of January 1, 2013 (the "Plan"), is amended, effective as of January 1, 2018, by adding the following sentence to the end of Section 3.2 of the Plan to provide as follows:

Notwithstanding anything in this Section 3.2 to the contrary, no person who is classified by the Firm as a summer associate or intern shall become an Affected Member after December 31, 2017.

# McKINSEY & COMPANY, INC.

## OFFICER'S CERTIFICATE

I, Yuliya Levin, the duly elected and acting Assistant Secretary of McKinsey & Company, Inc., a corporation organized and existing under the laws of the State of New York, United States of America (the "Corporation"), do HEREBY CERTIFY that the following is a true and correct copy of certain resolutions duly adopted at the Annual Meeting of the Board of Directors held on December 6, 2017 at 55 East 52nd Street, New York, New York, and that such resolutions are in full force and effect and have not been amended, modified or rescinded as of the date hereof:

RESOLVED, that the McKinsey & Company, Inc. Money Purchase Pension Plan, as amended and restated as of January 1, 2013 ("MPPP"), is hereby amended as set forth in Annex A attached hereto and made a part hereof;

FURTHER RESOLVED, that the McKinsey & Company, Inc. Profit-Sharing Retirement Plan, as amended and restated as of January 1, 2013 ("PSRP"), is hereby amended as set forth in Annex B attached hereto and made a part hereof;

FURTHER RESOLVED, that the officers and employees of the Corporation be empowered to adopt and execute such documents, agreements and/or text of amendments as may be required to give effect to the above actions.

RESOLVED, that the officers of the Corporation be, and each of them hereby is, authorized, empowered and directed to take or cause to be taken such actions and execute and deliver or cause to be executed and delivered such documents as may be necessary or appropriate to effectuate the intent and purposes of each of the aforesaid resolutions.

IN WITNESS WHEREOF, the undersigned has executed this certificate this 12th day of December, 2017.

Yuliya Levin
Assistant Secretary

[Corporate Seal]

STATE OF NEW YORK )
                  ) ss.:
COUNTY OF NEW YORK )

Sworn to and subscribed before me

this 12th day of December, 2017.

Notary Public

STEVEN PARKS
Notary Public, State of New York
Registration #01PA6333447
Qualified In New York County
Commission Expires Nov. 23, 2019

The McKinsey & Company, Inc. Money Purchase Pension Plan, as amended and restated as of January 1, 2013 (the "Plan"), is amended as follows effective as of January 1, 2017:

1. The third sentence of Section 1.7 is amended to read as follows:

   For purposes of determining contributions to the Plan on behalf of a Member pursuant to Article 3, for Plan Years beginning on and after January 1, 2017, in no event shall Compensation for any Plan Year exceed $270,000 (adjusted for increases in the cost of living pursuant to Section 401(a)(17) of the Code) for Members designated as Client Service Professionals or Partners and $170,000 for all other Members.

## Amendment No. 11 to the
## McKinsey & Company, Inc. Profit-Sharing Retirement Plan

The McKinsey & Company, Inc. Profit-Sharing Retirement Plan, as amended and restated as of January 1, 2013 (the "Plan"), is amended, effective as of the dates provided below, as follows:

1. Effective January 1, 2017, the third and fourth sentences of Section 1.8 are deleted in their entirety and replaced with the following:

    For purposes of determining contributions to the Plan on behalf of a Member pursuant to Article 3, in no event shall Compensation for any Plan Year beginning after December 31, 2016 exceed $270,000, adjusted for increases in the cost of living pursuant to Section 401(a)(17) of the Code.

2. Effective January 1, 2017, Section 3.1 is amended in its entirety to read as follows:

    3.1    Firm Contributions.

    Except as provided below, for each Plan Year commencing on and after January 1, 2017, the Board of Directors shall designate with respect to Members who were Employees on December 1 in such Plan Year as Firm Contributions, an amount, if any, to be contributed to the Plan for the credit of the Member. Any such amount shall be determined in the complete discretion of the Board of Directors and (i) may be expressed by the Board of Directors as a percentage of the Compensation of each such Member for such Plan Year (such percentage is not required to be equal for all such Members and Compensation used in calculating such amount may be limited for any group or groups of Members, all in the discretion of the Board of Directors), as a flat dollar amount or using any other method specified by the Board of Directors, and (ii) may take into account or provide an offset for any Firm contributions or accruals under any other tax-qualified retirement plan of the Firm. In addition, the Board of Directors may determine to make any additional amounts as Firm Contributions for any Member or Members to the extent it is determined that such amounts are necessary for the Plan or any other tax-qualified retirement plan of the Firm to meet the Code's non-discrimination testing requirements (such additional Firm Contributions to be in lieu of or in addition to any contributions otherwise to be made under the Plan for such Members).

    Notwithstanding the foregoing, effective for Compensation earned on and after January 1 1, 2016, by a Member while employed in a Firm office in Great Britain ("Eligible British Compensation"), the Firm Contributions with respect to such Member (an "Eligible British Member") for a Plan Year with respect to such Eligible British Compensation shall be the lesser of the equivalent in U.S. dollars of 10,000 GBP, and:

    (i)    12% for any Eligible British Compensation earned by an Eligible British Member who is not a Principal, Director or Entity Partner of the Firm; and

    (ii)    19% for any Eligible British Compensation earned by an Eligible British Member who is a Principal, Director or Entity Partner of the Firm.

    An Eligible British Member who earns such Eligible British Compensation for a Plan Year shall not be required to be an Employee on December 1 of such Plan Year to

receive an allocation of Firm Contributions with respect to his Eligible British Compensation, as provided in Section 5.1. Any Firm Contributions made with respect to an Eligible British Member for periods other than those that he is employed in a Firm office in Great Britain shall be subject to the general rules of this Section 3.1 and shall disregard his Eligible British Compensation for the same Plan Year.

For any Plan Year in which one or more subsidiaries included in the Plan pursuant to Section 1.13 has insufficient earnings or profits to make its Firm Contributions under this Section 3.1, the Board of Directors may by resolution adopted prior to the end of such Plan Year direct that the Firm make the appropriate Firm Contribution pursuant to this Section 3.1 for Members who are employees of such subsidiary or subsidiaries which do not have sufficient earnings or profits for that Plan Year to make Firm Contributions.

3. Appendix A is amended, effective January 1, 2018, by adding Kuwait, Myanmar and Panama to the countries listed therein.

# McKINSEY & COMPANY, INC.

## OFFICER'S CERTIFICATE

I, Yuliya Levin, Assistant Secretary of McKinsey & Company, Inc. (the "Corporation"), a corporation duly organized and existing under the laws of the State of New York, United States of America, DO HEREBY CERTIFY that the following is a true and correct copy of the resolutions duly adopted by Unanimous Written Consent of the Administrative Committee of the Board of Directors of the Corporation, dated the 21st day of May, 2018; and that such resolutions are in full force and effect and have not been amended, modified or rescinded as of the date hereof:

RESOLVED, that the McKinsey & Company, Inc. Money Purchase Pension Plan, as amended and restated as of January 1, 2018, be, and hereby is, amended, effective as of June 1, 2018, as set forth in Annex A, attached hereto and made a part hereof; and

FURTHER RESOLVED, that the McKinsey & Company, Inc. Profit-Sharing Retirement Plan, as amended and restated as of January 1, 2013, be, and hereby is, amended, effective as of June 1, 2018, as set forth in Annex B, attached hereto and made a part hereof; and

FURTHER RESOLVED, that the McKinsey & Company, Inc. Partner Cash Balance Plan, as amended and restated effective as of January 1, 2017, be, and hereby is, amended, effective as of June 1, 2018, as set forth in Annex C, attached hereto and made a part hereof; and

FURTHER RESOLVED, that the officers of the Corporation be, and each of them is, hereby authorized, empowered and directed to take such actions and execute and deliver such documents as may be necessary or appropriate to effectuate the intent and purposes of the foregoing resolutions.

IN WITNESS WHEREOF, the undersigned has executed this certificate this 12th day of July, 2018.

Yuliya Levin
Assistant Secretary

[Corporate Seal]

STATE OF NEW YORK      )
                       ) SS.:
COUNTY OF NEW YORK     )

Sworn to and subscribed before me
this 12th day of July, 2018.

NOTARY PUBLIC

JIYOUNG KIM
Notary Public, State of New York
No. 01KI6309697
Qualified in Queens County
My Commission Expires Aug. 8, 2018

Annex B
Amendment No. 12 to the
McKinsey & Company, Inc. Profit-Sharing Retirement Plan
(as amended and restated effective as of January 1, 2013)

The McKinsey & Company, Inc. Profit-Sharing Retirement Plan, as amended and restated as of January 1, 2013 (the "Plan"), is amended as follows effective as of June 1, 2018:

1. Section 1.11 is amended to add the following paragraph to the end thereof:

   In addition, effective as of June 1, 2018, an Employee shall not include any person who is designated by the Firm as a Former Managing Director.

# McKINSEY & COMPANY, INC.

## OFFICER'S CERTIFICATE

I, Damian Caputo, Assistant Secretary of McKinsey & Company, Inc., a company organized and existing under the laws of the State of New York, having its principal place of business at 711 Third Avenue, New York, New York 10017, United States of America (the "Corporation"), do hereby certify that the following is a true and correct copy of resolutions duly adopted by Unanimous Written Consent of the Administrative Committee of the Board of Directors of the Corporation, dated as of November 14, 2018, and that such resolutions are in full force and effect and have not been amended, modified or rescinded as of the date hereof:

WHEREAS, the Corporation sponsors the McKinsey & Company, Inc. Profit-Sharing Retirement Plan, amended and restated as of January 1, 2013, and as amended from time to time thereafter (the "McKinsey Plan");

WHEREAS, Section 11.1 of the McKinsey Plan authorizes the Corporation to amend or modify the McKinsey Plan;

WHEREAS, Veryday, LLC ("Veryday") is an indirect wholly-owned subsidiary of the Corporation;

WHEREAS, Veryday currently sponsors the Veryday Inc., USA 401(k) Plan, established as of January 1, 2014, and as amended from time to time thereafter (the "Veryday Plan");

WHEREAS, the Corporation and Veryday desire to consolidate and merge the Veryday Plan with and into the McKinsey Plan (the "Plan Merger"), effective as of January 1, 2019 (the "Merger Date"); and

WHEREAS, the Corporation desires to amend the McKinsey Plan to reflect the Plan Merger and to protect certain distribution rights of former participants in the Veryday Plan with respect to amounts accrued thereunder prior to the Merger Date.

NOW, THEREFORE, be it:

RESOLVED, that the Corporation hereby approves and adopts the Plan Merger, effective as of the Merger Date;

FURTHER RESOLVED, that the McKinsey Plan be, and hereby is, amended to reflect the Plan Merger and to protect certain rights of former participants in the Veryday Plan with respect to amounts accrued thereunder prior to the Merger Date, as set forth in Annex A, attached hereto and made a part hereof;

FURTHER RESOLVED, that the officers of the Corporation be, and each of them hereby is, authorized, empowered and directed to take such actions and execute and deliver such documents as may be necessary or appropriate to effectuate the intent and purposes of the foregoing resolutions.

IN WITNESS WHEREOF, the undersigned has executed this certificate this 26th day of November, 2018.

_____
Damian Caputo
Assistant Secretary

[Corporate Seal]

United States of America
STATE OF NEW YORK            )
                             ) ss
COUNTY OF NEW YORK  )

Sworn to and subscribed before me
this 26th day of November, 2018.

_____
Notary Public

JIYOUNG KIM
Notary Public, State of New York
No. 01KI6309697
Qualified in New York County
Commission Expires Aug. 18, 2022

## Amendment No. 13 to the
## McKinsey & Company, Inc. Profit-Sharing Retirement Plan
(as amended and restated effective as of January 1, 2013)

The McKinsey & Company, Inc. Profit-Sharing Retirement Plan, as amended and restated as of January 1, 2013 (the "Plan"), is amended as follows, effective January 1, 2019:

1. The Plan is hereby amended to add the following new Supplement A to the end of the Plan to reflect the merger of the Veryday Inc., USA 401(k) Plan into the Plan:

### "SUPPLEMENT A

### Former Participants in the
### Veryday Inc., USA 401(k) Plan

Merger of Plans. Effective January 1, 2019, the McKinsey & Company, Inc. Profit-Sharing Retirement Plan (the "Plan") received assets of, and assumed certain liabilities of the Veryday Inc., USA 401(k) Plan (the "Veryday Plan") in a merger effected pursuant to the requirements of Code Section 414(1) and ERISA Section 208 (the "Merger").

Applicability of the Plan. The provisions of the Plan shall become fully applicable to former participants in the Veryday Plan, except to the extent provided in this Supplement A.

Veryday Plan Account. For each person who had an account under the Veryday Plan that was transferred to the Plan as a result of the Merger, there shall be established a "Veryday Plan Account," in addition to any other accounts maintained on behalf of such Member under Section 1.1 of the Plan. A Member's Veryday Plan Account shall include all accounts that were maintained under the Veryday Plan on behalf of each such Member as of December 31, 2018 (and subsequent earnings thereon).

Vesting in Veryday Plan Account. Each Member shall be fully vested in his or her Veryday Plan Account.

Withdrawals. A Member may withdraw at any time in accordance with the rules established by the Administrative Committee all or a portion of his or her (i) Veryday Plan Account upon the attainment of age 59½, or (ii) Veryday Plan Account that is attributable to his or her rollover contributions to the Veryday Plan. Each of the Investment Funds in which the Member's Account is invested will be reduced proportionately by the amount of any such withdrawal.

Qualified Reservists Distributions.   If a Member is (i) a reservist or national guardsman, (ii) called to active duty after September 11, 2001, and (iii) called to duty for at least 180 days or for an indefinite period, such Member may take a distribution of the portion of his or her Veryday Plan Account that is attributable to elective deferrals.   Each of the Investment Funds in which the Member's Account is invested will be reduced proportionately by the amount of such distribution.

# McKINSEY & COMPANY, INC.

## OFFICER'S CERTIFICATE

I, Yuliya Levin, the duly elected and acting Assistant Secretary of McKinsey & Company, Inc., a corporation organized and existing under the laws of the State of New York, United States of America (the "Corporation"), do HEREBY CERTIFY that the following is a true and correct copy of certain resolutions duly adopted at the Annual Meeting of the Board of Directors held on December 6, 2018 at Unter den Linden 77, 10117 Berlin, Germany, and that such resolutions are in full force and effect and have not been amended, modified or rescinded as of the date hereof:

RESOLVED, that the McKinsey & Company, Inc. Profit-Sharing Retirement Plan, as amended and restated as of January 1, 2013 ("PSRP"), is hereby amended as set forth in Annex A attached hereto and made a part hereof;

FURTHER RESOLVED, that the officers and employees of the Corporation be empowered to adopt and execute such documents, agreements and/or text of amendments as may be required to give effect to the above actions.

RESOLVED, that the officers of the Corporation be, and each of them hereby is, authorized, empowered and directed to take or cause to be taken such actions and execute and deliver or cause to be executed and delivered such documents as may be necessary or appropriate to effectuate the intent and purposes of each of the aforesaid resolutions.

IN WITNESS WHEREOF, the undersigned has executed this certificate this 10th day of December, 2018.

Yuliya Levin
Assistant Secretary

[Corporate Seal]

STATE OF NEW YORK )
                  ) ss.:
COUNTY OF NEW YORK )

Sworn to and subscribed before me

this 10th day of December, 2018.

Notary Public

JIYOUNG KIM
Notary Public, State of New York
No. 01KI6309697
Qualified in New York County
Commission Expires Aug. 18, 2022

Amendment No. 14 to the

McKinsey & Company, Inc. Profit-Sharing Retirement Plan

(as amended and restated effective as of January 1, 2013)

The McKinsey & Company, Inc. Profit-Sharing Retirement Plan, as amended and restated as of January 1, 2013 (the "Plan"), is amended as follows, effective as of January 1, 2019:

1. Section 3.8 is amended in its entirety to read as follows:

"3.8     Hardships.  The provisions of this Section 3.8 shall be effective as of January 1, 2019 (unless otherwise noted below).  A Member who has made a withdrawal of the maximum amount permitted under Section 3.6 and has sustained a financial hardship may apply in writing to the Administrative Committee for a withdrawal from his Salary Reduction Contributions Account, Rollover Account and Firm Contributions Account (excluding his Designated Roth Subaccount, unless the Administrative Committee determines in its sole discretion, that Designated Roth Subaccounts may be included for purposes of withdrawals under the Plan).  For purposes of this Section, "financial hardship" means immediate and heavy financial need on account of (a) expenses for (or necessary to obtain) medical care for the Member, his spouse, or dependents that would be deductible under Section 213(d) of the Code (determined without regard to whether the expenses exceed 7.5% of adjusted gross income), (b) costs directly related to the purchase of a principal residence for the Member (not including mortgage payments), (c) payment of tuition, related educational fees, or room and board expenses for the next 12 months of post-secondary education for the Member, or the Member's spouse, children or dependents (as defined in Section 152 of the Code, and, for Plan Years commencing on or after January 1, 2005, without regard to Code Sections 152(b)(1), (b)(2) and (d)(1)(B)), (d) payments necessary to prevent the eviction of the Member from the Member's principal residence or foreclosure of the mortgage on the Member's principal residence, (e) effective January 1, 2006, payments for burial or funeral expenses for the Member's deceased parent, spouse, children or dependents (as defined in Code Section 152, without regard to Code Section 152(d)(1)(B)), (f) effective January 1, 2006, expenses for the repair of damage to the Member's principal residence that would qualify for the casualty deduction under Section 165 of the Code (determined without regard to whether the loss exceeds 10% of adjusted gross income), or (g) other reasons prescribed by the Administrative Committee which are uniformly applicable to similarly situated Members. Effective for Plan Years commencing on and after January 1, 2009, "financial hardship" shall also mean the immediate and heavy financial need of a Member's Primary Beneficiary on account of the expenses and payments under sub-sections (a), (c) or (e) above.

The Administrative Committee shall direct the Trustee to pay to such Member all or any portion of the value of his Salary Reduction Contributions Account, Rollover Account and Firm Contributions Account that is subject to withdrawal as the Administrative Committee, in its sole discretion, deems necessary to satisfy such financial hardship (including amounts required to pay income taxes or penalties on such payment), provided that the Member has no other resources

that are reasonably available to him. In no event, however, shall the amount of a hardship distribution paid to a Member exceed the sum of his Salary Reduction Contributions Account (excluding his Designated Roth Subaccount, unless the Administrative Committee has determined that such amounts are subject to withdrawal), Rollover Account and Firm Contributions Account, including any qualified nonelective contributions held in such accounts, reduced, if applicable, by prior withdrawals under this Section."

2. Appendix A is amended by adding Sri Lanka to the countries listed therein.