# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Tushar Bhatia, individually and as the representative of a class of similarly situated persons, and on behalf of the McKinsey & Company, Inc. (PSRP) Profit-Sharing Retirement Plan and the McKinsey & Company, Inc. (MPPP) Money Purchase Pension Plan, | No. 1:19-cv-01466-GHW-SN |
|           Plaintiff, | **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| v. | |
| McKinsey & Company, Inc., MIO Partners, Inc., and John Does 1-50, | |
|           Defendants. | |

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ............................................................................................................1

BACKGROUND .............................................................................................................2

I.      THE COMPLAINT ..............................................................................................2

II.     DEFENDANTS' MOTION TO COMPEL ARBITRATION OR TO DISMISS .........................3

III.    MEDIATION AND INFORMAL DISCOVERY ..............................................................3

IV.     OVERVIEW OF SETTLEMENT TERMS.....................................................................4

        A.      The Settlement Class.................................................................4

        B.      Monetary Relief ........................................................................5

        C.      Prospective Relief .....................................................................6

        D.      Release of Claims .....................................................................6

        E.      Class Notice and Settlement Administration ................................7

        F.      Attorneys' Fees and Expenses ...................................................8

        G.      Review by Independent Fiduciary ..............................................8

ARGUMENT ................................................................................................................8

I.      STANDARD OF REVIEW ....................................................................................8

II.     THE SETTLEMENT MEETS THE STANDARD FOR APPROVAL UNDER RULE 23(E)(2)...9

        A.      The Class Representative and Class Counsel Have Adequately
                Represented the Class. .............................................................10

        B.      The Settlement is the Product of Arm's-Length Negotiations Between
                Experienced Counsel Following Early Discovery .....................12

        C.      The Settlement Provides Significant Relief to Class Members that Is Fair
                and Adequate Based on All Relevant Considerations ..............14

                1.      Risks, Costs, and Delay of Continued Litigation .....................16

                2.      Effectiveness of Distribution Method .................................... 18

                3.   Attorneys' Fees.......................................................................................18

                4.   Other Agreements...................................................................................19

        D.      The Settlement Treats Class Members Equitably.....................................19

III.    THE CLASS NOTICE PLAN IS REASONABLE AND SHOULD BE APPROVED................20

IV.     THE SETTLEMENT CLASS SHOULD BE CERTIFIED FOR PURPOSES OF SETTLEMENT
        AND DISTRIBUTION OF THE NOTICES............................................................................20

        A.      The Requirements of Rule 23(a) are Satisfied..........................................21

                1.   Numerosity.............................................................................................21

                2.   Commonality..........................................................................................21

                3.   Typicality...............................................................................................22

                4.   Adequacy................................................................................................23

        B.      The Prerequisites of Rule 23(b)(1) are Met...............................................23

                1.   Rule 23(b)(1)(A)....................................................................................24

                2.   Rule 23(b)(1)(B......................................................................................24

CONCLUSION..................................................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Amchem Prods., Inc. v. Windsor*,
　　521 U.S. 591 (1997)..................................................................................11, 21

*Andrus v. New York Life Ins. Co.*,
　　No. 2:16-cv-05698, ECF No. 66-1 (Feb. 14, 2017)..............................................18

*Andrus v. New York Life Ins. Co.*,
　　No. 2:16-cv-05698, ECF No. 84 (June 15, 2017)...........................................13, 19

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
　　222 F.3d 52 (2d Cir. 2000)..................................................................................23

*Beach v. JPMorgan Chase Bank, Nat'l Ass'n*,
　　No. 17-CV-563 (JMF), 2019 WL 2428631 (S.D.N.Y. June 11, 2019) ................25

*Brotherston v. Putnam Invs., LLC*,
　　No. 1:15-cv-13825 -WGY, ECF No. 88 (D. Mass. Dec. 13, 2016).......................25

*Brotherston v. Putnam Invs., LLC*,
　　No. 15-13825-WGY, 2017 WL 2634361 (D. Mass. June 19, 2017) ...................17

*Brotherston v. Putnam Invs., LLC*,
　　907 F.3d 17 (1st Cir. 2018)..................................................................................12

*Cassell v. Vanderbilt Univ.*,
　　No. 3:16-cv-2086, 2018 WL 5264640 (M.D. Tenn. Oct. 23, 2018)....................25

*Cates v. The Trustees of Columbia University in the City of New York et al.*,
　　No. 1:16-cv-06524, ECF No. 210 (S.D.N.Y. Nov. 13, 2018) ...............................25

*City of Detroit v. Grinnell Corp.*,
　　495 F.2d 448 (2d Cir. 1974).................................................................................10

*Clark v. Duke Univ.*,
　　No. 1:16–CV–1044, 2018 WL 1801946 (M.D.N.C. Apr. 13, 2018)....................25

*Clark v. Ecolab Inc.*,
　　Nos. 07 Civ. 8623(PAC), 04 Civ. 4488(PAC), 06 Civ. 5672(PAC),
　　2009 WL 6615729 (S.D.N.Y. Nov. 27, 2009)........................................................9

*Consol. Rail Corp. v. Town of Hyde Park*,
　　47 F.3d 473 (2d Cir. 1995)..................................................................................21

*Cunningham v. Cornell Univ.*,
No. 1:16-cv-6525, ECF No. 219 (S.D.N.Y. Jan. 22, 2019) ...................................25

*Daugherty v. Univ. of Chicago*,
No. 17 C 3736, 2018 WL 1805646 (N.D. Ill. Jan. 10, 2018) ...............................25

*Gen. Tel. Co. of the S.W. v. Falcon*,
457 U.S. 147 (1982) ...............................................................................................22

*Harris v. Koenig*,
271 F.R.D. 383 (D.D.C. 2010) .......................................................................24, 25

*Henderson v. Emory Univ.*,
No. 1:16-CV-2920-CAP, 2018 WL 6332343 (N.D. Ga. Sept. 13, 2018) ..............25

*Hochstadt v. Boston Scientific Corp.*,
708 F. Supp. 2d 95 (D. Mass. 2010) ............................................................23, 25

*In re AOL Time Warner, Inc. Secs. & ERISA Litig.*,
No. MDL 1500, 02 Civ. 5575(SWK), 2006 WL 903236
(S.D.N.Y. Apr. 6, 2006) ........................................................................................13

*In re AOL Time Warner ERISA Litig.*,
No. 02 CIV. 8853 SWK, 2006 WL 2789862 (S.D.N.Y. Sept. 27, 2006) ..............25

*In re Beacon Assocs. Litig.*,
282 F.R.D. 315 (S.D.N.Y. 2012) ..........................................................................25

*In re Excess Value Ins. Coverage Litig.*,
No. M–21–84RMB, MDL–1339, 2004 WL 1724980 (S.D.N.Y. July 30, 2004)..12

*In re Global Crossing Secs. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) .......................................................11, 12, 13, 23

*In re GSE Bonds Antitrust Litig.*,
No. 19-CV-1704 (JSR), 2019 WL 6842332 (S.D.N.Y. Dec. 16, 2019) ......9, 10, 12

*In re Ikon Office Solutions, Inc.*,
191 F.R.D. 457 (E.D. Pa. 2000) ............................................................................25

*In re Merck & Co., Inc. Sec., Deriv. & ERISA Litig.*,
MDL No. 1658, 2009 WL 331426 (D.N.J. Feb. 10, 2009) ...................................25

*In re Michael Milken & Assocs. Sec. Litig.*,
150 F.R.D. 57 (S.D.N.Y. 1993) ............................................................................20

v

*In re NASDAQ Market-Makers Antitrust Litig.*,
176 F.R.D. 99 (S.D.N.Y. 1997) ........................................................................8, 9

*In re Norte/Networks Corp. ERISA Litig.,*
No. 3:03-md-01537, 2009 WL 3294827 (M.D. Tenn. 2009) ...............................25

*In re Northrup Grumman Corp. ERISA Litig.*,
No. CV 06–06213 MMM (JCx), 2011WL 3505264
(C.D. Cal. Mar. 29, 2011) ....................................................................................25

*In re PaineWebber Ltd. P'ships Litig.*,
171 F.R.D. 104 (S.D.N.Y. 1997) .........................................................................16

*In re PaineWebber Ltd. P'ships Litig.*,
147 F.3d 132 (2d Cir. 1998)...................................................................................9

*In re Traffic Exec. Ass'n*,
627 F.2d 631 (2d Cir. 1980)...................................................................................9

*In re Tyco, Int 'l, Ltd. Multidistrict Litig.,*
No. MD–02–1335–PB, 2006 WL 2349338 (D.N.H. Aug. 15, 2006)...................25

*In re Veeco Instruments, Inc. Sec. Litig.*,
235 F.R.D. 220 (S.D.N.Y. 2006) .........................................................................22

*In re Virtus Invest. Partners, Inc. Sec. Litig.*,
No. 15cv1249, 2017 WL 2062985 (S.D.N.Y. May 15, 2017)..............................22

*In re Williams Co. ERISA Litig.,*
231 F.R.D. 416 (N.D. Okla. 2005)........................................................................25

*In re WorldCom, Inc. Sec. Litig.*,
219 F.R.D. 267 (S.D.N.Y. 2003) .........................................................................22

*In re WorldCom, Inc. ERISA Litig.*,
No. 02 CIV.4816 DLC, 2004 WL 2211664 (S.D.N.Y. Oct. 4, 2004) ..................25

*In re WorldCom, Inc. ERISA Litig.*,
No. 02 Civ. 4816(DLC), 2004 WL 2338151 (S.D.N.Y. Oct. 18, 2004)...............16

*Johnson v. Fujitsu Tech. & Business of Am., Inc.*,
No. 16-cv-03698-NC, 2018 WL 2183253 (N.D. Cal. May 11, 2018)..................15

*Jones v. NovaStar Fin., Inc.,*
257 F.R.D. 181 (W.D. Mo. 2009).........................................................................25

vi

*Kanawi v. Bechtel Corp.,*
        254 F.R.D. 102 (N.D. Cal. 2008)....................................................................24, 25

*Karg v. Transamerica Corp.*,
        No. 1:18-CV-134-CJW-KEM, 2020 WL 3400199
        (N.D. Iowa March 25, 2020)..................................................................................25

*Kemp-DeLisser v. Saint Francis Hosp. & Med. Ctr.*,
        No. 15-cv-1113 (VAB), 2016 WL 6542707 (D. Conn. Nov. 3, 2016).................13

*Koch v. Dwyer,*
        No. 98 Civ. 5519(RPP), 2001 WL 289972 (S.D.N.Y. March 23, 2001)...............25

*Krueger v. Ameriprise Fin., Inc.*,
        304 F.R.D. 559, 576-78 (D. Minn. 2014) .................................................23, 24, 25

*Krueger v. Ameriprise Fin., Inc.*,
        No. 11-CV-02781 (SRN/JSM), 2015 WL 4246879
        (D. Minn. July 13, 2015)...................................................................................17,19

*Kruger v. Novant Health, Inc.*,
        No. 1:14CV208, 2016 WL 6769066 (M.D.N.C. Sept. 29, 2016)...................17, 19

*Leber v. Citigroup 401(k) Investment Cmte.*,
        No. 07–Cv–9329 (SHS), 2014 WL 4851816 (S.D.N.Y. Sept. 30, 2014) .............16

*Lomeli v. Sec. & Inv. Co. Bahrain*,
        546 Fed. App'x 37 (2d Cir. 2013).........................................................................20

*Maywalt v. Parker & Parsley Petroleum Co.,*
        67 F.3d 1072 (2d Cir. 1995)...................................................................................9

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*,
        No. 06 Civ. 4270(PAC), 2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009)..............15

*Moreno v. Deutsche Bank Am. Holding Corp.*,
        No. 15 Civ 9936 (LGS), 2016 WL 5957307 (S.D.N.Y. Oct. 13, 2016) ..............16

*Moreno v. Deutsche Bank Am. Holding Corp.*,
        No. 15 Civ 9936 (LGS), 2017 WL 3868803 (S.D.N.Y Sept. 5, 2017)......... *passim*

*Moreno v. Deutsche Bank Am. Holding Corp.*,
        No. 15 Civ. 9936 (LGS), ECF Nos. 321, 322-1 (S.D.N.Y. Aug. 14, 2018) ....14, 18

*Moreno v. Deutsche Bank Am. Holding Corp.*,
        No. 15 Civ. 9936 (LGS), ECF No. 335 (S.D.N.Y. Oct. 9, 2018) ...........................4

*Moreno v. Deutsche Bank Am. Holding Corp.*,
     No. 15 Civ. 9936 (LGS), ECF No. 348 (S.D.N.Y. Mar. 7, 2019) .................15, 19

*Phillips Petroleum Co. v. Shutts*,
     472 U.S. 797 (1985)..........................................................................................20

*Robinson v. Metro-North Commuter R.R.*,
     267 F.3d 147 (2d Cir. 2001)..............................................................................21

*Sacerdote v. New York Univ.*,
     No. 16-cv-6284, 2018 WL 840364 (S.D.N.Y. Feb. 13, 2018) .............................25

*Sacerdote v. New York Univ.*,
     328 F. Supp. 3d 273 (S.D.N.Y. 2018).................................................................17

*Shanehchian v. Macy's, Inc.*,
     No. 1:07–CV–00828, 2011 WL 883659 (S.D. Ohio Mar. 10, 2011) .............24, 25

*Short v. Brown Univ.*,
     320 F. Supp. 3d 363 (D.R.I. 2018).....................................................................25

*Sims v. BB&T Corp.*,
     No. 1:15-cv-732, ECF No. 436-2 (M.D.N.C. Nov. 30, 2018)...............................18

*Stanford v. Foamex L.P.*,
     263 F.R.D. 156, 174 (E.D. Pa. 2009)..................................................................25

*Stevens v. SEI Investments Co.*,
     No. 2:18-cv-04205-NIQA, ECF No. 40 (E.D. Pa. July 31, 2019)........................25

*Tibble v. Edison Int'l*,
     No. CV 07-5359 SVW (AGRx), 2017 WL 3523737
     (C.D. Cal. Aug. 16, 2017)..................................................................................17

*Tracey v. MIT*,
     No. 16-11620-NMG, 2018 WL 5114167 (D. Mass. Oct. 19, 2018).....................25

*Tussey v. ABB, Inc.*,
     No. 06-04305-CV-NKL, 2007 WL 4289694 (W.D. Mo. Dec. 3, 2007) .........24, 25

*Tussey v. ABB, Inc.*,
     850 F.3d 951 (8th Cir. 2017) .............................................................................17

*Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*,
     No. 8:15-cv-01614, 2017 WL 2655678 (C.D. Cal. June 15, 2017)..................4, 25

*Urakhchin v. Allianz Asset Mgmt. of Am., LP*,
  No. 8:15-cv-01614, ECF No. 174-3 (C.D. Cal. Dec. 26, 2017) ...........................18

*Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*,
  No. 8:15-cv-01614, 2018 WL3000490 (C.D. Cal. Feb. 6, 2018) ..........................4

*Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*,
  No. 8:15-cv-01614, ECF No. 185 (C.D. Cal. July 30, 2018) ...............................15

*Velazquez v. Mass. Fin. Servs. Co.*,
  No. 1:17-CV-11249, ECF No. 91-1 (D. Mass. June 14, 2019) ............................18

*Vellali v. Yale Univ.*,
  333 F.R.D. 10 (D. Conn. Sept. 24, 2019) ..........................................................25

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011).............................................................................................20

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005)........................................................................9, 12, 19

*White v. Nat'l Football League*,
  822 F. Supp. 1389 (D. Minn. 1993)....................................................................21

*Wildman v. Am. Century Servs. LLC*,
  No. 4:16-737, 2017 WL 6045487 (W.D. Mo. Dec. 6, 2017)............................4, 25

*Wildman v. Am. Century Servs., LLC*,
  362 F. Supp. 3d 685 (W.D. Mo. 2019) ...............................................................17

## Rules, Regulations, and Statutes

9 U.S.C. § 16(a)(1)(c) .............................................................................................16

29 U.S.C. § 1104(a) ...............................................................................................24

Prohibited Transaction Exemption 2003-39, 68 Fed. Reg. 75632, as amended,
  75 Fed. Reg. 33830 ..............................................................................................8

Fed. R. Civ. P. 23(a) ...............................................................................................21

Fed. R. Civ. P. 23(a)(1)............................................................................................21

Fed. R. Civ. P. 23(b)(1)............................................................................................23

Fed. R. Civ. P. 23(c)(2)(B) ...............................................................................20

Fed. R. Civ. P. 23(e)(1)....................................................................................20

Fed. R. Civ. P. 23(e)(2)......................................................................................9

Fed. R. Civ. P. 23(e)(2)(B) ...............................................................................12

Fed. R. Civ. P. 23(e)(2)(C) ...............................................................................16

Fed. R. Civ. P. 23(e)(2)(C)(iv)..........................................................................19

Fed. R. Civ. P. 23, Advisory Committee Note (1966)......................................25

Fed. R. Civ. P. 23(e)(2) Advisory Committee Note (2018).............................10

**Other Authorities**

4 NEWBERG ON CLASS ACTIONS (4th ed. 2002) ..................................................9

## INTRODUCTION

Plaintiff Tushar Bhatia submits this Memorandum in support of his Motion for Preliminary Approval of Class Action Settlement. A copy of the Class Action Settlement Agreement ("Settlement" or "Settlement Agreement") is attached as Exhibit A to the accompanying Declaration of Kai Richter ("Richter Decl.").[1] This Settlement resolves Plaintiff's class action claims against Defendants McKinsey & Company, Inc. ("McKinsey") and MIO Partners, Inc. ("MIO") under the Employee Retirement Income Security Act ("ERISA"), concerning Defendants' administration and management of the McKinsey & Company, Inc. Profit-Sharing Retirement Plan ("PSRP") and Money Purchase Pension Plan ("MPPP") (the "Plans").

Under the terms of the proposed Settlement, McKinsey and/or its insurers will pay a Gross Settlement Amount of $39,500,000 into a common fund for the benefit of the Settlement Class. This recovery for the Settlement Class falls well within the range that other courts have approved. Moreover, the Settlement also provides for meaningful prospective relief, as McKinsey has agreed to retain an independent third-party for at least three years to review the Plans' investment options and review all expense reimbursements to McKinsey, MIO, or any other affiliated person or entity. In addition, McKinsey will issue a request for proposal for recordkeeping services for the Plans before the Plans' current recordkeeping contract expires.

For the reasons set forth below, the Settlement is fair, reasonable, and adequate, and merits preliminary approval so that the proposed Settlement Notices can be sent to the Settlement Class. Among other things supporting preliminary approval:

- The Settlement was negotiated at arm's length by experienced and capable counsel, with the assistance of a well-respected mediator, Hunter R. Hughes, III;

---

[1] All capitalized terms have the meaning assigned to them in Article 2 of the Settlement Agreement, unless otherwise specified herein.

- The proposed Settlement Class is consistent with settlement classes approved in other comparable ERISA cases;

- The Settlement provides for significant monetary relief and an equitable method of distribution;

- The Settlement provides for meaningful prospective relief;

- The release is appropriately tailored to the claims that were asserted in the action;

- The proposed Settlement Notices provide fulsome information to Class Members about the Settlement, and will be distributed via first-class mail; and

- The Settlement Agreement provides Class Members the opportunity to raise any objections they may have to the Settlement and appear at the final approval hearing.

Accordingly, Plaintiff respectfully requests that the Court enter an order: (1) preliminarily approving the Settlement; (2) approving the proposed Settlement Notices and authorizing distribution of the Notices; (3) certifying the proposed Settlement Class; (4) scheduling a final approval hearing; and (5) granting such other relief as set forth in the proposed Preliminary Approval Order submitted herewith. Although Defendants dispute the allegations and deny liability for any alleged violations of ERISA or any other law, they do not oppose relief sought in this motion.

## **BACKGROUND**

### I.   THE COMPLAINT

On February 15, 2019, Plaintiff Tushar Bhatia filed a Class Action Complaint against McKinsey and MIO, asserting claims for breach of fiduciary duty, prohibited transactions, and equitable restitution under ERISA. *See ECF No. 1.* In summary, Plaintiff alleged that McKinsey adopted certain in-house funds ("MIO Funds") for the Plans that are managed by MIO, and not offered in any other retirement plan. *Id. ¶¶ 28-31.* Plaintiff alleged that the MIO funds performed worse than alternative, lower-cost investment options, and that MIO received over $20 to $36

2

million per year in investment management fees in connection with these funds. *Id. ¶ 32.* Further, Plaintiff alleged that Defendants failed to appropriately monitor and control the Plans' administrative expenses. *Id. ¶ 87.*

## II.   DEFENDANTS' MOTION TO COMPEL ARBITRATION OR TO DISMISS

On April 22, 2019, Defendants filed a Motion to Compel Arbitration, or in the Alternative, to Dismiss Plaintiff's Complaint. *See ECF No. 30.* In connection with their motion, Defendants asserted that "the Plans contain valid and enforceable arbitration provisions that require Plaintiff to arbitrate this dispute," *ECF No. 31 at 12*; and (2) "the Complaint fails to state a claim as a matter of law and should be dismissed," *id. at 1.* Plaintiff responded to Defendants' motion on May 20, 2019, *ECF No. 35*, and Defendants filed a reply on June 10, *ECF No. 43.* Plaintiff then moved to strike Defendants' reply (in part) on the ground that it sought to advance new evidence and argument that had not previously been raised. *See ECF No. 47.*  Defendants opposed this motion.

## III.   MEDIATION AND INFORMAL DISCOVERY

On November 12, 2019, while these motions were pending, the parties agreed to a stay of the litigation for purposes of mediation, which the Court granted on the same date. *See ECF No. 55.*[2] As a result, no decision on the motions has been entered.

Following entry of the stay, the parties proceeded with targeted discovery to facilitate mediation. *Richter Decl. ¶ 13.* As part of this process, Defendants produced several thousand pages of documents, including Plan documents and disclosures, relevant minutes from Trustee meetings relating to the Plans, reports and recommendations relating to the Plans, and a significant volume of class data and investment data. *Id.* Plaintiff's counsel also engaged an investment expert (Dr. Steve Pomerantz) to consult on appropriate damages comparators and calculation methods. *Id.*

---

[2] The Court subsequently continued the stay, at the parties' request, while they continued their negotiations. *See ECF Nos. 59, 61, 63* (orders extending stay).

3

On January 30, 2020 the parties engaged in a full-day, in-person mediation before Hunter R. Hughes, III. *Id. ¶ 14.* Mr. Hughes is an experienced and well-respected mediator, who has successfully resolved numerous ERISA cases and other actions. *Id. & id. Ex. B.* Although a settlement was not reached during the mediation, the parties continued to negotiate through Mr. Hughes over the next several months. *Id. ¶ 15.* After extensive arms-length negotiations through Mr. Hughes, the parties reached a settlement-in-principle on May 26, 2020. *Id. & ECF No. 64.* Thereafter, the parties negotiated the comprehensive Settlement Agreement that is the subject of the present motion. *Richter Decl. ¶ 15.*

## IV.  OVERVIEW OF SETTLEMENT TERMS

### A.  The Settlement Class

The Settlement Agreement calls for certification of the following Settlement Class:

> All participants and beneficiaries of the McKinsey & Company, Inc. Profit-Sharing Retirement Plan and the McKinsey & Company, Inc. Money Purchase Pension Plan (the "Plans") at any time from February 15, 2013 through the date the Court enters the Preliminary Approval Order, excluding the Trustees for the McKinsey Master Retirement Trust and members of the Administrative Committee for the Plans at any time during the Class Period, as well as persons who served on the Shareholders Council of McKinsey & Company, Inc. or the Board of Directors of MIO Partners, Inc. at any time during the class period.

*Settlement ¶ 2.48.* This Settlement Class is consistent with certified classes in several similar ERISA suits, as it includes all participants in the Plans during the class period except those with fiduciary responsibilities relating to the Plans.[3] Based on the information provided by Defendants, there are approximately 33,000 Class members. *Richter Decl. ¶ 3.*

---

[3] *See, e.g., Wildman v. Am. Century Servs. LLC*, No. 4:16-737, 2017 WL 6045487 (W.D. Mo. Dec. 6, 2017) ("*Wildman I*") (certifying litigation class of all plan participants and beneficiaries excluding Defendants, members of the board, and "employees with responsibility for the Plan's investment or administrative functions"); *Moreno v. Deutsche Bank Americas Holding Corp.*, 15 Civ. 9936 (LGS), 2017 WL 3868803, at 11 (S.D.N.Y Sept. 5, 2017) ("*Moreno I*") (same); *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, No. 15 Civ. 1614, 2017 WL 2655678, at *9 (C.D. Cal. June 15, 2017) ("*Urakhchin I*") (same); *see also Moreno v. Deutsche Bank Americas Holding Corp.*, No. 1:15-cv-09936, ECF No. 335 at ¶ 3 (S.D.N.Y. Oct. 9, 2018) ("*Moreno II*") (certifying similar class for settlement purposes); *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, No. 8:15-cv-1614, 2018 WL3000490, at *5-6 (C.D. Cal. Feb. 6, 2018) ("*Urakhchin II*") (same).

### B.    Monetary Relief

Under the Settlement, Defendants will contribute a Gross Settlement Amount of $39,500,000 to a common Settlement Fund. *Settlement ¶¶ 2.30, 2.42, 5.4-5.5.* After accounting for any Attorneys' Fees and Costs, Administrative Expenses, and Class Representative service award approved by the Court, the Net Settlement Amount will be distributed to eligible Class Members in accordance with the Plan of Allocation in the Settlement. *Id. ¶¶ 5.9, 6.1.* Under the Plan of Allocation, each eligible Class Member will receive a *Settlement Allocation Score* for each quarter during the Class Period, which shall be the sum of 15 points (if the eligible Class Member had an Active Account at the end of the quarter) plus 0.0020 points for every dollar invested by the eligible Class Member in MIO funds at the end of the quarter (up to a maximum of 300 points). *Id. ¶ 6.4.1.*[4] The Net Settlement Amount will then be allocated among eligible Class Members on a pro rata basis in proportion to their *Average Settlement Allocation Score* across all quarters. *Id. ¶ 6.4.2.*[5]

Current Participants will have their Plan accounts automatically credited with their share of the Settlement Fund. *Id. ¶ 6.5.* Former Participants will be required to submit a claim form that will allow them to elect to have their distribution rolled over to an individual retirement account or other eligible employer plan, or to receive a direct payment by check. *Id. ¶ 6.6.*[6]

---

[4] The first component of the score is designed to approximate the amount of each eligible Class Member's recordkeeping claim, and the second component is designed to approximate the relative size of the investment claim in comparison to the recordkeeping claim. *Richter Decl. ¶ 5.* This scoring system also accounts for the fact that Class Members with larger account balances in MIO Funds had relatively larger investment claims, but were subject to a greater risk of being subject to arbitration if their claims exceeded a threshold amount ($10,000 during the Class Period). *Id.*

[5] If the dollar amount of the settlement payment to an Authorized Former Participant is calculated by the Settlement Administrator to be less than $5.00, then that Authorized Former Participant's payment or pro rata share shall be zero for all purposes. *Settlement ¶ 6.4.2.*

[6] The Claim Form also allows the Settlement Administrator to verify the addresses of Class Members who are sent checks. *Richter Decl. ¶ 6 n.4.*

Under no circumstances will any monies revert to Defendants. Any uncashed checks will revert to the Settlement Fund and will be used to defray the Plans' administrative fees and expenses. *Id. ¶¶ 6.11, 6.12.*

## C.    Prospective Relief

The Settlement also provides for prospective relief. Specifically, McKinsey has agreed that the following procedures shall apply to the management of the Plans on a prospective basis:

- For a period of no less than three years, Defendants shall retain an independent investment consultant to provide ongoing review of the investment options in the Plans, and review and approve any communications to participants regarding the Plans' investment options;

- For a period of no less than three years, all expense reimbursements by the Plans to McKinsey, MIO, or any other affiliated person or entity will be reviewed and approved by an independent fiduciary, who shall have final discretion to approve or reject reimbursements.

- Before the expiration of the current recordkeeping agreement for the Plans, McKinsey will issue a request for proposal for recordkeeping services for the Plans.

*Id. ¶ 7.1.*

## D.    Release of Claims

In exchange for the relief provided by the Settlement, the Settlement Class will release Defendants and affiliated persons and entities (the "Released Parties") from all claims:

- That were asserted in the Action or that arise out of, relate to, are based on, or have any connection with any of the allegations, acts, omissions, purported conflicts, representations, misrepresentations, facts, events, matters, transactions or occurrences asserted in the Action;[7] or

- That would be barred by *res judicata* based on the entry by the Court of any Final Approval Order; or

- That relate to the direction to calculate, the calculation of, and/or the method or manner of allocation of the Qualified Settlement Fund pursuant to the Plan of Allocation or to any action taken or not taken by the Settlement Administrator in the course of administering the Settlement; or

---

[7] The release language goes on to provide certain examples that are not repeated here due to space limitations. The full release language, incorporated by reference, is in the Settlement Agreement, ¶ 2.44.1.

- That relate to the approval by the Independent Fiduciary of the Settlement Agreement [*see infra* at § IV.G], unless brought against the Independent Fiduciary alone.

*Id. ¶ 2.44.*

### E.     Class Notice and Settlement Administration

If the Court grants preliminary approval of the Settlement, Class Members will be sent a direct notice of the settlement ("Settlement Notice") via U.S. Mail. *Id. ¶ 3.3.1 & Exs. 1-2.* The Settlement Notice sent to Former Participants will also include a Claim Form enabling them to make the elections described above. *Id. ¶ 3.3.2 & Exs. 3A-B.*

The Settlement Notices provide information to the Settlement Class regarding, among other things: (1) the nature of the claims; (2) the scope of the Settlement Class; (3) the terms of the Settlement; (4) the process for submitting claims (Former Participants only); (5) Class Members' right to object to the Settlement and the deadline for doing so; (6) the class release; (7) the identity of Class Counsel and the amount of compensation they will seek in connection with the Settlement; (8) the amount of the proposed Class Representative service award; (9) the date, time, and location of the final approval hearing; and (10) Class Members' right to appear at the final approval hearing; and object. *Id. Exs. 1, 2.*

To the extent that Class Members would like more information about the Settlement, the Settlement Administrator will establish a Settlement Website on which it will post the following documents or links to the following documents: the Complaint, Settlement Agreement and Exhibits thereto, Settlement Notices, Former Participant Claim Form, Preliminary Approval Order and any other Court orders related to the Settlement, Plaintiff's Motion for Attorneys' Fees and Costs, Administrative Expenses, and Class Representative Compensation; and any other documents or information mutually agreed upon by the parties. *Id. ¶ 12.1.* In addition, the

Settlement Administrator will establish a toll-free telephone line that will provide callers the option of speaking with a live operator if they have questions. *Id. ¶ 12.2.*

### F. Attorneys' Fees and Expenses

The Settlement Agreement requires that Class Counsel file their motion for Attorneys' Fees and Costs at least 30 days before the deadline for objections. *Settlement ¶ 8.1.* As explained in the Notices that will be sent to the Settlement Class, Class Counsel will seek no more than one-fourth of the Gross Settlement Amount in attorneys' fees. *Id. ¶ 8.2 & Exs. 1, 2.* The Settlement Agreement also provides that any Class Representative service award shall not exceed $15,000. *Id. ¶ 8.2.* Any such awards shall be determined by the Court in its discretion; the Settlement Agreement "does not purport to establish a presumptively reasonable amount." *Id.*

### G. Review by Independent Fiduciary

Finally, as required under DOL regulations, the Settlement will be subject to review by an Independent Fiduciary as well as the Court. *See Settlement ¶ 3.1.1; see also* Prohibited Transaction Exemption 2003-39, 68 Fed. Reg. 75632, as amended, 75 Fed. Reg. 33830 ("PTE 2003-39"). The Independent Fiduciary will issue its report at least 30 days before the final Fairness Hearing so that the Court may consider it. *Id. ¶ 3.1.2.*

### ARGUMENT

### I. STANDARD OF REVIEW

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of any settlement agreement that will bind absent class members. This involves a two-step process. *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997). In the first step, the court considers whether the settlement warrants preliminary approval, such that notice of the

settlement may be sent to the class members. *Id.*[8] In the second step, after notice of the proposed

settlement has been issued and class members have had an opportunity to be heard, the court

considers whether the settlement warrants final court approval. *Id.*

The decision whether to approve a proposed class action settlement is a matter of judicial

discretion. *See Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995).

However, there is a "strong judicial policy in favor of settlements, particularly in the class action

context." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (internal

quotation marks and citation omitted); *see also In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d

132, 138 (2d Cir. 1998); 4 NEWBERG ON CLASS ACTIONS ("NEWBERG") § 11:41 (4th ed. 2002). As

a result, "courts should give proper deference to the private consensual decision of the parties …

[and] should keep in mind the unique ability of class and defense counsel to assess the potential

risks and rewards of litigation[.]" *Clark*, 2009 WL 6615729, at *3 (citations omitted).

Under Rule 23(e)(1) as amended in 2018, courts are authorized to grant preliminary

approval of a proposed settlement so long as the court will "likely be able to" grant final approval

of the settlement and certify the class for purposes of settlement. *See* Fed. R. Civ. P. 23(e)(1); *In

re GSE Bonds Antitrust Litig.*, No. 19-CV-1704 (JSR), 2019 WL 6842332, at *1 (S.D.N.Y. Dec.

16, 2019). As explained below, this standard is satisfied here.

## II.   THE SETTLEMENT MEETS THE STANDARD FOR APPROVAL UNDER RULE 23(E)(2)

In order to approve a settlement under Rule 23(e)(2), the Court must consider four factors:

(1) adequacy of representation, (2) existence of arm's-length negotiations, (3) adequacy of relief,

---

[8] A motion for preliminary approval involves only an "initial evaluation" of the fairness of the proposed settlement. *Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623(PAC), 04 Civ. 4488(PAC), 06 Civ. 5672(PAC), 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009) (citing 4 NEWBERG ON CLASS ACTIONS ("NEWBERG") § 11:25 (4th ed. 2002)). To grant preliminary approval, the court need only find that there is "probable cause" to submit the settlement to class members and hold a full-scale hearing as to its fairness. *In re Traffic Exec. Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980).

and (4) equitableness of treatment of class members. Fed. R. Civ. P. 23(e)(2); *see also GSE Bonds*, 2019 WL 6842332, at *1 (explaining that new Rule 23 factors "supplement rather than displace the[] *Grinnell* factors" previously applied in this circuit).[9] All four of these factors and the relevant *Grinnell* factors support preliminary approval of the Settlement.

### A.    The Class Representative and Class Counsel Have Adequately Represented the Class.

"Rule 23(e)(2)(A) requires a Court to find that 'the class representatives and class counsel have adequately represented the class' before preliminarily approving a settlement." *GSE Bonds*, 2019 WL 6842332, at *2. This adequacy standard is more than met here.

The Class Representative, Tushar Bhatia, holds degrees in both management and computer science, and worked as a Senior Engagement Manager at McKinsey from 2011 to 2018 (first in India and later in the United States). *See Bhatia Decl. ¶ 2.* Plaintiff initially joined the Plans in July 2015 and remained a participant in the Plans until April 2019. *Id. ¶ 3.* From July 2015 until December 2017, Plaintiff invested his account assets in MIO Funds, but later transferred the monies in his accounts to a target-date fund managed by State Street when that investment option became available in the Plans. *Id. ¶ 4.* At the outset of the litigation, Plaintiff signed a written acknowledgement of his duties as a class representative, and he has sought to fulfill those duties throughout the course of the case. *Id. ¶ 5 & Ex. 1.* Among other things, Plaintiff (1) reviewed the

---

[9] The nine *Grinnell* factors are (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (citations omitted). Consistent with the intent of the 2018 amendments, only those *Grinnell* factors that are relevant to this Settlement are addressed here. *See* Fed. R. Civ. P. 23(e)(2) advisory committee note (2018) (observing that the new Rule 23(e) factors are intended to help the court and counsel focus on the most pertinent considerations: "This amendment . . . directs the parties to present the settlement to the court in terms of a shorter list of core concerns, by focusing on the primary procedural considerations and substantive qualities that should always matter to the decision whether to approve the proposal.").

allegations in the Complaint; (2) provided information and documents to counsel to assist in the prosecution of the action; (3) reviewed the briefing in connection with Defendants' Motion to Compel Arbitration, or in the Alternative, to Dismiss; (4) submitted a declaration in opposition to Defendants' motion (*ECF No. 36*), as well as a second declaration in support of the Settlement; (5) reviewed Plaintiff's mediation statement; (6) traveled from Seattle to Atlanta to attend the mediation, and participated in the mediation in person; (7) reviewed the Settlement Agreement in its entirety; and (8) regularly communicated with counsel throughout the case. *Bhatia Decl. ¶ 6* Plaintiff falls within the proposed Settlement Class and is not aware of any conflicts between himself and any other class members. *Id. ¶ 11.* Accordingly, Plaintiff is an adequate class representative. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) (adequacy inquiry looks for "conflicts of interest between named parties and the class they seek to represent"); *In re Global Crossing Secs. & ERISA Litig.*, 225 F.R.D. 436, 452 (S.D.N.Y. 2004) (finding class representatives adequate where their claims arose from the same alleged course of conduct and were based on the same legal theories as the class members).

Class Counsel are also adequate. In a similar ERISA action in this District, Judge Schofield appointed the same counsel (Nichols Kaster, PLLP) to represent a similar class, finding that "Plaintiffs' counsel are experienced litigators who serve as class counsel in ERISA actions involving defined-contribution plans[.]" *Moreno I*, 2017 WL 3868803, at *11. Indeed, a Bloomberg BNA article stated that "Nichols Kaster has been the driving force behind [the] flurry of litigation over proprietary mutual funds." Jacklyn Wille, *Deutsche Bank Can't Shake 401(k) Fee Lawsuit*, Bloomberg BNA (Oct. 17, 2016). As detailed in the accompanying attorney declaration, Nichols Kaster has (1) won favorable rulings on dispositive motions and/or class certification in over a dozen ERISA cases; (2) recently tried two ERISA class actions; (3)

successfully litigated an appeal before the First Circuit in *Brotherston v. Putnam Invs., LLC*, 907 F.3d 17 (1st Cir. 2018) ("*Brotherston II*"); and (4) negotiated numerous ERISA class action settlements in addition to the present Settlement. *Richter Decl. ¶¶ 18-19.* Based on their experience, the firm's attorneys have been interviewed by several media outlets in connection with their ERISA work, and Nichols Kaster's undersigned counsel also has spoken at multiple national forums on ERISA litigation. *Id. ¶ 20.*   Accordingly, Class Counsel are well qualified to represent the class. *See Global Crossing*, 225 F.R.D. at 453 (finding class counsel adequate where they had "extensive experience" in ERISA litigation and federal class actions). At all times, they have vigorously represented the interests of the class in this litigation. *Richter Decl. ¶ 11.*

**B.      The Settlement Is the Product of Arm's-Length Negotiations Between Experienced Counsel Following Early Discovery**

The second factor examines whether "the proposal was negotiated at arm's-length." Fed. R. Civ. P. 23(e)(2)(B). A class action settlement "will enjoy a presumption of fairness" where the settlement "is the product of arm's-length negotiations conducted by experienced counsel knowledgeable in complex class litigation." *In re Excess Value Ins. Coverage Litig.*, No. M–21–84RMB, MDL–1339, 2004 WL 1724980, at *10 (S.D.N.Y. July 30, 2004); *see also Wal-Mart*, 396 F.3d at 116. That is precisely the situation presented here. Class Counsel and Defendants' counsel (Morgan Lewis & Bockius, LLP) are knowledgeable and experienced in complex class actions such as this and were assisted in their negotiations by Hunter R. Hughes, III, an experienced and well-respected mediator. *See Richter Decl. ¶ 14 & Ex. B.* The Settlement was reached only after several months of negotiations following the initial mediation session, culminating in a mediator's proposal from Mr. Hughes that both sides ultimately accepted. Id. ¶ 15. At all times, the negotiations were conducted at arm's length. *Id.*   Accordingly, this factor also favors settlement approval. *See GSE Bonds*, 2019 WL 6842332, at *2 (finding procedural fairness evidenced by

12

arm's-length negotiations where parties engaged an experienced mediator to facilitate extensive and informed negotiations).

Although the case was resolved early in the litigation process prior to formal discovery, "[f]ormal discovery is not a prerequisite [to a fair Settlement][.] [T]he question is whether the parties had adequate information about their claims." *Global Crossing*, 225 F.R.D. at 458; *see also In re AOL Time Warner, Inc. Secs. & ERISA Litig.*, No. MDL 1500, 02 Civ. 5575(SWK), 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006) (relevant inquiry "is whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement"). Here, the parties had sufficient information to evaluate the case for purposes of settlement: (1) Class Counsel undertook an extensive investigation of the factual and legal bases for Plaintiff's claims prior to commencing the action, *Richter Decl. ¶ 11*; (2) the parties' legal positions were staked out in their motion papers (which were vigorously contested); (3) Defendants produced a significant amount of documents and information to Plaintiff prior to the mediation, *id. ¶ 13*; (4) Class Counsel had the necessary experience and qualifications to evaluate the parties' legal positions and the early discovery that was produced, *see supra* at § II.A; and (5) Class Counsel retained an expert to assist them in their analysis, *id.* Under these circumstances, it was appropriate for the parties to explore an early settlement. *See Kemp-DeLisser v. Saint Francis Hosp. & Med. Ctr.*, No. 15-cv-1113 (VAB), 2016 WL 6542707, at *8 (D. Conn. Nov. 3, 2016) ("Although formal discovery had yet to occur at the time the parties engaged in settlement negotiations, Class Counsel conducted extensive investigation into the facts, circumstances, and legal issues associated with this case before agreeing to the Settlement."); *accord Andrus v. New York Life Ins. Co.*, No. 2:16-cv-05698, ECF No. 84 (June 15, 2017)

(approving early settlement of similar ERISA action involving same counsel for both sides).[10]

    **C.**    **The Settlement Provides Significant Relief to Class Members that Is Fair and Adequate Based on All Relevant Considerations**

The end-product of the parties' negotiations is a Settlement that provides significant relief to the Class. The $39.5 million Gross Settlement Amount compares favorably to other ERISA settlements involving defined contribution plans. *See Richter Decl. ¶ 7.* By comparison, the ERISA settlements that were approved in the *Deutsche Bank, TIAA,* and *New York Life* cases in this District were $21.9 million, $5 million, and $3 million, respectively. *Id.*

The recovery also measures favorably based on other metrics. For example, the monetary relief ($39.5 million) represents approximately 0.65% of Class Members' total assets in the Plans ($6.2 billion) in the most recently reported year. This is also within the range of other settlements. *Id.* By comparison, the recoveries in *Deutsche Bank, TIAA,* and *New York Life* represented 0.66%, 0.23%, and 0.09% of plan assets. *Id.* In this regard, the *Deutsche Bank* case is a particularly good marker because it also involved claims relating to proprietary funds that made up a portion of the plan's investment menu, and excessive recordkeeping fees. *See Moreno I*, 2017 WL 3868803, at *2.

As another basis for comparison, the $39.5 million recovery in this case involving allegedly excessive fees represents approximately 22% of the total amount of fees that MIO received from the Plans in connection with MIO Funds during the class period ($180 million), and approximately 21% of the combined sum of these MIO fees plus the alleged recordkeeping excess ($9 million).[11] *See Richter Decl. ¶ 8.* These recovery percentages are also reasonable in relation to other cases.

---

[10] Although this case was settled early, Class Counsel are no strangers to lengthy ERISA litigation. As noted above, Class Counsel have recently taken two ERISA class cases to trial (*see supra* at 11), and litigated the *Deutsche Bank* ERISA action in this District to the very eve of trial before it was settled. *See Moreno v. Deutsche Bank Americas Holding Corp.*, No. 1:15-cv-09936, ECF No. 321 at 5 (S.D.N.Y. Aug. 14, 2018) ("the parties reached a settlement-in-principle on July 8, 2018 immediately preceding the scheduled start date of trial." (internal parentheses omitted)).

[11] 39.5 million / [180 million + 9 million] = 20.9%.

*See Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, No. 8:15-cv-01614, ECF No. 185 (C.D. Cal. July 30, 2018) (approving $12 million settlement in ERISA case involving proprietary funds and allegations of excessive fees, where that amount represented approximately one-quarter of estimated total plan-wide losses of $47 million); *Johnson v. Fujitsu Tech. & Business of Am., Inc.*, No. 16-cv-03698-NC, 2018 WL 2183253, at *6-7 (N.D. Cal. May 11, 2018) (approving $14 million settlement in ERISA case involving alleged excess fees, where that amount represented "just under 10% of the Plaintiffs' most aggressive 'all in' measure of damages").

In addition to the foregoing monetary relief, the Settlement also provides for prospective relief, including (1) independent third-party review of the investment options in the Plan and any communications to participants regarding those investment options; (2) independent third-party fiduciary review and approval of all proposed expense reimbursements by the Plans to McKinsey, MIO, or any other affiliated person or entity; and (3) a request for proposal process for recordkeeping services prior to the end of the current recordkeeping contract. *See supra* at 6. This relief is designed to address the core issues in the lawsuit, and also supports approval of the Settlement. *See Moreno v. Deutsche Bank Americas Holding Corp.*, No. 1:15-cv-09936, ECF No. 348 at 4-5 (S.D.N.Y. Mar. 7, 2019) ("*Moreno III*") (finding that "non-monetary benefits", including independent fiduciary review of the proprietary investments in the plan, "have significant value for Plan participants")*; accord Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, No. 06 Civ. 4270(PAC), 2009 WL 5851465, at *4 (S.D.N.Y. Mar. 31, 2009) (finding that settlement was "fair, reasonable, and adequate" where it provided for "meaningful injunctive relief").

Finally, each of the adequacy factors enumerated in Rule 23(e)(2)(C) support approval of the Settlement. These factors include:

(i)    the costs, risks, and delay of trial and appeal;
(ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required;
(iii)  the terms of any proposed award of attorney's fees, including timing of payment; and
(iv)  any agreement required to be identified under Rule 23(e)(3).

Fed. R. Civ. P. 23(e)(2)(C). Each of these factors are briefly discussed below.

### 1.      Risks, Costs, and Delay of Continued Litigation

In the absence of a settlement, Plaintiff would have faced potential litigation risks. *See In re WorldCom, Inc. ERISA Litig.*, No. 02 Civ. 4816(DLC), 2004 WL 2338151, at *6 (S.D.N.Y. Oct. 18, 2004) (noting that there is a "general risk inherent in litigating complex claims such as these to their conclusion."); *PaineWebber*, 171 F.R.D. at 126 ("Litigation inherently involves risks."). The Settlement was negotiated while Defendants' Motion to Compel Arbitration and, in the Alternative, to Dismiss Plaintiff's Complaint was pending. Although Plaintiff believes there is strong support in this District for the type of claims asserted here,[12] it is uncertain whether he would have prevailed on the motion. Even if he had, Defendants would have been entitled to interlocutory appeal of any denial of their motion to compel arbitration, *see* 9 U.S.C. § 16(a)(1)(c), which would have further prolonged the proceedings before litigation in this Court could even go forward.

Assuming Plaintiff did prevail on the motion and any initial appeal relating to arbitration, a successful outcome was not assured. In two recent class action trials involving defined contribution plans (including one trial in this District), the defendants were the prevailing party.

---

[12] *See Moreno v. Deutsche Bank Am. Holding Corp.*, 15 Civ. 9936 (LGS), 2016 WL 5957307 (S.D.N.Y. Oct. 13, 2016) (denying motion to dismiss ERISA breach of fiduciary duty claims involving proprietary funds and recordkeeping expenses); *Leber v. Citigroup 401(k) Investment Cmte.*, No. 07–Cv–9329 (SHS), 2014 WL 4851816, at *4 (S.D.N.Y. Sept. 30, 2014) ("Essential to the plausibility of plaintiffs' claims was the allegation that the Affiliated Funds charged higher fees than those charged by comparable Vanguard funds.").

*See Sacerdote v. New York Univ.*, 328 F. Supp. 3d 273 (S.D.N.Y. 2018); *Wildman v. Am. Century Servs., LLC*, 362 F. Supp. 3d 685, 711 (W.D. Mo. 2019) ("*Wildman I*").[13] Moreover, even if Plaintiff prevailed on the issue of liability, significant issues would have remained regarding proof of loss. *See Sacerdote*, 328 F. Supp. 3d at 280 (finding that "while there were deficiencies in the Committee's [fiduciary] processes—including that several members displayed a concerning lack of knowledge relevant to the Committee's mandate—plaintiffs have not proven that … the Plans suffered losses as a result."); *Wildman I*, 362 F. Supp. 3d at 710 (finding plaintiffs failed to prove a loss to the plan based on the testimony of Dr. Steve Pomerantz, the same expert retained by Plaintiff in this case).

None of this is to say that Plaintiff lacked confidence in his claims. However, there is little doubt that continuing the litigation would have resulted in complex and costly proceedings, which would have significantly delayed relief to Class Members even if Plaintiff ultimately prevailed. ERISA 401(k) cases such as this "often lead[] to lengthy litigation." *Krueger v. Ameriprise Fin., Inc.*, 2015 WL 4246879, at *1 (D. Minn. July 13, 2015) ("*Krueger II*"). Indeed, these cases can extend for a decade before final resolution, sometimes going through multiple appeals. *See, e.g., Tussey v. ABB, Inc.*, 850 F.3d 951 (8th Cir. 2017) (recounting lengthy procedural history of case that was initially filed in 2006, and remanding to district court a second time); *Tibble v. Edison Int'l*, No. CV 07-5359 SVW (AGRx), 2017 WL 3523737, at *15 (C.D. Cal. Aug. 16, 2017) (outlining remaining issues ten years after suit was filed in 2007). Given the risks, cost, and delay of further litigation, it was reasonable and appropriate for Plaintiff to reach a settlement on the terms that were negotiated. *See Kruger v. Novant Health, Inc.*, No. 1:14CV208, 2016 WL

---

[13] The Defendants also prevailed at trial in *Brotherston v. Putnam Invs., LLC*, No 15-13825-WGY, 2017 WL 2634361 (D. Mass. June 19, 2017), before that trial court ruling was partially vacated on appeal in *Brotherston II*.

6769066, at *5 (M.D.N.C. Sept. 29, 2016) ("[S]ettlement of a 401(k) excessive fee case benefits the employees and retirees in multiple ways").

### 2.   Effectiveness of Distribution Method

The proposed method for distributing the Settlement proceeds is fair and reasonable. As noted above, Current Participants in the Plan will have their accounts automatically credited with their share of the Settlement Fund. *Id.* ¶ *6.5.* Although Former Participants are required to submit a claim form for administrative reasons—to specify a cash payment or rollover election and to verify their current address before a check is mailed to that address—they are entitled to the same proportional share of the Settlement. *Id.* ¶ *6.6.* This method of distribution is consistent with numerous other ERISA class action settlements that have received court approval, including the *Deutsche Bank* and *New York Life* settlements in this District. *See Moreno v. Deutsche Bank Americas Holding Corp.*, No. 1:15-cv-09936, ECF No. 322-1 at ¶¶ 6.5, 6.6 (S.D.N.Y. Aug. 14, 2018); *Andrus v. New York Life Ins. Co.*, No. 2:16-cv-05698, ECF No. 66-1 at ¶¶ 6.5, 6.6 (Feb. 14, 2017).[14] No monies will revert to Defendants, and any uncashed checks will be used to defray Plan administrative fees and expenses that would otherwise be borne by participants. *See Settlement* ¶¶ *6.11, 6.12.*

### 3.   Attorneys' Fees

The Settlement terms relating to attorneys' fees are also fair and reasonable. The amount of any fee award is reserved to the Court in its discretion. *Id.* ¶ *8.2.* And while the Settlement "does not purport to establish a presumptively reasonable amount" of fees, Class Counsel have agreed to limit any request for attorneys' fees to one-fourth of the Gross Settlement Amount. *Id.* This is less

---

[14] *See also, e.g., Velazquez v. Mass. Fin. Servs. Co.*, No. 1:17-CV-11249, ECF No. 91-1, ¶¶ 6.5-6.6 (D. Mass. June 14, 2019); *Urakhchin v. Allianz Asset Mgmt. of Am., LP*, No. 8:15-cv-01614, ECF No. 174-3 at ¶ 6.4 (C.D. Cal. Dec. 26, 2017); *Sims v. BB&T Corp.*, No. 1:15-cv-732, ECF No. 436-2 at ¶ 6.4 (M.D.N.C. Nov. 30, 2018).

than the percentage typically awarded in complex ERISA cases such as this.[15] *See Novant Health*, 2016 WL 6769066, at *2 ("[C]ourts have found that '[a] one-third fee is consistent with the market rate' in a complex ERISA 401(k) fee case such as this matter"); *Krueger II*, 2015 WL 4246879, at *2 ("In such cases, courts have consistently awarded one-third contingent fees."); *Andrus*, No. 2:16-cv-05698, ECF No. 84 (approving fees equal to one-third of settlement fund); *Moreno III*, No. 1:15-cv-09936, ECF No. 348 at 4-5 (approving fees equal to 30% of settlement fund). Moreover, with respect to the timing of payment, any attorneys' fees will be paid at the same time that funds to the class are distributed. *See Settlement ¶ 5.9.*

### 4. Other Agreements

The Settlement Agreement expressly states that "[t]his Settlement Agreement and the exhibits attached thereto constitute the entire agreement among the Settling Parties and no representations, warranties, or inducements have been made to any party concerning the Settlement other than those contained in this Settlement Agreement and the exhibits thereto." *Id. ¶ 13.13.* Accordingly, there are no separate agreements bearing on the adequacy of relief to the Class. *See* Fed. R. Civ. P. 23(e)(2)(C)(iv).

### D. The Settlement Treats Class Members Equitably.

Finally, the Settlement treats all Class Members equitably. The same allocation formula is used to calculate settlement payments for all eligible Class Members (both Current Participants and Authorized Former Participants). *See Settlement ¶ 6.4.* Moreover, that allocation formula is carefully tailored to the claims that were asserted in the case. *See supra* at n.4; *Richter Decl. ¶ 5.* This further supports approval of the Settlement.

---

[15] The Second Circuit favors the "percentage method" of calculating attorneys' fees in class actions, "'which directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation.'" *Wal-Mar Stores*, 396 F.3d at 121 (quoting *In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262 RWS, 2002 WL 31663577, at *25 (S.D.N.Y. Nov. 26, 2002)).

**III.     THE CLASS NOTICE PLAN IS REASONABLE AND SHOULD BE APPROVED**

In addition to reviewing the substance of the parties' settlement, the court must ensure that notice is sent in a reasonable manner to all class members who would be bound by the proposed settlement. Fed. R. Civ. P. 23(e)(1). The "best notice" practicable under the circumstances includes individual notice to all class members who can be identified through reasonable effort. *Id.* 23(c)(2)(B). That is precisely the type of notice proposed here. The Settlement Agreement provides that the Settlement Administrator will provide direct notice of the Settlement to the Settlement Class via U.S. Mail. *Settlement ¶¶ 2.50, 3.3.1.* This type of notice is presumptively reasonable. *See Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 812 (1985).

The content of the Settlement Notices is also reasonable. The Notices include all relevant information, *see supra* at 6-7, and "'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *Lomeli v. Sec. & Inv. Co. Bahrain*, 546 Fed. App'x 37, 41 (2d Cir. 2013) (quoting *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 438 (2d Cir. 2007)); *see also In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (class notice "need only describe the terms of the settlement generally"). Moreover, the Notices will be supplemented through the Settlement Website and telephone support line. *See supra* at 7.

**IV.     THE SETTLEMENT CLASS SHOULD BE CERTIFIED FOR PURPOSES OF SETTLEMENT AND DISTRIBUTION OF THE NOTICES.**

In addition to approving the Settlement and authorizing distribution of the Notices, this Court should certify the Settlement Class for settlement purposes. To certify the class, Plaintiff must satisfy the requirements of Rule 23(a) and meet one of the prerequisites of Rule 23(b). *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345-46 (2011). In the context of settlement, however, the court need not inquire whether a trial of the action would be manageable on a class-wide basis

because "the proposal is that there be no trial." *Amchem*, 521 U.S. at 620. Thus, "[t]he requirements for class certification are more readily satisfied in the settlement context than when a class has been proposed for the actual conduct of the litigation." *White v. Nat'l Football League*, 822 F. Supp. 1389, 1402 (D. Minn. 1993) (citations omitted). Here, all of the requirements of Rules 23(a) and 23(b)(1) are met, and the Settlement Class should be certified.

### A.   The Requirements of Rule 23(a) are Satisfied

Rule 23(a) sets forth four requirements applicable to class actions: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed. R. Civ. P. 23(a); *see also Amchem*, 521 U.S. at 613. Each of these requirements is met here for settlement purposes.

#### 1.   Numerosity

Numerosity requires that the number of persons in the proposed class is so numerous that joinder of all class members would be impracticable. Fed. R. Civ. P. 23(a)(1). This standard is clearly met for the Settlement Class, which (as noted above) numbers approximately 33,000 persons. *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) ("[N]umerosity is presumed at a level of 40 members.").

#### 2.   Commonality

Commonality requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(1). This does not mean that all class members must make identical claims and arguments, but only that "plaintiff's grievances share a common question of law or fact." *Robinson v. Metro-North Commuter R.R.*, 267 F.3d 147, 155 (2d Cir. 2001). "'Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question.'" *Moreno I*, 2017 WL 3868803, at *4 (quoting *Johnson v. Nextel Comms. Inc.* 780 F.3d 128, 137 (2d Cir. 2015)).

"'Typically, the question of defendants' liability for ERISA violations is common to all class members because a breach of fiduciary duty affects all participants and beneficiaries.'" *Id.* (quoting *In re J.P. Morgan Stable Value Fund ERISA Litig.*, No. 12 Civ 2548, 2017 WL 1273963, at \*7 (S.D.N.Y. Mar. 31, 2017)). This case is no exception. The lawsuit raises numerous common questions, including whether "Defendants' process for assembling and monitoring the Plans' menu of investment options . . . was tainted by a conflict of interest or imprudence and whether Defendants acted imprudently by failing to control recordkeeping expenses." *See id.* at \*15.

### 3.  Typicality

The typicality requirement "tend[s] to merge" with the commonality requirement. *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 157 n.13 (1982); *see also In re Virtus Invest. Partners, Inc. Sec. Litig.*, No. 15cv1249, 2017 WL 2062985, at \*3 (S.D.N.Y. May 15, 2017) ("The typicality requirement overlaps with that of commonality."). Typicality is satisfied "'when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Moreno I*, 2017 WL 386803, at \*7 (quoting *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009)). This does not require that the situation of the named representative and the class members be identical. *In re Veeco Instruments, Inc. Sec. Litig.*, 235 F.R.D. 220, 238 (S.D.N.Y. 2006). Rather, it is sufficient that "the disputed issue of law or fact occup[ies] essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class." *WorldCom*, 219 F.R.D. at 280.

Here, Plaintiff's claims are consistent with those of other Class Members who participated in the Plans, as they arise from the retention of MIO's proprietary funds in the Plans and the recordkeeping expenses incurred by the Plans. Plaintiff does not have any unique claims against Defendants beyond those shared with the Settlement Class. Therefore, his claims are typical of the Settlement Class. *See Moreno I*, 2017 WL 3868803, at \*7 (finding class representatives' claims

regarding proprietary funds and allegedly excessive recordkeeping expenses were typical of the class).

### 4. Adequacy

Fed. R. Civ. P. 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." To satisfy this requirement: (1) class counsel must be qualified, experienced and generally able to conduct the litigation; and (2) the representative plaintiff's interests must not be antagonistic to those of the class. *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). Both of those requirements are met for the reasons discussed above. *See supra* at 10-12.

### B. The Prerequisites of Rule 23(b)(1) are Met

The proposed class also satisfies Rule 23(b)(1). Under Rule 23(b)(1), a class may be certified if prosecution of separate actions by individual class members would create a risk of:

> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>
> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests[.]

Fed. R. Civ. P. 23(b)(1). Here, the proposed Settlement Class satisfies both prongs. *See, e.g., Krueger v. Ameriprise Fin., Inc.*, 304 F.R.D. 559, 576-78 (D. Minn. 2014) ("*Krueger I*") (certifying class under both prongs). "Because of ERISA's distinctive representative capacity and remedial provisions, ERISA litigation of this nature presents a paradigmatic example of a (b)(1) class." *Global Crossing*, 225 F.R.D. at 453 (emphasis added, quotations omitted).[16]

---

[16] *See also Hochstadt v. Boston Scientific Corp.,* 708 F. Supp. 2d 95, 105 (D. Mass. 2010) ("[I]n light of the derivative nature of ERISA § 502(a)(2) claims, breach of fiduciary duty claims brought under § 502(a)(2) are paradigmatic examples of claims appropriate for certification as a Rule 23(b)(l) class, as numerous courts have held.") (emphasis

### 1.      Rule 23(b)(1)(A)

Certification of the class under Rule 23(b)(1)(A) is proper because prosecution of individual actions would create incompatible standards of conduct for Defendants. The fiduciary duties imposed by ERISA are "duties with respect to a plan" that are intended to protect the "interest of the participants and beneficiaries" collectively. *See* 29 U.S.C. § 1104(a). Accordingly, "separate lawsuits by various individual Plan participants to vindicate the rights of the Plan could establish incompatible standards to govern Defendants' conduct, such as ... determinations of differing 'prudent alternatives' against which to measure the proprietary investments, or an order that Defendants be removed as fiduciaries." *Krueger I,* 304 F.R.D. at 577; *see also Shanehchian v. Macy's, Inc.*, No. 1:07–CV–00828, 2011 WL 883659, *9 (S.D. Ohio Mar. 10, 2011) ("If liability is found in one court but not in another, Defendants would be left in limbo, having been vindicated with respect to their duties to the Plans in one court but subject to judgment that would vitiate that vindication in another, thus making compliance impossible."); *Harris v. Koenig,* 271 F.R.D. 383, 394 (D.D.C. 2010); *Kanawi v. Bechtel Corp.,* 254 F.R.D. 102, 111 (N.D. Cal. 2008).

### 2.      Rule 23(b)(1)(B)

Likewise, because an adjudication on behalf of one participant of the Plans would effectively be dispositive of the claims of the other class members, class certification is also appropriate under Rule 23(b)(l)(B). *See Moreno I*, 2017 WL 3868803, at *8. The Advisory Committee Notes to Rule 23 expressly recognize that class certification is appropriate under Rule 23(b)(1)(B) in "an action which charges a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of security holders or other beneficiaries, and

---

added) (quotation omitted); *Tussey v. ABB, Inc.,* No. 06-04305-CV-NKL, 2007 WL 4289694, at *8 (W.D. Mo. Dec. 3, 2007) ("*Tussey I*") ("Alleged breaches by a fiduciary to a large class of beneficiaries present an especially appropriate instance for treatment under Rule 23(b)(l).").

which requires an accounting or like measures to restore the subject of the trust." Fed. R. Civ. P.

23, Advisory Committee Note (1966). "[T]his case falls squarely within the meaning articulated

by the Advisory Committee as Plaintiff allege[s] breaches of fiduciary duties affecting the Plans

and the thousands of participants in the Plans." *Shanehchian,* 2011 WL 883659, at *10. Numerous

courts have granted certification under Rule 23(b)(1)(B) in similar cases.[17]

## CONCLUSION

For the foregoing reasons, the Court should enter an order: (1) preliminarily approving the

Settlement; (2) approving the proposed Settlement Notices and authorizing distribution of the

Notices; (3) certifying the proposed Settlement Class; (4) scheduling a final approval hearing; and

(5) granting such other relief as set forth in the accompanying Preliminary Approval Order.

Respectfully Submitted,

Dated August 10, 2020            **NICHOLS KASTER PLLP**

/s/ Kai Richter
Kai H. Richter, MN Bar No. 0296545*

---

[17] *See, e.g., Karg v. Transamerica Corp.*, No. 1:18-CV-134-CJW-KEM, 2020 WL 3400199 (N.D. Iowa March 25, 2020); *Vellali v. Yale Univ.*, 333 F.R.D. 10 (D. Conn. Sept. 24, 2019); *Stevens v. SEI Investments Co.*, No. 2:18-cv-04205-NIQA, ECF No. 40 (E.D. Pa. July 31, 2019); *Beach v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 17-CV-563 (JMF), 2019 WL 2428631 (S.D.N.Y. June 11, 2019); *Cunningham v. Cornell Univ.*, 1:16-cv-6525, ECF No. 219 (S.D.N.Y. Jan. 22, 2019); *Cates v. The Trustees of Columbia University in the City of New York et al*, 1:16-cv-06524, ECF No. 210 (S.D.N.Y. Nov. 13, 2018); *Cassell v. Vanderbilt Univ.*, No. 3:16-cv-2086, 2018 WL 5264640 (M.D. Tenn. Oct. 23, 2018); *Tracey v. MIT*, No. 16-11620-NMG, 2018 WL 5114167 (D. Mass. Oct. 19, 2018); *Henderson v. Emory Univ.*, No. 1:16-CV-2920-CAP, 2018 WL 6332343 (N.D. Ga. Sept. 13, 2018); *Short v. Brown Univ.*, 320 F. Supp. 3d 363 (D.R.I. 2018); *Clark v. Duke Univ.*, No. 1:16–CV–1044, 2018 WL 1801946 (M.D.N.C. Apr. 13, 2018); *Sacerdote*, No. 16-cv-6284, 2018 WL 840364 (S.D.N.Y. Feb. 13, 2018); *Daugherty v. Univ. of Chicago*, No. 17 C 3736, 2018 WL 1805646 (N.D. Ill. Jan. 10, 2018); *Wildman I*, 2017 WL 6045487; *Moreno I*, 2017 WL 3868803, at *8; *Urakhchin I*, 2017 WL 2655678, at *8 (C.D. Cal. June 15, 2017); *Krueger I*, 304 F.R.D. at 577; *Hochstadt,* 708 F. Supp. 2d at 105; *Brotherston v. Putnam Invs., LLC*, No. 1:15-cv-13825 -WGY, ECF No. 88 (D. Mass. Dec. 13, 2016) (text order); *Shanehchian,* 2011 WL 883659, at *10; *In re Beacon Assocs. Litig.*, 282 F.R.D. 315, 342 (S.D.N.Y. 2012); *In re Northrup Grumman Corp. ERISA Litig.*, No. CV 06–06213 MMM (JCx), 2011WL 3505264 (C.D. Cal. Mar. 29, 2011); *Harris,* 271 F.R.D. at 394; *Stanford v. Foamex L.P.,* 263 F.R.D. 156, 174 (E.D. Pa. 2009); *In re Norte/Networks Corp. ERISA Litig.,* No. 3:03-md-01537, 2009 WL 3294827, at *15 (M.D. Tenn. 2009); *Jones v. NovaStar Fin., Inc.,* 257 F.R.D. 181, 193 (W.D. Mo. 2009); *In re Merck & Co., Inc. Sec., Deriv. & ERISA Litig.,* MDL No. 1658, 2009 WL 331426, at *10 (D.N.J. Feb. 10, 2009); *Kanawi,* 254 F.R.D. 102; *Tussey I,* 2007 WL 4289694; *AOL Time Warner*, 2006 WL 2789862; *In re Tyco, Int 'l, Ltd. Multidistrict Litig.,* No. MD–02–1335–PB, 2006 WL 2349338, at *7 (D.N.H. Aug. 15, 2006); *In re Williams Co. ERISA Litig.,* 231 F.R.D. 416, 425 (N.D. Okla. 2005); *WorldCom,* 2004 WL 2211664; *Koch v. Dwyer,* No. 98 Civ. 5519(RPP), 2001 WL 289972, at *5 (S.D.N.Y. March 23, 2001); *In re Ikon Office Solutions, Inc.,* 191 F.R.D. 457, 466 (E.D. Pa. 2000).

Carl F. Engstrom, MN Bar No. 0396298*
Paul Lukas, MN Bar No. 22084X*
Brandon T. McDonough, MN Bar No. 0393259*
Brock J. Specht, MN Bar. No. 0388343*
Michelle L. Kornblit, NY Bar Code #5314794
      * admitted *pro hac vice*
4600 IDS Center, 80 S 8th Street
Minneapolis, MN 55402
Telephone: 612-256-3200
Facsimile: 612-338-4878
mkornblit@nka.com
krichter@nka.com
cengstrom@nka.com
lukas@nka.com
bmcdonough@nka.com
bspecht@nka.com

***ATTORNEYS FOR PLAINTIFF***