

Kai H. Richter
Direct: (612) 256-3278
Fax: (612) 338-4878
krichter@nka.com

4600 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
(877) 448-0492

August 20, 2020

**VIA ECF**

The Honorable Gregory H. Woods, U.S.D.J.
United States District Court, Southern District of New York
United States Courthouse
500 Pearl Street
New York, NY 10007

**Re:** *Bhatia, et al. v. McKinsey & Company, Inc., et al.*, Case No. 1:19-cv-01466-GHW-SN

Dear Judge Woods,

Pursuant to the Court's August 13, 2020 Order in the above-captioned action (ECF No. 80), this letter addresses the plan of allocation in the parties' Class Action Settlement Agreement, ECF No. 75-01 ("Settlement Agreement"), and offers to provide certain additional information that may help the Court more fully evaluate the proposed plan of allocation.[1]

### I.   Plan of Allocation

The proposed Plan of Allocation is set forth in Article 6 of the Settlement Agreement. Specifically, Section 6.4 (entitled "Calculation of Settlement Payments") provides in relevant part as follows:

> **6.4.1**  For each Authorized Former Participant and Current Participant, the Settlement Administrator shall determine an *Average Settlement Allocation Score*. For purposes of making this determination, a *Settlement Allocation Score* shall be calculated for each quarter during the Class Period, which shall be the sum of 15 points (if the Eligible Class Member had an Active Account at the end of the quarter) plus 0.0020 points for every dollar invested by the Eligible Participant in MIO Funds at the end of the quarter (up to a maximum of 300 points).[2] A Participant's *Average Settlement Allocation Score* shall be the average of the Participant's *Settlement Allocation Scores* during the Class Period, weighted by the percentage of days in the quarter for partial quarters at the beginning and end of the Class Period.

> **6.4.2**  The Settlement Administrator shall determine the total settlement payment available to each Authorized Former Participant and Current Participant by calculating each such participant's pro-rata share of the Net Settlement Fund based on his or her *Average Settlement Allocation Score* compared to the sum of the *Average Settlement Allocation Scores* for all Authorized Former Participants and Current Participants. If the

---

[1] As instructed by the Court, the parties are submitting a separate letter regarding the extrinsic bodies of law applying to the independent investment consultant and independent fiduciary referenced in Sections 7.1.1. and 7.1.2 of the Settlement Agreement.

[2] The maximum *Settlement Allocation Score* for each quarter thus will be 315 points (15 + 300).

dollar amount of the settlement payment to an Authorized Former Participant is calculated by the Settlement Administrator to be less than $5.00, then that Authorized Former Participant's payment or pro rata share shall be zero for all purposes.

This Plan of Allocation is designed to reflect the claims that were asserted in the action, and also account for the arguments that Defendants raised concerning the arbitration provision in the Plans. *See Declaration of Kai Richter, ECF No. 75, at ¶ 5.* The first component of the formula (15 points per quarter) is designed to approximate the amount of each eligible Class Member's recordkeeping claim, as Plaintiff alleged that the Plan's recordkeeping expenses exceeded a reasonable amount by approximately $60 per year ($15 per quarter). *Id.* (citing *Complaint, ¶ 8*). The second component of the formula (0.0020 points for each dollar invested in MIO Funds for each quarter) is designed to be consistent with Plaintiff's allegation that MIO received an investment management fee of between 0.64% to 0.94% per year for every dollar invested in MIO Funds (which averages to approximately 0.20%, or 0.0020, per quarter). *Id.* (citing *Complaint, ¶ 6*). The 300 point limit for purposes of scoring the investment claim in relation to the 15 point amount for purposes of scoring the recordkeeping claim is designed to reflect the relative size of both claims, as Plaintiff estimated that the amount of MIO fees during the Class Period was approximately $180 million and the amount of excess recordkeeping expenses during the Class Period was approximately $9 million (reflecting a ratio of 20:1, or 300 points to 15 points). *Id.* Finally, the maximum total points per quarter ($315), multiplied by the total number of quarters during the Class Period (less than 31, after accounting for partial quarters at the beginning and end of the Class Period), is designed to fall just below the $10,000 threshold for arbitration in the Plan documents.[3]

## II.   Proposed Additional Information to Be Submitted

During the case conference on August 13, 2020, the Court indicated that it was interested in receiving further information regarding the application of the proposed plan of allocation to members of the class. *Tr. 30:21-24.* In particular, the Court requested information regarding how the plan of allocation would affect class members with various levels of investment holdings, so it could "understand how these numbers work out in practice" and better assess whether the distribution was equitable. *Tr. 20:19-21:1; see also Tr. 21:8-10, 21:24-22:2.* Although the Court stated that it did not believe this would require information regarding how the plan of allocation would play out for each individual class member, *Tr. 24:10-12*, it indicated that it was interested in seeing at least "illustratively" how the plan of allocation will operate. *31:5-7.*

Plaintiff appreciates the Court's desire for additional information, and would be happy to provide whatever information the Court deems necessary. Based on the Court's comments at the hearing, it appears that the Court may find it helpful to have a "person with financial expertise"

---

[3] The arbitration provision provides:

> No person may bring any claim, lawsuit or other cause of action arising from a combined investment-related loss in excess of $10,000 experienced on the amount of a Member's accounts in the Plan[s] … in any court (federal, state or otherwise). Instead, such person must submit such dispute to mandatory, final and binding arbitration as his/her exclusive remedy for claims that meet the criteria set forth herein, unless prohibited by law.

*ECF No. 31 at 7.*

analyze how this plan of allocation will affect potential class members. *Tr. 21:24-22:2*. Accordingly, Plaintiff proposes to submit a declaration from Dr. Steve Pomerantz, an investment expert in New York who was previously retained by Plaintiff in this case, to quantitatively assess how the plan of allocation will work out in practice among various class members.[4]

In this regard, Plaintiff is cognizant of the Court's interest in the "effect of the cap" (*i.e.*, the scoring limit of 300 points on MIO investments and 315 total points per quarter) on distributions. Accordingly, Dr. Pomerantz's proposed analysis would include an estimate of the points that would be earned by class members, and the distributions that they would receive, both with and without the cap. Although this information could be formatted and arranged in any manner that the Court believes would be helpful, Plaintiff proposes providing information along the following lines for class members at different recovery levels:

**Breakdown under Plan of Allocation (Cap)**

|  | Average Points/Quarter | Total Points | Gross Distribution |
|---|---|---|---|
| 10th percentile |  |  |  |
| 25th percentile |  |  |  |
| 50th percentile |  |  |  |
| 75th percentile |  |  |  |
| 90th percentile |  |  |  |

**Alternative Breakdown (Uncapped)**

|  | Average Points/Quarter | Total Points | Gross Distribution |
|---|---|---|---|
| 10th percentile |  |  |  |
| 25th percentile |  |  |  |
| 50th percentile |  |  |  |
| 75th percentile |  |  |  |
| 90th percentile |  |  |  |

Plaintiff also proposes to provide further information regarding the specific percentile at which the cap comes into play, other percentiles as desired by the Court, assets held by class members at various distribution percentiles, and the number of class members in various tranches. In addition,

---

[4] At this stage, Defendants have only produced class member data for participants on a year-end basis. Accordingly, Dr. Pomerantz's analysis will require an assumption that quarterly plan balances and balances in MIO Funds remained the same throughout a given year. Further, it is currently unknown how many Former Participants will submit claims, as required to be an Authorized Former Participant eligible for a distribution. *See Settlement Agreement*, ¶¶ *2.6, 6.1- 6.2, 6.6*. Accordingly, Dr. Pomerantz will assume that all Former Participants submit claims, so that allocation amounts are calculated for all class members. Finally, any award of attorneys' fees or costs would be speculative at this point. Thus, Plaintiff proposes to provide distribution calculations on a gross basis. At the final approval stage, once quarterly balance information is available, the number of claims is known, and an appropriate motion for attorneys' fees and costs has been filed, it will be possible to provide the Court with more precise calculations. However, Plaintiff believes that Dr. Pomerantz's estimates based on existing information should be sufficient to allow the Court to assess the practical effect of the plan of allocation.

information could be provided by Dr. Pomerantz regarding the number of class members (if any) who would fall under the $5.00 minimum distribution threshold for Former Participants. *See Settlement Agreement,* ¶ 6.4.2.

Plaintiff believes that this information will further support the Settlement and demonstrate that it treats class members equitably. *See* Fed. R. Civ. P. 23(e)(2)(D). Although Dr. Pomerantz's analysis is not yet complete, his preliminary calculations show that (1) the proposed plan of allocation will benefit the vast majority of class members, while still allowing substantial distributions for persons subject to the point caps; (2) the point levels specified in the Settlement (which are designed to approximate the dollar value of class members' claims) reach a maximum of 9,765 points under the plan of allocation, just under the $10,000 threshold for arbitration in the Plan documents; and (3) very few, if any, class members will fall short of the $5 distribution minimum for Former Participants. Accordingly, Plaintiff encourages the Court to approve the proposed plan of allocation once this information is provided. *See In re Valeant Pharms. Int'l, Inc. Sec. Litig.,* No. 3:15-cv-07658, 2020 WL 3166456, at *9-10 (D.N.J. June 15, 2020) (approving plan of allocation that included a recovery cap, based on testimony from lead plaintiff's expert); *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 414-415 (S.D.N.Y. 2018) (approving plan of allocation that "substantially discounted" the recovery for institutional investors, based on opinions of plaintiff's counsel supported by expert analysis).

Plaintiff appreciates the opportunity to submit these comments, and proposes to provide the information set forth in this letter on or before August 31, 2020. To the extent that the Court would like additional information, or has any questions or concerns, the parties would be happy to discuss any remaining issues at a further case conference.

Respectfully Submitted,

**NICHOLS KASTER, PLLP**

Kai Richter

cc: All Counsel of Record (via ECF)